**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE: PARAGARD IUD** | **:** | **MDL Docket No. 2974** |
| **PRODUCTS LIABILITY** | **:** | |
| **LITIGATION** | **:** | **(1:20-md-02974-LMM)** |
| | **:** | |
| | **:** | **This Document Relates to All** |
| | **:** | **Cases** |

**REPLY MEMORANDUM IN SUPPORT OF TEVA
PHARMACEUTICALS USA, INC.; TEVA WOMEN'S HEALTH, LLC;
TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.; THE
COOPER COMPANIES, INC.; AND COOPERSURGICAL, INC.'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED MASTER
PERSONAL INJURY COMPLAINT**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................ 1

II.   LAW AND ARGUMENT .............................................................. 4

    A.    PLAINTIFFS IMPROPERLY LUMP DEFENDANTS TOGETHER ........................ 4

    B.    THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT DO NOT STATE PLAUSIBLE CLAIMS ................................................................................ 8

    C.    PLAINTIFFS HAVE NOT SATISFIED RULE 9(B) SPECIFICITY REQUIREMENTS TO PLEAD FRAUD-BASED CLAIMS .................................. 11

    D.    PLAINTIFFS HAVE NOT STATED NON-PREEMPTED CLAIMS ..................... 13

III.  CONCLUSION ......................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
    500 F.3d 1230 (11th Cir. 2006) ................................................................. 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................... 9, 10

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ...................................................................................... 22

*Coleman v. Medtronic, Inc.*,
    223 Cal. App. 4th 413 (2014).......................................................................... 20

*Conklin v. Medtronic, Inc.*,
    245 Ariz. 501 (2018)....................................................................................... 20

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ....................................................................................... 24

*Crowe v. Coleman*,
    113 F.3d 1536 (11th Cir. 1997) ....................................................................... 7

*Gibbons v. Bristol-Myers Squibb Co.*,
    919 F.3d 699 (2d Cir. 2019)............................................................................ 17

*In re  & Lexapro Mktg. & Sales Practices Litig.*,
    779 F.3d 34 (1st Cir. 2015)............................................................................. 17

*Int'l Shipping Co. v. Hydra Offshore, Inc.*,
    875 F.2d 388 (2d Cir. 1989)............................................................................ 23

*Jackson v. Hall Cnty. Gov't, Georgia*,
    568 Fed. Appx. 676 (11th Cir. 2014)............................................................... 24

*Kyle K. v. Chapman*,
  208 F.3d 940 (11th Cir. 2000) .......................................................... 6

*Maryland v. Louisiana*,
  451 U.S. 725 (1981) ...................................................................... 15

*McLaughlin v. Bayer Corp.*,
  172 F. Supp. 3d 804 (E.D. Pa. 2016).............................................. 20

*Merck Sharp & Dohme Corp. v. Albrecht*,
  587 U.S. ---, 139 S. Ct. 1668 (2019).............................................. 14

*Mink v. Smith & Nephew, Inc.*,
  860 F.3d 1319 (2017) .................................................................... 19

*Mutual Pharm. Co., Inc. v. Bartlett*,
  570 U.S. 472 (2013) ...................................................................... 14

*Pearsall v. Medtronic, Inc.*,
  147 F. Supp. 3d 188 (E.D.N.Y. 2015).............................................. 20

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011) ................................................................. 14, 15

*Rosen v. St. Jude Med., Inc.*,
  41 F. Supp. 3d 170 (N.D.N.Y. 2014) .............................................. 20

*Sprint Sols., Inc. v. Fils-Amie*,
  44 F. Supp. 3d 1224 (S.D. Fla. 2014).............................................. 7

*Stengel v. Medtronic, Inc.*,
  704 F.3d 1224 (9th Cir. 2013) ....................................................... 19

*Utts v. Bristol-Myers Squibb Co.*,
  226 F. Supp. 3d 166 (S.D.N.Y. 2016).............................................. 17

*Weiland v. Palm Beach County Sheriff's Office*,
  792 F.3d 1313 (11th Cir. 2015) ...................................................... 8

*Wyeth v. Levine,*
   555 U.S. 555 (2009); ......................................................................................... 14

## Constitutional Provisions

U.S. Const. art VI, cl. 2 ................................................................................. 15

## Statutes

21 U.S.C. §337(a) ........................................................................................... 22

28 U.S.C. §1927 ............................................................................................. 22

## Regulations

21 C.F.R. §314.80(g)(2) ................................................................................... 3

## Rules

Fed. R. Civ. P. 11 ........................................................................................... 22

Fed. R. Civ. P. 8 ............................................................................................. 22

