IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: PARAGARD IUD | ) | MDL DOCKET NO. 2974 |
| PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | (1:20-md-02974-LMM) |
| | ) | **This Document Relates to All Cases** |

**THIRD~~SECOND~~ AMENDED MASTER PERSONAL INJURY COMPLAINT**

Pursuant to the Consent Case Management Order Regarding Master Pleadings and Master Responsive Pleadings [Dkt. 55], Plaintiffs file this Third Amended Master Personal Injury Complaint ("Master Complaint") against the defendants identified below.  Plaintiffs bring this Master Complaint because Plaintiffs were injured by the Paragard® Intrauterine Device (hereinafter "Paragard") that Defendants designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold.

Paragard is a temporary, non-hormonal, non-surgical birth control method that can remain in a woman's body for up to 10 years.  It has a T-shaped plastic frame made of polyethylene and barium sulfate that is inserted into the uterus during a routine office visit.  Defendants touted Paragard's simplicity and effectiveness, claiming that Paragard could be removed quickly and easily, and that immediately after removal, Paragard's contraceptive effect is reversed.

For decades, however, Defendants have known that Paragard regularly breaks inside the body, causing pieces of the Paragard to remain in a woman's body even after it is removed.  During removal, the arms of the Paragard are supposed to fold upward at the joint, but often one or more of the arms breaks.  Paragard has also shown a propensity to break prior to removal, during the normal course of use.  This dangerous breakage occurs spontaneously before or upon removal, even when the doctor carefully follows instructions without error.  Often the Paragard pieces can then be removed

 only through hysterectomy or other surgical procedure—oftentimes destroying a woman's ability to ever conceive a child.  Defendants never warned users, like Plaintiffs, that surgery might be required because of a Paragard breakage.

Since Paragard was introduced to the market, Defendants (at their respective times as NDA holders) have received reports, studies, and otherwise learned new information about Paragard's breakage and the resulting injuries.  Defendants, however, concealed this information and failed to take any action to inform patients, physicians, or the public about Paragard's propensity to break.  This failure to act has resulted in life-altering consequences for Plaintiffs, some of whom have required hysterectomies or other invasive procedures to remove the broken Paragard from

their bodies.  Now, women across the country seek to hold Defendants accountable for their injuries.

This Master Complaint sets forth allegations of fact and law common to the personal-injury claims within this multidistrict litigation ("MDL").  Each Plaintiff individually seeks compensatory and punitive damages (where available), restitution, and all other available remedies as a result of injuries caused by Defendants' defective Paragard.  The Master Complaint is intended to plead all causes of action in the broadest sense and pursuant to all applicable laws and choice-of-law principles.

This Master Complaint does not necessarily include all claims asserted in all of the transferred actions to this Court, and it is not intended to consolidate for any purpose the separate claims of the individual Plaintiffs in this MDL.  Any individual facts, jurisdictional allegations, additional legal claims, and/or requests for relief of an individual Plaintiff may be set forth as necessary in a separate pleading or filing by the respective Plaintiff.  This Master Complaint does not constitute a waiver or dismissal of any actions or claims asserted in those individual actions, and no Plaintiff relinquishes the right to amend his or her individual claims to include additional claims as discovery proceeds and facts and other circumstances may

warrant, pursuant to the appropriate Federal Rules of Civil Procedure or a subsequent order of this Court.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................1

THE PARTIES ..................................................................................................4

JURISDICTION & VENUE ..............................................................................8

FACTUAL ALLEGATIONS ..............................................................................9

   A.  The Development, Manufacture, and Distribution of Paragard ......................9

   B.  Paragard Is Defective and Defendants Knew or Should Have Known of Such Defect but Failed to Warn Plaintiffs ..........................................................13

   C.  Defendants Made False Statements to Users and Consumers in the Labeling of the Paragard ......................................................................................20

   D.  Defendants' Warranties Regarding Paragard ..................................................27

   E.  Defendants Violated Their Duty to Report Adverse Event and Other Safety Information About Paragard to FDA ..........................................................28

   F.  Defendants Failed to Comply with Good Manufacturing Practices .............33

   G.  Plaintiffs' Paragard Insertion and Subsequent Injuries ......................... ~~3838~~39

   H.  Specific Allegations as to Teva Ltd…………………………………………...41

TOLLING / FRAUDULENT CONCEALMENT ......................................... ~~4747~~41

EXEMPLARY / PUNITIVE DAMAGES ALLEGATIONS ......................... ~~4949~~43

CAUSES OF ACTION ................................................................................. ~~5050~~44

   COUNT I: STRICT LIABILITY—DESIGN DEFECT............................. ~~5050~~44

   COUNT II: STRICT LIABILITY— FAILURE TO WARN..................... ~~5454~~48

   COUNT III: STRICT LIABILITY—MANUFACTURING DEFECT ...... ~~5959~~53

   COUNT IV: NEGLIGENCE ................................................................... ~~6161~~55

   COUNT V: NEGLIGENCE—DESIGN & MANUFACTURING DEFECT ~~6767~~61

   COUNT VI: NEGLIGENCE— FAILURE TO WARN ............................ ~~7272~~66

   COUNT VII: FRAUD & DECEIT ......................................................... ~~7675~~69

   COUNT VIII: FRAUD BY OMISSION .................................................. ~~8180~~74

i

COUNT IX: NEGLIGENT MISREPRESENTATION .............................. 84~~83~~~~77~~

COUNT X: BREACH OF EXPRESS WARRANTY ................................ 88~~88~~~~81~~

COUNT XI: BREACH OF IMPLIED WARRANTY ............................... 91~~91~~~~84~~

COUNT XII: VIOLATION OF CONSUMER PROTECTION LAWS ..... 94~~93~~~~87~~

COUNT XIII: GROSS NEGLIGENCE ................................................. 100~~100~~~~93~~

COUNT XIV: UNJUST ENRICHMENT .............................................. 102~~102~~~~95~~

COUNT XV: PUNITIVE DAMAGES .................................................. 103~~102~~~~96~~

COUNT XVI: LOSS OF CONSORTIUM ............................................. 105~~104~~~~98~~

JURY TRIAL DEMAND ......................................................................... 106~~105~~~~99~~

PRAYER FOR RELIEF .......................................................................... 106~~105~~~~99~~

## INTRODUCTION

1.      A woman's choice of birth control is a deeply personal decision, particularly when choosing a long-acting form of birth control like Paragard that can remain in a woman's body for up to 10 years.

2.      For decades, women have relied on Defendants' representations that Paragard was a safe and dependable form of non-surgical and easily reversible birth control.  It is of the utmost importance that women know all risks associated with a particular type of birth control given that a women's choice of birth control can have long-term consequences on her fertility and potential childbearing timeline.   That is particularly true here, where Defendants intentionally marketed Paragard as a form of birth control that could easily be reversed when a woman wanted to conceive.

3.      Women and their doctors depended on Defendants, the manufacturers and distributors of Paragard, to be forthcoming about the safety and risks of Paragard.  And this reliance on Defendants was warranted.  The regulatory scheme that governs Paragard is premised on a system whereby the manufacturer is responsible for reporting relevant safety information to the public.   A drug manufacturer oftentimes has exclusive access to post-market safety information, including the reporting of adverse events and complaints.  The onus is on the

1

manufacturer to come forward with any safety risks because the public and the U.S. Food and Drug Administration ("FDA") otherwise have no insight into these events.

4.     As part of the manufacturer's duty, the manufacturer must vigilantly monitor and closely evaluate the post-market drug experience and report any issues to the FDA, and by extension, the healthcare community and consumers.

5.     Defendants, however, failed to address Paragard's safety issues, even though over 2000 adverse event reports did or should have alerted them to a product defect causing the device to break inside the body, causing injuries.  And, upon information and belief, this number is a gross understatement because Defendants also failed to maintain a systematic reporting system for complaints, as required by law.  Defendants therefore likely underreported adverse events of Paragard breaks to the FDA.

6.     Even though Defendants had knowledge of Paragard's defect, Defendants failed to timely update the Paragard warning label to adequately warn of Paragard's propensity to break—a label change that is permitted by the FDA under a "changes being effected" (CBE) warning supplement that permits a manufacturer to make immediate changes, subject to FDA's post-change review.  21 C.F.R. §§ 314.70(c)(3), (c)(6).  Defendants failed to ever do this.

7.     Despite having years of knowledge and information about the product's propensity to break inside a woman's body and cause injury, it was not until 2019 that Defendants used the prior approval supplement process to update the Paragard label to the Physician Labeling Rule format, which added references to Paragard breakage.  Even now, however, the current label is still inadequate.

8.     Defendants had a duty to act as reasonable manufacturers.  They had a duty to continually monitor their product, including, but not limited to, its design, manufacturing, performance, safety profile, and labeling. They had a duty to continually test their product and ensure it was safe and would perform as intended. And they had a duty to undertake stability testing to verify expiration dates.  Yet Defendants breached their duties and Plaintiffs were injured.

9.     Even though Defendants were aware of the Paragard's propensity to break, including, but not limited to during routine removal, and the significant injuries that could result, Defendants continued to market Paragard as safe and safer than alternative forms of birth control.  Over the years, Defendants have undertaken a concerted marketing campaign that has overstated the safety of Paragard, downplayed its risks, and portrayed Paragard as the safest form of long-lasting, non-surgical, non-permanent birth control.

10.    Defendants intentionally concealed the risks, including, but not limited to, the severity and frequency of the risks associated with Paragard's removal, telling women the "contraceptive effect is reversed" as soon as Paragard was removed.  In other words, Defendants not only shirked their reporting responsibilities to the FDA and the public at large but also undertook affirmative steps to misrepresent the safety profile of Paragard in order to increase sales.

11.    Unfortunately for Plaintiffs, Defendants chose greed and profits over the safety of users of Paragard, and Plaintiffs suffered injuries as a consequence. Each Plaintiff had a Paragard implanted that later broke while still in her body, and many women required surgery to remove the broken product.  Some women were forced to undergo hysterectomies, removing their ability to ever conceive children.

12.    If Defendants had timely disclosed the propensity and severity of Paragard's risks, Plaintiffs' injuries could have been avoided.  Yet, Defendants did nothing and for that Plaintiffs here seek redress both to compensate them for their horrific losses and to strongly deter future, similar misconduct.

## **THE PARTIES**

13.    The Master Complaint is filed on behalf of all Plaintiffs whose claims are subsumed within MDL No. 2974, and where applicable and/or necessary, this

Master Complaint is also filed on behalf of Plaintiffs' spouses, children, parents, decedents, wards, heirs, and/or legally designated representatives.

14.     Plaintiffs in these individual actions are citizens and/or residents of the United States who have suffered personal injuries as a result of Defendants' dangerously defective Paragard breaking while inside Plaintiffs' bodies including, but not limited to, during routine removal and requiring further medical intervention.

**A.     Teva Defendants**

15.     Defendant Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") is an Israeli corporation with its principal place of business at 124 Dvora HaNevi'a St. Tel Aviv 6944020, Israel.  Teva Ltd. is an indirect parent of Teva USA, Teva Women's Health, LLC (f/k/a Teva Women's Health, Inc.), and Teva Branded Pharmaceuticals Products R&D, Inc.  For diversity of citizenship purposes, Defendant Teva Ltd. is a citizen of Israel.

16.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business at 400 Interpace Parkway, in Parsippany, New Jersey.  For diversity of citizenship purposes, Defendant Teva USA is a citizen of Delaware and New Jersey.

17.     Defendant Teva Women's Health, LLC is a Delaware limited liability company with its principal place of business located at 5040 Duramed Road, in

Cincinnati, Ohio and is and/or was a wholly owned subsidiary of Defendant Teva USA. Teva Women's Health, LLC's sole member is Barr Pharmaceuticals, LLC formed under Delaware law with its principal place of business in New Jersey. The sole member of Barr Pharmaceuticals, LLC is Teva USA. For diversity purposes, Teva Women's Health, LLC is a citizen of Delaware and Ohio.

18.    Teva Women's Health, LLC is the product of an entity conversion pursuant to Del. Code Ann. tit. 8, § 266. In August 2017, Teva Women's Health, Inc., a corporation, converted into Teva Women's Health, LLC and continues to operate as a limited liability company. Teva Women's Health, LLC sold all of its assets, including Paragard, to Cooper Defendants in November 2017. Teva Women's Health, LLC, became a holdings company with no tangible assets.

19.    Upon information and belief, and for purposes of liability and interest, Teva Women's Health, Inc. is the same entity as Teva Women's Health, LLC. Pursuant to Del. Code Ann. tit. 8, § 266, a company that converts from one entity into another is deemed to be a continuation of the preexisting company. A conversion is not a dissolution and no wind up takes place. Therefore, Teva Women's Health, Inc. did not dissolve, windup, or cease to exist and liability continues from the corporation to the limited liability company. Teva Women's

Health, LLC and Teva Women's Health, Inc. are referred to collectively hereinafter as "Teva Women's Health."

