# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: PARAGARD IUD PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) |

MDL DOCKET NO. 2974

(1:20-md-02974-LMM)

**This Document Relates to All Cases**

## PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE CUSTODIAL FILES FOR ALL NEW CUSTODIANS IDENTIFIED BY DEFENDANTS NEARLY TWO YEARS AFTER THE COURT ORDERED THEM TO BE IDENTIFIED

Pursuant to Federal Rules of Civil Procedure 26 and 37, Plaintiffs in the above-captioned matter move to compel Defendants to produce the custodial files for all 31 newly identified custodians Defendants have determined are likely to have information relevant and responsive to Plaintiffs' discovery requests yet failed to identify until nearly two years after they were ordered to do so by this Court.[1] Plaintiffs ask for the Defendants to be ordered to produce the files on an expedited basis and at their own expense.

---

[1] As a practical matter, the number of files currently in dispute is only 11. Defendants have agreed to increase the number of permissible custodial file requests from 50 to 60 files *with a provision permitting Plaintiffs to request more should facts discovered warrant additional files*. With the requests still available to them under the original protocol (10) plus the additional 10 offered by Defendants, Plaintiffs would only need 11 more to cover all of the newly identified custodians.

1

As set out more fully below, despite not having complied with any of their own obligations under the 2022 Custodial File Protocol (Dkt. 390) (the "Protocol") and other orders concerning custodians, Defendants have attempted to enforce a select provision in the Protocol that imposes limitations on the number of custodial files Plaintiffs are allowed to request. In doing so, Defendants are attempting to block Plaintiffs' access to relevant and responsive information long withheld from discovery. To be clear, however, the Protocol does not prohibit Plaintiffs from seeking additional relevant custodial files. In fact, the Court contemplated there could be an expansion of the number of files allowed under the Protocol as additional information was revealed in discovery. Further, compelling the production of these newly disclosed and relevant custodial files is necessary to cure the prejudice that has occurred to Plaintiffs as a direct result of Defendants' failure to timely comply with this Court's orders from 2022 concerning the identification of relevant custodians as well as the attendant misconduct, including, but not limited to, staggering delays surrounding custodial file production to date. For the reasons described herein, Plaintiffs ask the Court to compel Defendants to produce all of the newly identified custodial files on an expedited basis and at their expense.

I. **INTRODUCTION & BACKGROUND**

On July 26, 2022, the Court ordered Defendants to identify custodians that were reasonably likely to have material responsive to Plaintiffs' Requests for

Production of Documents. *See* **Ex. A**, July 26, 2022 Tr. at 51:18-25. On November 8, 2022, after many meet-and-confers and orders from the Court, Defendants by and through their prior counsel provided Plaintiffs with total of 51 individuals whom Defendants claimed may have information relevant to Paragard in their custodial files. *See* collective **Ex. B** (November 8, 2022 Teva and Cooper custodial lists).[2] Plaintiffs relied on these lists and representations of counsel as the basis for the majority of their custodial file requests. At the time, in the face of representations from Defendants that only 51 custodians were implicated by the order, a limit of 50 to start seemed reasonable.

On November 21, 2022, an agreed upon Custodial File Protocol was entered in this case. *See* Dkt. 390. Under the Protocol, Plaintiffs were entitled to request a total of 50 custodial files. Under the same protocol, Defendants were given 75 days from the date of the first-round request(s) to substantially complete the production of each custodial file requested and an additional 45 days for a privilege log applicable to each custodian. Even with the extended time frames for Defendants to

---

[2] Some variation of these lists had been previously provided to Plaintiffs' Counsel containing scant information about the custodian to enable Plaintiffs to make an informed file request. The Court subsequently ordered Defendants to provide more detailed information and that was finally completed in November 2022 (nearly four months after the original order), or so we thought. Since then, there were never any changes made by Defendants to their custodian list until May 2024 (Teva) and June 2024 (Cooper) when a total of 31 brand new custodians were identified. This was well after Plaintiffs had nearly exhausted the majority of their custodial file requests under the Protocol.

complete production, the Protocol contemplated that the production of all requested custodial files would be completed in 2023.

