## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: PARAGARD IUD PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | MDL DOCKET NO. 2974 Case No. 1:20-md-02974-LMM  This Document Relates To All Cases |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE CUSTODIAL FILES

Plaintiffs have filed a "Motion to Compel Defendants to Produce Custodial Files for All New Custodians Identified by Defendants Nearly Two Years After the Court Ordered Them to Be Identified."  Dkt. No. [698] ("Pls.' Mot.").  The entire motion is based on a false premise.  The Court has never ordered Defendants to specifically identify custodians of potentially relevant materials on an ongoing basis.  Rather, the obligation to identify requested custodians under the Custodial File Protocol, Dkt. No. [390], and the Court's rulings in case management conferences has always rested with the Plaintiffs.

The Court has ordered that if Plaintiffs wish to obtain additional custodial files beyond what is provided for in the Custodial File Protocol, they must articulate a reason why.  They failed to do so during meet-and-confers with Defendants, and they fail to do so now.  Further, Plaintiffs do not provide any reason why they could

not have asked for these custodial files before now, and it would be disproportional and unduly burdensome for Defendants to produce the entirety of these files as Plaintiffs demand with their motion.  Plaintiffs' motion should be denied.

## FACTUAL BACKGROUND

The production of custodial files has been a topic of discussion at a number of Case Management Conferences.  Those discussions and the Court's rulings are not accurately described by Plaintiffs in their Motion.

Plaintiffs assert that "on July 26, 2022, the Court ordered Defendants to identify custodians that were reasonably likely to have material responsive to Plaintiffs' Requests for Production of Documents."  Pls.' Mot., p. 13 (citing Pls.' Ex. A, July 26, 2022 Tr. at 51:18–25).  This does not accurately depict the Court's statements.  At the cited portion of the transcript, the Court proposed that a way to answer Plaintiffs' overbroad requests for production for "communications" could be to "answer it by saying, these are the people that reasonably have this information in their files and we are producing their files, or if that's too messy, we're just producing their e-mail correspondence."  Ex. 1, 7/26/2022 Tr. at 51:18–25.

This approach of responding to requests was discussed further at subsequent CMCs.  On September 27, 2022, the Court expressed its understanding that this list was merely a starting point based on the information known at that point in time, stating it "**doesn't give Plaintiffs the comprehensive list of everyone that may**

2

**have discoverable information at this point in time, but it does allow us to get started on the custodial file process** . . . ."  Ex. 2, 9/27/2022 Tr. at 16:17–20 (emphasis added).  At that time, it was clearly understood by all involved that this list was simply a way to get the process started and that thereafter it would be Plaintiffs' responsibility to identify custodial files they would like produced based on their review of the discovery.  Ex. 3, 17:2–11 ("I see this as being kind of an iterative process where **you [Plaintiffs] identify** people whose custodial files you [Plaintiffs] want, we're at simultaneously doing other document production, you're doing depositions.  And so your ability to access that information will increase as these other parts of discovery continue.  And so I think that this will give you [Plaintiffs] the starting point you need, but I think the other parts of discovery we're doing is going to kind of help that.") (emphasis added).  At the October 25, 2022, CMC, the Court was clear that the list "***is not a discovery response***.  This is conferring to help us get down the road."  Ex. 4, 10/25/2022 Tr. at 22:23–25 (emphasis added).  The Court asked Defendants to include more detail about the persons in the chart, but was still clear that it was "not requiring you to tell Plaintiffs who should be the custodian file people, but to give just a little more information so that we can be further down the road . . . ."  Ex. 5, 21:18–23.  Rather, the burden to identify custodians remained with the Plaintiffs.  Ex. 6, 22:25–23:1 ("They [Plaintiffs] have the documents and they can see and they can find out other people

they want…").  Defendants produced a list of 51 potential custodians shortly after, on November 8, 2022.  This list was produced in good-faith based on the information Defendants had at that time.

The Custodial File Protocol was entered on November 21, 2022.  Dkt. No. [390].  The Custodial File Protocol specifically named the first six individuals whose custodial files were to be produced, but after that, it was up to ***Plaintiffs*** to identify the custodial files to be requested and then produced.

After new counsel for Teva was appointed, they agreed in a showing of good faith that after additional review of documents they would provide an update of the custodian list provided in 2022—even though there was no specific order from the Court requiring them to do so.  In May and June of 2024, Defendants provided updated custodian lists identifying 31 additional potential custodians (24 for Teva and 7 for Cooper).

At the May 24, 2024 CMC, Plaintiffs raised that they may want to obtain additional custodial files from persons on the list.  The Court stated that if Plaintiffs wanted additional custodial files they should articulate a "justifiable explanation" for that need.  Ex. 7, 5/24/2024 Tr. at 14:14–21 ("[i]f the need for more is necessary because of the way that production has happened, **and there is a justifiable explanation for that from the Plaintiffs' perspective**, that's more likely for me to allow versus, we had a number set, we just want more.") (emphasis added); Ex. 8,

4

15:1–5 ("from my perspective if the Plaintiffs need more, then it's going to be, why do you need more?  Why do you need this one?").

