# EXHIBIT 11W

| | |
|---|---|
| **From:** | Thomas Mehs [/O=TEVA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=THOMAS.MEHS] |
| **Sent:** | 2/27/2014 4:52:17 PM |
| **To:** | Rich Harle [rich.harle@tevapharm.com]; Peter Stiffel [peter.stiffel@tevapharm.com] |
| **Subject:** | RE: Investigations |
| **Attachments:** | Manufacturing Investigation DR 635850.docx |

Pete and Rich,

I have revised or commented on the proposed changes.

The changes are tracked and some comments were made to respond to questions.

Thanks,

Tom

---

**From:** Rich Harle
**Sent:** Thursday, February 27, 2014 11:36 AM
**To:** Thomas Mehs; Peter Stiffel
**Subject:** RE: Investigations

Tom:

Let try and close today, regardless of the MAC meeting.

Thanks,

Rich

---

**From:** Thomas Mehs
**Sent:** Thursday, February 27, 2014 11:29 AM
**To:** Peter Stiffel; Rich Harle
**Subject:** RE: Investigations

Thanks Pete.

If the MAC is not held today, I am not sure I can close the DR, but I will get the revisions out shortly

Tom

---

**From:** Peter Stiffel
**Sent:** Thursday, February 27, 2014 11:28 AM
**To:** Thomas Mehs; Rich Harle
**Subject:** RE: Investigations

Hi Tom please include me when you send the revision. I will expedite review process for this today.

  Peter Stiffel   Sr Director, Global Compliance- Quality Systems
Tell: +1-845-362-7999          Cell: +1-201-694-2250
Peter.Stiffel@TevaPharm.com   www.tevapharm.com

MDL-2974 Confidential - Subject to Protective Order

**From:** Thomas Mehs
**Sent:** Thursday, February 27, 2014 9:35 AM
**To:** Rich Harle
**Cc:** Peter Stiffel
**Subject:** RE: Investigations

Thanks Rich.

I will work on the changes this morning.

Tom

**From:** Rich Harle
**Sent:** Thursday, February 27, 2014 9:33 AM
**To:** Thomas Mehs
**Cc:** Peter Stiffel
**Subject:** Investigations

Hi Tom:

Please see comments on the investigation.

Pete:
Please review and make comments.

Thanks,

Rich

MDL-2974 Confidential - Subject to Protective Order

| | |
|---|---|
| **From:** | Thomas Mehs |
| **Sent:** | Tuesday, October 9, 2012 7:35 PM |
| **To:** | Peter Stiffel |
| **Cc:** | Paul Withey; Rich Harle; Jennifer Gates |
| **Subject:** | RE: GAPs |

Hi Pete,

Thank you very much for the quick response.

I will pull that plan and check it. Pouching is not critical as it is just adding to the empty pouch to make a subassembly. The sealing process, which is a sampling plan, is when the seal is added to close the pouch.

The tensile strength is a test where a tied tee (in-process) is pulled until it breaks. It can break either at the thread, knot (most common) or by slicing through the tee ball. It is intended to be a test of the work done in-process, but also can reflect on the component. There is separate testing done on thread incoming however.

We have, on file, a couple of waivers for standards already (routine medical exams and frequency of environmental monitoring) so we have done that kind of approach before.

Because this might not be a waiver per se, but rather a defense of our SOPs and approach I don't think a waiver will be needed – but rather a documented explanation of what we do with some historical data as you suggest.

Thanks for the help

Tom

**From:** Peter Stiffel
**Sent:** Tuesday, October 09, 2012 2:20 PM
**To:** Thomas Mehs
**Cc:** Paul Withey; Rich Harle
**Subject:** RE: GAPs

Hi Tom.  I see your issue.  Of course check in with Rich but I agree to put a document on file that supports the your sampling plan.

 There is ansi standard for sampling.  If you used a single-reduced special S-1 inspection level you can justify 2 samples per 100 pieces.   That would cover your tying and pouching.  (isn't the pouching critical because you terminal sterilize?)
With regard to the tensile strength, is it the strength of the line itself that is tested?  If so it is more of a component acceptance test rather than an in-process test.    Or is it the strength of the line on the T?

I admit your process there is unique and if the in-process standard can't be followed, it would call for a position paper, a risk assessment or a planned deviation.  Probably it should include how long the sampling has been used, approximate batch qty (if able to estimate) and a review of complaints and deviations for the attributes.  This way the conclusion can state that the sampling plans are considered adequate/optimal as existing and no change is required.

