**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: PARAGARD IUD PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL DOCKET NO. 2974<br><br>(1:20-md-02974-LMM)<br>**This Document Relates to All Cases** |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANTS TO PRODUCE CUSTODIAL FILES FOR ALL NEW CUSTODIANS IDENTIFIED BY DEFENDANTS

There is no disagreement among the parties that the 31 custodians recently disclosed by Defendants have information relevant and responsive to Plaintiffs' discovery requests and this litigation. Defendants only argue they should not be compelled to produce these relevant and newly disclosed custodial files because (1) the burden to identify custodians has always rested with Plaintiffs, not Defendants, (2) Plaintiffs have not identified a need for such custodial files, and (3) production of the additional custodial files would be unduly burdensome.

As set forth in Plaintiffs' Motion to Compel [Dkt. 698] and as described further herein, Defendants have failed to comply with the Court's orders at the outset of this litigation which required Defendants to identify the individuals who have the most pertinent information to Plaintiffs' discovery requests. To add insult to injury, they also failed to timely meet any of their obligations in the Custodial File Protocol

1

and they continue to do so. Accordingly, Defendants should be compelled to produce the disputed custodial files and to do so on an expedited basis.[1]

I. **The Court Ordered Defendants to Identify the Universe of Custodians Responsive to Plaintiffs' Discovery Requests and This Litigation and They Failed to Do So.**

Defendants' opposition to Plaintiffs' Motion to Compel is premised on the factually and legally untenable position that the obligation to identify relevant custodians rests with Plaintiffs, not Defendants. *See* Dkt. 703 at 1. Defendants' position is squarely out of bounds with the Court's orders in this litigation and Defendants' obligations under the Federal Rules of Civil Procedure.

First, contrary to Defendants' argument, it was Defendants who were ordered at the outset of this litigation to identify the individuals most likely to have information responsive to Plaintiffs' RFPs and/or Paragard generally:

> So the way I see the custodial file issue is that there are certain requests [for production] that are asking for custodial files…And so you are responding to that R.F.P. by either searching in areas where those documents are reasonably to be found, or you're responding to that question by identifying the particular people that would be reasonably responding and communicating…and searching their custodial files or producing their custodial files.

---

[1] It is unclear at this juncture how many custodial files are actually in dispute between the parties. The parties had previously agreed that Plaintiffs were entitled to 10 more picks under the Protocol, and Defendants were willing to offer 10 more picks on top of that, leaving 11 custodial files in dispute. *See* Ex. E. Defendants now claim that their original offer is no longer on the table because Plaintiffs filed the instant Motion. *See* Dkt. 703 at 11.

…As long as you're making the decision potentially internally about who has those documents **because once you make it Plaintiffs' responsibility to identify whose documents, then we get in a situation where they don't really know what you know, and it's a difficult way I think to handle it**.

*See* **Ex. J**, July 26, 2022, Tr. at 32:18-36:4 (emphasis added).

The Court rightly held that the impetus cannot be on Plaintiffs to determine whom the records custodians should be without Defendants providing the initial information about "who the people are with the documents." *Id*., **Ex. J**, at 48:14-50:5 ("[T]here needs to be some sort of affirmative representation about who has the documents, who are the people that most likely have these documents. And it may be that a hard number stop is appropriate, but until it's clear who has these documents, it's very difficult to know what that number might be."); *see also id*. at 51:9-52:1. Notably, as the parties worked to finalize the Custodial Protocol, the Court continued to hold that it was Defendants' initial obligation to identify and describe the custodians "who have the most discoverable information and what categories that would be on." **Ex. C**, Sept. 27, 2022, Tr. at 13:25-14:4.

Again, Plaintiffs were supposed to get this information as a starting point in order to have the universe of the most relevant custodians, and from there, make informed decisions about whose custodial files to request. *See* **Ex. K**, Oct. 25, 2022, Tr. at 11:12-13:6; *see id*. at 21:14-17, 22:7-12, 23:6-8 ("[W]e're trying to get the most helpful files pulled at the beginning…I think we all want the most relevant

ones to be done in the earliest possible time so we don't have to go back and do things when somebody is found out to have more knowledge than was initially thought…I'd rather Plaintiffs make better decisions early on than us get down the road and have a mess.")

