# EXHIBIT P



*Attorney at Law*  
**Licensed in Texas and Missouri**                                                                    Erin K. Copeland
                                                                                                      ecopeland@fibichlaw.com

September 5, 2024

<u>Via Email</u>
Honorable Leigh Martin May
c/o Courtroom Deputy Brittany Poley
US District Court | Northern District of Georgia
2167 U.S. Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303

   RE: *Paragard* MDL No. 2974 - Plaintiffs' Supplemental Letter Brief in Response to Defendants' Request for Entry of Third Amended Scheduling Order

Dear Judge May:

  Plaintiffs are compelled to file this supplement to their letter brief response concerning the scheduling order. It's been only about 48 hours since Plaintiffs' opposition to Defendants' prejudicial push to proceed with healthcare provider depositions and to enforce an unworkable schedule was served and we have since been confronted with yet another production error akin to the countless others we have seen in this case. Something has got to give and it cannot be to the continued disadvantage of Plaintiffs.

  This latest debacle stems from problems surrounding the Eric Elbaz custodial file, which was first discovered by Plaintiffs and brought to Defendants' attention at the July 31, 2024 status conference (which was two days after the complete file was due).[1] The Court may recall that Defendants represented they not only met but largely beat their custodial file deadline for the Elbaz file and other custodial files requested by Plaintiffs at the same time:[2]

---

[1] Plaintiffs generally covered the Eric Elbaz custodial file problem in their original letter brief response and Plaintiffs' corresponding motion to compel (and reply) concerning custodial files.
[2] If true, this would have been the first time ever in this litigation that any custodial files were timely and completely produced. Unfortunately, as established herein, it turned out to be inaccurate.

1150 Bissonnet Street | Houston, Texas 77005
(713) 751-0025 | (713) 751-0030 Fax

```
20          MR. MORRIS:  SO, YOUR HONOR, THIS IS CHRIS MORRIS.
21   THE ONLY OTHER THING I WANTED TO ADD WAS THAT ON MAY 15TH,
22   PLAINTIFFS REQUESTED SIX CUSTODIAL FILES.  AND I WANTED TO NOTE
23   THAT THOSE -- THE FILES FOR THOSE PEOPLE WERE ALL -- I MEAN,
24   THE VAST MAJORITY WERE ALL PRODUCED EARLY AHEAD OF DEADLINE.
25   THERE WERE SOME DOCUMENTS THAT WERE PRODUCED ON THE DEADLINE.
```

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

7

```
1   FOR ONE OF THESE CUSTODIANS, ERIC ALBAZ (PHONETIC), WE LEARNED
2   TODAY THAT THE PLAINTIFFS HAVE SOME QUESTIONS OR CONCERNS ABOUT
3   PERHAPS THERE MIGHT HAVE BEEN SOME ISSUES WITH MAYBE DOCUMENTS
4   MISSING IN HIS FILE.  SO WE'RE GOING TO WORK TOGETHER AND LOOK
5   INTO THAT TO SEE -- YOU KNOW, TO SEE IF THERE REALLY IS AN
6   ISSUE HERE OR WHAT'S GOING ON.
```

*See* July 31, 2024 Status Conference Transcript at P6/L20-P7/L6.

On August 8, 2024, over one week into their initial investigation concerning the Elbaz file problems, Defendants admitted some of the documents were "inadvertently miscoded" (and, thus, not produced), some were withheld, and that they needed more time to investigate other completeness issues raised by Plaintiffs. *See* a true and correct copy of counsel's communication attached hereto as **Exhibit A** (email from C. Morris at 12:47pm). Again, if Plaintiffs had not been vigilant about quality checking Defendants' production and representations as they have had to do for the entire case, these problems would likely not have been investigated let alone uncovered.

On August 12, 2024, Defendants' counsel wrote Plaintiffs admitting there was "an issue with the collection" of the Elbaz material "but not for Hall/Paolucci/Spotts/Cullen." *See* **Exhibit A** at page 2 (email from C. Morris at 10:58am). Counsel went on to say that they were *recollecting* the file (except for duplicative material already produced) and anticipated producing the additional documents on or before September 4, 2024.[3] *See id*. The parties subsequently engaged in a meet and confer on, August 15, 2024, concerning other matters wherein Plaintiffs requested a status

---

[3] This amounts to 5 weeks after the problem was originally brought to Defendants' attention and would be more than 5 weeks after the file was due and represented by Defendants to be complete.

update on the file and the volume of material impacted. Defendants were unable to provide any insight into the volume at that time.

