# EXHIBIT 1

MotleyRice® LLC
ATTORNEYS AT LAW

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."

–Ron Motley (1944–2013)

40 Westminster St., 5th Floor

Providence, RI 02903
**o.** 401.457.7700   **f.** 401.457.7708

**Fidelma L. Fitzpatrick**
*Licensed in DC, MA, NY, RI*
direct:  401.457.7728
ffitzpatrick@motleyrice.com

December 30, 2022

**VIA E-MAIL**

Honorable Leigh Martin May
United States District Court, Northern District of Georgia
2167 U.S. Courthouse
75 Ted Turner Drive
Atlanta, GA  30303

Your Honor:

I write to address each Defendants' failure to provide documents in response to Request Nos. 10, 29 and 30 in Plaintiffs' First Set of Request for Production ("RFP1"), dated December 21, 2021.  These requests specifically concerns complaint files related to Paragard. A number of issues related to complaint files, including the use of search terms and fields to be searched, are addressed separately in a letter from Ed Wallace to the Court, dated December 30, 2022.  One central issue has emerged concerning the scope of RFP1, Request Nos. 10, 29 and 30 that requires separate attention from the Court.  Plaintiffs believe the Court's guidance here will help facilitate resolution on other related requests for the same type of material.

**SCOPE OF THE CLAIMS BEFORE THE COURT AND PLAINTIFFS' REQUEST FOR COMPLAINT FILES**

Before the Court are claims by over 1600 women alleging that their Paragard IUD devices were defectively designed, defectively manufactured, and/or defectively failed to warn of the known or knowable risks associated with the implantable birth control device.  At the outset of this litigation, this Court recognized that, among other things,

> Plaintiffs  . . . allege that Defendants knew or should have known that Paragard could cause and did cause serious harm to women due to its propensity to break in utero or during removal but that Defendants failed to adequately warn of these risks. Specifically, they aver that between 2009 and 2020, Defendants received reports of over 2000 Paragard breaks, which should have put them on notice of disproportionally frequent breakage, but that Defendants failed to properly investigate, record, or submit those reports to the FDA . . .

December 14, 2022
Page 2

(Nov. 16, 2021, Order at 3, also attached herein as Ex. 6; see also id. at 30 -31) (noting that Plaintiffs have "further alleged that Defendants deliberately ignored, concealed, and/or failed to follow up on results from clinical studies and physicians' reports of adverse events.")

Following the Court's November 16, 2021, decision on Defendants' Motion to Dismiss, Plaintiffs served discovery requests on each of the Defendants requesting, among other things, "Any and all Complaint files regarding Paragard", (Ex. 7, RFP1, No. 10); "To the extent not produced in response to a prior request, any and all complaints received from any source (whether or not reported to the FDA) concerning Paragard.", (Ex. 7, RFP 1, No. 29); and "To the extent not produced in response to a prior request, any and all complaints reported to the FDA in any form concerning Paragard." (Ex. 7, RFP 7, No. 30).[1]  As to No. 10, the Plaintiffs further defined Complaint Files as follows:

> "Complaint Files" is synonymous with the meaning of complaint files as used in 21 CFR Sec. 211.198 and should be produced as maintained in the ordinary course of business. A "Complaint File" includes, but is not limited to, the complaint received, investigation into the complaint, any resolution of the complaint, including documented rationale for reporting or not reporting the complaint to the Food and Drug Administration, and any and all other source material related to each complaint.

See Ex. 7, RFP 1, Definition 7.

**DEFENDANTS' OBJECTIONS AND FAILURE TO PROVIDE RESPONSIVE DOCUMENTS**

Each Teva Defendant objected to RFP1 Request No. 10 in two ways.  They first objected to the definition of "Complaint files" alleging that it: "includes an incorrect and argumentative premise.  Specifically, the addition of the phrase 'including documented rationale for reporting or not reporting the complaint to the Food and Drug Administration' makes it different from the meaning of 'Complaint files' as defined in 21 C.F.R. §211.198, and purports to impose reporting

---

[1] Plaintiffs also served additional requests in RFP 1 related to complaints received by the Defendants related to Paragard. See also Ex. 7, RFP 1, Request No. 7 ("Any and all case safety reports regarding Paragard."); RFP 1, Request No. 9 ("Any and all case safety reports regarding Paragard submitted to the FAERS database."); RFP 1, Request No. 11 ("Any and all "alert reports" and "alert report follow-ups" regarding Paragard."); RFP 1, Request No. 12 ("Any and all adverse drug experience reports regarding Paragard relating to device breakage.")

