# EXHIBIT 5



**Attorney at Law**
**Licensed in Texas and Missouri**

Erin K. Copeland
ecopeland@fibichlaw.com

February 26, 2024

<u>Via Email</u>
Honorable Leigh Martin May
c/o Courtroom Deputy Brittany Poley
US District Court | Northern District of Georgia
2167 U.S. Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303

   RE: *Paragard* MDL No. 2974 – Iron Mountain Boxes (Paragard - Regulatory Affairs)

Dear Judge May:

  This letter brief concerns Defendants' inexplicable failure to produce a significant number of highly relevant Paragard specific documents in response to Plaintiffs' RFPs targeted to the precise documents that have not been produced. While this letter concerns one specific subset of material (*i.e.*, Iron Mountain Boxes containing Paragard regulatory affairs documents), the problem here is just one of the latest examples of the chronic production issues that have plagued this litigation from the outset of discovery and continue to prejudice Plaintiffs' ability to fully take depositions, prepare experts, and get this case ready for trial in a efficient manner. Moreover, it significantly underscores Plaintiffs' lack of confidence in the quality of production to date.

  **<u>PLAINTIFFS' ASK</u>**:

1) Plaintiffs request that the Court order Defendants to formally explain why most of the Paragard specific material identified on the Iron Mountain inventory list was not previously produced and answer Plaintiffs other outstanding questions concerning this material as set forth in their various written inquiries about this material.

2) Plaintiffs also request that the Court order Defendants to produce all of the Iron Mountain material identified on the inventory list in its entirety (not on a rolling basis and not giving priority to those topics which Defendants self-selected) within 10 business days of the February 28, 2024 status conference without a secondary relevance review by Defendants and without redactions.

3) Plaintiffs request that Defendants be ordered to conduct an immediate search of all undisclosed material that are relevant to this litigation using the broadest possible definition

of the word and advise whether there are any additional documents that need to be produced within 10 days of the February 28, 2024 status conference (including the anticipated).

4) Following the foregoing search, Plaintiffs request that the material be produced on an expedited basis (no more than 10 days) without a secondary review for relevance or redactions.

5) Lastly, following production pursuant to #4 above, Plaintiffs request formal written certification from Defendants of the completeness of its production of material responsive to Plaintiffs' individual RFPs so that Plaintiffs can be assured going forward additional documents will not be later produced.

**SUMMARY**:

As part of Plaintiffs' review of a requested custodial file (Roaida Johnson), Plaintiffs discovered a 74-page document with the heading, "Teva Detailed Box Inventory," identifying approximately 52 Iron Mountain Boxes containing a long list of Paragard specific regulatory documents. *See* **Exhibit A1 and A2**.[1] The documents include, but are not limited to, regulatory submissions, FDA correspondence, Periodic Adverse Drug Reaction Reports (PADERs), Annual Reports, marketing material, and more. *See* **Exhibit A2**.

After discovering the inventory list buried in Ms. Johnson's custodial file, Plaintiffs embarked upon a multi-week search to determine as best they could which documents identified in the list had already been produced by Defendants and which had not. Soon thereafter, it became clear that a significant number of the documents had not been produced by Defendants even though the documents were specifically responsive to several of Plaintiffs' RFPs. *See id* (highlighted portions reflect documents that have <u>not</u> been produced to date). *See* id. Notably, a number of the missing documents are responsive to RFPs that Defendants previously represented were complete. *See* **Exhibit H** (below).

**PROCEDURAL HISTORY**:

On 1/17/24, Plaintiffs emailed Defendants (*see* original email attached hereto as **Exhibit B**) inquiring about the missing Iron Mountain documents. In addition to requesting that the missing documents be produced, Plaintiffs asked a number of specific questions concerning the failure to produce, including, but not limited to, why the missing documents had not been located and produced earlier and whether any had been destroyed (and, if so, when). *See* **Exhibit B**.

On 1/18/24, Mr. Erny responded that he had conferred with counsel for Teva and was investigating the issue. *See* **Exhibit C**. Relatedly, counsel for Teva had indicated to Plaintiffs' counsel, Lee Floyd, in a meet and confer on 1/17/24 regarding missing marketing material, that the Iron Mountain documents are in Cooper's complete control and, thus, this was entirely an Ulmer Berne issue.

Two weeks later, on 1/30/24, after having received no formal response, Plaintiffs followed up. *See* **Exhibit D**. Plaintiffs' email acknowledged Teva's informal comments to Mrs. Floyd but

---

[1] The highlights on Exhibit A2 reflect Plaintiffs' understanding of all of the material that has not been produced by Defendants to date.

questioned the significance of the party distinction given the document is clearly a Teva document based on the header (despite the Cooper bates), any documents identified on the list but previously produced largely came from Teva, and Teva was represented by the same counsel as Cooper before the introduction of Butler Snow. Nevertheless, Plaintiffs asked when they could expect the material to be produced, when they would get answers to the questions previously posed, and the location of certain pages missing from the inventory document itself.