Fed. R. Civ. P. 9 ............................................................................................. 22

## Other Authorities

5A Wright and Miller, Federal Practice and Procedure §1331 at 317-18 ...... 23

Advisory Committee Note to the 1993 amendment,
   reprinted at 146 F.R.D 401, 585 (1993) ....................................................... 24

FDA, Guidance for Industry, Labeling for Human Prescription Drug and
   Biological Products – Implementing the PLR Content and Format
   Requirements, Feb. 2013 ..................................................................... 18, 19

Questions and Answers on FDA's Adverse Event Reporting
   System (FAERS) ......................................................................................... 3

## I.     INTRODUCTION

This multi-district litigation was formed more than six years after plaintiffs' co-lead counsel filed his first lawsuit involving Paragard.  That lawsuit ended when the defendants' summary judgment motion was granted.  But, before it ended, a significant amount of discovery was conducted; documents were produced, depositions were taken, and interrogatories were answered.  In short, the facts were laid bare.  Plaintiffs were not shy about using that information in preparing their complaint, going so far as to quote from a confidential document in an earlier complaint, requiring them to amend.  Even so, plaintiffs, led by that same counsel, claim their wholly-deficient Second Amended Master Personal Injury Complaint ("Complaint") should not be dismissed on any of the various grounds defendants advanced, and fully supported, in their motion to dismiss.

Plaintiffs argue their Complaint is not a shotgun pleading and that defendants are on notice of the claims against them, and the basis of those claims, even though the defendants are lumped together in virtually every allegation in the Complaint.  They argue defendants are in the best position to know which allegations apply to them.  Yet, it is not the duty of defendants or the Court to determine which allegations are directed to which defendant.  Quite the opposite, it is plaintiffs' obligation to undertake a reasonable

investigation before asserting claims.   Here, given plaintiffs' counsel involvement in Paragard litigation for many years, there is no excuse for the deficient shotgun pleading.

Plaintiffs also argue that they have alleged claims that are plausible on their face even though their Complaint is devoid of the facts necessary to state any claim.   Stated differently, the rote recitation of the elements of a claim, without pleading facts that support that claim, does not meet Rule 8's pleading requirements. Instead, plaintiffs allege no more than a series of legal conclusions that the Court must reject.

Plaintiffs' deficient pleading is all the more egregious as it makes clear that plaintiffs ignored their obligation to reasonably investigate the "facts" at issue before lodging their complaint.   Making specious statements like defendants received postmarket adverse event reports "of over 2000 Paragard breaks,"[1] but did not warn "of the frequency with which such breakages occur," does not allege a plausible claim. First, Plaintiffs ignore the fact that frequency

---

[1] Plaintiffs did not plead and have not provided any context for the "over 2000 breaks" they allege and argue. As discussed below, they do not dispute that Paragard has been used by millions of women. Thus, according to plaintiffs' figures, the rate of "breaks" is approximately one-tenth of a percent, and very likely less than that. Further, plaintiffs' suggestion that the Court should simply accept the "over 2000 breaks" are arms that broke upon removal—the event that is the subject of this MDL—and does not include such events as thread breaks, is unsupported by any factual allegation.

information could be included in the Paragard label only if the information came from clinical studies that are "adequate and well-controlled studies," as defined in detail in  21 C.F.R. §314.126(b). *See* 21 C.F.R. §314.80(g)(2).  FDA has stated that frequency or incidence cannot be calculated from adverse event report information. *See* Questions and Answers on FDA's Adverse Event Reporting System (FAERS).[2]  That is all setting aside that the label states multiple times that a Paragard can break. Further to the extent plaintiffs' assertion is that the number of reports should have been listed in the Paragard label, they again ignore FDA's regulations regarding the requirements for information on drug labeling, which does not include listing the number of reports received.  Moreover, given the repeated statements in the label that a Paragard can break, plaintiffs' assertions about the number of reports do not provide "facts" of any defect in the product.

The fraud-based claims likewise are deficient.  As explained below, the "representations" plaintiffs identify are not false.  As a result, plaintiffs instead attempt to overlay the truthful, factual representations with their own gloss of interpretation, and then claim that based on *their interpretation*, defendants'

---

[2] Available at https://www.fda.gov/drugs/surveillance/questions-and-answers-fdas-adverse-event-reporting-system-faers.

statements were false.  But, alleging you said "a," but I took that to mean "b," does not make "a" false or the basis for a fraud claim.