20.     Defendant Teva Branded Pharmaceuticals Products R&D, Inc. ("Teva R&D") is a Delaware corporation with headquarters located at 41 Moore Road in Malvern, Pennsylvania.   For diversity purposes, Teva R&D is a citizen of Pennsylvania and Delaware.

21.     Defendants Teva USA, Teva Women's Health, and Teva R&D are referred to collectively herein as the "Teva Defendants."

**B.     Cooper Defendants**

22.     Defendant The Cooper Companies, Inc. ("CooperCompanies") is a Delaware corporation with its principal place of business located at 6101 Bollinger Canyon Road, in San Ramon, California.   For diversity of citizenship purposes, Defendant CooperCompanies is a citizen of Delaware and California. CooperCompanies purchased the assets, global rights, and businesses of Paragard on November 1, 2017 for $1.1 billion, including the sole Paragard manufacturing facility in North Tonawanda, New York.

23.     Defendant CooperSurgical, Inc. ("CooperSurgical") is a Delaware corporation with its principal place of business located at 95 Corporate Drive in Trumbull, Connecticut.   CooperSurgical is a subsidiary of Defendant

7

CooperCompanies. Defendant CooperSurgical is a citizen of Delaware and Connecticut for diversity of citizenship purposes.

24. Defendants CooperCompanies and CooperSurgical are referred to collectively hereinafter as "Cooper Defendants."

## JURISDICTION & VENUE

25. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). In each of the actions there is complete diversity among Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

26. Pursuant to the Transfer Orders of the Judicial Panel on Multidistrict Litigation, venue in actions sharing common questions with the initially transferred actions is proper in this Court for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.

27. A substantial part of the events, actions, or omissions giving rise to Plaintiffs' causes of action occurred in the federal judicial district that will be identified in a subsequent pleading or filing for each Plaintiff.

28. At all times alleged herein, Defendants were authorized to conduct or engage in business within each of the States and Territories of the United States and supplied Paragard within each of the States and Territories of the United States.

Defendants received financial benefit and profits as a result of designing, manufacturing, testing, marketing, labeling, packaging, handling, distributing, storing, and/or selling Paragard, either directly or through a subsidiary, within each of the States and Territories of the United States.

29.   Defendants each have significant contacts in each of the States and Territories of the United States, such that personal jurisdiction would be proper in any of them.  Defendants have derived revenue from the sale of Paragard in each of the States and Territories of the United States.

## FACTUAL ALLEGATIONS

**A.**   **The Development, Manufacture, and Distribution of Paragard**

30.   Paragard is a non-hormonal intrauterine drug that Defendants marketed as providing long-term but non-permanent, non-surgical, and easily reversible birth control.

31.   Paragard is a T-shaped plastic frame made of polyethylene and barium sulfate that is inserted into the uterus by a healthcare provider.  Copper wire coiled around the frame is intended to produce an inflammatory reaction that interferes with sperm transport and fertilization of an egg.  A monofilament polyethylene thread is tied through the tip, resulting in two white threads, which are intended to aid in the easy detection and non-surgical removal of the Paragard.

32.     The Population Council ("TPC") developed Paragard in the 1970s, and in the early 1980s submitted to the FDA a new drug application ("NDA") for Paragard, pursuant to § 505(b) of the Federal Food, Drug, and Cosmetic Act.

33.     On November 15, 1984, the FDA approved Paragard's NDA. As approved in 1984, the Paragard had an expiration date (or shelf life) of four years.

34.     Based upon information and belief, following Paragard's FDA-approval, several companies marketed Paragard for distribution, including FEI Women's Health, LLC; GynoPharma, Inc. f/k/a GynoMed; and Ortho-McNeil Pharmaceutical, Inc. ("Ortho-McNeil," a subsidiary of Johnson & Johnson).

35.     In the early 1990s, TPC sought an extension of the expiration date for Paragard from four to seven years.  The FDA denied the application because TPC did not meet the specifications for flexibility in its approved new drug application.

36.     Although the expiration date was eventually extended, no stability testing was conducted that supported this extension.

37.     In fact, upon information and belief, Defendants only ever undertook stability testing on Paragard's raw plastic T without testing Paragard with its other component parts.  Defendants failed to undertake any stability testing of Paragard with the copper sleeves on each side of the Paragard arm, which inhibits the flexibility of the arms when force is applied to the arms.

10

38.     Based upon information and belief, in or around 2003, TPC sold the Paragard NDA to FEI Women's Health, LLC, and FEI Women's Health, LLC, acquired the right to market Paragard in the United States from Ortho-McNeil.  After those acquisitions, FEI Products, LLC, manufactured and sold Paragard in the United States.

39.     On or around November 9, 2005, Duramed Pharmaceuticals, Inc. ("Duramed"), a subsidiary of Barr Pharmaceuticals, Inc., acquired FEI Women's Health, LLC, including the Paragard NDA.  Duramed thereafter manufactured and sold Paragard in the United States.

40.     On December 23, 2008, Teva Pharmaceutical Industries Ltd. ("~~TPI Ltd.~~Teva Ltd.") acquired Barr Pharmaceuticals, Inc.  As a result of that transaction, Duramed became an indirect wholly owned subsidiary of Teva USA, and Teva USA became the owner of Paragard.  During this transaction, ~~TPI Ltd.~~Teva Ltd. and Teva USA also acquired Duramed's manufacturing facilities, sales force, and responsibility for maintaining and updating the labeling for Paragard.

41.     Teva USA manufactured Paragard through Duramed, which held the Paragard NDA, and designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and sold Paragard through September 2009.

11

42.     In or around September 2009, Teva USA changed the name of Duramed to Teva Women's Health, Inc., which continued to operate as a wholly owned subsidiary of Teva USA.  A new entity was not created and no entities were dissolved.

43.     From September 2009 to August 2017, Teva Women's Health, Inc. held the Paragard NDA and designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and sold Paragard throughout the United States.

44.     In or around August 11, 2017, Teva Women's Health, Inc. was converted into Teva Woman's Health, LLC.

45.     From August 11, 2017 to November 1, 2017, Teva Women's Health, LLC held the Paragard NDA and designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and sold Paragard throughout the United States.

46.     On September 11, 2017, CooperCompanies announced that CooperSurgical, Inc. had entered into an agreement to acquire Paragard from ~~TPI Ltd.~~Teva Ltd.

47.     On November 1, 2017, Cooper Defendants purchased Teva Women's Health, LLC, including the Paragard asset, from ~~TPI Ltd.~~Teva Ltd.

48.     From November 1, 2017 through the present, Cooper Defendants have held the Paragard NDA and design, develop, manufacture, test, label, package, distribute, market and sell Paragard throughout the United States. Upon information and belief, the Teva Defendants, continued to provide and/or maintained responsibility for services related to the Paragard product, including, but not limited to pharmacovigilance and adverse event complaint handling, even after Cooper's acquisition.

49.     Defendants (at their respective times as NDA holders and/or at the request of the NDA holder) were or are involved in regulatory communications and medical communications, including but not limited to communications with the FDA, physicians, and other medical personnel.

50.     Paragard is currently sold only in the United States.

**B.    Paragard Is Defective and Defendants Knew or Should Have Known of Such Defect but Failed to Warn Plaintiffs**

51.     Unlike other intrauterine products ("IUDs"), Paragard's arms have no curvature and are fixed, straight plastic arms bonded to the plastic vertical post and copoper sleeves are slid on each arm.

52.     Upon information and belief, the design is flawed because Paragard does not provide sufficient flexibility.

53.     Upon information and belief, Paragard breaks more and has more arm breaks than any other IUD on the market in the United States.

54.     Additionally, upon information and belief, sample Paragard raw plastic T units, before having the copper sleeves installed, failed to meet the minimum flexibility requirements within the approved expiration date (i.e., shelf life) of the product.

55.     The Paragard design is thus flawed for the additional reason that it does not account for the long expiration date and use of the product to decay and lose flexibility over time on the shelf and in situ.

56.     Defendants market and have marketed Paragard as being safe and effective, promising that Paragard results in fewer side effects than other birth control methods.

57.     Defendants market and have marketed Paragard as providing "continuous pregnancy prevention for as short or long as [the user] want[s]—up to 10 years."

58.     Defendants further market and have marketed Paragard as easily reversible, asserting that Paragard can be removed any time before its 10-year expiration if a woman wants to become pregnant and that she "may become pregnant as soon as Paragard is removed."

59.     The relevant Defendants have heavily marketed Paragard as being "reversible," "non-surgical," and removable by a healthcare provider "during a routine office visit in just a few minutes."

60.     These marketing materials intentionally convey to consumers that Paragard removal is easy and safe, with no risk of complication and do not otherwise relay the risks of Paragard.

61.     To remove Paragard, healthcare providers are instructed to locate the strings and pull gently until the Paragard is expelled from the uterus.

62.     The Paragard arms are supposed to fold upward to aid in removal, but frequently the arms are broken or will break at the joint during removal.  This unanticipated breakage can cause serious complications and injuries, including but not limited to, surgery to remove the broken device (including hysterectomy), infertility, and pain.

63.     The marketing and promotional efforts of Defendants and their advertisers and/or salesforce served to overstate the benefits of Paragard and minimize and downplay the risks.  These promotional efforts and marketing statements were made while Defendants knowingly withheld important safety information from healthcare providers and the public.

64.     Prior to Plaintiffs using Paragard, the relevant Defendants knew and/or should have known that the drug was defective and unreasonably dangerous.

65.     Defendants knew or should have known that Paragard can and does cause serious harm to individuals who use it, due to the risk of Paragard breaking in utero and/or upon removal.  Defendants knew or should have known removing broken pieces of Paragard could require additional medical intervention, including but not limited to hysterectomy, and thus causing infertility.

66.     Defendants knew of these risks from their post-marketing experience and complaints received from doctors and patients, third-party studies, and their own analysis of these studies.  Yet, they took no action to adequately warn or remedy Paragard's defects and instead concealed, suppressed, and failed to disclose or fix this danger.

67.     Over time, as Defendants sought further extension for Paragard's indicated period of use, Defendants received a growing number of substantially similar reports of Paragard breakages that required surgical removal of the broken pieces, including hysteroscopy, laparoscopy, laparotomy, and hysterectomy.

68.     Defendants, however, failed to modify the warning for Paragard to adequately warn of Paragard's propensity to break inside the body, including, but not limited to, during routine removal requiring further medical intervention, or to

16

disclose the frequency of the breakage based on Defendants' internal knowledge, causing injuries to Plaintiffs.

69.     The product warnings for Paragard are or were intentionally vague, confusing, incomplete, or otherwise wholly inadequate to alert patients and prescribing physicians to the actual risks associated with Paragard, including, but not limited to, the risk of breakage, the frequency of breakage, and that the risk may result in injury, including surgical intervention and loss of reproductive health and fertility.

70.     Before 2019, the Paragard warning label failed to adequately warn that a Paragard breakage could require further medical intervention, including surgery. The warning label failed to warn that Paragard had a propensity to break during a routine removal procedure and non-surgical removal procedures. And the label failed to warn about the frequency with which breakages occurred.

71.     Defendants' marketing and promotion, through their own websites, did not acknowledge the risks of Paragard but sought to reassure physicians and patients of Defendants' longstanding record of quality and safety.

72.     On July 25, 2019, Defendant CooperSurgical received a letter from the FDA admonishing Defendants for making a "false or misleading representation[]" about the risks associated with Paragard," stating: "[t]he TV ad misbrands Paragard

17

within the meaning of the Federal Food, Drug and Cosmetic Act and makes its distribution violative.  21 U.S.C. §§ 352(n); 331(n); 21 C.F.R. §§ 202.1(d)(1); (e)(5). This violation is concerning from a public health perspective because it creates a misleading impression about the safety of Paragard."

73.    The July 25, 2019 FDA letter also admonished Defendants for emphasizing that Paragard is "100% HORMONE FREE!" and "1 SIMPLE ACTIVE INGREDIENT" in that those representations gave the impression to consumers that Paragard was safer than other long-acting reversible contraceptives.

74.    Defendants' statements that triggered the FDA's reproach were consistent with Defendants' marketing strategy to advertise Paragard as safer than Paragard's competitors when in fact Paragard posed significant risks to its users. Defendants have carried out this marketing strategy since Paragard's launch in the United States.

75.    Defendants intentionally marketed Paragard to women—particularly younger women—as quick and easy to remove without the risk of complications such that a woman could use Paragard and then have it quickly removed when she wanted to conceive.  As Defendants told women, "See how Paragard lets you own your story," suggesting that Paragard was risk-free and that by using Paragard, women could decide to get pregnant at any time.

76.     Defendants intentionally downplayed the risks of breakage, including, but not limited to, during removal, and told women they could try to get pregnant the same day they had their Paragard removed.  For instance, based on information and belief, from December 2016 through April 2018, Defendants included the excerpt below on the Paragard website:



77.     Based upon Defendants' misrepresentations, upon which Plaintiffs and their physicians relied, Plaintiffs had the Paragard inserted, believing it would be safe, effective, and reversible, for the entire duration it was inserted and upon removal.