Before entering the negotiated Protocol, the Court made clear that the custodial file process would be an iterative one and that 50 custodians was only a starting point, depending on how discovery played out. *See* **Ex. C**, Sept. 27, 2022 Tr. at 16:1-17:19. The Court specifically stated:

> I think that this [custodial file protocol] will give you the *starting* point that you need….[a]nd if it doesn't work, we can go from there. But what's important I think is we really start this process, we get some protocol in place with the idea that *it's not kind of the end of the process either*…[A]t least that will give you more of a list to start from, and then we can grow that, if necessary[.]

*Id* (emphasis added).

As discussed in a number of status conferences and as demonstrated in multiple letter briefs to the Court (including, but not limited to, the letter briefs concerning the late production of Siyu Liu, Thomas Mehs, and Jennifer Gates' custodial file documents), Defendants have failed to meet any of their obligations as it relates to identifying relevant custodians and producing custodial files. More specifically, Defendants failed to timely identify relevant custodians as ordered by the Court in July 2022. Moreover, they have failed to timely produce any substantially complete custodial files in accordance with the Protocol they now want to enforce against Plaintiffs.

In September of 2023 and February 2024, new counsel for Teva and Cooper was formally appointed respectively. *See* Dkt Nos. 549 and 626. At the February 2024 Teva Discovery Summit, new counsel for Teva confirmed to Plaintiffs that they had identified deficiencies in past productions and were therefore, among other things, re-interviewing custodians, interviewing new custodians, gathering more custodial and general production documents, and collecting the new custodial files for new (as yet to be revealed at that time) custodians.[3]

In May and June of 2024, respectively, Plaintiffs' counsel finally received Defendants' updated custodian lists identifying a total of **31 new custodians** (24 for Teva and 7 for Cooper) "who may have documents potentially relevant to Plaintiffs' RFPs." **Ex. D**, May 2024 Teva Final Custodian List and June 2024 Cooper Final Custodian List.[4]

---

[3] It is worth mentioning that Plaintiff did ask for Defendants to share the identity of the new custodians in February and/or on a rolling basis, but that request was denied. Defendants claimed that they were not yet prepared to so and, in fact, as established herein, they never shared the identity of the new individuals until three and four months later, respectively. Had they shared earlier, perhaps, Plaintiffs could have done some independent investigations into the names. Defendants' failure to do so only served to further delay and essentially box Plaintiffs into a compressed period within which to analyze, request, wait for production, then review and, maybe, depose.

[4] **Exhibit D** contains highlights by Plaintiffs' Counsel to identify the newly disclosed custodians. Notably, in addition to the 31 brand new names, Defendants also added a number of custodians who Plaintiffs had learned about themselves through discovery and made previous file requests despite never having been disclosed by Defendants on their original list. A number of these particular custodians have proven to be key pharmacovigilance related witnesses (an area where Plaintiffs have

On its face, the descriptions for each newly disclosed custodian make it clear that each has information relevant to this litigation. Defendants specifically identy: (1) each custodian's job responsibility as it pertains to Paragard, (2) their general connection to Paragard (*i.e.,* pharmacovigilance, marketing etc.), (3) the specific RFP(s) to which each custodial file may have responsive documents, or, in some instances, (4) all of the above.  *See* **Ex. D,** May 2024 Teva Final Custodian List and June 2024 Cooper Final Custodian List. After many meet-and-confers, Defense Counsel ultimately proposed that Plaintiffs could only request an additional 10 custodial files. So, assuming these lists do not have the same issues as the last (*e.g.* leaving key people off) and also assuming Plaintiffs did not need any of the other identified individuals once they learned more from all of the new documents Defendants have been producing since new counsel took over yet should have been produced long ago, Plaintiffs are forced to leave out 11 of the newly disclosed custodial files who Defendants now admit have material responsive to this case. **Ex. E**, correspondence.[5]

---

consistently argued that Defendants' have improperly withheld discovery) who Defendants could have and should have disclosed on their own years earlier.