On June 28, 2024, counsel for Cooper emailed Plaintiffs' counsel and informed them that they had 7 requests remaining under the Custodial File Protocol, and that Defendants would offer them three additional requests because three of the initially identified custodial files (Allan, Oladipo, and Tschamber) did not have as much responsive information as had been expected.  *See* Ex. 9.  Thus, Plaintiffs had 10 requests remaining.  Defendants also stated that they were willing to further compromise with Plaintiffs, although they would not agree to produce all 21 remaining custodial files for newly identified custodians. *Id.*

Then, on July 16, 2024, counsel for Teva sent an email confirming that, in addition to the 10 requests remaining under the Custodian File Protocol, Defendants would be willing to agree to an *additional* 10 custodial requests as a compromise, in exchange for Plaintiffs' agreement not to seek further custodial files beyond this new limit unless Plaintiffs first identified a basis (such as newly discovered information developed during the course of discovery) for the additional requests.  *See* Ex. 10. Defendants stated that this offer was a significant showing of good faith in light of the burdensome costs associated with the production.  *Id.*  However, Defendants said that if Plaintiffs still believed they needed additional custodial files, Defendants would be willing to meet-and-confer on such requests.  *Id.*   In other words,

Defendants offered 10 additional custodial files beyond what was provided for in the Custodial File Protocol—no questions asked—and were open to entertaining more requests if Plaintiffs could, as the Court put it, articulate a "justifiable explanation" for the need.

Plaintiffs did not accept this offer.  Instead, they filed this motion, asking for custodial files from all 31 individuals, without ever articulating any "justifiable explanation" for a single one.  The day after the filing of the motion, Plaintiffs requested yet another custodial file.  Accounting for the four credits Defendants offered to Plaintiffs for the three individuals who did not have much relevant information and the one person who had no custodial file, Plaintiffs presently have four requests unused under the Custodial File Protocol.  A chart of the custodial file requests in included as Appendix 1.

## ARGUMENT

"The party moving to compel discovery has the initial burden of proving the requested discovery is relevant and proportional," and "[t]he responding party must then specifically show how the requested discovery is unreasonable or unduly burdensome." *Delta Air Lines, Inc. v. Marriott Intl., Inc.*, No. 20CV01125ELRJCF, 2021 WL 12121916, at *4 (N.D. Ga. June 25, 2021), *aff'd*, No. 1:20-CV-01125-ELR, 2023 WL 7333859 (N.D. Ga. June 22, 2023) (citation omitted).  District courts have "broad discretion to compel or deny discovery." *United States v. Cuya*, 964

F.3d 969, 970 (11th Cir. 2020); *see also Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 676 (N.D. Ala. July 10, 2015) ("The scope of discovery is largely within the discretion of the trial court because discovery should be tailored to the issues involved in the particular case") (cleaned up).  Consistent with that discretion, "a district court is allowed 'a range of choice' in deciding whether to grant or deny a motion to compel discovery responses." *Martin v. Ward*, No. 1:18-CV-4617-MLB, 2021 WL 1186749, at *2 (N.D. Ga. Mar. 30, 2021) (quoting *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006)).

## I.   Defendants have not violated any Court order to identify custodians.

The entire premise of Plaintiffs' motion is flawed.  Plaintiffs start with the assumption that the initial list of potential custodians provided by Defendants was a definitive list of custodians and that Defendants were under a Court order to update that list.  That is plainly not what was contemplated by the parties or the Court.

As described above, the Court was clear that the initial list was not a "comprehensive list of everyone that may have discoverable information" and "not a discovery response" but, rather, was a starting point to help get the custodial file process started.  *E.g.* Ex. 2, 9/27/2022 Tr. at 16:17–20; Ex. 4, 10/25/2022 Tr. at 22:23–25.  Defendants provided the list in good faith based on their understanding of the documents at that point in time.  After that point, and under the Custodial File Protocol, it was up to *Plaintiffs* to review discovery and identify their chosen

custodians.  *See, e.g.*, Ex. 6, 10/25/2022 Tr. at 22:25–23:1 ("They [Plaintiffs] have the documents and they can see and they can find out other people they want…").

Not only do Plaintiffs wrongly seek to shift the burden of identifying custodians to Defendants, their claim in their Motion that they are unable "to meaningfully select which files to request at this late date and which are to be left out" until May or June of 2024 is simply false.  ECF No. 698, p. 7.  Plaintiffs are in possession of the discovery and can identify for themselves the witnesses for whom they would like custodial files produced.  **Every single one** of the 31 witnesses highlighted in Exhibit B to Plaintiffs' Motion was identified long ago through document discovery, and 14 out of the 31 witnesses were discussed in deposition exhibits and/or in the depositions themselves.  Examples of references to these witnesses in the documents and depositions is included as Appendix 2, with the supporting documentation attached collectively as Exhibit 11.

Plaintiffs' argument that they had no way of knowing about these witnesses until they were identified in May and June of 2024 when the witnesses were included in the discovery productions and many were discussed in depositions taken years ago is simply not credible.  The reason that Plaintiffs have not offered any "justifiable explanation" for their belated additional requests is that there is none.  They have known about these witnesses for years.

Plaintiffs' argument is that "it is simply unfair for Plaintiffs to be forced to miss out on evidence Defendants admit is relevant and responsive to Plaintiffs' RFPs by virtue of contrived limitations in a procedural custodial file protocol."  Dkt. No. [698] at 8.  Having agreed to the custodial file protocol as the method for identifying and producing custodians and operated under it for years, Plaintiffs cannot simply throw out the process now that they worry it may be disadvantageous.

Under the Court's repeated rulings and the agreed-upon Custodial File Protocol, Plaintiffs have always had the obligation to identify the custodians whose files they wish produced.  Plaintiffs have not used up all of those requests.  And even though the Court has told the Plaintiffs they have the ability to seek additional custodial files beyond that if they only articulate a "justifiable explanation," they continue to fail to do so.  The Court should reject Plaintiffs' unsupported request for additional custodial files.

## II.     Plaintiffs' argument that delays in production of certain custodial files entitles them to all files is without merit.

Failing to identify a justifiable explanation for the need for the files, Plaintiffs try to seek the files as a punitive measure, arguing that they are entitled to the 31 custodial files because of Defendants' alleged delays in custodial file production. This is nothing but a thinly veiled request for sanctions, made without citing any law and without full evidentiary support.