**From:** Thomas Mehs
**Sent:** Tuesday, October 09, 2012 2:00 PM
**To:** Peter Stiffel
**Subject:** RE: GAPs

Hi Pete,

1

We have the standard, but have a few questions on our compliance.

Section 5.3.1 talks about sampling, testing and acceptance criteria.

Our in-process sampling at a the tying and assembly operations are based on looking at two pieces per one hundred produced. There is no ANSI or ISO sampling plan. The sampling has been in place since we started the operation (i.e the 80's or before). In addition, our in process tensile strength testing involves one unit tested per operator every other hour – it too is the same as it has been for at least almost 30 years.

My question is how do we best develop a rationale or basis for it? We have a long history of not having issues or rejections,  but the plans used are not like they are in other operations.

Our pouching operation is similar, but it is really a subassembly process with the pouch, ID card and solid rod (plunger). I don't think that is as critical. (Those inspections are the same standard 10 units per bin of 500).

Should I put together a note to file regarding this? Put it in a SOP (which I would prefer not to do)?


Do you have any other ideas? In my time here, the FDA has never really questioned it. My main concern is compliance with this standard.

Let me know if you have questions.

Thanks,

Tom


**From:** Peter Stiffel
**Sent:** Tuesday, October 09, 2012 1:52 PM
**To:** Thomas Mehs
**Subject:** RE: GAPs

---

Peter Stiffel
Sr Director, Quality Compliance
Quality Professional Services
Teva Pharmaceuticals
223 Quaker Road
Pomona, NY 10970
Office  845-362-7999
Mobile 201-962-5672
peter.stiffel@tevapharm.com


**From:** Thomas Mehs
**Sent:** Tuesday, October 09, 2012 11:32 AM
**To:** Paul Withey
**Cc:** Peter Stiffel
**Subject:** RE: GAPs

Thanks Paul. I appreciate the help.

Tom


**From:** Paul Withey
**Sent:** Tuesday, October 09, 2012 11:22 AM
**To:** Thomas Mehs

2

MDL-2974 Confidential - Subject to Protective Order

MDL2974TWHLLC025472

**Cc:** Peter Stiffel
**Subject:** RE: GAPs

Hi Thomas,

Sorry, I was out of the office yesterday.  I have a name for CORP-0276.  Please contact Pete as the primary person.  He was involved with the standard and is in the best position to answer your questions.

I'm still waiting to hear back about CORP-0134.  I'll let you know as soon as I do.

Thanks,
Paul

> **Paul Withey** MS., ASQ CPGP
> Sr. Manager, Quality Compliance
> Tel: 610.738.6408    Cell: 484.318.6567    Fax: 610.738.6750
> paul.withey@tevapharm.com    www.tevapharm.com


**From:** Thomas Mehs
**Sent:** Tuesday, October 09, 2012 10:40 AM
**To:** Paul Withey
**Subject:** RE: GAPs

Hi Paul,

Had you been able to get the name(s) of the SME for these two standards?

Thanks,

Tom

**From:** Paul Withey
**Sent:** Friday, October 05, 2012 10:10 AM
**To:** Thomas Mehs
**Subject:** RE: GAPs

Hi Thomas,

I'm working on confirm the SME for the 2 standards you asked about.  I should have a name for you on Monday.

Thanks,
Paul

> **Paul Withey** MS., ASQ CPGP
> Sr. Manager, Quality Compliance
> Tel: 610.738.6408    Cell: 484.318.6567    Fax: 610.738.6750
> paul.withey@tevapharm.com    www.tevapharm.com


**From:** Thomas Mehs
**Sent:** Thursday, October 04, 2012 2:56 PM
**To:** Paul Withey
**Subject:** GAPs

MDL-2974 Confidential - Subject to Protective Order

MDL2974TWHLLC025473

Hi Paul,

　Here is another NA gap analysis for us.

　I also need the name of another SME – this time for Auditing of API Manufacturers – COPE -0134.