To Plaintiffs' significant detriment, a mess is precisely what has occurred here. Defendants either sat on relevant information about these newly identified custodians for years or failed to conduct their own diligence when originally ordered by the Court to do so. Regardless, Defendants could have and should have identified these new custodians earlier and, because they did not, Plaintiffs are scrambling to find quick solutions to the withholding of information readily available to Defendants. Meanwhile, Defendants expect Plaintiffs to cull these custodians blindly and do so in just a few short months without having sufficient time to make informed custodial file picks.[2]

---

[2] Defendants also claim that Plaintiffs should be able to identify which of 31 newly identified custodians possess the most relevant information because each of these custodians have been previously revealed through document discovery or deposition testimony. Dkt. 703 at 8.  This is a gross misstatement and oversimplification of the discovery process and yet another improper attempt by Defendants at burden-shifting. Just because an individual on Defendants newly disclosed custodian lists may have had their name mentioned in a sea of emails, or in passing at a deposition, certainly does not give Plaintiffs any insight into such individual's relevance to this litigation or their specific involvement with Paragard. And, as stated previously, Defendants were the ones ordered to identify the individuals likely to have the most relevant information to this litigation – not the other way around. For what it is worth, Plaintiffs have done the very exercise Defendants suggested and they did so

In addition to disregarding the Court's orders and the agreed-upon Protocol throughout this litigation, Defendants' attempt to shift the burden to Plaintiffs is contrary to their obligations under the Federal Rules. *See e.g., Baines v. Aaron's Inc.,* 2021 U.S. Dist. LEXIS 173460 at *11 (D. Ariz., Sept. 13, 2021) (noting that the plaintiffs' argument amounted to "improper burden-shifting" where she faulted the defendant for not doing more to learn about the identities of undisclosed witnesses and their expected testimony during the discovery process.); *see also In re Monat Hair Cate Prods. Mktg. Lit*., 2019 U.S. Dist. LEXIS 181770 at *39 (S.D. Fla., Aug. 19, 2019) (holding that where the plaintiffs did not dispute that the documents at issue were responsive to the defendant's discovery requests, the plaintiffs' "transparent attempt at burden-shifting is improper.").

## II.     <u>Plaintiffs Have Sufficiently Set Forth a Need for The Custodial Files</u>

Defendants also claim that Plaintiffs have failed to provide a justifiable need for the disputed custodial files. Dkt. 703 at 9-11.  This is simply not true.  At the Status Conference on May 24, 2024, Plaintiffs' Counsel explained to the Court that there was an outstanding issue as to custodial file requests based on a disagreement between the parties as to how many additional custodial files Plaintiffs were entitled

---

early on. That exercise revealed other key names that were not on Defendants' original list yet held highly relevant information about issues Defendants improperly failed to disclose. Two such custodian examples are Hedva Voliovotch and Siyu Liu, names with which this Court is already familiar.

to. **Ex. L**, May 24, 2024 Tr. at 13:22-14:13. The Court, being well versed in the discovery issues that have plagued this litigation noted that "if the need for more [custodial files] is necessary because of the way that production has happened, and there is a justifiable explanation for that from the Plaintiffs' perspective…because some things have changed in the way that documents have been produced and reviewed and such, so I would be willing to be open to that if it is tied to the production issues." **Ex. L**, May 24. 2024 Tr. at 14:14-15:9.

Here, the need for the additional custodial files is directly tied to the multitude of production issues and delays in this case.  First, and as outlined previously, Defendants were ordered to provide Plaintiffs a list of the most relevant custodians in this litigation more than two years ago.  They did not.  Certain of the custodians named in the original custodial file lists had no relevant information, certain critical custodians were not disclosed by Defendants, (but identified and requested by Plaintiffs through their own investigation) and just recently, Plaintiffs received 31 additional custodians who Defendants admit have information relevant to Plaintiffs RFPs and this litigation.

Second, Defendants have failed to timely produce any substantially complete custodial files in accordance with the Protocol they now want to enforce against Plaintiffs. To date, Plaintiffs have made requests for the custodial files of 48 unique custodians, of which 42 have become due.  To date, of the 42 custodial file deadlines

that have passed, *all* of these custodial file productions have included documents produced weeks, months, or even years later than the deadlines set forth in the Protocol.  *See* **Ex. M**, Custodial File Chart; *see also* fn. 3, *infra*. Defendants' feeble attempt to claim that 4 of the 48 total requested custodial files were timely produced is hardly praiseworthy, and in any event, is not even accurate.[3]

While the facts underlying this Motion could also warrant a motion for sanctions, as Defendants point out, Dkt. 703 at 9-10, the instant Motion to Compel is absolutely a proper procedural vehicle in which to seek production of the newly disclosed and relevant custodial files which the Court ordered in July of 2022.