On August 21st and 22nd, the parties engaged in further communications about the Elbaz custodial file and other production matters. *See* a true and correct copy of counsel emails dated August 21-22, 2024 attached hereto as **Exhibit B**. At that time, Plaintiffs asked again for some insight into the volume of material to be produced. *See* **Exhibit B**. Defendants were not able to provide the information at that time. *See id*.

Four days later, on August 26, 2024, Defendants informed Plaintiffs the volume would be "around 2800 documents." *See id*. To put that number into perspective, when Defendants originally produced the Elbaz file and represented it was complete on July 30, 2024, the volume of documents was around 1,642. Five weeks later, after conducting a quality investigation initiated only after Plaintiffs alerted Defendants of their concern with the file, they revealed they were going to produce another batch consisting of 71% more documents than what was originally produced.

Finally, yesterday afternoon, on September 4, 2024, Defendants produced the "additional" 2809 Elbaz documents. *See* a true and correct copy of counsel's email at **Exhibit C** at page 1. In their production transmittal, they admit for the first time that they discovered yet another vendor processing problem and that the problem applied not only to Elbaz but also several other custodians. *See id*. It turns out, the other impacted custodians include those that Defendants had previously represented did not have problems (*i.e.* Hall, Paolucci, Spotts, and Cullen).[4] *See id* and see **Exhibit A** at page 2. So, once again, Plaintiffs find themselves awaiting more late file documents that were previously represented at least twice to be complete and problem free.

The significance of what has occurred with these latest files, particularly Elbaz given the upcoming deposition of third-party Dr. Barton Cobert (an auditor who found significant failures in Defendants' pharmacovigilance and complaint handling systems) in just 13 days and all other files in this case cannot be understated. Plaintiffs should be able to rely upon the completeness and correctness of Defendants' production and Plaintiffs should be able to rely upon the representations of counsel about the production.[5] Unfortunately, the history of production in this case shows that they cannot.[6]

In just this one singular set of custodial files, Plaintiffs have been given at least 4 reasons as to why the problems Plaintiffs themselves uncovered have occurred:

1. Documents were inadvertently miscoded in the document review process (**Exhibit A**);

---

[4] Plaintiffs had to specifically ask which files were impacted to learn of this fact. *See* **Exhibit C**.

[5] The federal rules require that representations about discovery, including production, be based on knowledge, information, and belief formed *after a reasonable inquiry*. *See e.g.*, FRCP 26(g). Plaintiffs believe this reasonable inquiry should be completed by Defendants before production and representations about that production are made. It should not be done only after or if Plaintiffs uncover a problem.

[6] Another extremely alarming production issue has also recently arisen concerning Defendants' production of SOPs. *See* attached **Exhibit D**. On the eve of the Teva Defendants' August 26, 2024 deadline to complete production of RFP material in this case, counsel revealed they had only produced most SOPs in bookend form (original and most recent). Teva did so despite Plaintiffs' requests and contrary prior counsel's promise that their SOP production would be completed (*i.e.* the intervening SOPs would be produced). Plaintiffs believed this was going to be done at least by the RFP production completion deadline only to have it sprung on them at the last minute it was not.

2. Other documents were [*incorrectly*] withheld (**Exhibit A**);

3. There was an issue with the collection (**Exhibit A**); and

4. The vendor made an error when it was moving data over to be processed that led to some documents not being processed (**Exhibit C**) – further clarified to mean, "when the vendor was pulling the documents into the review workstream, it inadvertently filtered out some documents that should have been included." (Exhibit C).

One thing remains clear. None of these problems are due to Plaintiffs. Yet, Plaintiffs are the ones who continue to suffer the most harm because of the problems. Plaintiffs cannot move forward when they are continually bogged down in quality control that should be performed by Defendants. Plaintiffs should not be tasked with the burden of checking each of Defendant's productions with a fine/tooth comb to verify (1) there are no "vendor errors" and (2) Defendants' representations are accurate. They should be able to rely upon the correctness and completion of discovery and representations surrounding that production. In this case, instead of using their time and resources to prep for and recommence corporate depositions, Plaintiffs have been forced into a "QC" role just to make sure they have what they need to take the depositions. This ongoing problem is highly prejudice and continues to exhaust significant costs and valuable resources.

Under the circumstances, Plaintiffs' counsel cannot, in good conscience and on behalf of the thousands of women involved in this MDL, support or voluntarily proceed with the schedule Defendants are asking this Court to enter. Accordingly, Plaintiffs ask for the Court to deny Defendants the relief they currently request as to the scheduling order and healthcare provider deposition.

Respectfully submitted,

_____
Erin Copeland on behalf of
Plaintiffs' Leadership Committee