December 14, 2022
Page 3

requirements upon a prescription drug manufacturer that are not in applicable FDA regulations." See Ex. 8 at 6 - 7.

Thereafter, Teva Women's Health ("TWH") further objected to the request itself, asserting:

> TWH, LLC objects to use of the term "Complaint Files" in Request No. 10 as defined in the Definition section of these Requests for the reasons set forth in the objections to that Definition as if incorporated herein fully by reference. TWH, LLC further objects to the extent that the Request seeks information protected from disclosure by the attorney-client privilege and/or work product doctrine. TWH, LLC further objects to this Request on the grounds that it requests documents that are irrelevant to the issues in this litigation, it is unduly burdensome, and the Request is not proportional to the needs of the litigation, as defined in Rule 26(b)(1) of the Federal Rules of Civil Procedure because it seeks to require TWH, LLC to locate, assemble, and produce documents constituting or containing information about complaints in which the alleged events are other than "embedment," "breakage of an arm," and/or "difficult removal," the events alleged by plaintiffs to be associated with their use of ParaGard, and the claim that is the subject of this MDL. TWH, LLC also objects to Request No. 10 to the extent it seeks documents protected from discovery by the patient-physician privilege, HIPAA, and Title 21 of the Code of Federal Regulations. TWH, LLC will not provide and will redact the names, addresses, or other identifiers of any patients, physicians, or adverse event reporters to protect the confidentiality and privacy of those persons. "Complaint files" are defined in 21 C.F.R. §211.198, and that is the definition TWH, LLC, is using in responding to this Request. At least one of plaintiffs' lead counsel is familiar with the component documents of the Complaint files for ParaGard, and to the extent TWH, LLC, has Complaint files for alleged events of "embedment," "breakage of an arm," and/or "difficult removal," TWH, LLC, will produce those documents. Any Complaint file documents produced by TWH, LLC, will be redacted pursuant to HIPAA and Title 21 of the Code of Federal Regulations. No non-privileged Complaint file documents that TWH, LLC has for complaints of alleged "embedment," "breakage of an arm," and/or "difficult removal," are being withheld in response to Request No. 10.

Ex. 8.   CooperSurgical provided an identical response, merely changing "TWH, LLC" to "CooperSurgical".  Ex. 23.

December 14, 2022
Page 4

The remaining defendants - Teva Pharmaceuticals USA ("Teva USA"), Teva Branded Pharmaceuticals R&D ("Teva R&D") and The Cooper Companies provided substantially the same objection, though each also stated that:

> Teva USA responds by directing plaintiffs to TWH, LLC's objections and response to Request No. 10. Any Complaint files for alleged events of "embedment," "breakage of an arm," and/or "difficult removal" that [Defendant] may have would be duplicative of the documents that will be produced by [TWH, LLC or CooperSurgical] in response to Request No. 10.

Exs. 9, 10, and 24.  The Defendants also objected to Request for Production No. 29 and No. 30 by incorporating their Responses and Objections to Request No. 10.

## THE PARTIES MEET AND CONFERS

The parties met and conferred numerous times over the last 9 months concerning the scope of the documents that would be produced by each Defendant in response to this request.  The outcome of that meet and confer process is summarized in Defendants' letter to the Court, dated December 15, 2022:

> Defendants have offered to search for and produce relevant, responsive product quality complaint files generated and maintained pursuant to 21 C.F.R. §211.198 and adverse event reports generated and maintained pursuant to 21 CFR §314.80. Defendants also have offered to search for and produce copies of relevant, responsive paper product quality complaints transferred by Teva Women's Health, LLC to CooperSurgical, Inc.

Defendants' language in their "offer" is very carefully chosen and ultimately reveals the woeful inadequacy of their compromise.  More specifically, the proposal is unworkable because it shields critical investigation documents from production.

## DEFENDANTS' PROPOSAL SHIELDS THE MOST RELEVANT AND CRITICAL DOCUMENTS FROM PRODUCTION

It is undisputed that 21 C.F.R. § 211.198 requires manufacturers to establish written procedure to handle "<u>all</u> written and oral complaints" regarding the Paragard IUD (emphasis added).  Furthermore, it is undisputed that the manufacturers are required to maintain "a written record of each complaint . . . in a file designated for drug product complaints." 21 C.F.R. § 211.198(b).  *See also* 21 C.F.R. § 211.198(b)(1)-(3) (outlining additional requirements for the

December 14, 2022
Page 5

written record of complaints). Pursuant to these sections, Defendants "have offered to search for and produce relevant, responsive product quality complaint files generated and maintained pursuant to 21 CFR § 211.198." (Def. Dec. 15, 2022, Letter to Court at p. 2.)