On 2/1/24, having received no response, Plaintiffs sent another follow-up email. *See* **Exhibit E**.

On 2/2/24, Plaintiffs participated in a discovery summit with counsel for Teva wherein the Iron Mountain boxes were discussed amongst a host of other deficiencies related to Teva's production. While many of the questions Plaintiffs previously posed about the boxes remained unanswered, Plaintiffs were told at that time that counsel for Teva would be taking over representation of Cooper (and they were now investigating the situation themselves), they believed the boxes were in an Iron Mountain facility (location undisclosed), and the missing pages from the inventory list were simply blank documents with no content. Plaintiffs asked for the physical location of the boxes and verification the missing pages were, in fact, blank and contained no content as did the other 74 pages. Plaintiffs also volunteered to send reviewers to wherever the boxes were located so as to fast-track review and production.

(*In the interim, Plaintiffs were scheduled to take the third-party deposition of Dr. Barton Cobert on 2/5/24 but were forced to postpone due the late production of documents relevant to his work on an audit of Teva's pharmacovigilance systems (which, includes Paragard). However, Plaintiffs took the continuation deposition of Teva former employee, Dr. Siyu Liu, on 2/5/24 only to be confronted with a number of documents produced from his file **after** the deposition was completed – which is the subject of another letter brief being presented to the Court. During this time frame, the Teva defendants also produced more than 48,000 new docs comprised of more than 93,000 pages based on their admitted broader definition of relevance than that of Cooper's counsel. Defendants have also admitted that even more documents (RFP and custodial file) were coming.*)

Ten days later, on 2/12/24, counsel for Teva emailed that all but one of the boxes had been located and that they were being shipped to their vendor *for review* and processing. They indicated they would follow-up with a production schedule. *See* **Exhibit F**. That same day, Plaintiffs responded reiterating their long outstanding questions surrounding the lack of production of the material to date. Defendants responded that they were looking into the questions and would circle back that week. *See* **Exhibit F**. No response was ever provided.

Ten more days later, on 2/22/24, Plaintiff informed all counsel that they intended to present this issue in writing to the Court at the February status conference. *See* **Exhibit G**.

On 2/25/24, counsel for Teva emailed stating again, in relevant part, that the boxes had been found and shipped to their vendor and would be released to defense on a rolling basis for their own review based on relevance and responsiveness. The email also indicated marketing

material would be prioritized (which was not a request made by Plaintiffs). Notably, none of Plaintiffs' outstanding questions concerning the material were addressed.[2] *See* **Exhibit H**.

**ARGUMENT**:

There is no reasonable justification for Defendants' failure to produce this Iron Mountain material to date.

*The missing items were specifically requested by Plaintiffs in various RFPs*

As stated above, the Iron Mountain material is specifically responsive to a number of Plaintiffs' RFPs and are long overdue. *See* **Exhibits I1, I2,** and **I3** (highlighted portions). For instance:

In RFP Set 1 (served on 12/22/21), Plaintiffs requested (*in relevant part*):

- RFP No. 1: Correspondence with the FDA regarding Paragard;
- RFP No. 5: The Paragard NDA and all supplements;
- RFP No. 6: Annual Reports concerning Paragard submitted to the FDA;
- RFP No. 12: Adverse Drug Experience Reports regarding Paragard (PADERS);
- RFP No. 17: All Paragard Product Labels;
- RFP No. 20-24: Paragard promotional items for patients and doctors;

In RFP Set 3 (served on 10/31/22), Plaintiffs requested (*in relevant part*):

- RFP No. 14: Indexes of all boxes containing paper files pertaining to Paragard maintained by any Defendant;[3]

In RFP Set 5 (served on 3/28/23), Plaintiffs requested (*in relevant part*):

- RFP No. 6: Paragard Annual Product Reviews from 1997-present, including meeting minutes and notes;
- RFP No. 19: All documents reflecting, referring to, or relating to Paragard NDA Annual Reviews;

A comparison of the above requests to the highlighted entries on the Iron Mountain inventory list (**Exhibit A2**) reveals that a number of documents exists in those boxes that are specifically responsive and, thus, should have been previously produced. Plaintiffs should not have had to stumble upon the inventory list in a custodial file to learn of the existence of the missing documents and the deficiencies of Defendants' production. It is not Plaintiffs' burden or

---

[2] Plaintiffs acknowledge counsel's comment in their 2/25/24 email about connecting with Mr. Erny. However, this is the first we've learned that the request to connect has anything to do with the outstanding questions concerning the Iron Mountain boxes. In any event, despite any conversation, Plaintiffs still seek a record response to their questions.
[3] Plaintiffs acknowledge this RFP was previously narrowed by the Court. At that time, Plaintiffs had no way of knowing that the Iron Mountain inventory list at issue even existed in order to specifically identify it in the request. Nevertheless, Defendants who are in a superior position to know what documents exists, should have known the boxes existed at the time of the request and could have informed Plaintiffs.

responsibility to act as a watchdog of Defendants' discovery or risk not receiving responsive material specifically requested.