Finally, plaintiffs start from the wrong point in the preemption analysis when they argue their claims are not preempted.  After the U.S. Supreme Court's preemption decisions involving pharmaceutical products, it is clear that claims aimed at drug manufacturers over allegedly defective drugs *are* preempted *unless* the drug manufacturer is permitted to independently (without FDA's assistance or approval) make the change state law would require.  As such, for plaintiffs to state a viable, plausible, non-preempted claim, it is their obligation to allege facts forming the basis on which the defendants could take the necessary independent action. Without that information, plaintiffs have failed to state a claim upon which relief can be granted.

When fully evaluated, plaintiffs' Complaint cannot withstand dismissal.

## II.   LAW AND ARGUMENT

### A.   PLAINTIFFS IMPROPERLY LUMP DEFENDANTS TOGETHER

Plaintiffs argue their Complaint is not a shotgun pleading claiming that "Defendants are clearly on notice of the claims against them."  (Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Opp."), p. 9.)  All the while, plaintiffs acknowledge that a proper pleading must "give the defendants

4

adequate notice of the claims against them and the grounds upon which each claim rests." (*Id.*)  That, plaintiffs have not done.

The Complaint is 99 pages long.  It has 405 paragraphs and 16 counts. Plaintiffs named 5 separate corporate entities.  Aside from a handful of paragraphs, the Complaint – from start to finish – is pled in vague, all-encompassing generalities and conclusory statements.  For example, in paragraphs 56-58, plaintiffs allege "Defendants" market and have marketed Paragard as being safe and effective, as providing "continuous pregnancy prevention," as "easily reversible."  Then in paragraph 59, it is "[t]he relevant Defendants" that "heavily marketed Paragard" and in paragraph 60, it is "[t]hese marketing materials [that] intentionally convey to consumers that Paragard removal is easy and safe …."  Now, it is undisputed that Paragard was approved in 1984.  However, no named defendant in this MDL held the NDA for Paragard until 2005 – more than twenty years later.  So, one is left to guess, which "Defendants," who are the "relevant Defendants," what "marketing materials," and when were such "marketing materials" ever seen or relied upon.  It is no answer (and surely does not resolve the problems shotgun pleadings present) to argue that defendants are "in the best position to know which entity is responsible for the wrongdoing alleged."  (Plaintiffs' Opp., p. 12.)  That's like alleging "defendants slandered me" and expecting

those multiple defendants to divine the basis of the allegation.  The pleading requirements mandate more.

Nor do the cases plaintiffs cite support their assertions that the Complaint is not a shotgun pleading.  For instance, plaintiffs cite *Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000), for the proposition that "employing common allegations to allege common conduct is proper."  (Plaintiffs' Opp., p. 11.)  The claims in *Kyle* were asserted against various healthcare professionals, direct care personnel, and administrators of a state residential treatment facility for mentally disabled individuals brought by the parents of an abused autistic plaintiff who was unable to communicate or report the abuse.  *Kyle*, 208 F.3d at 941, 944.  Defendants moved to dismiss arguing the allegations of abuse lacked the factual specificity to overcome a qualified immunity defense. *Id.* at 943.  The Eleventh Circuit ruled that the complaint could be read to aver that all defendants were responsible for the alleged abuse.  *Id.* at 944.  And rightly so, in an action where *all* the defendants were joint participants in the mentally-impaired plaintiff's care.  That is very different from the situation here, where multiple separate corporate entities are named as defendants, but the allegations are collective and general in nature, allege different activities (manufacture, sale, design, etc.) and span an unspecified length of time.

Likewise, *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997), adds no support for plaintiffs. From that case, plaintiffs merely pluck a random statement that the allegations in a complaint naming multiple defendants "can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." (Plaintiffs' Opp., p. 11, n.3.) In *Crowe*, there were two defendants (the former and current owner of property). The court's statement that plaintiffs quote was made in evaluating the issue of fraudulent joinder and whether the plaintiff could establish a nuisance claim against the current owner of the property. *Crowe*, 113 F.3d at 1539. The court was not addressing whether plaintiff's complaint was a shotgun pleading.

Similarly, *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224 (S.D. Fla. 2014), involved two defendants alleged to have obtained, modified, and resold wireless telephones. *Id.* Again, plaintiffs merely pluck a quote from the decision to support a proposition that plaintiffs may refer to defendants collectively in their allegations. (Plaintiffs' Opp., p. 11, n.3.) In reality, the plaintiffs in *Sprint* referred to the two defendants *collectively* when they were alleged to have *acted together* and *separately* for *alleged independent conduct*. *Sprint*, 44 F. Supp. 3d at 1227. That distinction is utterly absent from plaintiffs' allegations. Not the least bit the same as what plaintiffs did here.