78.     In September 2019, Cooper Defendants amended Paragard's warning label pursuant to the FDA prior approval process.

79.     Although Cooper Defendants amended the warning label to add information about breakage, Defendants had possessed knowledge that Paragard had

19

the propensity to break for years and should have acted sooner.  Regardless, Cooper Defendants' amendment of the warning label shows that for years, Defendants could have updated the warning label based on "newly acquired information" but chose not to, resulting in injuries to Plaintiffs.

80.     Cooper Defendants amended the Paragard label to add a warning that "Breakage of an embedded Paragard during non-surgical removal has been reported."  The label further includes that "Breakage or embedment of Paragard in the myometrium can make removal difficult."

81.     But the new label is still inadequate. The warnings remain intentionally vague and confusing and fail to adequately warn about the propensity of the product to break in a woman's body, including, but not limited to, during routine removal, and cause serious injuries.  Defendants could have but failed to warn of Paragard's risks including, but not limited to, the frequency of breakages, that surgical intervention could be required as a result of a "difficult" removal, that a non-embedded Paragard could break during removal, or that surgery could prevent a woman from conceiving children.

## C.    Defendants Made False Statements to Users and Consumers in the Labeling of the Paragard

82.     As detailed *supra* ¶¶ 51-67 and *infra* ¶¶ 121-126, Defendants knew that Paragard was frequently prone to break before or during removal, but Defendants

have misrepresented the safety and risks of Paragard to users, consumers, and physicians.

83.    Plaintiffs reference federal law throughout this Master Complaint not in any attempt to enforce it, but only to demonstrate that their state-law tort claims do not impose any additional obligations on Defendants, beyond what is already required of them under federal law.

84.    The FDA approved the NDA for Paragard in 1984 and by 1988 it was being marketed for sale to physicians and directly to women in the United States.

85.    Although Defendants marketed and market Paragard as containing no hormones or other drugs, it is regulated by the FDA as a "drug" and thus subject to the requirements of Title 21 of the Code of Federal Regulations: Food and Drugs.

86.    A manufacturer is required to give adequate directions for the use of a drug such that a "layman can use a drug safely and for the purposes for which it is intended," 21 C.F.R. § 201.5, and conform to requirements governing the appearance of the label. *Id.* § 201.15.

87.    "Labeling" encompasses all written, printed or graphic material accompanying the drug or device, *id.*; 65 Fed. Reg. 14286 (Mar. 16, 2000), and therefore broadly encompasses nearly every form of promotional activity, including not only "package inserts" but also for example advertising.

88.     All drug manufacturers are also responsible for conducting stability testing, which must be "designed to assess the stability characteristics of drug products." 21 C.F.R. § 211.166(a).  Manufacturers must adopt a written testing program that includes: "(1) Sample size and test intervals based on statistical criteria for each attribute examined to assure valid estimates of stability; (2) Storage conditions for samples retained for testing; (3) Reliable, meaningful, and specific test methods; (4) Testing of the drug product in the same container-closure system as that in which the drug product is marketed; (5) Testing of drug products for reconstitution at the time of dispensing (as directed in the labeling) as well as after they are reconstituted." *Id.*

89.     The purpose of stability testing is, in part, to determine "the appropriate storage conditions and expiration dates." *Id.*  And expiration dates, in turn, must be set to "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use." *Id.* § 211.137(a).  An expiration date is "related to any storage conditions stated on the labeling, as determined by stability studies described in § 211.166." *Id.* § 211.137(b).

90.     The FDA made clear when it first adopted the expiration-date provision that the regulation means what it says.  The purpose of the expiration date is to account for multiple factors, including "the stability of the inactive ingredients, the

interaction of active and inactive ingredients, the manufacturing process, the dosage form, the container closure system, the conditions under which the drug product is shipped, stored, and handled by wholesalers and retailers, and the length of time between initial manufacture and final use."  43 Fed. Reg. 45059 (Sept. 29, 1978).

91.     The FDA expressly recognizes that the initial expiration date set at the time of approval is tentative and may need to be adjusted to an earlier expiration date based on information acquired from ongoing studies: "Where data from accelerated studies are used to project a tentative expiration date that is beyond a date supported by actual shelf life studies, there must be stability studies conducted . . . until the tentative expiration date is verified or the appropriate expiration date determined." 21 C.F.R. § 211.166(b).

92.     After a drug is approved, a manufacturer can make changes to its drug application.  To do so, manufacturers must comply with the requirements of 21 C.F.R. § 314.70.

93.     Under some circumstances, a manufacturer of an approved drug must obtain FDA approval before implementing a label change.  *Id.* § 314.70(b).

94.     But the FDA has long recognized a "changes being effected" (CBE) supplement that permits a manufacturer to make certain changes immediately, which after being made are subject to FDA review.  *Id.* §§ 314.70(c)(3), (c)(6).

95.     A manufacturer of an approved drug can use the CBE supplement to make an immediate "[a]ddition to a specification or changes in the methods or controls to provide increased assurance that the drug substance or drug product will have the characteristics of identity, strength, quality, purity, or potency that it purports or is represented to possess." *Id.* § 314.70(c)(6)(i). "A specification is defined as a list of tests, references to analytical procedures, and appropriate acceptance criteria that are numerical limits, ranges, or other criteria for the tests described." 65 Fed. Reg. 83042 (Dec. 29, 2000).

96.     A manufacturer, therefore, need not seek FDA preapproval to make changes to its stability studies to identify the appropriate expiration date—which must "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use." 21 C.F.R. § 211.137(a).

97.     A manufacturer of an approved drug can also use the CBE supplement to make changes "in the labeling to reflect newly acquired information" in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under § 201.57(c) of this chapter." *Id.* § 314.70(c)(6)(iii)(A).

98.     A manufacturer of an approved drug may make minor changes to a label with no approval or notice, so long as that change is described in an annual

24

report. The illustrative but non-exhaustive list of minor changes includes "[a] change in the labeling concerning the description of the drug product or in the information about how the drug product is supplied, that does not involve a change in the dosage strength or dosage form." *Id.* § 314.70 (d)(2)(ix).

99.   A "minor change" further includes "[a]n extension of an expiration dating period based upon full shelf life data on production batches obtained from a protocol approved in the NDA." *Id.* § 314.70 (d)(2)(vi).

100.   At no time did any Defendant include a warning on the label for Paragard that users may be injured because the Paragard could break before or during removal. At no time did any Defendant include a warning about the frequency of such breakages. The FDA never rejected such warnings.

101.   At no time did any Defendant attempt to change its label to delete a false or misleading expiration date, or to add a proper expiration date to ensure that the Paragard would not degrade, causing the product to be more susceptible to breakage once inside a woman's body. The FDA never rejected such a warning.

102.   Defendants knew or should have known that that the Paragard could break before or during removal and/or that the expiration date was too long. Because they failed to include appropriate warnings or expiration dates on their products, Defendants made false statements in the labeling of their product.

25

103.    Under FDA regulations, "misbranded" drugs may not be manufactured, distributed, or sold in the United States.   *See* 21 U.S.C. §§ 331(a), 331(g), 351(a)(2)(B).

104.    Among the ways a drug may be misbranded are:

    a.  "If its labeling is false or misleading in any particular."  21 U.S.C. § 352(a);

    b.  "If any word, statement, or other information required . . . to appear on the label or labeling is not prominently placed thereon . . . in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use."  21 U.S.C. § 352(c);

    c.  "Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings . . . against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users . . . ."  21 U.S.C. § 352(f);

    d.  "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."  21 U.S.C. § 352(j);

    e.  If the drug is advertised incorrectly in any manner, 21 U.S.C. § 352(n); or

    f.  If the drug's "packaging or labeling is in violation of an applicable regulation."  21 U.S.C. § 352(p).

105.    As detailed herein, Paragard was misbranded in that its labeling failed to include an adequate warning reflecting scientifically significant information made known to Defendants after Paragard's approval regarding its propensity to break before or during removal.

**D.      Defendants' Warranties Regarding Paragard**

106.   Despite the fact that Defendants were on notice that Paragard was unreasonably dangerous and posed serious risks to its users, Defendants represented to consumers and healthcare providers that Paragard was a safe form of non-permanent birth control and safer than its competitors.

107.   Based upon information and belief, Defendants made these statements regarding the safety of Paragard through directed advertising and marketing materials as well as through seminar presentations and publications.

108.   As detailed *supra* ¶¶ 56-63,72-77, Defendants also overstated the safety of Paragard to consumers and healthcare physicians through its advertisements emphasizing that—unlike its competitors—Paragard was a completely hormone-free birth control and could safely provide birth control for up to 10 years.

109.   The marketing and promotional efforts of Defendants served to overstate the benefits of Paragard and confuse, minimize and/or downplay the risks.

110.   Defendants undertook these concerted and directed promotional and marketing efforts while Defendants intentionally withheld important safety information from healthcare providers and the public.

**E.     Defendants Violated Their Duty to Report Adverse Event and Other Safety Information About Paragard to FDA**

111.   During the time that each Defendant manufactured and sold Paragard in the United States, the evidence showed that Paragard breakages exposed users to significant injury, including but not limited to, surgery to remove the broken product (including hysterectomy), infertility, and pain.  Defendants failed to report these risks to the FDA.

112.   Defendants concealed the risk of breakage from consumers in part by not reporting it to the FDA, which relies on manufacturers to bring new information about an approved drug like Paragard to the public's attention.

113.   To ensure the safety of drugs sold in the United States, the FDA has established a regulatory system under which the manufacturer is primarily responsible for establishing and following procedures for proper complaint handling, including, but not limited to, timely communicating complete, accurate, and current safety and efficacy information related to its product(s).  This is because the manufacturer has superior—and oftentimes exclusive—access to relevant safety and efficacy information including post-market complaints and data.

114.   Surveillance of marketed medical products, such as Paragard, plays a key role in protecting and promoting the public health.  Much of the information needed to identify safety issues is generated and/or collected by the manufacturer.

28

Requirements for reporting information to the FDA provide the agency, other firms, and the public with access to this information in a timely manner, allowing awareness and independent assessment of emerging safety of performance issues. It also enables the FDA to act when necessary to protect the public health.

115.   To fulfill this responsibility, drug manufacturers must vigilantly monitor all available information regarding the safety of a drug and timely provide updated safety and efficacy information to the FDA.

116.   Manufacturers of an approved drug are required to "promptly review all adverse drug experience information obtained or otherwise received by the [manufacturer] from any source, foreign or domestic, including information derived from commercial marketing experience, post-marketing clinical investigations, post-marketing epidemiological/surveillance studies, reports in the scientific literature, and unpublished scientific papers." 21 C.F.R. § 314.80. Manufacturers are also required to "develop written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences pursuant to FDA." 21 C.F.R. § 314.80(b).

117.   Adverse event reports are any adverse event associated with the use of a drug in humans, whether or not considered drug related. 21 C.F.R. §314.80(a).

118.   Defendants were/are required under federal law to submit to the FDA adverse event reports.   21 C.F.R. § 314.80(c).   These requirements place an affirmative obligation on a manufacturer to seek out and report information about their products.

119.   When a manufacturer receives a complaint about a drug, that complaint must be maintained within a file and written procedures must be established (and followed) for the timely review of complaints, determination of need for investigation, and determination of whether the complaint is a "serious and unexpected adverse drug experience" that is required to be reported to the FDA.  21 C.F.R. § 211.198.

120.   Despite these obligations, Defendants systematically failed to properly monitor and handle complaints, including, but not limited to, failing to establish procedures for proper complaint handling, failing to follow complaint handling procedures, failing to timely monitor and record complaint investigations, failing to investigate complaints, and failing to adequately communicate and submit adverse event reports or new information gleaned from adverse event reports about Paragard breakages and associated injuries.  Defendants' failures with regard to their entire complaint handling system were a cause of Plaintiffs' injuries.

121.   Based upon information and belief, between 2009 and 2020, for example, the Teva Defendants received reports of over 2000 Paragard breaks, as documented by the FDA Adverse Event Reporting System (FAERS) database. Upon further information and belief, Defendants had received even more reports of breakage from patients and/or their doctors that were not properly handled in accordance with the regulations, including, but not limited to, not properly recorded, not properly investigated, and not properly submitted to the FDA.  Defendants knew or should have known that complaints of breakage occurred at a disproportionately greater frequency than what would normally be anticipated.  And Defendants knew or should have known that reports of breakage requiring medical or surgical intervention were reportable events, yet they failed to report such events.

122.   The FAERS database houses, among other things, adverse event reports regarding drugs submitted by healthcare professionals, consumers, and manufacturers.[1]

123.   Based upon information and belief, Defendants also received reports of Paragard breaks as documented by the FDA Manufacturer and User Facility Device Experience (MAUDE) database.