[5] On July 22, 2024, Plaintiffs' counsel requested 5 of the newly disclosed custodians in order to get the clock started for a small number of individuals. Plaintiffs have requested the custodial files of Cynthia, D'Angelo, Hermany Kawadgiri, Matt Donnelly, Charles Kennedy and Richard Harle.

Based on the limited information known about these new custodians, it is unclear how Plaintiffs are to meaningfully select which files to request at this late date and which are to be left out. In fact, Plaintiffs have engaged in this exercise with the prior lists and problems ensued.[6] Plaintiffs simply do not have sufficient information to risk picking the wrong subset of these newly identified custodians. At this stage, they also do not have enough time to sit back and wait and see what they can learn about these individuals in the normal course of discovery with the currently compressed schedule that came about through no fault of Plaintiffs.

To the contrary, Defendants have always had information about these custodians and their counsel (prior and new) could have and should have obtained and shared the information well before May/June 2024 when the new names were first disclosed to Plaintiffs. Regardless, they have now admitted these individuals have relevant and responsive information. There is no legitimate reason for them not to produce that information. Had Defendants properly disclosed the identity of

---

[6] For example, as stated above, Plaintiffs made the majority of their initial custodial file requests relying on Defendants' representations that the prior list of 51 individuals had relevant information in their custodial files. After exhausting at least 3 of those requests and waiting an extended period of time for those files to be produced late, Defendants' prior counsel determined themselves that the custodians did not have relevant information despite being on their list and depositions were canceled after time and resources were spent reviewing. New counsel recently agreed to remove these from Plaintiffs' total requested file count but it is unclear whether that was a concession contingent upon our acceptance of their offer to accept only 10 additional files on top of the Protocol and leave out the remaining 11. Hence, our inability to agree to Defendants' standing proposal.

7

these new custodians nearly two years ago when they were ordered to do so by this Court, Plaintiffs would not be in the position that they find themselves now. They could have conducted discovery earlier to learn more about these individuals and to make an informed choice about which to pick without the pressure of a compressed discovery period.

What is more, it is simply unfair for Plaintiffs to be forced to miss out on evidence Defendants admit is relevant and responsive to Plaintiffs' RFPs by virtue of contrived limitations in a procedural custodial file protocol. Plaintiff served proper RFPs and Defendants are now admitting that the newly identified individuals have documents responsive to some of their requests (responses to which were due years ago). Now, if the protocol is forced one way against Plaintiffs, Plaintiffs have to essentially pick which of their properly served RFPs they want responded and which they want to ditch solely because of the parameters of a protocol that was irrefutably described as a "starting point," not a final end point. That is wholly unfair and prejudices Plaintiffs' ability to discover material information. The one sided unfairness is underscored by all of the discovery issues and delays that have plagued this litigation through no fault of Plaintiffs.

## II.   LEGAL STANDARD

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any matter that is not privileged, and which is relevant to the subject matter

involved in the pending action. *See* Fed. R. Civ. P. 26(b)(1). Under the Federal Rules, relevancy is construed broadly. *Callaway v. Adcock*, No. 2:20-cv-00598-SRW, 2021 WL 8316457, at *3 (M.D. Ala., May 26, 2021). The initial burden is on the party seeking discovery to demonstrate that the discovery requested is relevant. *Reichert v. Hoover Foods, Inc.,* U.S. Dist. LEXIS 116218 at *2-3 (N.D. Ga. July 25, 2017). Then, "[t]he party resisting discovery has the burden to show that the information is not relevant or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure." *Whitesell Corp. v. Electrolux Home Prods. Inc.*, 2019 U.S. Dist. LEXIS 24292 at *7 (S.D. Ga. Feb. 14, 2019) (internal citation omitted).