"The party seeking sanctions under Rule 37 bears the burden to show that an opposing party failed to comply with discovery-related obligation under the federal rules or a court order."  *Middlebrooks v. Equifax, Inc.*, No. 1:20-CV-1825-SCJ-JSA, 2021 WL 8268127, at *3 (N.D. Ga. Dec. 14, 2021), *report and recommendation adopted*, No. 1:20-CV-1825-SCJ-JSA, 2022 WL 1286289 (N.D. Ga. Feb. 3, 2022) (citation omitted).  "Even where a violation has occurred, the proponent of sanctions retains the burden to show the appropriateness of the requested sanction."  *Id.*

Plaintiffs have not properly supported any request for sanctions.  The motion is not supported by proper documentation, and Plaintiffs' recitation of the facts supporting their request is riddled with inaccuracies.

For example, Plaintiffs state without any support that Defendants "have failed to meet even a single custodial related deadline," Pls.' Mot., p. 17, when in fact the recently requested custodial files of Avidan, Cullen, Hall, Paolucci, and Spotts were all produced **two weeks ahead of schedule**.   Ex. 12.[1]  The Teva Defendants also met the July 5, 2024, deadline to conclude TAR sampling/validation of the general custodial population and three specific custodians selected by Plaintiffs. The Cooper Defendants beat their deadline by a week.  And Plaintiffs mislead the Court by saying they "wast[ed] 3 requests" because three custodians initially identified were

---

[1] At the time of the July CMC, it was believed that production of the custodial file of Elbaz was also substantially complete. However, there were issues with the production that are being resolved.

10

ultimately determined not to have much relevant information.  Pls.' Mot., p. 15, n.15.

Plaintiffs neglect to mention that Defendants did not count these three custodians

against Plaintiffs' total under the Custodial File Protocol, so they did not "waste"

those requests in any sense.  *See* Ex. 9.  Further, Plaintiffs are incorrect in saying

that "the true number in dispute as to these new custodians is only 11."  Pls.' Mot.,

p. 13 n.7.  As described above, Defendants offered Plaintiffs additional custodians

as a compromise to avoid this very motion, but *Plaintiffs rejected that offer*.  The

offer of 10 additional custodians to avoid defending against this meritless motion is

therefore no longer available.

Plaintiffs' request for all 31 files as a sanction should be rejected out of hand.

In addition, their request to have the files produced "on an expedited basis," should

be rejected, as it conflicts with Plaintiffs' own agreement at the May 24, 2024 CMC,

where they agreed to extend the time for custodial file production to 75 days.  Ex.

13, 5/24/24 Tr. at 6:25–8:1.

### III.   Plaintiffs' request for all 31 custodial files would be disproportionate and unduly burdensome.

Notwithstanding all the other shortcomings with Plaintiffs' request, it should

also be rejected because their request for production of all 31 custodial files—

without any showing of need—would be disproportionate and unduly burdensome.

Rule 26(b) provides that "[p]arties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and proportional

11

to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Rule 26 also provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

"Both 'good cause' and 'undue burden' require balancing the rights of each party." *Martin v. Ward*, No. 1:18-CV-4617-MLB, 2021 WL 1186749, at *6 (N.D. Ga. Mar. 30, 2021) (citing omitted).  "'Undue burden" looks at the relevancy of the information a plaintiff is seeking and the burden of disclosure on the opposing party." *Id.*  "The undue burden analysis thus requires the Court to balance the interests served by requiring production of the discovery requested (that is, the benefit to Plaintiff) against the interest furthered by preventing disclosure (that is, the burden on Defendants)." *Id.*  Even where the documents are relevant, "Rule 26 provides courts with 'significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case and the parties' resources.'" *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 09 Civ. 2137 (LTS)(SN), 2013 WL 4838796 at *1 (S.D.N.Y. Sept. 11, 2013) (Netburn, M.J.) (quoting The Sedona Conference, The Sedona Conference Commentary on Proportionality in Electronic Discovery, 11 Sedona Conf. J. 289, 294 (2010)).

Plaintiffs cite the decision of *Ft. Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, as "particularly instructive," but the court's ruling there was specific to the role of the identified working group in the securities offering at issue. *Ft. Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013). The reasoning cannot be interposed on an entirely different industry and setting. Further, Plaintiffs ignore that the court in that case ruled that "the plaintiffs must demonstrate that the additional requested custodians would provide unique relevant information not already obtained." *Id.* This is similar to the court's ruling here that additional custodian requests must be supported with a "justifiable explanation," something Plaintiffs here have failed to do.

"Plaintiffs do not need, and are not entitled under the rules of proportionality, to every single document related" to a discoverable issue. *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09-CV-02137 LTS SN, 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013). In *In re Morgan Stanley Mortgage*, the court rejected the plaintiffs' request for an expanded list of custodians because the plaintiffs did not establish "why, specifically, they are likely to have unique responsive documents." *Id.*

The same is true here. Plaintiffs have made no attempt to establish why they need these particular custodians' files and why they are likely to have unique responsive information in light of all the central source documents and custodial files

13

already produced. Indeed, the Teva Defendants have already produced hundreds of thousands of documents from central sources, which cover topics including, but not limited to, manufacturing, labeling, marketing, design, testing, regulatory, SOPs, pharmacovigilance and complaint handling. Defendants have also produced, at Plaintiffs' request, 46 custodial files (plus three additional which have not been included in the count), and the TAR review process utilized in producing these materials has been validated and approved by the parties.

In sum, Plaintiffs have made no showing whatsoever as to the need for these documents. On the other hand, the burden of production is great. As explained in the attached Declaration of Gregory Walsh, Ex. 14, it would cost Defendants approximately $2,153,324 to produce the 31 requested custodial files (not including the substantial ongoing hosting costs). This expense is unduly burdensome, particularly in light of the fact that Plaintiffs have not articulated the need for a single one of these custodial files even when the Court has ordered them to do so.