Thanks,

Tom

Mr. Thomas Mehs
Senior Manager, Quality Assurance & Regulatory Affairs
Teva Pharmaceuticals, Inc
825 Wurlitzer Dr.
North Tonawanda, NY 14120
Ph. 716-693-6230, Ex. 229
Fax: 716-693-6368
thomas.mehs@tevapharm.com

4

MDL-2974 Confidential - Subject to Protective Order

```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
 2                   ATLANTA DIVISION
                       -   -   -
 3

            IN RE:  PARAGARD IUD  :  MDL DOCKET NO. 2974
 4          PRODUCTS LIABILITY    :
            LITIGATION            :  (1:20-md-02974-LMM)
 5                                :   This Document Relates
                                  :   to All Cases
 6

 7

 8                     -   -   -
 9             October 7, 2022
10                     -   -   -
11             Videotaped deposition of DAVID
12          BONILLA, taken pursuant to Notice,
13          held at Greenberg, Traurig, LLP,
14          Three Logan Square, 1717 Arch
15          Street, Suite 400, Philadelphia,
16          Pennsylvania 19103, beginning at
17          approximately 9:00 a.m., before
18          Mary Hammond, a Registered
19          Professional Reporter and Notary
20          Public in the state of
21          Pennsylvania.
22                     -   -   -
23

24

                                        Page 1
```

```
 1          A.    Okay.   I can speak to --

 2          Q.    I'm sorry.   December, not

 3    September.

 4          A.    Yeah, for sure, 2009.   Post 2009,

 5    he did have someone else that he reported

 6    outside of the facility.

 7          Q.    Can you tell me who that was?

 8          A.    I know for a period of time he

 9    reported to Peter Stiffel.

10          Q.    How do you spell that?

11          A.    S-T-I-F-F-E-L.

12          Q.    And where -- what company is -- was

13    Peter Stiffel with at that time period?

14          A.    I know he was part of the Barr

15    Pharmaceuticals --

16          Q.    Okay.

17          A.    -- and it was acquired when, I

18    guess, FEI was acquired by Barr

19    Pharmaceuticals, he was the Director of

20    Quality that Tom Mehs reported for a period

21    of time.   Subsequent to that, I don't even

22    know, or even prior.

23          Q.    I thought you said post 2009 is

24    when --
```

Page 159

```
 1        A.    Correct.   Post 2009 after -- the

 2   deposition was in 2008, if I'm not mistaken,

 3   end of 2008, if I -- hold on.   That's Teva

 4   Pharmaceuticals.

 5        Q.    He worked for Teva Pharmaceuticals?

 6        A.    Peter Stiffel was part of the Barr

 7   Pharmaceuticals.

 8        Q.    Okay.

 9              In 2009, what was the affiliation

10   between Barr Pharmaceuticals and Teva?

11        A.    That's when Teva acquired Barr

12   Pharmaceuticals, 2008 and 2009, if I'm not

13   mistaken.

14        Q.    Do you know which Teva entity

15   acquired Barr Pharmaceuticals?

16        A.    I do not.

17        Q.    Do you know which Teva entity

18   Peter Stiffel then became a part of after the

19   acquisition?

20        A.    No.

21        Q.    Do you know at any point when

22   Thomas Mehs was reporting to Peter Stiffel,

23   what Teva entity he was employed by, Peter

24   was employed by?
```

Page 160

1          A.    Don't recall if Barr

2     Pharmaceuticals remained Barr Pharmaceuticals

3     for an extended period of time.  I don't know

4     if they changed their name.  That site

5     eventually closed.

6          Q.    Did it close, or did it merge into

7     another part of the company, of the Teva

8     company?

9          A.    The actual site closed --

10         Q.    Okay.

11         A.    -- but I don't know, it still is

12    part of the organization.

13         Q.    What site was that?

14         A.    I think it was the Pomona site.

15         Q.    Okay.

16               So during the time period you're --

17    you've told us about, post 2009, Thomas Mehs

18    at the Buffalo site reported to Peter Stiffel

19    at the Pomona site?

20         A.    It could have been before because

21    Barr Pharmaceuticals acquired FEI prior.

22    Don't quote me on the date because I don't

23    know, and Peter Stiffel was already part of

24    Barr Pharmaceuticals.  So he might have been

Page 161

1    Tom Mehs up on the acquisition of the FEI

2    facility.

3              Subsequently, Teva acquired Barr

4    Pharmaceuticals, by which then DuraMed and

5    FEI or Paragard, both of those sites became

6    part of Teva.

7         Q.   What activities were happening at

8    the Pomona site at that time?

9         A.   I do not know.

10        Q.   Okay.

11             Anybody other than Peter Stiffel

12   that you knew Thomas Mehs reported to?

13        A.   No.

14        Q.   Let's go to back to the Notice of

15   Deposition, Number 6.

16        A.   (Witness complies.)

17        Q.   The subject matter is, "All written

18   procedures of Defendant to comply" --

19   actually, I'm sorry, before we leave Section

20   5, are the documents in Tab F, "all written

21   procedures for Defendant to comply with the

22   requirements of 21 CFR Section 211.22(d),

23   that were in effect from November 9th, 2005

24   through December 31st, 2017?

Page 162