### III.  The Production of the Disputed Custodial Files is Not Unduly Burdensome

---

[3] Defendants claim that the custodial files are Avidan, Cullen, Paolucci and Spotts were timely produced. This is not true. Defendants produced additional documents for Avidan, Paolucci, and Spotts *after* the date on which their custodial files were due. *See* **Ex. M**.  Moreover, on September 4, 2024, in response to Plaintiffs' requests to investigate production issues with certain recent custodial productions, Defendants admitted that they have now discovered a production "irregularity" which has led to an unknown amount of documents not being processed. These are the very custodians they proudly boasted were complete on or before deadline (namely, Avidan, Cullen, Elbaz, Paolucci and Spotts). *See* **Ex. O**, Correspondence between Chris Morris and Erin Copeland. Regardless, Defendants' continued errors with these custodial productions have resulted in the files being produced to Plaintiffs later than was required by the Court's Custodial File Order. **Ex. N**, Correspondence with Fidelma Fitzpatrick and Christopher Morris; *see also* Plaintiffs' arguments set forth in their September 5, 2024 Supplemental Letter Brief Response re HCP Depositions (**Ex. P**), which Plaintiffs hereby incorporate, by reference.

Defendants finally argue that the cost of producing the newly disclosed custodial files is unduly burdensome.  Defendants, however, have failed to show that the burden of producing the custodial files outweighs the benefits to Plaintiffs.

While district courts may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit…" Fed. R. Civ. P. 26(b)(2)(C)(iii), courts must "accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." *Giraldo v. Drummond Co., Inc.*, No. 09-cv-01041, 2012 U.S. Dist. LEXIS 83415, 2012 WL 2358297, at *1 (N.D. Ala. June 15, 2012) (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)).

In ruling on a discovery motion, a district court should consider the proportionality test inherent in Rule 26.  Proportionality considerations include: "1) the importance of the issues at stake; 2) the amount in controversy; 3) the parties' relative access to relevant information; 4) the parties' resources; 5) the importance of discovery in resolving the issues; and 6) whether the burden or expense of proposed discovery outweighs its likely benefit." *In re Arby's Rest. Grp. Inc. Litg.*, 2018 U.S. Dist. LEXIS 233650 at *15 (N.D. Ga. Aug. 16, 2018) (citing Fed. R. Civ. P. 26(b)(1)).

Here, the costs implicated in the production of additional custodial files in this case are typical in any complex multi-district litigation in which discovery spans

8

across various defendants, years, and claims.  The Teva and Cooper Defendants are no strangers to multi-district litigations, and the production of the requested custodial files is a drop in the bucket for them.[4] Defendants had previously agreed to produce 20 of the 31 newly identified files and therefore an additional 11 files is not, by extension, unreasonably burdensome.   Further, Plaintiffs have no way to obtain the requested custodial files absent the Court compelling them to do so. It is simply unfair for Plaintiffs to be forced to miss out on evidence Defendants admit is relevant and responsive to Plaintiffs' RFPs by virtue of contrived limitations in a procedural custodial file protocol when Defendants have failed to abide by the Protocol itself or the Court's orders to provide this information to Plaintiffs over two years ago.

## CONCLUSION

For all of the reasons stated herein and in Plaintiffs' underlying motion, Plaintiffs respectfully request the Court compel Defendants to produce the custodial files for all 31 of the newly identified custodians and order them to do so on an expedited basis.

Dated: September 5, 2024

*/s/ Erin Copeland*
Erin Copeland

---

[4] Based on publicly available information, as of August 2024, Teva's net worth is $21.07 billion dollars and Cooper's net worth is $18.84 billion.

TX Bar No. 24028157
FIBICH LEEBRON COPELAND &
BRIGGS
1150 Bissonnet St
Houston, TX 77005
Tel: (713) 751-0025
Fax: (713) 751-0030
ecopeland@fibichlaw.com


***/s/ Kristen Hermiz***
Kristen Hermiz
SC Bar No. 100482
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel: (843) 216-9390
Fax: (843) 216-9450
khermiz@motleyrice.com

## **CERTIFICATE OF SERVICE**

I certify that on this 5th day of September 2024, a copy of the forgoing Plaintiffs' Reply in Support of the Motion to Compel was served on all counsel of record via Pacer and a courtesy copy was sent to Defendants' respective lead and liaison counsel via email.

/s/ Erin K. Copeland
Erin K. Copeland
Fibich, Leebron, Copeland & Briggs
1150 Bissonnet Street
Houston, Texas 77005
Telephone: 713-352-0470
ecopeland@fibichlaw.com

**Lead Counsel for MDL Plaintiffs**