For both the Teva Defendants' and the Cooper Defendants' Standard Operating Procedures, Product Quality Complaints are "any report indicating a possible deviation from the product specification (i.e., changes in, or deterioration of, the physical and/or chemical characteristics of the product or packaging). These reports may concern the packaging, labeling, medical devices, or drug product." (*See, e.g.,* Ex. 11, SOP-2041, "Product Quality Complaints" at ¶ 5 (Definitions) and Ex. 22 at MDL2974COOPERSURG-00003690.)

Significantly, Produce Quality Complaints do not include complaints of Adverse Events, which are defined as "any undesirable effect that is associated with the use of a drug (or biologic product) in humans whether or not considered product-related by the company." *Id.* (emphasis added).

Therefore, Defendants' offer of Product Quality complaint files is not fully responsive to Plaintiffs' request for written records of all written and oral complaints received by each of the Defendants. First, Plaintiffs request that the Court order each Defendants to produce all documentation concerning Product Quality complaints received, investigation into the complaints, any resolution of the complaints, including documented rationale for reporting or not reporting the complaints to the Food and Drug Administration, and any and all other source material related to each complaint, irrespective of whether Defendants believe that they are required to generate or maintain those documents pursuant to 21 C.R.F. §211.198.

*Second*, Plaintiffs request that Defendants be required to produce the same documents – reflecting the complaints received, investigation into the complaints, any resolution of the complaints, including documented rationale for reporting or not reporting the complaints to the Food and Drug Administration, and any and all other source material related to each complaint – related to *adverse events or injuries* associated with the Paragard IUD. With respect to adverse events / injuries, Defendants have agreed to provide adverse event reports generated and maintained pursuant to 21 C.F.R. §314.80.

However, under 21 C.F.R. § 314.80, Defendants are required to "promptly review all adverse drug experience information obtained or otherwise received by the applicant from any source . . ." 21 C.F.R. § 314.80(b). Furthermore, "any person subject to the reporting requirements under paragraph (c) must also develop written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences to FDA." *Id.* 21 C.F.R. § 314.80(c) then describes the various "reporting requirements" for different types of reports that must be filed with

December 14, 2022
Page 6

the FDA depending on the facts and circumstances discovered in the investigation of the original complaint received by the company. Significantly, the regulations require that the company "must maintain for a period of 10 years records of all adverse drug experiences known to the applicant, including raw data and any correspondence relating to adverse drug experiences." 21 C.F.R. § 314.80(j).

Furthermore, Defendants' own SOPs contemplate that the companies (through the Pharmacovigilance arms) are "***responsible for evaluating each report, deciding if the event is reportable under FDA guidelines***, and filing the applicable Medical Device Reports and follow up reports." (*See* Ex. 11) (emphasis added). Thus, these policies contemplate an investigation and establish that there may be adverse events that are reported to the company but that the company chooses not to report to the FDA. These are the very documents requested in RFP 1, No. 29.

Instead of agreeing to provide <u>all</u> documents related to the adverse event complaints reported to the company, Defendants have intentionally limited the agreed production to the reports only—presumably those actually filed with the FDA pursuant to 21 CFR § 314.80(c). The offer is lacking because Defendants have <u>excluded</u> the back-up and internal files related to those reported complaints. Most critically, they have also wholesale excluded any documents related to reports of injuries that the company chose not to report to the FDA for whatever reason, including, but not limited to, those that they are required to maintain pursuant to 21 C.F.R. § 314.80(j). In other words, Defendants are refusing to provide documents concerning their investigation into all breakage complaints – whether Product Quality or Adverse Event – (which they are required to conduct) and their decision-making process that led to them either reporting or not reporting adverse events to FDA (which documents they are required to maintain). Those categories of documents are directly relevant to the claims and defenses in this litigation as noted by this Court in its decision on the Motion to Dismiss.

The Court provided relevant guidance on a similar issue at the September 12, 2022, discovery conference. At that time, TWH and CooperSurgical were objecting to the terms used in 30(b)(6) notices relating, in part, to complaint handling issues. Specifically, the Defendants sought to limit the testimony of corporate witnesses to testimony and evidence that aligned with their interpretations of both 21 C.F.R. § 211.198 and 21 C.F.R. § 314.80. The Court overruled that attempt to limit the scope of the requested discovery, noting that "I agree with [Plaintiffs] that you're not limited to these two C.F.R.'s, that you should be able to get into other complaints that are handled different than the way these C.F.R.'s suggest." (Sept. 12, 2022, Tr. of Discovery Conference at 38). Here, the Plaintiffs request that the Defendants similarly not be permitted to narrow the scope of the RFP. 1, No. 10, RFP 1, No. 29, and RFP 1, No. 30 to solely that required by Defendants' interpretation of the various C.F.R. provisions.