### *Defendants previously represented their production of certain material was complete*

Before discovering the existence of the Iron Mountain inventory list in the Johnson custodial file, Plaintiffs long believed Defendants' production in response to certain RFPs was complete based on Defendants' own representations. For example, more than one year ago, on February 17, 2023, Defendants' counsel specifically informed Plaintiffs in writing that, with respect to RFP No.1 (FDA Correspondence), "TWH, LLC…has nothing further to add to its Supplemental Response to RFP #1," and "[A]fter a reasonable search, CooperSurgical, Inc. is not presently aware of additional documents to produce in response to RFP #1." *See* **Exhibit J**. Similarly, in the same email, as to RFP No. 17 (Paragard Labels), Defendants' counsel represented that "[A]fter a reasonable search, Defendants are not presently aware of additional documents to produce in response to RFP #17." *Id* at p.2. Finally, in the same email string on January 13, 2023, Defendants' counsel specifically stated, "[I]f we say the search is ongoing, then yes, we are still searching and anticipate producing additional documents; if not, then we believe we've met our discovery obligations as to that RFP." *Id* at p.8.

### *Defendants have not conducted a reasonable search for documents*

At the 2/2/24 discovery summit and in various conversations surrounding the summit and production issues (including conversations that occurred when the Cobert documents were produced on the eve of his deposition resulting in a postponement) counsel for Teva informed Plaintiffs that they approach the definition of relevance in this case differently than that of Cooper. As a result, they are in the process of re-reviewing documents that had been previously withheld based on relevance and producing that old material now (which explains the recent production of more than 48,000 new docs comprised of more than 93,000 pages on 2/9/24). They also informed Plaintiffs they were reinterviewing custodians and locating new ones that may have relevant material. While this approach and the prospect of receiving documents that should have already been produced is a positive, that does not cure the problem that this litigation has been going on for years, Plaintiffs have been continuously stalled in their pursuit of depositions, and the documents should have been produced well before now. The fact that all of this production is coming only now, demonstrates that the previous approach was and searches were deficient and resulted in substantially late production of relevant and responsive material.

As to the material contained within the Iron Mountain inventory list at issue, the document was found in a custodial file produced in late 2023. The document would never have been discovered and the content of the Iron Mountain boxes arguably would have never been revealed had Plaintiffs not requested that particular custodian (Roaida Johnson) – despite having requested the exact type of documents in their RFPs. As demonstrated above, Plaintiffs properly requested various regulatory material in a variety of ways in their RFPs (*See* **Exhibits I1-I3**). Defendants knew or should have known of the various locations such material could be found, including the existence of the Iron Mountain boxes and the contents thereof. The material, which was requested with particularity in the RFPs (and/or clarified after hours upon hours of meet and confers) should have been produced years earlier in response to the RFPs. It should not have been improperly delayed until Plaintiffs got lucky and happened to request the right custodian in whose file the inventory list was discovered.

The foregoing demonstrates that the Court orders and guidance in the July 26, 2022 discovery hearing on Plaintiffs initial RFPs were not followed. By way of illustration and without waiver of other comments made by the Court, at that July 2022 Discovery Hearing, the Court specifically told Defendants (ironically utilizing FDA communications as the example) that when they were responding to RFPs they should "make sure that they are looking in the places where communications with the FDA would be found" (*See* 7/26/22 transcript at P33/L13-19). Further, the Court provided, "[A]nd so, you're doing it one of two ways. You're making a reasonable search to identify these particular documents, and you're doing it by searching custodial files or producing custodial files, or you're doing it by some internal way you've devised to do a reasonable search…[A]nd you could potentially show your work by saying, these are the only custodians we could identify that reasonably would have this information, we searched their files, this is what has been produced, or you can just say, after a reasonable search, these are the documents we could find." (*See* 7/26/22 transcript at P34/L3-18). The Court concluded that, "[A]t the end my expectation would be that for a proper request for production of documents that we've gone through, that some sort of reasonable search has been made and then the documents have been identified in some way that were produced, and that's kind of how we handle that." (*See* id at P34/L21-25).

The fact that Defendants failed to even consider the Iron Mountain boxes as a source of material responsive to any of Plaintiffs' various discovery requests demonstrates the issues with their approach to discovery to date and has resulted in significant delay to Plaintiffs even becoming aware of its existence, let alone production (which, again, has yet to occur and is only happening now that Plaintiffs discovered this deficiency).

**CONCLUSION**:

Based on all of the foregoing, Plaintiffs request that the Court grant the relief requested herein.

Cordially,

Erin K. Copeland