Plaintiffs' other justifications for their pleading deficiencies are equally futile. First, plaintiffs' reliance on the fact that the Complaint is a master complaint in a proceeding consolidating lawsuits is misplaced. Whether an individual lawsuit or a multi-district litigation, the pleading requirements are the same. Defendants are entitled to "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1321–23 (11th Cir. 2015). Second, it is no answer to say that only the "factual allegations" are incorporated into each count. That is the precise problem. The "factual allegations" are generic in nature and the counts do no more than list the elements of the causes of action. Together they do little to provide the requisite notice to *each individual defendant* as they must. Plaintiffs' Complaint falls far short of the requirement and should be dismissed.

### B.   THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT DO NOT STATE PLAUSIBLE CLAIMS

As explicitly explained in defendants' opening brief, plaintiffs' allegations do not state plausible claims against defendants. (Defendants' memo, pp. 20-26.) Plaintiffs' answer that defendants are "improperly seeking summary judgment" reflects a fundamental misunderstanding of their duties to plead actionable claims. Incredulously, plaintiffs chide defendants for not

citing a "single authority that would support dismissal." (Plaintiffs' Opp., p. 14.) Yet, the standard of review section details, with legal support from our highest court, plaintiffs' obligations to state "a claim for relief that is plausible on its face." (Defendants' memo, pp. 15-17 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). More support is not required.

Although plaintiffs do not, and cannot, dispute that the materials defendants cite in their motion are subject to judicial notice (and fairly considered on a motion to dismiss especially given they are implicated in the Complaint), plaintiffs complain the "selective portions of different warnings [that defendants highlight] … are not alleged in the pleadings." (Plaintiffs' Opp., pp. 14-15 (emphasis omitted).) The potential for breakage appears numerous times in the label and plaintiffs' deliberate failure to cite those portions of the label in their Complaint does not preclude defendants from citing them or the Court from considering them. Instead, that omission merely further demonstrates plaintiffs' attempt to hoodwink the Court with vague allegations that have no basis in fact, and which are contradicted by the noticeable facts defendants supply.

Plaintiffs include allegations in their Complaint they know, or certainly should know, are untrue. Plaintiffs' counsel prominently promoted both to the JPML and this Court their general experience in pharmaceutical litigation,

touted their specific experience with Paragard litigation (dating back more than six years), and cannot deny their access to publicly available facts. For example, plaintiffs know that only one entity at a time is, and can be, an NDA holder. They know that Teva Pharmaceuticals USA, Inc., never held the Paragard NDA. They know that CooperSurgical never manufactured or sold Paragard before November 2, 2017.  Yet, they ignore those known and noticeable facts and, instead pepper their allegations with statements that do not permit this Court to draw any inference, much less a reasonable inference, that any "defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Critically, plaintiffs do not dispute that the Paragard label states numerous times that a Paragard may break.  They do not dispute that the label also states surgery may be required to remove the IUD.  And, they do not dispute that the allegations in each count are mere recitations of the claim's elements.  Instead, plaintiffs try to defend their allegations, which, as defendants detailed in their opening brief, do not include *facts* alleging the basis of any defect, either design, warning, or manufacture.  (*See* Defendants' memo, pp. 20-26.)  Repeating their insufficient, conclusory allegations does not transform them.  They remain devoid of factual content required to state plausible claims and avoid dismissal.

Indeed, other than repeating portions of their allegations, plaintiffs make no attempt to respond to the deficiencies defendants noted. They never explain how allegations "upon information and belief" that the plastic material did not have "sufficient flexibility," or that the product's arms are fixed and straight, or that it is not the same as another product states any plausible claim. The same is true of allegations that "Paragard breaks more" than other IUDs, that Paragard's "arms have no curvature," and that "Paragard's arms are supposed to fold upward." So what? Those generalizations are not facts that there is any defect in the product. Plaintiffs cannot move forward on a Complaint that is replete with allegations devoid of facts that demonstrate a plausible claim. Accordingly, the Complaint should be dismissed.

## C.   PLAINTIFFS HAVE NOT SATISFIED RULE 9(B) SPECIFICITY REQUIREMENTS TO PLEAD FRAUD-BASED CLAIMS

Time and again, plaintiffs fall back on the "it's a master pleading" excuse. This time, it is in an effort to salvage their fraud-based claims. (Plaintiffs' Opp., p. 27.) Master pleading or not, the federal rules apply. And, Rule 9(b) requires more than plaintiffs pled.