---

[1] *See* https://www.fda.gov/drugs/surveillance/questions-and-answers-fdas-adverse-event-reporting-system-faers.

31

124.   The FDA MAUDE database houses "medical device reports submitted to the FDA by mandatory reporters (manufacturers, importers and device user facilities) and voluntary reporters such as health care professionals, patients and consumers."[2]

125.   Upon information and belief, as stated herein, Defendants received complaints about Paragard yet failed to properly handle and/or file those complaints, establish or follow established procedures for complaint handling and reporting, and report those complaints that qualified as adverse events to the FDA.

126.   Despite Defendants coming into possession of new information, as evidenced by the reports to the FAERS and MAUDE databases, Defendants failed to take action to investigate the issue or to update the Paragard warning label to adequately warn of the Paragard's propensity to break before or during removal.

127.   As recently as August 2019, the FDA issued a citation to CooperSurgical for instituting deficient written procedures for the handling of written and oral complaints related to drug products and for failing to adequately follow procedures for handling written and oral complaints related to drug products, all in violation of 21 C.F.R. § 211.198.

---

[2] *See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/search.cfm.

128.   Had Defendants established and followed proper complaint handling procedures, information about the propensity of Paragard to break and result in significant injury to women would have been made available sooner to the FDA, the medical community, and women such as Plaintiffs.

## F.   Defendants Failed to Comply with Good Manufacturing Practices

129.   Another way in which the FDA ensures the quality of drug products in the United States is through the drug manufacturers' compliance with the Current Good Manufacturing Practices ("CGMPs").

130.   The CGMPs are intended to ensure that a drug product is safe for use, and a manufacturer must manufacture, store, warehouse, and distribute pharmaceutical drugs in accordance with the CGMPs to ensure drugs meet safety, quality, purity, identity, and strength standards.  21 U.S.C. § 351(a)(2)(B).

131.   21 C.F.R. § 210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

132.   The FDA's CGMP regulations are found in 21 C.F.R. Parts 210 and 211.   These detailed regulations set forth minimum standards regarding: organization and personnel (Subpart B); buildings and facilities (Subpart C); equipment (Subpart D); control of components and drug product containers and closures (Subpart E); production and process controls (Subpart F); packaging and label controls (Subpart G); holding and distribution (Subpart H); laboratory controls (Subpart I); records and reports (Subpart J); and returned and salvaged drug products (Subpart K).

133.   For example, to assure uniformity and integrity, "written procedures shall be established and followed that describe the in-process controls, and tests, or examinations to be conducted on appropriate samples of in-process materials" of each batch or lot.  21 C.F.R. § 211.110.

134.   Section 211.182 requires equipment cleaning and use logs.

135.   Section 211.192 requires that "[a]ll drug product production and control records . . . shall be reviewed and approved by the quality control unit to determine compliance with all established, approved written procedures before a batch is released or distributed.  Any unexplained discrepancy . . . or the failure of a batch or any of its components to meet any of its specifications shall be thoroughly

34

investigated, whether or not the batch has already been distributed." And any such investigation shall extend to other potentially associated batches.

136. "Laboratory records shall include complete data derived from all tests necessary to assure compliance with established specifications and standards, including examinations and assays" and a "statement of the results of tests and how the results compare with established standards of identity, strength, quality, and purity for the component, drug product container, closure, in-process material, or drug product tested." "Complete records shall be maintained of any modification of an established method employed in testing." 21 C.F.R. § 211.194.

137. Any drug not manufactured in accordance with CGMPs is deemed "adulterated and/or misbranded" and may not be manufactured, distributed, or sold in the United States. *See* 21 U.S.C. §§ 331(a), 331(g), 351(a)(2)(B). States have enacted laws adopting or mirroring these federal standards.

138. Among the other ways a drug may be adulterated are:

    a. "if it has been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health," 21 U.S.C. § 351(a)(2)(A);

    b. "if . . . the methods used in, or the facilities or controls used for, manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice . . . as to safety and has the identity and

35

strength, and meets the quality and purity characteristics, which it purports or is represented to possess," 21 U.S.C. § 351(a)(1)(B);

c. "its quality or purity falls below the standard set forth in such compendium," 21 U.S.C. § 351(b);

d. "if . . . any substance has been (1) mixed or packed therewith so as to reduce its quality or strength or (2) substituted wholly or in part therefore," 21 U.S.C. § 351(d).

139. Defendants failed to comply with established safety regulations, maintenance, quality control, and cleanliness standards, resulting in the mass production, shipment into circulation, and use of defective and dangerous Paragard.

140. Upon information and belief, Defendants failed to source plastic material that had sufficient flexibility to satisfy the flexibility specifications.

141. Upon information and belief, sourcing suitable plastic with sufficient flexibility has been an ongoing problem for Defendants, which has resulted in defective Paragard products entering the stream of commerce.

142. Upon information and belief, Defendants lack quality assurance and quality control procedures to ensure product conformity to Paragard's design specifications.

143. Upon information and belief, a high percentage of Paragard were deemed defective at the time of final packing due to copper corrosion or

discoloration, among other issues.  Copper discoloration means that the metal is rotting.

144.   Upon information and belief, this percentage exceeded Defendants' written quality controls.   Instead of following their own quality objectives, Defendants deviated from their written policy.

145.   Upon information and belief, Defendants failed to comply with their Standard Operating Procedure (SOP) on good manufacturing practices training by, for example, performing training less than required by the SOP.

146.   Paragraph intentionally left blank.

147.   Defendants' failures also include, but are not limited to:

    a.  failing to maintain a quality control unit;

    b.  failing to establish and/or follow written procedures applicable to the quality control unit;

    c.  failing to have educated, trained, and/or experienced personnel for the particular operation(s) and function(s) the employee performs, including, but not limited to supervisors;

    d.  failing to conduct and/or require training on a continuing basis and with sufficient frequency to assure their personnel remain familiar with CGMP requirements applicable to them;

    e.  failing to ensure that any third-party consultants advising on any aspect of Paragard's manufacture has sufficient education, training, and/or experience to advise on the subject for which they are/were retained and/or failing to maintain records stating the name, address, and qualifications of any such consultants and the type of service he/she/it provided;

f.  failing to maintain and/or follow written procedures describing in sufficient detail the receipt, identification, storage, handling, sampling, testing, and/or approval or rejection of Paragard components;

g.  failing to maintain and/or follow written procedures for the production and process control designed to assure Paragard has/had the identity, strength, quality, and purity Defendants purport or is represented to possess and/or failing to have these procedures drafted, reviewed, and approved by the appropriate organizational units and/or the quality control unit;

h.  failing to follow and/or timely document performance of written production and process control procedures in the execution of the various production and process control functions and/or failing to record and justify any deviations from such procedures;

i.  failing to maintain and/or follow proper packing and labeling controls;

j.  failing to bear an expiration date determined by appropriate stability testing;

k.  failing to maintain and/or follow proper laboratory controls;

l.  failing to maintain and/or follow written procedures for the handling of all written and oral complaints regarding Paragard.

These failures, in whole or in part, were a cause of Plaintiffs' injuries and damages.

## G.  Plaintiffs' Paragard Insertion and Subsequent Injuries

148.   Plaintiffs are women who had Paragard inserted in their uterus as a form of non-permanent and non-hormonal birth control.

149.   The Paragard inserted in Plaintiffs were designed, manufactured, tested, marketed, labeled, packaged, handled, distributed, stored, and/or sold by Defendants.

150.   Plaintiffs' Paragard broke inside their bodies, including, but not limited to, during routine removal, causing complications and injuries to Plaintiffs, including but not limited to, surgeries to remove the broken piece of device, infertility, and pain.

151.   Prior to insertion of Plaintiffs' Paragard, Defendants provided no warning to Plaintiffs and/or their doctors about Paragard's propensity to break in the body before or during removal and the risk of injury, including, but not limited to, further medical and/or invasive surgical intervention.  As detailed *supra* ¶¶ 51-67, 121-126, this information was known or knowable to Defendants.

152.   On information and belief, Plaintiffs used the Paragard designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold by Defendants.  The Paragard reached Plaintiffs without substantial change in the drug's condition.

153.   On information and belief, as a direct and proximate result of using Paragard, Plaintiffs suffered serious and/or permanent adverse effects.

154.   As a result of said adverse effects, and as a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries, including but not limited to, significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of reproductive health, loss of

earnings and earning capacity, and have and will incur past and future medical expenses. Each Plaintiff's damage equals a sum in excess of the jurisdictional limits of the Court.

155.   At all relevant times, each Defendant had knowledge that there was a significant increased risk of adverse events associated with Paragard including, but not limited to breakage, and despite this knowledge Defendants continued to manufacture, market, distribute, sell, and profit from sales of Paragard.

156.   Despite such knowledge, Defendants knowingly, purposely, and deliberately failed to adequately warn Plaintiffs, patients, consumers, medical providers, and the public of the increased risk of serious injury associated with using Paragard.

157.   On information and belief, Plaintiffs' prescribing physicians would not have prescribed Paragard to Plaintiffs, would have changed the way they warned Plaintiffs about the signs, symptoms, and risks of serious adverse effects of Paragard, and would have discussed with Plaintiffs the true risks and propensity of breakage in the body and resulting injuries and complications had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Paragard.

158.   Defendants maintained a duty to Plaintiffs after Paragard were inserted and until they were removed.

159.   Defendants' conduct was committed with knowing, reckless, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to punish and deter similar conduct in the future.

## H.     Specific Allegations as to Teva Ltd.

160.   Teva Ltd. is liable to Plaintiffs under the facts alleged in this Master Complaint by virtue of its own acts and omissions, as well for the acts and omissions of its agents, joint venturers, and alter ego subsidiaries (i.e., the other Teva Defendants named herein).

161.   Additionally, its own acts and omissions and/or the effects thereof, as well the acts and omissions and/or the effects thereof of its agents, joint venturers, and alter ego subsidiaries, occurred within each of the States and Territories of the United States such that the exercise of long-arm jurisdiction over Teva Ltd. is constitutionally proper.

### a.     Teva Ltd.'s Own Acts and Omissions with Respect to Paragard

162.   Teva Ltd. was itself involved in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, sale, and/or pharmacovigilance with respect to Paragard, and therefore Teva Ltd. is liable in its own right.  By way of example and without limitation:

i.    Pharmacovigilance for all Teva companies, including Teva Women's Health, was headquartered at Teva Ltd.  For instance, quality monitoring of pharmacovigilance for Teva Women's Health, including clinical trial and post-marketing pharmacovigilance was handled by Teva Ltd.  Furthermore, with regard to signal detection and labeling changes, signal detection (leading to possible label changes) was not done in the United States but rather was done at Teva Ltd.  All literature searching in connection with pharmacovigilance was done at Teva Ltd. And Teva Ltd. utilized "one global safety database for all Teva Products."

ii.    Regulatory affairs of Teva Women's Health were integrated and combined into the regulatory affairs department of Teva Ltd.  Responsibilities of this integrated, combined regulatory affairs department at Teva Ltd. included CMC

(chemistry, manufacturing, and controls), regulatory operations, and policy and brand management.

iii.    Teva Ltd. oversaw the manufacturing practices at the facility in North Tonawanda, NY that manufactured Paragard, conducting one or more corporate quality GMP (good manufacturing practices) audits at the facility.

iv.    Both the General Manager and Director of Quality Assurance at the facility in North Tonawanda, NY that manufactured Paragard ultimately reported to the President and CEO of Teva Ltd.

v.    Teva Ltd., Teva USA, and Teva business units – including Teva Women's Health – were participants in an intra-company quality technical agreement that included Paragard.

vi.    Teva Ltd. oversaw and/or was involved in meetings and correspondence concerning Paragard adverse events, product quality, and product complaints.  Complaints were logged and tracked on the TrackWise global complaints database.  These services persisted even after Paragard was acquired by Cooper.

vii.    Teva Ltd. generated one or more FDA MedWatch reports regarding Paragard adverse events.

viii.    Teva Ltd. was the seller of the Paragard business, and agreed in the accompanying transition services agreement to provide or cause to be provided transition services to CooperSurgical, Inc.

ix.    In connection with the sale of the Paragard business by Teva Ltd. to CooperSurgical, Inc., Teva Ltd. contracted for the performance of an environmental site assessment of the facility in Buffalo, NY that manufactured Paragard, which was owned by Teva USA.