When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Gov't Emples. Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*, 2017 U.S. Dist. LEXIS 228379 at *6 (M.D. Fla. Mar. 20, 2017) (internal citation omitted); *see also Panola Land Buyers Ass'n. v. Shuman,* 762 F.2d 1550, 1559 (11th Cir. 1985) (A party opposing a motion to compel discovery "bears the burden of

establishing that the requested discovery is improper, unreasonable or burdensome.")

If one party does not comply with discovery requests, the opposing party may seek a motion to compel discovery responses. *See* Fed. R. Civ. P. 37(a)(1). The decision to grant or deny a motion to compel is within the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) ("Case law states that a motion to compel discovery is committed to the discretion of the trial court . . . ."). "[A] district court is allowed 'a range of choice'" in deciding whether to grant or deny a motion to compel discovery responses." *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006).

### III.  LEGAL ARGUMENT

#### A. Defendants Should be Compelled to Produce all 31 Newly Disclosed Custodial Files as Each Such Custodian is Likely To Possess Relevant and Responsive Information

Here, it is irrefutable that all 31 newly disclosed custodians are relevant and should be produced. Indeed, the "final" custodial lists recently submitted by Defendants in 2024 state each custodian's specific involvement with Paragard, the Requests for Production to which each such custodian's custodial files are responsive to, or, in some instances, both. *See supra* charts, pp. 3-8. It is well established that where a party can show that the requested discovery is relevant, there

is a strong presumption in favor of compelling such discovery unless the opposing party can prove that the requested discovery is inappropriate.

For example, in *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 202294, *9 (Fla. N.D. Nov. 29, 2019), in granting the plaintiffs' motion to compel additional custodial files, the Court held that the relevant inquiry was "whether the ESI from Dr. Carlson's custodial files from 2003-2006 likely will disclose information that will be useful to the issues in this case." In holding that the requested custodial files were indeed relevant, and compelling production of the same, the court rejected the defendant's arguments concerning duplicity and proportionality. *Id*. at *5, 8-9 ("[A]lthough no one factor is designed to outweigh the other factors, as a practical matter, the determination here hinges upon whether Dr. Carlson's custodial files is important to resolution of the issues in this case."); *see also In re Arby's Rest. Grp. Inc. Litg*., 2018 U.S. Dist. LEXIS 233650 at *17-18 (N.D. Ga. Aug. 16, 2018) (holding that proportionality factors favor the defendants' production of two additional custodians: "Arby's as the resisting party, has not carried its burden of showing 'specifically how the objected request is unreasonable or otherwise unduly burdensome.'") (internal citations omitted); (*Amin v. NBCUniversal Media, LLC*, 2023 U.S. Dist. LEXIS 211480 at *8 (S.D. Ga. Nov. 28, 2023) (noting that the plaintiff's motion to compel additional custodial files

responsive to certain requests for production of documents "turns on the potential relevance of the additional documents Plaintiffs has requested.")

For illustration purposes, the District Court for the Southern District of New York's ruling in *Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 105 (S.D.N.Y. 2013) is particularly instructive to the issues at play here. In that securities case, the plaintiffs sought to compel the production of 30 additional custodial files from defendants.  The defendants conceded that 15 of the 30 new proposed custodians were members of "working group lists associated with the relevant offerings." *Id.*  The defendants, however, argued that the appearance of an individual's name on a working group list was insufficient to establish their relevance, and that the lists were overbroad and duplicative.  The court rejected the defendants' arguments and held that the "presence of these proposed custodians on the working groups lists is sufficient to establish that their inclusion in ESI searches is reasonably calculated to lead to relevant evidence that might not be captured if they were excluded." *Id*. at 106.

Here, the same rationale applies.  Counsel for Defendants included each of the 31 new custodians on their final custodian lists and they admitted the individuals "may have documents potentially relevant to Plaintiffs' RFPs." **Ex. D**, May 2024 Teva Final Custodian List and June 2024 Cooper Final Custodian List.  Defendants cannot now credibly argue that any of these custodians do not possess information

relevant to the claims and issues in this litigation. Therefore, they should be compelled to produce that material.