## CONCLUSION

For all these reasons, Plaintiffs' motion to compel should be denied.


Respectfully submitted, this 22nd day of August, 2024.


*/s/ Christopher D. Morris*
Christopher D. Morris

Butler Snow LLP
Renaissance at Colony Park Suite 1400
1020 Highland Colony Parkway
Ridgeland, MS 39158
Telephone: (601) 985-4437
chris.morris@butlersnow.com
**Lead Counsel for the Teva Defendants**


/s/ Caroline D. Walker
Caroline D. Walker
Butler Snow LLP
One Federal Plaza
Suite 1000
1819 Fifth Avenue N.
Birmingham, AL 35203-2118
Telephone: (205) 297-2200
caroline.walker@butlersnow.com
**Lead Counsel for the Cooper Defendants**

15

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that I have prepared the foregoing in compliance with Local Rule 5.1 in Times New Roman 14-point font.

This 22nd day of August, 2024.

*/s/ Christopher D. Morris*
Christopher D. Morris

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this day I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to registered attorneys of record.

This 22nd day of August, 2024.

*/s/ Christopher D. Morris*
Christopher D. Morris

**Appendix 1**

| # | Custodian |
|---|---|
| N/A (predates Custodial File Protocol) | Gates, Jennifer |
| N/A (predates Custodial File Protocol) | Mehs, Thomas |
| 1 | Mulligan, Valerie |
| 2 | Larijani, Susan |
| 3 | Wasielewski, Paul |
| 4 | Desai, Vrunda |
| 5 | Keller, James |
| | Tschamber, Gary* |
| | Allan, Scott* |
| 6 | Bonilla, David |
| 7 | Bonk, Kenneth |
| 8 | Chappell, Ali |
| 9 | Colon, Mildred |
| 10 | Gee, Donald |
| 11 | Glennon, Timothy |
| 12 | Liu, Siyu |
| | Oladipo, Anthony* |
| | Ochana, Orli* |
| 13 | Piper, Kenneth |
| 14 | Reape, Kathleen |
| 15 | Rose, Erin |
| 16 | Sheehan, Matthew |
| 17 | Angelo, Brenda |
| 18 | Baszczewski, Kathleen |
| 19 | Topliff, Matthew |
| 20 | Godshall, Joyce |
| 21 | Heinrich, Russell |
| 22 | Das, Ajaya |
| 23 | Schiliro, Mary |
| 24 | Voliovitch, Hedva |
| 25 | James, Leonard |

| | |
|---|---|
| 26 | Howard, Brandon (Brandi) |
| 27 | McCarthy, Katie |
| 28 | Hobbs, Renise |
| 29 | Peets, Ann |
| 30 | Zander, Judith |
| 31 | Johnson, Roaida |
| 32 | Nicholas, J. Michael |
| 33 | Delahanty, Patrick |
| 34 | Miley, Dennis |
| 35 | Avidan, Hila |
| 36 | Cullen, Valerie |
| 37 | Elbaz, Eric |
| 38 | Hall, Matt |
| 39 | Paolucci, Carolyn |
| 40 | Spotts, Kimberly |
| 41 | D'Angelo, Cynthia |
| 42 | Kawadgiri, Hemant |
| 43 | Donnelly, Matt |
| 44 | Kennedy, Charles |
| 45 | Harle, Richard |
| 46 | Wackenhut, Judith |

\* Witness not counted by Defendants against the total number of custodial file requests.

**Appendix 2**
References to Witnesses in Discovery and Depositions
*Documentation provided in Ex. 11*

| | Witness | Sample references in discovery | Sample references in depositions and deposition exhibits | Deposition Excerpts |
|---|---|---|---|---|
| 1. | Babic, Tea.<br><br>*See* Ex. 11A. | Sender of email to Anthony Oladipo regarding FDA Paragard approval website. Produced 01/10/2023; PROD019; Bates Range: MDL2974TWHLLC 291194-MDL2974TWHLLC 291194.<br><br>Sender and recipient of emails to Anthony Oladipo forwarding Paragard PSUR. Produced 01/10/2023; PROD019; Bates Range: MDL2974TWHLLC 291199-MDL2974TWHLLC 291200. | | |
| 2. | Barak, Yael.<br><br>*See* Ex. 11B. | Sender and recipient of emails requesting review and comments to the draft FDA 483 Response following the 2016 Horsham FDA Inspection. | Recipient of email used in 5/23/2023 Deposition of Susan Larijani (Ex. 18); noted to be attendee of meeting described in email. | |

| | | | | |
|---|---|---|---|---|
| | | Produced 01/07/2023; PROD018; Bates Range: MDL2974TWHLLC 156508- MDL2974TWHLLC 156510. Sender of email to Anthony Oladipo asking about Paragard's regulatory submission pathway. Produced: 01/10/2023; PROD019; Bates Range MDL2974TWHLLC 290559- MDL2974TWHLLC 290560. | | |
| 3. | Benbenshiti-Aizen, Rinat. *See* Ex. 11C. | Sender and recipient of emails discussing case entry details with Yael Barak during the 2016 Horsham FDA Inspection. Produced 01/10/2023; PROD019; Bates Range: MDL2974TWHLLC 296807- MDL2974TWHLLC 296809. Sender and recipient of emails discussing | | |