## CERTAIN DEFENDANTS HAVE FAILED TO COMPLY WITH THE REQUESTS DESPITE HAVING RELEVANT AND RESPONSIVE DOCUMENTS

As noted above, in responding to the discovery requests, only one Teva entity – TWH – has agreed to produce responsive documents. The other two Teva entities – Teva USA and Teva R&D – interposed objections and then asserted that any "complaint files for alleged events . . . that Teva USA may have would be duplicative of the documents that will be produced by TWH, LLC in response to Request No. 10." (*See* Ex. 9, Teva USA's Responses & Objections to RFP1, No. 10; Ex. 10, Teva R&D's Objections & Responses to RFP1, No. 10.)

In the year since RFP1 was served on Defendants and the nine months since these responses were interposed, Plaintiffs have gathered a trove of evidence that clearly demonstrates that this assertion is untrue. Specifically, the 30(b)(6) deposition of TWH corporate representative and the documents produced therewith,[2] reveal the following:

- All written and oral complaints were directed in the first instance to Teva Pharmaceuticals USA. [Exhibit 12 - TWH 30(b)(6) deposition at 132:11 – 18].
- Those related to product quality would be directed to TWH and the Buffalo manufacturing facility for investigation and resolution; [Ex. 13 - TWH 30(b)(6) deposition at 141:4 – 142:1].
- Those related to adverse events would be directed to Teva USA's Pharmacovigilance team. [Ex. 14 - TWH 30(b)(6) deposition at 93:14 – 94:17]
- Those at the Buffalo facility dealing with Product Quality Complaints would not be aware of any reported adverse events. [Ex. 15 - TWH 30(b)(6) deposition at 92:23-93:12].
- Thomas Mehs, Senior Manager of Quality at the Buffalo site, told employees of the FDA that "Teva Pharmacovigilance is part of Teva NeuroScience, Inc., the entity that is responsible for reporting Adverse Event of Post-Marketing Surveillance information to the FDA." [Ex. 16]

Thus, it is clear that Teva USA has relevant and responsive documents, particularly those related to medical conditions and injuries that are not necessarily in the possession of TWH. Teva

---

[2] As this Court may recall, Plaintiffs served 30(b)(6) deposition notices on each Defendant in August 2022. At Defendants' request, the Plaintiffs agreed to put the depositions of Teva USA, Teva R&D and The Cooper Companies on hold until the depositions of TWH and CooperSurgical could be completed. The Plaintiffs' amended the deposition notices twice in an effort to meaningfully meet and confer on the topics, and then a third time after the parties received guidance from the Court at the Case Management Conference on September 12. 2022.  Issues related to the on-going 30(b)(6) disputes are addressed in the letter from Erin Copeland to the Court, served simultaneously herewith.

December 14, 2022
Page 8

USA must be compelled to do its own independent search for responsive documents. In the event that such documents have been produced by TWH, Teva USA and Teva R&D must be compelled to identify those documents in their discovery responses so that Plaintiffs can have a clear understanding of the documentary evidence relating to each separate defendant. (Ex. 6 at 7) ("the Paragard ownership history and Defendants' corporate structures create an unusually complex situation that involves numerous entities with potentially overlapping roles and responsibilities.")[3]

In sum, Plaintiffs have been seeking documents related to complaints Defendants' received concerning the Paragard since the inception of this litigation. Requests 10, 29 and 30 in RFP1 are just examples of the many ways in which this material has been requested. As to these requests specifically, Plaintiffs have thoughtfully worked through every request presented by Defendants, including, but not limited to the search term/synonym analysis, to get to production. Regardless of their efforts, Plaintiffs have been met with nothing but roadblocks, the latest being the attempt to use the dueling interpretations of the C.F.R. (an issue better left for trial) to block the production of clearly relevant documents. Quite simply, it is time for Defendants to start producing the complaint related material actually requested by Plaintiffs and not just the carefully selected material Defendants will allow Plaintiffs to see. Plaintiffs respectfully request Defendants be formally ordered to produce the complaint related material.

The Plaintiffs look forward to discussing this matter with the Court next week.

Very truly yours,

Fidelma L. Fitzpatrick

cc: Fred Erny, Esq.
    Gina Saelinger, Esq.
    Allison Ng, Esq.
    Plaintiffs' Executive Committee

---

[3] This issue is addressed more globally in the letter from Kristen Hermiz to the Court, served simultaneously herewith. Furthermore, The Cooper Companies has similarly failed to meaningfully respond to these discovery requests.