That plaintiffs have not satisfied the pleading requirement is amply demonstrated by the very example plaintiffs contend sufficiently asserts a fraud claim. Plaintiffs cite to and quote the allegation in ¶59: "The relevant

Defendants have heavily marketed Paragard as being 'reversible,' 'non-surgical,' and removable by a healthcare provider 'during a routine office visit in just a few minutes." (Plaintiffs' Opp., p. 24.)  Is Paragard reversible?  Yes. Is removal non-surgical?  Yes.  Can Paragard be removed during a routine office visit?  Yes.  Not a single false statement in that allegation.  And then there is the reference to the "relevant Defendants" who are never identified.

Plaintiffs couple the quote from ¶59 with the vague allegations from ¶¶56-60 that they claim "detail specific statements from Defendants' marketing materials that 'intentionally convey[ed] to consumers that Paragard removal is easy and safe, with no risk of complication' and failed to 'otherwise relay the risks of Paragard.'" (Plaintiffs' Opp., p. 24.)   Is there any mention of the specific statements?  No.  Is there any mention of what marketing materials?  No.  Is there any mention of what risk or complication? No.  Perhaps those omissions are unavoidable given plaintiffs' entire premise in this litigation is that Paragard might break *despite the fact* the Paragard label indisputably states numerous times not only that the IUD may break, but also that surgery may be required to remove it.  Plaintiffs' allegations do not satisfy the specificity requirements of Rule 9.

Next plaintiffs point to ¶¶75 & 76 which refer to and reproduce a website screen that plaintiffs claim was posted, "upon information and belief," from

December 2016 through April 2018.  (Plaintiffs' Opp., pp. 24-25.)  As with the allegations in ¶59, neither ¶75 nor ¶76 describes any false statement.  And, contrary to plaintiffs' assertion, those allegations *do not* "clearly set forth the 'who, what, where, and how'" of any false statement.  And, how could they, when they aren't false.  Paragard is over 99% effective and does help prevent pregnancy for up to 10 years; it is possible to become pregnant immediately after Paragard is removed; Paragard can be used even if a woman previously had a child; and the product has been approved for decades and used by millions of women.  The only statement from the reproduced website screen that plaintiffs identify as potentially misleading is the statement that Paragard is 100% hormone free.  Even if plaintiffs' assertion that FDA found the "statement misleading because it 'gave the impression to consumers that Paragard was safer than other long-acting reversible contraceptives'" (*id.*, pp. 25-26) is accurate, it is totally unrelated to the risks plaintiffs allege as the basis of their claims:  breakage and the potential for surgery.

Plaintiffs' failure to satisfy the pleading requirements of Rule 9(b) warrants dismissal of plaintiffs' fraud-based claims.

### D.   PLAINTIFFS HAVE NOT STATED NON-PREEMPTED CLAIMS

Plaintiffs' arguments that their claims are not preempted misapprehend preemption jurisprudence.  The U.S. Supreme Court addressed preemption of

claims involving pharmaceutical products in four decisions over the past twelve years. *See Wyeth v. Levine,* 555 U.S. 555 (2009); *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011); *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472 (2013); and *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. ---, 139 S. Ct. 1668 (2019). When read together, those decisions establish that all failure to warn and design defect claims involving pharmaceutical products are preempted under the Supremacy Clause of the U.S. Constitution *unless* the pharmaceutical manufacturer is permitted to act independently (and unilaterally) to effect the change that would be required to satisfy the state-law duty. As a result, the starting point must be whether a basis exists to permit a drug manufacturer to make the required change. That translates into a requirement to allege facts forming that basis in order for plaintiffs to plead a plausible, non-preempted claim upon which relief can be granted. Contrary to plaintiffs' assertion otherwise, there is no burden shifting involved.

Plaintiffs' claims are no different than any other claim. To allege a breach of contract claim, a plaintiff must identify the existence of a contract, the specific contractual provisions, and the defendant's action that constituted the breach. A plaintiff cannot pursue a breach of contract claim without alleging the existence of a contract in the first instance. The same is true of plaintiffs' claims here. They simply cannot allege any state-law claim without

14

identifying the existence of information sufficient to permit and support whatever change the defendant would need to effect to satisfy the state-law duty plaintiffs attempt to enforce.    Otherwise, plaintiffs' claims are tantamount to attempts to penalize defendants for not violating federal law.

The U.S. Constitution is clear:  Federal law is the supreme law of the land.  U.S. Const. art VI, cl. 2.  The U.S. Supreme Court has held that when federal law and state law conflict, the state law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).  The Supreme Court found state law and federal law regarding drug products conflict because federal law prohibits drug manufacturers from making changes to once-approved drug applications without FDA's pre-approval.  As a result, all state law duties involving drug products are "without effect."   It is only where a drug manufacturer is permitted by federal law to act independently and without FDA's pre-approval that a state-law claim might survive preemption.  That means, for any plaintiff to assert a non-preempted state-law claim against a drug manufacturer, the plaintiff must allege facts establishing that the defendant could act independently.  *Mensing*, 564 U.S. at 620.  Here, that requires plaintiffs to identify the "newly acquired information" that would permit defendants to independently make a change in order to state a claim.  Plaintiffs do not dispute that they have not identified any such information.