**b.    Agency, Joint Venturer, and Alter Ego Liability**

163.    Additionally, Teva Ltd. has controlled and dominated the other Teva Defendants to such an extent that the separate personalities of these entities no longer exist, and the other Teva Defendants lack an existence independent from Teva Ltd. Instead, they have together operated and functioned as one entity. The other Teva Defendants have acted as mere instrumentalities of Teva Ltd. As such, the corporate form has been used to improperly defeat justice and/or evade tort responsibility. Teva Ltd. is therefore liable for the acts of the other Teva Defendants. By way of

example and without limitation, evidence reflecting this control, domination, and unity of interest and ownership includes:

    i.    Each of the other Teva Defendants is a wholly-owned direct or indirect subsidiary of Teva Ltd.

    ii.    There has been overlap between the officers of Teva Ltd. and the other Teva Defendants, and in turn, overlap between the officers of the various other Teva Defendants.

    iii.    The President and CEO of Teva USA reports to the CEO of Teva Ltd.

    iv.    Teva Ltd. has repeatedly held itself out as a singular, integrated business that exercises a high degree of control over and integration with the other Teva Defendants. *See, e.g.,* Teva Ltd. 2010 20-F filing at F-16: "Teva evaluates its organizational structure under a notion of *'One Teva'* with functional based units of a front-end (products offerings) and back-end (supply, operations and research and development) *unified organization*. Accordingly, Teva concluded that it has *one operating segment.")* (emphasis added); Teva Ltd. 2011 20-F filing at F-16 (same); Teva Ltd. 2012 20-F filing at F-17 (same); Teva Ltd.

2013 20-F filing at 18 ("Teva Pharmaceutical Industries Limited is a *fully-integrated global pharmaceutical company*.") (emphasis added); *id.* at 55 ("*We are a fully integrated global pharmaceutical company*, with extensive R&D, manufacturing and distribution capabilities.") (emphasis added); Teva Ltd. 2016 20-F filing at 46 (Teva Ltd.'s "structure is designed to ensure *full integration of our operating units in accordance with our global strategy*") (emphasis added); Teva Ltd. 2017 10-K filing at 186 ("Teva manages its assets *on a company basis, not by segments, as many of its assets are shared or commingled*.") (emphasis added).

v.    Teva Ltd. and the other Teva Defendants have been engaged in the same line of business: the design, development, manufacture, testing, labeling, packaging, distribution, marketing, and/or sale of pharmaceuticals and medical devices.

vi.    Teva Ltd. was, as described above, closely involved in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, sale, and/or pharmacovigilance of Paragard.

164.   Relatedly, by virtue of Teva Ltd.'s control and domination of the other Teva Defendants, as well as by virtue of Teva Ltd.'s involvement with the other Teva Defendants in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, and/or sale of Paragard – as detailed above – the other Teva Defendants have acted as the agents and joint venturers of Teva Ltd. in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, sale, and/or pharmacovigilance of pharmaceuticals and medical devices generally, and the design, development, manufacture, testing, labeling, packaging, distribution, marketing, sale, and/or pharmacovigilance with regard to Paragard specifically.

165.   Furthermore, each of the other Teva Defendants are themselves alter egos, agents, and joint venturers of one another.   These other defendants have functioned together as essentially a singular entity, having overlapping officers, combining functions, and acting as "One Teva."

**TOLLING / FRAUDULENT CONCEALMENT**

~~159.~~166.   Plaintiffs assert all applicable statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, delayed discovery, discovery rule and/or fraudulent concealment.

160.167.    The discovery rule applies to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence should have known, of facts that Plaintiffs had been injured, the cause of the injury, and the tortious nature of the wrongdoing that caused the injury.

161.168.    The nature of Plaintiffs' injuries, damages, or their causal relationship to Defendants' conduct was not discovered, and through reasonable care and due diligence could not have been discovered until a date within the applicable statute of limitations for filing Plaintiffs' claims.

162.169.    Plaintiffs bring this Master Complaint within the applicable statute of limitations.  Specifically, Plaintiffs bring this action within the prescribed time limits following Plaintiffs' injuries and Plaintiffs' knowledge of the wrongful cause.  Prior to such time, Plaintiffs did not know and had no reason to know of their injuries and/or the wrongful cause of those injuries.

163.170.    The running of the statute of limitations is tolled due to equitable tolling.  Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment, through affirmative misrepresentations and omissions to Plaintiffs and defects associated with Paragard. Defendants affirmatively withheld and/or misrepresented facts concerning Paragard's safety.  As a result of Defendants' misrepresentations and concealment,

Plaintiffs and Plaintiffs' physicians were unaware, and could not have known or have learned through reasonable diligence, of facts related to Defendants' misrepresentations or omissions, that Plaintiffs had been exposed to the risks alleged herein, or that those risks were the direct and proximate result of the wrongful acts and/or omissions of Defendants.

~~164.~~171.    Given Defendants' affirmative actions of concealment by failing to disclose this known but non-public information about the defects—information over which Defendants had exclusive control—and because Plaintiffs could not reasonably have known that Paragard were and are defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

## EXEMPLARY / PUNITIVE DAMAGES ALLEGATIONS

~~165.~~172.    Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.  Defendants were fully aware of Paragard's safety risks, including that injuries from Paragard's defect could lead to infertility.  Nonetheless, Defendants deliberately crafted their label and marketing to mislead consumers.

~~166.~~173.    This was not done by accident or through some justifiable negligence.  Rather, Defendants knew they could profit by convincing consumers

that Paragard was a safe form of birth control, that could be easily reversed when a woman wanted to conceive, and that full disclosure of the true risks of Paragard (including hysterectomy or infertility) would limit the amount of money Defendants would make selling Paragard, which at times was the only hormone-free intrauterine birth controls offered in the United States.  Defendants' object was accomplished not only through a misleading label, but through a comprehensive scheme of selective testing, false advertising, and deceptive omissions as more fully alleged throughout this pleading.  Plaintiffs were denied the right to make an informed decision about whether to use Paragard, knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiffs' rights.

167.174.    Accordingly, Plaintiffs request punitive damages (where available) against Defendants for the harms caused to Plaintiffs.

## CAUSES OF ACTION

### COUNT I
### STRICT LIABILITY—DESIGN DEFECT

168.175.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Master Complaint as if each were set forth fully and completely herein.

169.176.    At all relevant times, Defendants designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold Paragard.

170.177.    At all relevant times, Defendants designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold the Paragard used by Plaintiffs.

171.178.    Paragard is inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable uses, and does not meet or perform to the expectation of patients and/or their healthcare providers.

172.179.    Paragard is defective because the product is prone to break while inside a woman's body, including, but not limited to, during routine removal during the course of ordinary use.

173.180.    Defendants designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold a product that was not merchantable and/or reasonably suited to its intended use.

174.181.    Defendants' failure to provide adequate warnings and instructions for Paragard renders the device unreasonably dangerous and defective.

175.182.    Plaintiffs were foreseeable users of the Paragard.

176.183.    At the time Paragard left Defendants' possession, the drug was in a condition that made it unreasonably dangerous to Plaintiffs.

177.184.    At the time Plaintiffs used Paragard, the drug was in a condition that made it unreasonably dangerous.

178.185.    At all relevant times, the Paragard used by Plaintiffs was expected to and did reach Plaintiffs without a substantial change in the condition in which the drug was designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold by Defendants.

179.186.    The Paragard inserted in Plaintiffs were defective in design because they failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

180.187.    The Paragard inserted in Plaintiffs were defective in design, in that the Paragard's foreseeable risks exceeded the alleged benefits associated with its design.

181.188.    At all relevant times, Defendants knew or had reason to know that Paragard was defective and inherently dangerous and unsafe when used in the manner instructed by Defendants.

182.189.    Plaintiffs and their healthcare providers used Paragard in a manner that was reasonably foreseeable to Defendants and in the manner in which Paragard was intended to be used.

183.190.    Neither Plaintiffs nor their healthcare providers could have by the exercise of reasonable care discovered Paragard's defective conditions or perceived its unreasonable dangers prior to insertion of the drug.

184.191.    As a result of the foregoing design defects, Paragard created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of Paragard.

185.192.    Defendants intentionally and recklessly designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold Paragard with wanton and willful disregard for the rights and health of Plaintiffs and others, and with malice, placing their economic interests above the health and safety of Plaintiff and others.

186.193.    Defendants knew or should have known that physicians and other healthcare providers began commonly using this product as a safe and effective drug for temporary contraception despite its defective condition.

187.194.    At all relevant times, there was a practical, technologically feasible, and safer alternative design for Paragard.

188.195.    The defects in Defendants' Paragard were substantial factors in causing Plaintiffs' injuries.

189.196.    As a direct and proximate result of Defendants' defective design of Paragard, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## <u>COUNT II</u>
## STRICT LIABILITY— FAILURE TO WARN

190.197.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

191.198.    Paragard is defective and unreasonably dangerous because Defendants failed to adequately warn or instruct consumers and prescribers of

54

Paragard's dangerous characteristic, including the full extent of the risk of breakage the injuries that could result, including hysterectomy, pain, and infertility.

192.199.    Paragard is also defective because Defendants failed to properly and adequately warn and instruct Plaintiffs and/or their healthcare providers with regard to the inadequate research and testing of Paragard.

193.200.    At all relevant times, Defendants designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, sold and/or otherwise released into the stream of commerce Paragard, including the Paragard inserted in Plaintiffs, and in the course of same, directly advertised and marketed the drug to consumers and/or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Paragard.

194.201.    At all relevant times, Paragard was under the exclusive control of Defendants and was unaccompanied by appropriate warnings regarding all of the risks associated with its use.  The warnings provided did not accurately reflect the risk, incidence, symptoms, scope, or severity of such injuries to the consumer and/or physicians. Defendants' promotional activities further diluted or minimized the warnings given with the product.

195.202.    Paragard was defective and unreasonably dangerous at the time of their release into the stream of commerce (and when it left the possessions of

Defendants) due to the inadequate warnings, labeling, and/or instructions accompanying the product including, but not limited to, the failure to warn of the proclivity of the Paragard breaking, as described above.

196.203.    The warnings that accompanied Paragard failed to provide the level of information that an ordinary consumer and/or healthcare provider, would expect when using the product in a manner reasonably foreseeable to Defendants.

197.204.    Defendants downplayed the serious and dangerous side effects of Paragard to encourage sales of the product; consequently, Defendants placed their profits above Plaintiffs' safety.

198.205.    At the time Defendants designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold Paragard into the stream of commerce, Defendants knew or should have known of the risks associated with Paragard when put to its intended and reasonably anticipated use.

199.206.    Plaintiffs were foreseeable users of Paragard.

200.207.    At all relevant times, Plaintiffs used Paragard in the manner in which the drug was intended to be used.

201.208.    At the time Plaintiffs used Paragard, the drug was defective and in a condition that made it unreasonably dangerous to Plaintiffs.

202.209.    Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field and, further, Defendants had knowledge of the dangerous risks and side effects of Paragard.

203.210.    Paragard is dangerous when used by the ordinary user who used the drug as intended.

204.211.    The risks associated with each Paragard are of such a nature that healthcare providers and users could not have recognized the potential harm.

205.212.    Paragard is dangerous to an extent contemplated beyond the ordinary user and/or healthcare providers because the Paragard product is prone to break while in a woman's body, including, but not limited to, during routine removal.

206.213.    The Paragard, when inserted in Plaintiffs, were in the same condition as when they were designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold by Defendants.

207.214.    During the time that they held the NDA, Defendants had a duty to warn of the risk of harm associated with the use of the drug and to provide adequate warnings concerning the risk the product could break, even if inserted properly and even if the drug remained properly in place.

208.215.     Defendants had a continuing duty to warn consumers, including Plaintiffs', their physicians, and/or the medical community of the dangers associated with Paragard, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, Defendants breached their duty.

209.216.     Had Plaintiffs received proper or adequate warnings and/or instructions as to the risks of using Paragard, Plaintiffs could have avoided the risk of developing injuries and could have obtained or used alternative birth control.

210.217.     Defendants intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of Paragard in order to advance their own financial interests, with wanton and willful disregard for the rights and health of Plaintiffs.

211.218.     Defendants' lack of adequate warnings and instructions accompanying Paragard were a substantial factor in causing Plaintiffs' injuries.

212.219.     As a direct and proximate result of Defendants' failure to provide adequate warnings of the risks of Paragard, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may

also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## <u>COUNT III</u>
## **STRICT LIABILITY—MANUFACTURING DEFECT**

~~213.~~220.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~214.~~221.     At all relevant times, Defendants designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, sold Paragard that were inserted into Plaintiffs.

~~215.~~222.     The Paragard inserted in Plaintiffs contained a condition or conditions, described above, which Defendants did not intend, at the time the Paragard left Defendants' control and possession.

~~216.~~223.     The Paragard inserted in Plaintiffs deviated from Defendants' design, specifications, or intentions in that, *inter alia*, Paragard was made of plastic with insufficient flexibility, Paragard was not in conformity with Paragard's design

specifications because Defendants lacked quality assurance and control procedures to ensure product conformity, and/or the Paragard copper had experienced corrosion or discoloration at the time of final packing.

217.224.　　As a result of this condition or these conditions, the product failed to perform as safely as the ordinary consumer would expect, causing injury to Plaintiffs, when used in a reasonably foreseeable manner.