B. **<u>Defendants' Failure to Comply With This Court's Order and Give Plaintiffs Accurate and Complete Information Pertaining to Custodians has Prejudiced and Continues to Prejudice Plaintiffs in this Litigation.</u>[7]**

As described herein, Plaintiffs have been and will continue to be prejudiced by Defendants' withholding of the identity of relevant custodians that they could have and should have previously disclosed years ago and by their failure to timely produce custodial files under the same protocol they want to now use as a sword against Plaintiffs. Indeed, as established herein, over two years ago, on July 26, 2022, the Court ordered Defendants to identify custodians that were reasonably likely to have material responsive to Plaintiffs' Requests for Production of Documents. *See* **Ex. A**, July 26, 2022 Tr. at 51:18-25. Subsequently, at the August 26, 2024 Status Conference, Plaintiffs' counsel emphasized the importance of the custodial file process/protocol in terms of staging out discovery and depositions: "We first need

---

[7] To reiterate, the true number in dispute as to these new custodians is only 11. Under the original Protocol, Plaintiffs were already entitled to 50. Defendants have agreed to an additional 10. Assuming Plaintiffs exhaust the remainder of their picks under the Protocol solely on the newly identified custodians (to the exclusion of others previously identified or even new/currently undisclosed witnesses who may prove to be relevant based on the mountains of new material Defendants have dumped on Plaintiffs recent weeks similar to what has happened in the past) and accept the additional 10 offered by Defendants all on the newly identified custodians (again, leaving no room for any others about which they may learn more during discovery), the remaining newly identified files in dispute is only 11.

13

to get the custodial file. We need to review it. We need to decide whether that's a custodian we actually want to depose. And then when we show up for the deposition, we need to know that this is the entire custodial file, that we're not missing pieces of what may be necessary in order to make that deposition important." **Ex. F**, Aug. 26, 2024 Tr. at 26:13-27:11. The Court agreed this was an important process and ordered the parties to meet and confer to get something in writing (a Protocol) for the Court to rule on. *Id*. at 30:3-31:15. Later, on September 27, 2022, the Court held that Defendants had to give Plaintiffs "more information about the people on the [May 2022] list that [Defendants] already provided to [Plaintiffs], which…is the list of the people that you think are the ones who[se] custodial files are the most relevant…Not just 25 names, maybe more like 50 names and a description of what those individuals do with kind of your intelligence as to who may have the most information."[8] **Ex. C**, Sept. 27, 2022, Tr. at 13:7-14:10, 16:1-17:25.

On October 11, 2022, Defendants subsequently updated their May 2022 custodial lists with a slightly more information for each custodian, including their years of employment, job title, and whether each individual was a current employee. **Ex. H**, Combined October 11, 2022 custodial lists. However, this list still did not have enough information for Plaintiffs to make informed decisions about which custodial

---

[8] Defendants' May 27, 2022 list of custodians was simply the names of certain individuals and the departments they were in without any further information. *See* **Ex. G**, May 2022 Custodian Lists.

files Plaintiffs should request. The Court agreed with Plaintiffs, again ordering Defendants to supplement their custodian lists with a brief description of each individual's involvement with Paragard and a column to identify the actual entity each individual worked for. **Ex. I**, Oct. 25, 2022 Tr. at 21:6-22:17.  Finally, nearly four months after the original order, Defendants provided their updated and "final" custodial lists to Plaintiffs on November 8, 2022.  Plaintiffs made strategic custodial file request and depositions picks based the totality of these lists and representations of counsel.

In May/June 2024, nearly two years, it turns out that not only did the November custodial 2022 list contain people with no or limited knowledge pertaining to Paragard,[9] but more importantly perhaps, that Defendants originally withheld *at least* 31 additional relevant custodians who have information pertinent to Paragard. *See* **Ex. D**, May 2024 Teva Final Custodian List and June 2024 Cooper Final Custodian List.  These newly identified custodians (plus the others key pharmacovigilance custodians who Plaintiffs only learned about on their own

---

[9] Custodians Scott Allan, Anthony Oladipo and Gary Tschamber, are those whose files were requested by Plaintiffs based on Defendants' representations but were later determined by Defendants themselves not to have relevant information despite being identified on Defendants' court ordered custodian list. So, after wasting 3 requests and spending time and energy reviewing the late produced material, these were set aside.

through discovery because they were also withheld from the original lists) could have and should have been disclosed years earlier.