| | | | | |
|---|---|---|---|---|
| | | data processing for Paragard during transition to Cooper. Produced 01/10/2023; PROD019; Bates Range: MDL2974TWHLLC 298165-MDL2974TWHLLC 298167. | | |
| 4. | Bossler, Rebecca. *See* Ex. 11D. | Sender and recipient of emails to Hedva Voliovitch discussing Paragard adverse event investigations. Produced 06/13/2022; PROD007; Bates Range: MDL2974TWHLLC 023516-MDL2974TWHLLC 023520. <br><br> Author of document titled "Quality Assurance Services Lot Level Trending Report." Produced 06/13/2022; PROD007; Bates Range: MDL2974TWHLLC 024506-MDL2974TWHLLC 024506. | | |
| 5. | Chandrasekar, Rajesh. | Sender of email discussing Paragard | | |

| | | | | |
|---|---|---|---|---|
| | *See* Ex. 11E. | Loading and Release PR 60261. Produced 03/17/2023; PROD029; Bates Range: MDL2974TWHLLC 449991-MDL2974TWHLLC 449993.<br><br>Sender of email attaching complaint description and summary for Paragard Lot #513006. Produced 06/16/2022; PROD008; Bates Range: MDL2974TWHLLC 043890-MDL2974TWHLLC 04389. | | |
| 6. | D'Angelo, Cynthia (Kingsley).<br><br>*See* Ex. 11F. | Sender and recipient of emails to Tom Mehs regarding glycerin content and ingredients contained in Paragard insertion tube. Produced 07/07/2022; PROD010; Bates Range MDL2974TWHLLC 084395-MDL2974TWHLLC 084395. | Recipient of email used in 9/8/2023 Deposition of Ali Chappell (Ex. 12); discussed in 5/23/2023 Deposition of Susan Larijani at 21:5-19; Sender and recipient of multiple emails used in 5/23/2023 Deposition of Susan Larijani (Exs, 8, 10, 12, 13, 14, 15) | Q. Is there anybody that replaced Ms. Fedon during the time that you worked with ParaGard?<br>A. Yes.<br>Q. And who was that?<br>A. Cynthia D'Angelo.<br>. . .<br>Q.  And who – who trained the – who – who was responsible for training the folks at WRB with respect to ParaGard?<br>A. That would have been Sally Fedon or Cynthia D'Angelo. |

| | | | | |
|---|---|---|---|---|
| | | Sender and recipient of emails to Jennifer Gates regarding chromium content in Paragard. Produced 07/07/2022; PROD010; Bates Range: MDL2974TWHLLC065003-MDL2974TWHLLC065003. | | 5/23/2023 Dep. of Susan Larijani at 20:20-21:8, 371:25-372:4 |
| 7. | Delicato, Tony. *See* Ex. 11G. | Recipient of email from Tom Mehs attaching a waiver for Paragard secondary packaging as part of its stability procedures. Produced 06/13/2022; PROD007; Bates Range: MDL2974TWHLLC035709-MDL2974TWHLLC035709.<br><br>Sender of email to Tom Mehs regarding divestment to Cooper. Produced 07/07/2022; PROD010; Bates Range: MDL2974TWHLLC084271-MDL2974TWHLLC084274. | | |

| 8. | De Vito, Joseph.<br><br>*See* Ex. 11H. | Sender and recipient of emails to Tom Mehs attaching the internal audit metrics for the Buffalo facility. Produced 11/12/2022; PROD013; Bates Range: MDL2974TWHLLC 106161-MDL2974TWHLLC 106162.<br><br>Edited document titled, "Manufacturing Investigation – Sterility Positive on Stability Testing on Lot 509001 – Testing at Expiration." Produced 06/13/2022; PROD007; MDL2974TWHLLC 032381-MDL2974TWHLLC 032381. | Discussed in 9/29/2023 Deposition of Siyu Liu at 289:17-290:2; recipient of email used in 9/29/2023 Deposition of Siyu Liu (Ex. 22); recipient of email used in 11/17/2023 Deposition Kenneth Piper (Ex. 6); recipient of email used in 5/23/2023 Deposition of Susan Larijiani (Ex. 18); noted to be attendee of meeting described in email. | A.  Joe is from Quality organization. Joe De Vito is from Quality organization.<br>Q.  Okay.  Where was – where was Joe –<br>A.  Joe has been in Horsahm for a period of time, and, then, moved on. I don't know where he is. But he's in the Quality organization, one of the leaders in the Quality – in the Quality organization.<br><br>9/29/2023 Dep. of Siyu Liu at 289:17-290:2 |
| 9. | Dhawade, Avinash.<br><br>*See* Ex. 11I. | Sender of email with Paragard report to be processed. Produced 06/03/2022; PROD006; MDL2974TWHLLC 013279-MDL2974TWHLLC 013280. | | |

| | | | | |
|---|---|---|---|---|
| | | Sender of email attaching Q1 2015 Data for Paragard Load and Release reports and complaints. Produced 11/12/2022; PROD013; Bates Range: MDL2974TWHLLC 090741- MDL2974TWHLLC 090742. | | |
| 10. | Ditrolio, Susan.<br><br>*See* Ex. 11J. | Listed in organization chart. Produced 02/01/2023; PROD025; Bates Range: MDL2974TWHLLC 399167- MDL2974TWHLLC 399167.<br><br>Sender of email to Carolyn Paolucci during 2016 FDA inspection asking for ICS distribution agreement. Produced 01/15/2023; PROD020; Bates Range: MDL2974TWHLLC 324999- MDL2974TWHLLC 325005. | Discussed in 5/23/2023 Deposition of Susan Larijani at 61:9-18. | Q. Can you – can you explain who you corresponded or collaborated with in pharmacovigilance? . . . A. There was a Sue DiTrolio, Renise Hobbs, Joyce Godshall.<br><br>5/23/2023 De[/ of Susan Larijani at 61:9-18. |
| 11. | Dumistracel, Mihaela. | Sender of email to Siyu Liu inquiring | | |