The cases plaintiffs cite are inapposite.  They rely on decisions involving exhaustion of remedies and qualified immunity to argue that they need not plead the existence of "newly acquired information," because, they say, exhaustion and immunity, like preemption, are affirmative defenses. (Plaintiffs' Opp., pp. 35-36.) But, there is a distinction.  Failure to exhaust remedies and qualified immunity are subject to facts so there is no question of whether the plaintiff has stated a claim, but rather whether the claim is premature or barred.  Preemption, on the other hand, is a matter of law.  It is a direct application of the U.S. Constitution.  And, once the federal law is determined to preclude state law (which it has here), the question is whether the plaintiff has pled a state-law claim.  Plaintiffs have not.

Having failed to do so, plaintiffs encourage the Court to skip that requirement, claiming preemption is not an appropriate basis for a motion to dismiss. (Plaintiffs' Opp., p. 35.)   Yet, plaintiffs concede a motion to dismiss is appropriate where the grounds appear on the face of the Complaint.  (*Id.*) Here, they do.  It is clear from the face of their Complaint that plaintiffs are alleging preempted claims.  Accordingly, the Court must determine if plaintiffs have stated a claim upon which relief can be granted.[3]

---

[3] Indeed, courts routinely assess preempted claims on motions to dismiss and appellate courts affirm them.  *See, e.g., Gibbons v. Bristol-Myers Squibb*

Plaintiffs try to escape their obligation to identify the "newly acquired information" that allegedly would support their proposed changes with their oft-repeated refrain that defendants "have most of the relevant information." (Plaintiffs' Opp., p. 38.)  That refrain should be given no weight, especially in light of plaintiffs' counsel's involvement in litigation regarding Paragard for years.  Moreover, contrary to plaintiffs' assertion otherwise, plaintiffs must identify the "newly acquired information" that would support a change pursuant to FDA's regulations in 21 C.F.R. §314.70 in order to state a claim in the first place.

Plaintiffs' contention that "Defendants' preemption argument collapses even on its own terms, since Defendants changed the label in 2019 …" (Plaintiffs' Opp., p. 42), which according to plaintiffs demonstrates "Defendants plainly had new information," ignores the nature of the 2019 change.  As defendants explained in their opening brief (pages 11-12 & n.6), a prior approval supplement was submitted by Teva Women's Health, Inc.,  in June 2014 to convert Paragard's label to conform to the Physician Labeling

---

*Co.*, 919 F.3d 699 (2d Cir. 2019) *aff'g Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 189 (S.D.N.Y. 2016) (dismissing claims as preempted on motion to dismiss on basis plaintiffs did not allege existence of newly acquired information to justify change as required by FDCA); *In re  & Lexapro Mktg. & Sales Practices Litig.*, 779 F.3d 34, 40–41 (1st Cir. 2015) (affirming dismissal of claims as preempted on motion to dismiss).

Rule ("PLR") format that FDA adopted in 2006.  Implementation of the format changes by manufacturers were staggered based on the year of a drug's initial approval so as not to flood FDA with supplements.  *See* 21 C.F.R. §201.56. Submission of that PAS does not demonstrate that "Defendants plainly had new information"; it demonstrates Teva Women's Health, Inc. was complying with FDA's regulations.   Plaintiffs also attempt to create a misimpression about the 2019 label and the PLR conversion which FDA has said represents "a reordering and reorganization" of "substantially the same information as labeling in the old format."  *See* FDA, Guidance for Industry, Labeling for Human Prescription Drug and Biological Products – Implementing the PLR Content and Format Requirements, Feb. 2013, p. 2.[4] Reordering and reorganizing the label to PLR format involved challenging aspects of "distributing information among sections that have been substantially affected by the rule, particularly when the information originates from the labeling in the old format," and that when "converting labeling in the old format to the PLR format, applicants face many decisions about how to distribute information among labeling sections."  *Id.*, pp. 2, 4.  Conversion of Paragard's

---

[4]  Available   at   https://www.fda.gov/files/drugs/published/Labeling-for-Human-Prescription-Drug-and-Biological-Products---Implementing-the-PLR-Content-and-Format-Requirements.pdf.

label to the PLR format does not, and did not, make a material change to the substance of the label.