218.225.　　Plaintiffs and Plaintiffs' healthcare providers used the Paragard in a manner consistent with and reasonably foreseeable to Defendants.

219.226.　　Paragard creates risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of Paragard because of Defendants' manufacturing defects, which include but are not limited to:

    a. Failure to follow CGMPs, including 21 C.F.R. §§ 211.110, 211.182, 211.192, 211.194;
    b. Upon information and belief, failure to adequately inspect and/or test the drugs during the manufacturing process;
    c. Failure to implement procedures that would reduce or eliminate breakages in Paragard.

220.227.　　Defendants have intentionally and recklessly manufactured Paragard with wanton and willful disregard for the rights and health of Plaintiffs,

and with malice, placing their economic interests above the health and safety of Plaintiffs and others.

~~221.~~228.     The manufacturing defects in Defendants' Paragard were a substantial factor in causing Plaintiffs' injuries.

~~222.~~229.     As a direct and proximate result of Defendants' defective manufacture of Paragard, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

<u>**COUNT IV**</u>
**NEGLIGENCE**

~~223.~~230.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

224.231.    At all times relevant, Defendants were in the business of designing, developing, manufacturing, testing, labeling, packaging, distributing, marketing, and/or selling Paragard, including the Paragard that were inserted into Plaintiffs.

225.232.    Defendants had a duty to exercise reasonable and ordinary care in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, and/or sale of Paragard so as to avoid exposing others to foreseeable and unreasonable risks of harm.

226.233.    Defendants breached their duty of care to Plaintiffs and their physicians in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, and sale of Paragard.

227.234.    Paragard is defective because the product is prone to break while in a woman's body, including, but not limited to, during routine removal.

228.235.    Defendants breached their duty in that they failed to warn Plaintiffs and their physicians by not reporting the risk of serious defects and life-altering complications described herein that Defendants knew or should have known were associated with Paragard prior to the time of Plaintiffs' insertion.

229.236.      Defendants also breached their duties by receiving and failing to warn of complaints or adverse events regarding Paragard breakages to the FDA, the public, and the medical community.

230.237.      Defendants knew that the Paragard could break and failed to warn Plaintiffs of this potential breakage.

231.238.      Plaintiffs were foreseeable users of Paragard.

232.239.      Defendants knew women like Plaintiffs would use Paragard.

233.240.      Defendants knew or should have known that Paragard's defective condition made the drug unreasonably dangerous or likely to be unreasonably dangerous when used in its intended or reasonably foreseeable manner.

234.241.      At the time of the manufacture and sale of the Paragard, Defendants knew or should have known that the Paragard was designed and manufactured in such a manner so as to present an unreasonable risk of breakage.

235.242.      At the time of the manufacturer and sale of the Paragard, Defendants knew or should have known that the Paragard was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement and subsequent removal.

236.243.    Paragard was unreasonably dangerous when used by Plaintiffs, who followed the instructions provided by Defendants and used Paragard according to its common usage.

237.244.    At the time Paragard left Defendants' possession, the drug was in a condition that made it unreasonably dangerous to Plaintiffs.

238.245.    At the time Plaintiffs used Paragard, the drug was in a condition that made it unreasonably dangerous.

239.246.    The Paragard used by Plaintiffs was expected to and did reach Plaintiffs without substantial change in the condition in which the drug was designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold by Defendants.

240.247.    At all relevant times, Plaintiffs used Paragard in the manner in which was the drug was intended.

241.248.    As designers, developers, manufacturers, inspectors, advertisers, packagers, distributors, and suppliers of Paragard, Defendants had superior knowledge of the product and owed a duty of care to Plaintiffs.

242.249.    Defendants failed to exercise reasonable and due care under the circumstances and therefore breached their duty of care to Plaintiffs in the following ways:

243.250.     Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of Paragard in, among others, the following ways:

a.    Failing to design Paragard in a manner that protected Plaintiffs from injury;

b.    Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking measures to reduce or avoid harm;

c.    Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other drugs available for the same purpose;

d.    Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications;

e.    Failing to use reasonable care to warn or instruct Plaintiffs, Plaintiffs' healthcare providers, or the general healthcare community about Paragard's substantially dangerous condition or about facts making the product likely to be dangerous, including pre- and post-sale;

f.    Failing to perform reasonable pre- and post-market testing of Paragard to determine whether the product was safe for its intended use;

g.    Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would recommend, use, insert, and remove Paragard;

h.    Advertising, marketing, and recommending the use of Paragard, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of Paragard;

i.    Representing that Paragard was safe for its intended use when, in fact, Defendants knew and should have known the product was not safe for its intended purpose;

j.      Continuing manufacture and sale of Paragard with the knowledge that Paragard was dangerous and not reasonably safe, and failing to comply with the FDA's CGMPs;

k.      Failing to use reasonable and prudent care in the design, research, manufacture, and development of Paragard so as to avoid the risk of serious harm associated with the use of the drug;

l.      Failing to establish an adequate quality-assurance program used in the manufacturing of Paragard;

m.      Failing to establish and maintain an adequate post-marketing surveillance program for Paragard;

n.      Failing to adequately and correctly report safety information relative to Paragard product resulting in inadequate warnings;

o.      Failing to provide adequate and continuous warnings about the inherent danger of breakage of the Paragard;

p.      Failing to warn Plaintiffs and their physicians by not reporting the risk of serious defects and life-altering complications described above;

q.      Failing to warn of or report complaints about Paragard breakages to the FDA or the public and receiving and failing to warn or report to the FDA and the medical community their knowledge and information regarding complaints about Paragard breakages;

r.      Concealing from the FDA, the general medical community and/or physicians their full knowledge and experience regarding the full extent and frequency of risks associated with the product;

s.      Promoting, marketing, and/or advertising Paragard in a misleading manner, given their knowledge and experience of potential harmful effects;

t.      Failing to fulfill the standard of care required of a reasonable, prudent, drug manufacturer;

u.      Failing to disclose to the medical community in an appropriate and timely manner, facts relative to the potential of Paragard to be harmful to patients; and

v.      Failing to respond, react, or report appropriately to reports of Paragard causing harm to patients, including breakage and removal surgery.

244.251.      It was foreseeable that Defendants' misrepresentations, actions, and omissions would cause severe, permanent, and debilitating injuries to Plaintiffs.

245.252.    Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

246.253.    As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT V
## NEGLIGENCE—DESIGN & MANUFACTURING DEFECT

247.254.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

248.255.    At all times relevant, Defendants were in the business of designing, developing, manufacturing, testing, labeling, packaging, distributing,

marketing, and/or selling Paragard, including the Paragard that were inserted into Plaintiffs.

249.256.   Defendants had a duty to exercise reasonable and ordinary care in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, and/or sale of Paragard so as to avoid exposing others to foreseeable and unreasonable risks of harm.

250.257.   Defendants breached their duty of care to Plaintiffs and their physicians in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, and sale of Paragard.

251.258.   Paragard is defective because the product is prone to break while in a woman's body, including, but not limited to, during routine removal.

252.259.   Defendants knew that the Paragard could break and failed to warn Plaintiffs of this potential breakage.

253.260.   Plaintiffs were foreseeable users of Paragard.

254.261.   Defendants knew women like Plaintiffs would use Paragard.

255.262.   Defendants knew or should have known that Paragard's defective condition made the drug unreasonably dangerous.

256.263.     Paragard was unreasonably dangerous when used by Plaintiffs, who followed the instructions provided by Defendants and used Paragard according to its common usage.

257.264.     At the time Paragard left Defendants' possession, the drug was in a condition that made it unreasonably dangerous to Plaintiffs.

258.265.     At the time Plaintiffs used Paragard, the drug was in a condition that made it unreasonably dangerous.

259.266.     The Paragard used by Plaintiffs was expected to and did reach Plaintiffs without substantial change in the condition in which the drug was designed, developed, manufactured, tested, labeled, packaged, distributed, marketed, and/or sold by Defendants.

260.267.     At all relevant times, Plaintiffs used Paragard in the manner in which was the drug was intended.

261.268.     As designers, developers, manufacturers, inspectors, advertisers, packagers, distributors, and suppliers of Paragard, Defendants had superior knowledge of the product and owed a duty of care to Plaintiffs.

262.269.     Defendants failed to exercise reasonable and due care under the circumstances and therefore breached their duty of care to Plaintiffs in the following ways:

69

~~w.~~ a. Failing to design Paragard in a manner that protected Plaintiffs from injury;

~~x.~~ b. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking measures to reduce or avoid harm;

~~y.~~ c. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other drugs available for the same purpose;

~~z.~~ d. Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications;

~~aa.~~ e. Failing to use reasonable care to warn or instruct Plaintiffs, Plaintiffs' healthcare providers, or the general healthcare community about Paragard's substantially dangerous condition or about facts making the product likely to be dangerous, including pre- and post-sale;

~~bb.~~ f. Failing to perform reasonable pre- and post-market testing of Paragard to determine whether the product was safe for its intended use;

~~cc.~~ g. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would recommend, use, insert, and remove Paragard;

~~dd.~~ h. Advertising, marketing, and recommending the use of Paragard, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of Paragard;

~~ee.~~ j. Representing that Paragard was safe for its intended use when, in fact, Defendants knew and should have known the product was not safe for its intended purpose;

~~ff.~~ k. Continuing manufacture and sale of Paragard with the knowledge that Paragard was dangerous and not reasonably safe, and failing to comply with the FDA's CGMPs;

~~gg.~~ l. Failing to use reasonable and prudent care in the design, research, manufacture, and development of Paragard so as to avoid the risk of serious harm associated with the use of the drug;

~~hh.~~ m. Failing to establish an adequate quality-assurance program used in the manufacturing of Paragard;

~~ii.~~ n. Failing to establish and maintain an adequate post-marketing surveillance program for Paragard;

70

~~jj.~~ o. Failing to adequately and correctly report safety information relative to Paragard product resulting in inadequate warnings;

~~kk.~~ p. Failing to provide adequate and continuous warnings about the inherent danger of breakage of the Paragard product;

~~ll.~~ q. Failing to warn Plaintiffs and their physicians by not reporting the risk of serious defects and life-altering complications described above;

~~mm.~~ r. Failing to warn of or report complaints about Paragard breakages to the FDA or the public and receiving and failing to warn or report to the FDA and the medical community their knowledge and information regarding complaints about Paragard breakages.

~~263.~~270.    It was foreseeable that Defendants' misrepresentations, actions, and omissions would cause severe, permanent, and debilitating injuries to Plaintiffs.

~~264.~~271.    Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

~~265.~~272.    As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest,

costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT VI
### NEGLIGENCE— FAILURE TO WARN

~~266.~~273.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~267.~~274.     At all times relevant, Defendants were in the business of designing, developing, manufacturing, testing, labeling, packaging, distributing, marketing, and/or selling Paragard, including Paragard that were inserted into Plaintiffs.

~~268.~~275.     Defendants had a duty to exercise reasonable and ordinary care in the design, development, manufacture, testing, labeling, packaging, distribution, marketing, and sale of Paragard so as to avoid exposing others to foreseeable and unreasonable risks of harm.

~~269.~~276.     Defendants breached their duty of care to Plaintiffs and their physicians in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of Paragard.

~~270.~~277.     Plaintiffs were foreseeable users of Paragard.

~~271.~~278.     Paragard is defective because the product is prone to break while in a woman's body, including, but not limited to, during routine removal.

~~272.~~279.     Defendants knew or reasonably should have known that Paragard was dangerous or likely to be dangerous when used in its intended or reasonably foreseeable manner.

~~273.~~280.     Defendants knew that the Paragard could break and failed to warn Plaintiffs of this potential injury.

~~274.~~281.     Defendants had a duty to warn Plaintiffs, Plaintiffs' physician, and/or the medical community of the potential for breakage.

~~275.~~282.     Defendants had a continuing duty to warn Plaintiffs, Plaintiff's physician, and/or the medical community of the potential for breakage.

~~276.~~283.     At the relevant times, Defendants knew or should have known that Paragard was designed and manufactured in such a manner as to present an unreasonable risk of breakage.

~~277.~~284.     At the relevant times, Defendants knew or should have known that Paragard was designed and manufactured to have unreasonable and insufficient strength or structural integrity.

278.285.      At the relevant times, Defendants knew or should have known that using Paragard for its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe injuries.

279.286.      Defendants knew or reasonably should have known that consumers of Paragard would not realize the danger associated with using the drug for its intended use and/or in a reasonably foreseeable manner.

280.287.      The Paragard did not include an adequate warning that the Paragard is prone to break and can cause serious injury to users.

281.288.      Defendants failed to properly and/or adequately warn or instruct that Paragard is prone to break and can cause serious injury to users.

282.289.      Defendants also failed to properly and adequately warn and instruct Plaintiffs and their healthcare providers with regard to the inadequate research and testing of Paragard.

283.290.      Defendants breached their duty to Plaintiffs by failing to warn of the risks and dangers of using Paragard as intended.