Had Plaintiffs received this information two years ago as ordered, they would have had ample time to conduct appropriate discovery to learn more about these witnesses and then make informed decisions about which custodians to select. Instead, because of Defendants' actions in failing to disclose these custodians earlier and before Plaintiffs had exhausted most of their custodial requests in reliance upon the representations of prior counsel, Plaintiffs are left with a limited number of requests under the original protocol. Worse, the delay has forced Plaintiffs into a truncated discovery schedule with limited time to meet their other discovery obligations in this case, all the while, Defendants have years to conduct their own internal investigations. Unfairly, Plaintiffs will now be without time to review these newly disclosed custodial files with an eye towards identifying additional relevant custodians, and requesting any additional relevant and non-disclosed custodians, which Plaintiffs have already had to do with certain key witnesses. In short, Defendants' failure to identify these new custodians when originally ordered by the Court has prejudiced Plaintiffs' ability to conduct adequate discovery in this case and will continue to prejudice Plaintiffs in the future (including but not limited to further delays in discovery and ultimately setting a trial date or go forward without all of the information Defendants have in their hands) if Defendants are not ordered

to simply produce the remaining files and to do so on an expedited basis at their own expense.

As stated above and reflected in the Court ordered Protocol, Defendants were required to follow a precise process/schedule with respect to the production of custodial files. That process started with what was supposed to be a list of custodians Defendants (the holders of the information) believed would have relevant and responsive information. Time has shown that Defendants' original lists were wholly deficient and these deficiencies have caused Plaintiffs harm. In addition to disregarding the Court's order to provide a list of custodians back in 2022, Defendants also wholly disregarded the schedule negotiated by them and ordered by the Court. In fact, they have failed to meet even a single custodial related deadline. Accordingly, Defendants should be compelled to produce all of the 31 new custodial files on an expedited basis and at their expense. Plaintiffs also request that Defendants, including any of their necessary document production vendors with knowledge of technical issues, be ordered to meet and confer within 3 business days after the Court's ruling on this Motion to discuss a reasonable schedule for production on an expedited basis in which such custodial files must be produced. If the Parties are unable to agree to an expedited schedule, Plaintiffs propose that the parties submit their competing proposals to the Court no later than 7 business days following the Court's ruling on Plaintiffs' Motion.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully requests the Court compel Defendants to produce the custodial files for all 31 of the newly identified custodians.

Dated: August 8, 2024

                                                ***/s/ Erin Copeland***
                                                Erin Copeland
                                                TX Bar No. 24028157
                                                FIBICH LEEBRON COPELAND & BRIGGS
                                                1150 Bissonnet St
                                                Houston, TX 77005
                                                Tel: (713) 751-0025
                                                Fax: (713) 751-0030
                                                ecopeland@fibichlaw.com

                                                **/s/ *Kristen Hermiz***
                                                Kristen Hermiz
                                                SC No. 100482
                                                Motley Rice, LLC
                                                28 Bridgeside Blvd.
                                                Mt. Pleasant, SC 29464
                                                Tel: (843) 216-9390
                                                Fax: (843) 216-9450
                                                khermiz@motleyrice.com

## CERTIFICATE OF SERVICE

I certify that on this 8th day of August 2024, a copy of the forgoing Motion to Compel was served on all counsel of record via Pacer and a courtesy copy was sent to Defendants' respective lead and liaison counsel via email.

/s/ Erin K. Copeland
Erin K. Copeland
Fibich, Leebron, Copeland & Briggs
1150 Bissonnet Street
Houston, Texas 77005
Telephone: 713-352-0470
ecopeland@fibichlaw.com

**Lead Counsel for MDL Plaintiffs**