| | | | |
|---|---|---|---|
| | *See* Ex. 11K. | about Paragard signal closure and procedure. Produced 01/10/2023; PROD019; Bates Range: MDL2974TWHLLC 286635-MDL2974TWHLLC 286638.<br><br>Listed in organization chart as Safety Physician. Produced 02/01/2023; PROD025; MDL2974TWHLLC 390292-MDL2974TWHLLC 390292. | | |
| 12. | Fedon, Sally.<br><br>*See* Ex. 11L. | Sender and recipient of emails to Tom Mehs regarding Paragard storage temperature. Produced 07/07/2022; PROD010; Bates Range: MDL2974TWHLLC 066369-MDL2974TWHLLC 066369.<br><br>Sender of email to Tom Mehs asking about the storage temperature of Paragard. Produced | Recipient and sender of emails used in 5/23/2023 Deposition of Susan Larijani (Exs. 16, 17, 20); identified on Powerpoint used in 5/23/2023 Deposition of Susan Larijani as "Therapeutic Area Lead" for Women's Healthcare (Ex. 2); discussed in 5/23/2023 Deposition of Susan Larijani at 20:20-21:8, 371:25-372:4. | Q.  And Sally Fedon under Teva Women's Health, is that how you pronounce her last name?<br>. . .<br>Q. And is she the only employee in this organizational chart who had responsibilities with respect to ParaGard?<br>A. Yes.<br>Q. Is there anybody that replaced Ms. Fedon during the time that you worked with ParaGard?<br>A. Yes.<br>Q. And who was that?<br>A. Cynthia D'Angelo.<br>. . . |

| | | | | |
|---|---|---|---|---|
| | | 07/07/2022; PROD010; Bates Range: MDL2974TWHLLC 066369-MDL2974TWHLLC 066369. | | Q.  And who – who trained the – who – who was responsible for training the folks at WRB with respect to ParaGard? A. That would have been Sally Fedon or Cynthia D'Angelo.<br><br>5/23/2023 Dep. of Susan Larijani at 20:20-21:8, 371:25-372:4 |
| 13. | Gati, Michael.<br><br>*See* Ex. 11M. | Named in document titled, "Consolidated QA Evaluation of PhV Signal Detection Reports." Produced 02/01/2023; PROD025; Bates Range: MDL2974TWHLLC 397105-MDL2974TWHLLC 397133.<br><br>Sender of email to Wendy Huisman discussing Global PhV Internal Audits and CAPAs. Produced 02/02/2023; PROD025; Bates Range: MDL2974TWHLLC 401511-MDL2974TWHLLC 401511. | Sender of email used in 9/29/2023 Deposition of Siyu Liu (Ex. 8) | |

| | | Sender and recipient of emails regarding Paragard and pregnancy on contraceptive. Produced on 06/13/2022; PROD007; Bates Range: MDL2974TWHLLC 029587-MDL2974TWHLLC 029588. | | |
|---|---|---|---|---|
| 14. | Harle, Richard. *See* Ex. 11N. | Sender and recipient of emails editing TrackWise documents used during Paragard divestment to Cooper. Produced 11/12/2022; PROD013; Bates Range: MDL2974TWHLLC 131152-MDL2974TWHLLC 131153.<br><br>Sender and recipient of emails editing Tom Meh's draft SOP on CAPAs. Produced 07/07/2022; PROD010; PROD010; Bates Range: MDL2974TWHLLC 084447- | Discussed in 2/3/2023 Deposition of Thomas Mehs at 66:15-20; Recipient of email discussed in 11/17/2023 Deposition of Kenneth Piper (Ex. 6); Recipient of emails discussed in 2/3/2023 and 3/23/2023 Deposition of Thomas Mehs (Ex. 10 and 25); Sender and recipient of emails used in 9/29/2023 Deposition of Siyu Liu (Ex. 22); identified in 2/3/2023 Establishment Inspection Report used in Deposition of Thomas Mehs at | Q.  Mr. Mehs, when you were working for Teva, who -- to whom did you report? A.  Rich Harle, H-A-R-L-E. Mehs, Thomas 66:15-66:17, Feb. 3, 2023<br><br>Q    And if you look at the email that begins this string, it is from Brenda Angelo sent on June 25th of 2013 to Rich Harle, Joe DeVito, with Jennifer Gates copied.        Do you see that? A    I do see that, yes. Q    And Ms. Angelo is informing the recipients of this email that Tom wanted her to let them know  that the FDA just showed up.  Do you see that? A    Yes, I do. |

| | | MDL2974TWHLLC 084448. | 93:12-17 ("Mr. Mehs reports to Richard A. Harle, Director of QA . . . .") | 11/17/23 Dep. of Kenneth Piper at 93:2-93:12 |
|---|---|---|---|---|
| 15. | Hess, Brian. *See* Ex. 11O. | Listed as attendee in document titled "Quality Assurance Meeting Memo" reviewing Paragard Loading and Release issue. Produced 06/13/2022; PROD007; Bates Range: MDL2974TWHLLC 034613-MDL2974TWHLLC 034613.<br><br>Sender of email to Tom Mehs with an update to trend limit numbers. Produced 06/13/2022; PROD013; Bates Range: MDL2974TWHLLC 127930-MDL2974TWHLLC 127931. | | |
| 16. | Horovitz, Hila. *See* Ex. 11P. | Listed as attendee in document titled "Medical Scientific Group Summary." Produced 02/01/2023; PROD025; Bates Range: | | |