Plaintiffs next argue that they have stated a "variant of failure to warn" that allegedly survives preemption; i.e., failing to submit adverse events reports to FDA. Not so. In fact, the Eleventh Circuit Court of Appeals in *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (2017), held to the contrary:

> Applying *Buckman*, Mr. Mink's failure to report theory is impliedly preempted. Mr. Mink's theory relies on his allegation that S&N "failed to adequately investigate adverse events and complaints and failed to properly report these issues to the FDA." Because this theory of liability is based on a duty to file a report with the FDA, it is very much like the "fraud-on-the FDA" claim the Supreme Court held was impliedly preempted in *Buckman*. In both cases, a plaintiff alleged a manufacturer failed to tell the FDA those things required by federal law. And here, like *Buckman*, we conclude that federal law preempts these claims insofar as S&N's duty is owed to the FDA and Mr. Mink's theory of liability is not one that state tort law has traditionally occupied.

And that is what the Arizona Supreme Court held when it had the opportunity to address the question for the first time after the Ninth Circuit Court of Appeals in *Stengel v. Medtronic, Inc.,* 704 F.3d 1224, 1233 (9th Cir. 2013) (the case plaintiffs rely on for their argument), predicted Arizona would recognize a claim premised on some alleged failure by a medical device manufacturer to report adverse events to a different FDA database. Five years after *Stengel* was decided, the Arizona Supreme Court emphatically rejected

the Ninth Circuit's decision.  *See Conklin v. Medtronic, Inc.*, 245 Ariz. 501 (2018).  The other decisions plaintiffs cite relied on *Stengel* to make similar predictions.  *See Coleman v. Medtronic, Inc.*, 223 Cal. App. 4th 413 (2014); *Rosen v. St. Jude Med., Inc.*, 41 F. Supp. 3d 170 (N.D.N.Y. 2014) (which *Pearsall v. Medtronic, Inc.,* 147 F. Supp. 3d 188 (E.D.N.Y. 2015) disagreed with); and *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804 (E.D. Pa. 2016).

Also, although plaintiffs point to a few paragraphs of their factual allegations to the effect that defendants failed to monitor, handle, and report complaints (Plaintiffs' Opp., p. 43), they do not identify any cause of action where they purportedly asserted that "theory."  And, theory is exactly what it is.  Not having alleged any such "claim," plaintiffs cannot insert it into this action through a response to a motion to dismiss.

Finally, plaintiffs' arguments that their design defect and manufacturing defect claims survive preemption are equally flawed.  Plaintiffs' discussion of their design defect claim demonstrates a fundamental misunderstanding of product liability law.[5]  In simple terms, where the design

---

[5] In addition, it is clear from plaintiffs' Complaint and opposition that every aspect that plaintiffs claim is "defective" about the Paragard is, in fact, a part of the design of the Paragard that cannot be changed independently and absent FDA pre-approval.  (*See, e.g.*, Plaintiffs' Opp., pp. 17-18 (wherein plaintiffs argue that all Paragards are defectively designed because they have a "propensity to break" due to "the overall design and use of raw plastic T units"

of a product cannot be changed to eliminate potential risks (as is the case with drug products), the duty becomes one to provide an adequate warning of those risks.  It is clear from *Bartlett*, that design defect claims involving drugs are preempted. Arguing that the "design defect turns on the warnings" and, thus is not preempted, merely turns the issue into whether the warning claim is preempted.  As discussed above, it is, and plaintiffs have not pled the "newly acquired information" required to overcome preemption of their failure to warn claims.

As for a manufacturing defect, plaintiffs try to reframe their allegations to now assert "some of the units" were defectively manufactured. (Plaintiffs' Opp., pp. 47-48.)  Plaintiffs cannot "amend" their allegations through a response to a motion to dismiss.  Nor can plaintiffs now credibly argue that they are pleading in the alternative as the allegations in their Complaint belie that contention.  Plaintiffs' allegations refer to the entire product line (*e.g.*, the materials used to make Paragards and a purported "propensity" of all

---

which are "insufficiently inflexible"; they are designed with arms that "have no curvature"; and they are designed with "arms that are supposed to fold upward.").  The same holds true of plaintiffs' expiration date allegations.  Plaintiffs allege Paragard is defective in design no matter how long it sat on a shelf prior to placement.  In other words, plaintiffs' design defect allegations encompass a Paragard which spent no time on a shelf. Expiration date allegations are simply allegations that a defective design becomes "more defective."  Even if true, it is still an alleged design defect.

Paragards to break), not to "some units."  Furthermore, there are no facts that identify how any particular Paragard or batch of Paragard units departed from their intended design or how a particular manufacturing process for any Paragard or specific lot of Paragard units should have been, but was not followed.  That is not surprising—plaintiffs just made it up.