284.291.      The warnings that accompanied Paragard failed to provide the level of information that an ordinary consumer and/or healthcare provider, would expect when using the product in a manner reasonably foreseeable to Defendants.

285.292.     Had Plaintiffs received proper or adequate warnings and instructions as to the risks of using Paragard, including but not limited to adequate warnings regarding Paragard's propensity to break, Plaintiffs would have avoided the risk and could have obtained or used alternative birth control.

286.293.     Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

287.294.     As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT VII
## FRAUD & DECEIT

~~288.~~295.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~289.~~296.     At all times relevant, Defendants intentionally or recklessly misrepresented the safety of Paragard for its intended use.

~~290.~~297.     Defendants knew or were reckless in knowing that their representations were false.

~~291.~~298.     Defendants have falsely and fraudulently represented and continue to represent to the medical and healthcare community, Plaintiffs and their physicians, and/or the public that Paragard was safe when, in fact, Paragard was unreasonably dangerous in that the product is prone to break before or during removal when used as intended.

~~292.~~299.     Defendants have falsely and fraudulently represented and continue to represent to the medical and healthcare community, Plaintiffs and their physicians, and/or the public that Paragard had been appropriately tested and was found to be safe and effective.

~~293.~~300.     The representations made by Defendants were, in fact, false. When Defendants made their representations, they knew and/or had reason to know that those representations were false, and they willfully, wantonly, and recklessly

76

disregarded the inaccuracies in their representations and the dangers and health risks to users of Paragard.

294.301.    Defendants made these representations with the intent of defrauding and deceiving the medical community, Plaintiffs, Plaintiffs' physicians, and/or the public, and also inducing the medical community, Plaintiffs, Plaintiffs' physicians, and/or the public to recommend, prescribe, dispense, and purchase Paragard for use as a form of long-term birth control, all of which evidenced a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiffs.

295.302.    In reliance upon these false representations, Plaintiffs and/or their physicians were induced to, and did use Paragard, thereby causing Plaintiffs' severe and permanent personal injuries and damages.  Defendants knew or had reason to know that Plaintiffs and their physicians and other healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, which included material omissions of facts surrounding the use of Paragard as described in detail herein.

296.303.    Plaintiffs and their physicians reasonably relied on facts provided by Defendants, who foreseeably and purposefully suppressed and

concealed facts that were critical to understanding the real dangers inherent in the use of Paragard.

297.304.    Having knowledge based on Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assurances to Plaintiffs, the public, and Plaintiffs' healthcare providers and physicians, that Paragard was safe for use as a means of long-term birth control and was as safe or safer than other products and/or procedures available and/or on the market. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted, concealed, and suppressed the dissemination of certain results of testing and research to healthcare professionals, Plaintiffs, their physicians, and the public at large.

298.305.    Defendants had a duty—when disseminating information to the public—to disseminate truthful information, and a parallel duty not to deceive the public, Plaintiffs, and/or their physicians.

299.306.    The information distributed to the public, the medical community, Plaintiffs,  and their physicians by Defendants included, but was not limited to websites, information presented at medical and professional meetings, information disseminated by sales representatives to physicians and other medical care providers, professional literature, reports, press releases, advertising campaigns,

television commercials, print advertisements, and/or other commercial media, and contained material representations that were false and misleading, as well as omissions and concealments of the truth about the dangers of the use of Paragard.

300.307.   These representations, and others made by Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist and were made recklessly and without regard to the true facts.

301.308.   Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of Paragard to Plaintiffs, their physicians, and the public at large for the purpose of influencing the sales of products that Defendants knew to be dangerous and defective and/or not as safe as other alternatives.

302.309.   At the time the representations were made, Plaintiffs and their healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of Paragard.

303.310.   Plaintiffs did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiffs discover the false representations of Defendants, nor would Plaintiffs with reasonable diligence have discovered the

true facts about Defendants' misrepresentations at the time when Plaintiffs used Paragard.

~~304.~~311.   Had Plaintiffs known the true facts about the dangers and serious health and/or safety risks of Paragard, neither Plaintiffs nor their physicians would have purchased, used, or relied on Defendants' representations and omissions concerning Paragard.

~~305.~~312.   Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

~~306.~~313.   As a direct and proximate result of Defendants' fraud, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT VIII
## FRAUD BY OMISSION

~~307.~~314.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~308.~~315.     At all times relevant, Defendants intentionally or recklessly misrepresented the safety of Paragard for its intended use.

~~309.~~316.     Defendants knew or were reckless in knowing that their representations were false.

~~310.~~317.     In representations to Plaintiffs and/or to their healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

      a. That Paragard was not as safe as other products and procedures available to aid in the long-term prevention of pregnancy;
      b. That the risk of adverse events with Paragard was higher than with other products and procedures available for birth control;
      c. That Paragard was not adequately tested;
      d. That the limited clinical testing for Paragard revealed a higher risk of adverse events, above and beyond those associated with other products and procedures available for birth control;
      e. That Defendants deliberately failed to follow up on the adverse results from clinical studies and/or formal and informal reports from physicians and/or other healthcare providers and either ignored, concealed, and/or misrepresented those findings;
      f. That Defendants were aware of dangers in Paragard in addition to and above and beyond those associated with other products and procedures available for birth control;

    g. That Paragard was defective, and that it caused dangerous and adverse side effects, including but not limited to unacceptable incidence of breakage upon removal;

    h. That when Paragard needed to be removed, the removal procedure had a very high failure rate and/or needed to be performed repeatedly;

    i. That Paragard was manufactured negligently;

    j. That Paragard was manufactured defectively; and

    k. That Paragard was designed negligently and designed defectively.

311.318.    Defendants were under a duty to disclose the foregoing issues to Plaintiffs.

312.319.    Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects and, hence, cause dangerous injuries and damage to persons who used Paragard, such as Plaintiff.

313.320.    Defendants knew that Plaintiffs could not determine the truth of this information.

314.321.    Defendants' concealment and omissions of material facts concerning the safety of Paragard were made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, surgeons, and healthcare providers and to induce them to purchase, prescribe, and/or dispense Paragard and/or to mislead them into reliance upon and cause them to use Paragard.

315.322.     At the time these representations were made by Defendants, and at the time Plaintiffs and/or their physicians used Paragard, Plaintiffs and/or their physicians were unaware of the falsehood of these representations and reasonably believed them to be true.

316.323.     Defendants knew and had reason to know that Paragard could and would cause severe and grievous personal injury to the users of the product and was inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

317.324.     Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

318.325.     As a direct and proximate result of Defendants' fraudulent concealment and/or omissions, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest,

costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT IX
## NEGLIGENT MISREPRESENTATION

~~319.~~326.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~320.~~327.    Defendants had a duty to tell Plaintiffs and the public the truth about the risks and harms associated with Paragard.

~~321.~~328.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiffs, their healthcare providers, and the public that Paragard had been tested and found to be safe and effective for long-term birth control.

~~322.~~329.    At relevant times, Defendants breached that duty by providing Plaintiffs, their healthcare providers, and the general medical community with false or incorrect information or omitted or failing to disclose material information concerning Paragard, including, but not limited to, misrepresentations regarding the safety of Paragard.

~~323.~~330.    The information distributed by Defendants to the public, the medical community, Plaintiffs, and their healthcare providers, including advertising

84

campaigns, labeling materials, print advertisements, and commercial media, was false and misleading and contained omissions and concealment of truth about the dangers of Paragard.

~~324.~~331.    Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiffs and Plaintiffs' healthcare providers; to falsely assure them of the quality of Paragard; and to induce the public and medical community, including Plaintiffs and their healthcare providers, to request, recommend, prescribe, insert, purchase, and continue to use Paragard.

~~325.~~332.    The representations made by Defendants were, in fact, false. Paragard was not safe for human use in its intended and reasonably foreseeable manner.  Use of Paragard is dangerous, as there is a risk that it may break and cause serious injury.

~~326.~~333.    In reliance upon the false and negligent misrepresentations and omissions made by Defendants, Plaintiffs, and Plaintiffs' healthcare providers were induced to and did use Paragard, thereby causing Plaintiffs to endure severe and permanent injuries.

~~327.~~334.    Defendants knew and had reason to know that Plaintiffs, Plaintiffs' healthcare providers, and the general medical community did not have the

ability to determine the true facts, which were intentionally and/or negligently concealed and misrepresented by Defendants.

328.335.   Defendants had sole access to the material facts concerning the defective nature of Paragard and its propensity to cause serious injuries.

329.336.   At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff was inserted with Paragard, Plaintiffs and their healthcare providers were unaware of Defendants' negligent misrepresentations and omissions.

330.337.   Defendants failed to exercise ordinary care in making representations concerning Paragard while they were involved in the drug's manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce because Defendants negligently misrepresented Paragard's high risk of unreasonable and dangerous adverse side effects.

331.338.   Defendants breached their duty to Plaintiffs, their physicians, and the medical and healthcare community by representing that Paragard has no serious side effects different from older generations of similar products or procedures.

332.339.   Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the misrepresentations and omissions made by Defendants, where they

86

concealed and misrepresented facts that were critical to understanding the true dangers inherent in the use of Paragard.

~~333.~~340.     Plaintiffs and their healthcare providers would not have recommended and inserted Paragard in Plaintiffs had the true facts not been concealed by Defendants.

~~334.~~341.     Plaintiffs and Plaintiffs' healthcare providers' reliance on the foregoing misrepresentations and omissions was the direct and proximate cause of Plaintiffs' injuries.

~~335.~~342.     Defendants knew, and had reason to know, that Paragard had been insufficiently tested or had not been tested at all; that the products lacked adequate and accurate warnings; that they created a high risk, and/or higher than acceptable risk, and/or higher than reported risk that they represented a risk of adverse side effects, including pain and suffering, surgery to remove the product, and other severe and personal injuries, which are permanent and lasting in nature.

~~336.~~343.     Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

~~337.~~344.     As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of

comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages. Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## <u>COUNT X</u>
## BREACH OF EXPRESS WARRANTY

~~338.~~345.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~339.~~346.     Through Defendants' public statements, descriptions, and promises regarding Paragard, Defendants expressly warranted that each product was safe and fit for use by consumers, that it was of merchantable quality, that its side effects were minimal and comparable to other treatments for long-term birth control, and that the products were adequately tested and fit for their intended use.

~~340.~~347.     At relevant times, Defendants were aware that consumers, including Plaintiffs, would use Paragard, which is to say that Plaintiffs were foreseeable users of Paragard.

341.348.    Plaintiffs and/or their inserting physicians were, at all relevant times, in privity with Defendants.

342.349.    Paragard was expected to reach and did in fact reach its ultimate consumer, including Plaintiffs and their inserting physicians, without substantial change in the condition in which it was manufactured and sold by Defendants.

343.350.    Defendants breached various express warranties with respect to Paragard, including the following particulars:

    a. Defendants represented to Plaintiffs and their physicians and healthcare providers through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that Paragard was safe, and fraudulently withheld and concealed information about the substantial risks of serious injury associated with using Paragard;
    b. Defendants represented to Plaintiffs and their physicians and healthcare providers that Paragard was as safe and/or safer than other alternative procedures and drugs, and fraudulently concealed information that demonstrated that Paragard was not safer than alternatives available on the market; and
    c. Defendants represented to Plaintiffs and their physicians and healthcare providers that Paragard was more efficacious than other alternatives and fraudulently concealed information regarding the true efficacy of the product.

344.351.    In reliance upon Defendants' express warranties, Plaintiffs were inserted with Paragard as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

345.352.    At the time of making such express warranties, Defendants knew or should have known that Paragard does not conform to these express representations because Paragard was not safe and had numerous side effects, many of which Defendants did not accurately warn about, thus making Paragard unreasonably unsafe for its intended purpose.

346.353.    Members of the medical community, including physicians and other healthcare professionals, as well as Plaintiffs and their physicians, relied upon the representations and warranties of Defendants in connection with the use, recommendation, description, and/or dispensing of Paragard.

347.354.    Defendants breached their express warranties to Plaintiffs in that Paragard was not of merchantable quality, safe, and/or fit for its intended uses, nor was it adequately tested.

348.355.    Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

349.356.    As a direct and proximate result of Defendants' breach, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income,

and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT XI
## BREACH OF IMPLIED WARRANTY

~~350.~~357.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~351.~~358.   At relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold Paragard.

~~352.~~359.   Plaintiffs were foreseeable users of Paragard.

~~353.~~360.   At relevant times, Defendants intended that Paragard be inserted for the purposes, and in the manner, that Plaintiffs or their physicians or surgeons used it, and Defendants impliedly warranted each Paragard to be of merchantable quality, safe and fit for such use, and to have been adequately tested.

354.361.    Defendants were aware that consumers, including Plaintiffs or their physicians or surgeons, would insert Paragard in the manner described by the instructions for use and that Plaintiffs were foreseeable users of Paragard.

355.362.    Defendants knew or had reason to know that Plaintiffs would rely on Defendants' judgment and skill in providing Paragard for its intended use.