| | | | | |
|---|---|---|---|---|
| | | MDL2974TWHLLC 401430-MDL2974TWHLLC 401430.<br><br>Named in Medical Safety Evaluation organization chart. Produced 01/07/2023; PROD018; Bates Range: MDL2974TWHLLC 139817-MDL2974TWHLLC 139838. | | |
| 17. | Kawadgiri, Hemant.<br><br>*See* Ex. 11Q. | Sender and recipient of emails to Tom Mehs answering questions about the Paragard replacement process. Produced on 11/12/2022; PROD013; Bates Range: MDL2974TWHLLC 131596-MDL2974TWHLLC 131597.<br><br>Named in excel spreadsheet as the "originator" of broken Paragard complaints. Produced 06/13/2022; PROD007; Bates | | |

| | | Range:<br>MDL2974TWHLLC 032510-<br>MDL2974TWHLLC 032510. | | |
|---|---|---|---|---|
| 18. | Keevil, Eileen.<br><br>*See* Ex. 11R. | Recipient of email from WRB listing Paragard cases in the weekly qualitative PhV report from November 15, 2017. Produced 01/07/2023; PROD018; Bates Range:<br>MDL2974TWHLLC 165161-<br>MDL2974TWHLLC 165164.<br><br>Recipient of email from WRB listing Paragard cases in the weekly qualitative PhV report from July 5, 2017. Produced 01/07/2023; PROD018; Bates Range:<br>MDL2974TWHLLC 161668-<br>MDL2974TWHLLC 161675. | | |
| 19. | Krayger, Nancy.<br><br>*See* Ex. 11S. | Co-authored document titled Clinical Overview – Risk of Breastfeeding on Uterine Perforation. | Discussed in 9/29/2023 Deposition of Siyu Liu at 44:6-20; recipient of emails discussed in | Q. Okay. And can you remember working with a Nancy Krayger and an Aliceson King on collecting data to come up |

| | | Produced on 03/18/2022; PROD001; Bates Range: MDL2974TWHLLC 006678-MDL2974TWHLLC 006687. | 9/29/2023 Deposition of Siyu Liu (Exs. 27, 30) | with this post-market experience?<br><br>9/29/2023 Dep. of Siyu Liu at 44:6-20 |
|---|---|---|---|---|
| 20. | Loss, Daniel.<br><br>*See* Ex. 11T. | Sender and recipient of emails asking for feedback on Paragard's use life. Produced 07/07/2022; PROD010; Bates Range: MDL2974TWHLLC 066541-MDL2974TWHLLC 066541.<br><br>Sender of email to Tom Mehs attaching 2010 Buffalo Annual Report. Produced 06/13/2022; PROD007; Bates Range: MDL2974TWHLLC 023692-MDL2974TWHLLC 02362. | | |
| 21. | Panning, Deborah.<br><br>*See* Ex. 11U. | Sender and recipient of emails regarding Paragard replacement procedures and whether those procedures were followed by WRB. | Sender and recipient of emails discussed in 5/23/2023 Deposition of Susan Larijiani (Exs. 5, 10, 12, 13, 14); referred to as author of document in Work |

| | | Produced 06/13/2022; PROD007; Bates Range: MDL2974TWHLLC 020052-MDL2974TWHLLC 020055.<br><br>Sender of email to Chris Under with an update to the Medical Affairs Paragard Adverse Event phone number. Produced 07/07/2022; PROD010; Bates Range: MDL2974TWHLLC 062313-MDL2974TWHLLC 062313. | Instruction used in 5/23/2023 Deposition of Susan Larijiani (Ex. 14) | |
|---|---|---|---|---|
| 22. | Shalit, Yael.<br><br>*See* Ex. 11V. | Named as a safety physician in Women's Health – Pharmacovigilance organization chart. Produced 01/07/2023; PROD018; Bates Range: MDL2974TWHLLC 139813-MDL2974TWHLLC 139813.<br><br>Listed as attendee at Medical Scientific Group Meeting on | Discussed in 11/17/2023 Deposition of Kenneth Piper at 175:7-13 | Q   Would these individuals from Israel participate in this review meeting?<br>A   Not necessarily.  One of the safety physicians or medical reviewers, I believe they were  called at the time, would need to attend, which would have been either Dr. Orit Neudorfer or Dr. Yael Shalit.<br><br>11/17/23 Dep. of Kenneth Piper at 175:7-175:13 |

| | | February 17, 2016. Produced 01/10/2023; PROD019; Bates Range: [MDL2974TWHLLC 286105](#)-[MDL2974TWHLLC 286105](#). Conducted safety assessment of Paragard due to Quality Complaint Trend Investigation. Produced on 01/10/2023; PROD019; Bates Range: [MDL2974TWHLLC 293862](#)-[MDL2974TWHLLC 293891](#). | | |
|---|---|---|---|---|
| 23. | Stiffel, Peter. *See* Ex. 11W. | Sender and recipient of emails discussing and attaching a Paragard manufacturing investigation. Produced 06/13/2022; PROD007; Bates Range: [MDL2974TWHLLC 027296](#)-[MDL2974TWHLLC 027297](#). Sender and recipient of emails discussing | Discussed in 10/7/2022 Deposition of David Bonilla at 159:7-160:7, 161:15-161:19, 162:10-162:13 | Q.   Can you tell me who that was? A.   I know for a period of time he   reported to Peter Stiffel. Q.   How do you spell that? A.   S-T-I-F-F-E-L. Q.   And where -- what company is -- was Peter Stiffel with at that time period? A.   I know he was part of the Barr Pharmaceuticals -- Q.   Okay. |