Finally, as defendants explained previously, allegations that defendants did not follow FDA's manufacturing requirements in addition to referring to the entire product line, are preempted by 21 U.S.C. §337(a) as explained in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).  Plaintiffs simply ignore that law.

## III.   CONCLUSION

Plaintiffs' response essentially is that it should be left to defendants to once again clean up their pleading mess, which defendants have done twice already. That approach is wholly inappropriate.  It not only reflects a fundamental misunderstanding of what is demanded of them by federal law and procedure, *see* 28 U.S.C. §1927 & Fed. R. Civ. P. 8, 9, 11, but also demonstrates a complete disregard for the Court.  Both §1927 and Rule 11 require plaintiffs to conduct a reasonable inquiry of the facts and ensure that the allegations in their complaint have evidentiary support. Long gone are the days when plaintiffs can excuse their lack of diligence by claiming notice

pleading is all that is required and justify the indiscriminate group allegations, like those in plaintiffs' Complaint, by asserting all will be sorted in discovery. In fact, that very practice and abuse of discovery was the catalyst for changes to Rule 11 in 1983 and 1993.  *See* 5A Wright and Miller, Federal Practice and Procedure §1331 at 317-18, citing excerpt from the Report of the Standing Committee on Rules of Practice and Procedure, reprinted in 85 F.R.D. 521, 536.

The changes to Rule 11 were intended to remind attorneys of the duty they owed to the court system. As the Second Circuit stated:

> The quality of Justice depends upon our ability to control the flood of litigation. Rule 11 requires that members of the bar avoid haphazard, superficial research. That requirement places the responsibility for properly invoking the power of the court on counsel as officers of the court.

*Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 393 (2d Cir. 1989).

Addressing the 1993 amendment to Rule 11, the Advisory Committee pointed out that regardless of how a plaintiff attempts to couch allegations, the duty to make an appropriate investigation and carry that appropriate investigation into pleading allegations is unchanging:

> Tolerance of factual contention in the initial pleadings by plaintiffs or defendants when specifically so identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification...."

Advisory Committee Note to the 1993 amendment, reprinted at 146 F.R.D 401, 585 (1993). The Eleventh Circuit has echoed the importance of conducting an appropriate investigation into the facts, holding that Rule 11 sanctions may be imposed "even if the claims were brought in good faith, so long as the attorney failed to conduct a reasonable inquiry into the matter." *Jackson v. Hall Cnty. Gov't, Georgia*, 568 Fed. Appx. 676, 679 (11th Cir. 2014) (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1268 (11th Cir. 2006).

Here, plaintiffs flout their obligations. They include allegations they know, or certainly should know, not only are untrue given their experience in pharmaceutical litigation generally, and their experience with Paragard specifically, but also are contrary to publicly available facts. That is improper, particularly given plaintiffs' counsel's history with this litigation and the long period of time plaintiffs had to prepare their Complaint. *See, e.g., Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-2 (1990) ("[T]o determine whether an attorney's prefiling inquiry was reasonable, a court must consider all the circumstances of a case. An inquiry that is unreasonable when an attorney has months to prepare a complaint may be reasonable when he has only a few days before the statute of limitations runs.").

Defendants are not asking for Rule 11 sanctions. Defendants do, however, request the Court not reward plaintiffs for what is clearly improper pleading that violates their duties under Rule 11 (and Rules 8 and 9) both to the Court and defendants and dismiss plaintiffs' complaint with prejudice.

Respectfully submitted,

*/s/ Frederick M. Erny*
**Frederick M. Erny, Esq.**
**Gina M. Saelinger, Esq.**
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513.698.5144
ferny@ulmer.com
gsaelinger@ulmer.com

**Co-Lead Counsel for Defendants**

*/s/ Lori G. Cohen*
**Lori G. Cohen, Esq.**
**Allison Ng, Esq.**
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: 678.553.2385
CohenL@gtlaw.com
nga@gtlaw.com

**Co-Liaison Counsel for Defendants**

25

## LOCAL RULE 7.1 CERTIFICATE

This brief has been prepared in accordance with Local Rule 5.1 in Century Schoolbook, 13 point font.

/s/ Frederick M. Erny
Frederick M. Erny

## CERTIFICATE OF SERVICE

I certify that on this 16th day of July, 2021, I electronically filed a copy of the foregoing reply memorandum in support of defendants' motion to dismiss Plaintiffs' Second Amended Master Personal Injury Complaint with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

By: */s/ Frederick M. Erny*
Frederick M. Erny, Esq