356.363.    Plaintiffs and/or their physicians and surgeons were at all relevant times in privity with Defendants.

357.364.    Defendants' Paragard were expected to reach and did in fact reach consumers, including Plaintiffs and/or their physicians and surgeons, without substantial change in the condition in which they were manufactured and sold by Defendants.

358.365.    Defendants breached various implied warranties with respect to Paragard, including the following particulars:

      a. Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, medical literature, and regulatory submissions that Paragard was safe, and fraudulently withheld and concealed information about the substantial risks of serious injury associated with using Paragard;

      b. Defendants represented that Paragard was safe and/or safer than other alternative drugs or procedures and fraudulently concealed information that demonstrated that Paragard was not as safe or safer than alternatives available on the market; and

c. Defendants represented that Paragard was more efficacious than other alternative treatments and fraudulently concealed information regarding the true efficacy of Paragard.

~~359.~~366.    In reliance upon Defendants' implied warranties, Plaintiffs and/or their inserting physicians and surgeons used Paragard as prescribed in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

~~360.~~367.    Defendants breached their implied warranties to Plaintiffs and/or their inserting physicians and surgeons in that Paragard was not of merchantable quality, safe, and fit for its intended use, or adequately tested, in violation of common law principles.

~~361.~~368.    Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

~~362.~~369.    As a direct and proximate result of Defendants' breach, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT XII
## VIOLATION OF CONSUMER PROTECTION LAWS

~~363.~~370.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~364.~~371.    Plaintiffs purchased and used Paragard primarily for personal use, thereby suffering ascertainable losses from Defendants' actions in violation of consumer protection laws.

~~365.~~372.    Had Defendants not engaged in the deceptive conduct described herein, Plaintiffs and their physicians would not have purchased and/or paid for Paragard and would not have incurred related medical costs and injury.

~~366.~~373.    Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Plaintiffs for Paragard that was inserted into Plaintiffs and that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

94

367.374.    Unfair methods of competition or deceptive acts or practices that were proscribed by law include the following:

     a. Representing that goods or services have characteristics, ingredients, uses, benefits, or quantities that they do not have;

     b. Advertising goods or services with the intent not to sell them as advertised; and

     c. Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion and/or misunderstanding.

368.375.    Plaintiffs were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at patients, physicians, and consumers, including Plaintiffs and their physicians, was to create demand for and promote the sale of Paragard.  Each aspect of Defendants' conduct combined to artificially create sales of Paragard.

369.376.    Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of Paragard.

370.377.    Had Defendants not engaged in the deceptive conduct described above, Plaintiffs would not have purchased and/or paid for Paragard and would not have incurred related medical costs.

371.378.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians, and consumers,

including Plaintiffs and their physicians, constituted unfair and deceptive acts and trade practices in violation of state and federal consumer protection statutes.

~~372.~~379.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices in violation of state and federal consumer protection statutes.

~~373.~~380.    Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of state and federal consumer protection statutes, which serve to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising.   Defendants are the suppliers, manufacturers, advertisers, and sellers who are subject to liability under such legislation for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

~~374.~~381.    Defendants violated the statutes that were enacted to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising by knowingly and falsely representing that Paragard was fit to be used for the purpose for which it was intended, when in fact it was defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials and product labeling.

~~375.~~382.     Defendants' deceptive, unconscionable, unfair and/or fraudulent

misrepresentations and material omissions to Plaintiffs constituted consumer fraud

and/or unfair and deceptive acts and trade practices in violation of consumer

protection statutes, including but not limited to:

a.   Ala. Code §§ 8-19-1 et seq.;

b.   Alaska Stat. §§ 45.50.471 et seq.;

c.   Ariz. Rev. Stat. Ann. §§ 44-1522 et seq.;

d.   Ark. Code Ann. §§ 4-88-101 et seq.;

e.   Cal. Civ. Code §§ 1770 et seq.

f.   Cal. Bus. & Prof. Code §§ 17200 et seq.;

g.   Colo. Rev. Stat. §§ 6-1-105 et seq.;

h.   Conn. Gen. Stat. §§ 42-110a et seq.;

i.   Del. Code Ann. tit. 6, §§ 2511 et seq., §§ 2531 et seq.;

j.   D.C. Code Ann. §§ 28-3901 et seq.;

k.   Fla. Stat. Ann. §§ 501.201 et seq.;

l.   O.C.G.A. §§ 10-1-372 et seq.;

m.   Haw. Rev. Stat. §§ 481A-1 et seq.;

n.   Id. Code Ann. §§ 48-601 et seq.;

o.   Ill. Comp. Stat. Ann. ch. 815, 505-1 et seq.;

p.   Ind. Code Ann. §§ 24-5-0.5-1 et seq.;

q.   Iowa Code Ann. §§ 714.16 et seq.;

r.   Kan. Stat. Ann. §§ 50-623, et seq.;

s.   Ky. Rev. Stat. Ann. §§ 367.110 et seq.;

t.   La. Rev. Stat. Ann. §§ 51:1401 et seq.;

u.   Me. Rev. Stat. Ann. tit. 5, §§ 205A et seq.;

v.   Md. Code Ann., Com. Law §§ 13-101 et seq.;

w.    Mass. Gen. Laws Ann. Ch. 93A et seq.;

x.    Mich. Comp. Laws §§ 445.901 et seq.;

y.    Minn. Stat. §§ 325D.43, et seq. §§ 325F.67 et seq., §§ 325F.69;

z.    Miss. Code Ann. §§ 75-24-3 et seq.;

aa.   Mo. Ann. Stat. §§ 407.010 et seq.;

bb.   Mont. Code Ann. §§ 30-14-101 et seq.;

cc.   Neb. Rev. Stat. §§ 59-1601 et seq.;

dd.   Nev. Rev. Stat. §§ 598.0903 et seq.;

ee.   N.H. Rev. Stat. Ann. §§ 358-A:1 et seq.;

ff.   N.J. Stat. Ann. §§ 56:8-2 et seq.;

gg.   N.M. Stat. Ann. §§ 57-12-1 et seq.;

hh.   N.Y. Gen. Bus. Law §§ 349 et seq., §§ 350-e et seq.;

ii.   N.C. Gen. Stat. §§ 75-1.1 et seq.;

jj.   N.D. Cent. Code §§ 51-12-01 et seq., §§ 51-15-01 et seq.;

kk.   Ohio Rev. Code Ann. §§ 1345.01 et seq.;

ll.   Okla. Stat. tit. 15 §§ 751 et seq.;

mm.   Or. Rev. Stat. §§ 646.605 et seq.;

nn.   73 Pa. Stat. §§ 201-1 et seq.;

oo.   R.I. Gen. Laws. §§ 6-13.1-1 et seq.;

pp.   S.C. Code Ann. §§ 39-5-10 et seq.;

qq.   S.D. Codified Laws §§ 37-24-1 et seq.;

rr.   Tenn. Code Ann. §§ 47-18-101 et seq.;

ss.   Tex. Bus. & Com. Code Ann. §§17.41 et seq.;

tt.   Utah Code Ann. §§ 13-11-1 et seq.;

uu.   Vt. Stat. Ann. tit. 9, §§ 2451 et seq.;

vv.   Va. Code Ann. §§ 59.1-196 et seq.;

ww.   Wash. Rev. Code. §§ 19.86.010 et seq.;

    xx.    W. Va. Code §§ 46A-6-101 et seq.;

    yy.    Wis. Stat. Ann. §§ 100.20 et seq.; and

    zz.    Wyo. Stat. Ann. §§ 40-12-101 et seq.

~~376.~~383.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising.

~~377.~~384.    Defendants had actual knowledge of the defective and dangerous condition of Paragard and failed to take any action to cure such defective and dangerous condition.

~~378.~~385.    Plaintiffs and their inserting physicians and surgeons relied upon Defendants' misrepresentations and omissions in determining which product to use and/or procedure to undergo and/or perform.

~~379.~~386.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians, and consumers constitute unfair and deceptive acts and practices.

~~380.~~387.    By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiff has suffered ascertainable losses and damages.

~~381.~~388.     Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

~~382.~~389.     As a direct and proximate result of Defendants' violation of the consumer protection statutes, Plaintiffs have been injured, suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, loss of comfort, and economic damages, including but not limited to past and future medical expenses, lost income, and other damages.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT XIII
## GROSS NEGLIGENCE

~~383.~~390.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~384.~~391.     The wrongs done by Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiffs for which the law would allow, and which Plaintiffs will seek at the

appropriate time under governing law, for the imposition of exemplary damages, in that Defendants' conduct was specifically intended to cause substantial injury to Plaintiffs; or, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with Defendants knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the representation is acted on by Plaintiffs.

385.392.    Plaintiffs and their physicians relied on the representations of Defendants and suffered injury as a proximate result of this reliance.

386.393.    Plaintiffs therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

387.394.    Plaintiffs also allege that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiffs.  In that regard, Plaintiffs will seek exemplary damages in an amount that would punish Defendants for their conduct

and which would deter other manufacturers from engaging in such misconduct in the future.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## <u>COUNT XIV</u>
### UNJUST ENRICHMENT

~~388.~~395.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein

~~389.~~396.    Defendants have received significant revenues from sales of Paragard.

~~390.~~397.    It is unjust to allow Defendants to earn revenues and retain the benefits and profits from the sale of Paragard when Plaintiffs suffered serious injuries as a result of Paragard, including but not limited to severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, loss of comfort, and economic damages.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT XV
## PUNITIVE DAMAGES

~~391.~~398.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~392.~~399.   At times material hereto, Defendants knew or should have known that their Paragard, as designed, manufactured, assembled, sold, and/or distributed, was inherently dangerous.

~~393.~~400.   At times material hereto, Defendants attempted to misrepresent and did misrepresent facts concerning the safety of their Paragard.

~~394.~~401.   Defendants' misrepresentations included knowingly withholding material information from the public and consumers alike, including Plaintiffs, concerning the safety of Paragard.

~~395.~~402.   At times material hereto, Defendants knew and recklessly disregarded the fact that their Paragard could cause serious, disabling, and permanent injuries to individuals such as Plaintiffs.

103

396.403.   Notwithstanding the foregoing, Defendants continued to aggressively market and promote their Paragard without disclosing the risks.

397.404.   As a proximate result of Defendants' willful, wanton, careless, reckless, conscious, and deliberate disregard for the rights and safety of their consumers, Plaintiffs suffered severe and permanent physical and emotional injuries, endured pain and suffering, and have suffered economic loss, including incurring significant expenses for medical care and treatment, and will continue to incur such expenses in the future.

398.405.   Defendants' aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.  Plaintiffs may also require additional medical and/or hospital care, attention, and services in the future.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT XVI
## LOSS OF CONSORTIUM

~~399.~~406.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 168 of this Complaint as if each were set forth fully and completely herein.

~~400.~~407.    Plaintiffs' spouses and/or family members have necessarily paid and have become liable to pay for medical aid, treatment and for medications, and will necessarily incur further expenses of a similar nature in the future as a proximate result of Defendants' misconduct.

~~401.~~408.    Plaintiffs' spouses allege that their marital relationship has been impaired and depreciated, and the marital association has been altered.

~~402.~~409.    Plaintiffs' spouses and/or family members have suffered great emotional pain and mental anguish.

~~403.~~410.    Plaintiffs' spouses and/or family members have sustained and will continue to sustain physical injuries, severe emotional distress, economic losses, and other damages for which they are entitled to compensatory damages.

~~404.~~411.    Defendants' actions and omissions as identified in this Master Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest,

costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

~~405.~~412.    Pursuant to Federal Rule of Civil Procedure 38(b) Plaintiffs hereby demand a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request the Court to enter judgment in Plaintiffs' favor and against Defendants for:

a.   actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

b.   exemplary and punitive damages sufficient to punish and deter Defendants and others from future wrongful practices;

c.   pre-judgment and post-judgment interest;

d.   reasonable attorneys' fees as provided by law;

e.   costs and expenses of these actions;

f.   statutory damages, treble damages and other relief permitted by the laws of the states that will govern these actions; and

g.   any other relief the Court may deem just and proper.

Dated: ~~April 4, 2021~~_____, 2024          Respectfully submitted,


/s/ *Erin K. Copeland*
Erin K Copeland
TX Bar No. 24028157
Fibich Leebron Copeland & Briggs
1150 Bissonnet Street
Houston, TX 77005
Tel: (713) 751-0025
Fax: (713) 751-0030
ecopeland@fibichlaw.com

**Plaintiffs' Lead Counsel**


/s/ *C. Andrew Childers*
C. Andrew Childers
Georgia Bar No. 124398
Childers, Schlueter & Smith, LLC
1932 N. Druid Hills Rd., Suite 100
Atlanta, GA 30319
Tel: (404) 419-9500
Fax: (404) 419-9501
achilders@cssfirm.com

**Plaintiffs' Liaison Counsel**