| | | Paragard testing and sampling. Produced 06/13/2022; PROD007; Bates Range: MDL2974TWHLLC 025471- MDL2974TWHLLC 025474. | | A.   -- and it was acquired when, I guess, FEI was acquired by Barr Pharmaceuticals, he was the Director of Quality that Tom Mehs reported for a period of time. Subsequent to that, I don't even  know, or even prior. Q.  I thought you said post 2009 is A.  Correct.  Post 2009 after -- the deposition was in 2008, if I'm not mistaken, end of 2008, if I -- hold on. That's Teva Pharmaceuticals. Q.  He worked for Teva Pharmaceuticals? A.  Peter Stiffel was part of the Barr Pharmaceuticals. . . . Q.   Okay.  So during the time period you're -- you've told us about, post 2009, Thomas Mehs at the Buffalo site reported to Peter Stiffel at the Pomona site? . . . Q.   Okay.  Anybody other than Peter Stiffel that you knew Thomas Mehs reported to? A.  No.<br><br>10/7/22 Dep. of David Bonilla at 159:7-160:7, |
|---|---|---|---|---|

| | | | | 161:15-161:19, 162:10-162:13, Oct. 7, 2022) |
|---|---|---|---|---|
| 24. | Yadav, Yogesh.<br><br>*See* Ex. 11X. | Named as participant in Meeting summary document titled, "Paragard: New and Ongoing Trends." Produced on 06/13/2022; PROD007; Bates Range: <u>MDL2974TWHLLC 027195</u>-<u>MDL2974TWHLLC 027195</u>.<br><br>Meeting invitation with Yogesh Yadav, Tom Mehs, and Tim Glennon to discuss Paragard Replacements. Produced 06/13/2022; PROD007; Bates Range: <u>MDL2974TWHLLC 031617-</u><u>MDL2974TWHLLC 031620</u>. | Recipient of email discussed in 1/26/2017 Deposition of Thomas Mehs (Ex. 4); discussed in 1/26/2017 Deposition of Thomas Mehs at 81:17-82:1; recipient of email discussed in 2/3/2023 deposition of Thomas Mehs (Ex. 12), discussed in 2/3/2023 deposition of Thomas Mehs at 287:6-8; recipient of emails discussed in 2/3/2023 deposition of Thomas Mehs (Exs. 11 and 12) | Q.   And who is Yogesh Yavad -- Yadav?<br>A.   He was a supervisor in India at the QAS facility.<br><br>2/3/23 Dep. of Thomas Mehs at 287:6-287:8 |
| 25. | DiBartolo, Michele.<br><br>*See* Ex. 11Y. | Listed as a "contractor" on behalf of Cooper in Diligent Health Solutions and CooperSurgical Monthly Meeting Agenda from March | | |

| | | 14, 2022. Produced on 01/24/2023; PROD031; Bates Range: MDL2974COOPERSURG-00592985-MDL2974COOPERSURG-00592986. | | |
|---|---|---|---|---|
| 26. | Donnelly, Matt. *See* Ex. 11Z. | Sender of email regarding Paragard packaging. Produced 10/20/2022; PROD010; Bates Range: MDL2974COOPERSURG-00017152-MDL2974COOPERSURG-00017155. | | |
| 27. | Gelnett, Marc. *See* Ex. 11AA. | Sender and recipient of email with Bob Auerbach discussing Paragard. Produced 10/20/2022; PROD010; Bates Range: MDL2974COOPERSURG-00015118-MDL2974COOPERSURG-00015125. | Discussed in 9/13/2023 Deposition of Paul Wasielewski at 79:7-22. | Q.   Were you ever on any phone calls with him where the performance of the ParaGard product inside of a woman was discussed? A.   No. . . . Q.   What about with respect to Marc Gelnett? Did I pronounce that correctly? A.   Yes. Q.   Okay.  Have you ever met Marc Gelnett? A.   Yes.  He visited the site once or twice. Q.   Did you ever have any interactions with him outside of those visits? |

| | | | | |
|---|---|---|---|---|
| | | | | A.   Again, probably -- maybe a call or two he was on.<br><br>9/13/23 Dep. of Paul Wasielewski at 79:7-79:22 |
| 28. | Haake, Dawn.<br><br>*See* Ex. 11BB. | Listed as "materials handler" in organization chart. Produced 05/28/2022; PROD005; Bates Range: <u>MDL2974COOPER SURG-00004271</u>-<u>MDL2974COOPER SURG-00004272</u>. | Discussed in 2/3/23 Deposition of Thomas Mehs at 66:21-67:6; referred to in Exhibit used in 3/23/2023 Deposition of Thomas Mehs (Ex. 17) | Q.   Do you know what Teva entity you worked for?<br>A.   Teva Women's Health.<br>Q.   And did you have anyone reporting to you --<br>A.   Yes.<br>Q.   -- while you were working at Teva?  Who was that?<br>A.   Brenda Angelo, Dawn Haake, and then Kongngeun Semthammavong for a period of time as well.<br><br>2/3/23 Dep. of Thomas Mehs at 66:21-67:6 |
| 29. | Kennedy, Charles.<br><br>*See* Ex. 11CC. | Email announcing Charles Kennedy hired as Senior Director, Worldwide Training, Education, and Development. Produced 11/16/2022; PROD016; Bates Range: <u>MDL2974COOPER SURG-00291995</u>-<u>MDL2974COOPER SURG-00291999</u>. | | |

| 30. | Tavener, Priscilla. *See* Ex. 11DD. | Listed as member of Paragard marketing team in Paragard call center SOP dated from 02/26/2019. Produced 07/25/2022; PROD006; Bates Range: MDL2974COOPER SURG-00005853-MDL2974COOPER SURG-0005854. | | |
| --- | --- | --- | --- | --- |
| 31. | Wisdom, Rosa. *See* Ex. 11EE. | Sender and recipient of emails with Rosa Hanks regarding patient insurance coverage for Paragard. Produced 10/20/2022; PROD010; Bates Range: MDL2974COOPER SURG-00023845-MDL2974COOPER SURG-00023847. | | |