IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE: Paragard IUD Products Liability Litigation | : : : : : : : : : | CIVIL ACTION NO. 1:20-md-02974-LMM |

# ORDER

This matter is now before the Court on Plaintiffs' motion to compel Defendants to produce certain custodial files, Dkt. No. [698]. After due consideration, the Court enters the following order.

**I.    BACKGROUND**

This multidistrict litigation was transferred to this Court from the Judicial Panel on Multidistrict Litigation on December 16, 2020. By the end of November 2021, Plaintiffs had filed a master complaint and amended it twice; the Court had denied a motion to dismiss it; and discovery had commenced.

At a hearing taking place on July 26, 2022, the Court heard from the parties regarding disputes over Plaintiffs' First Requests for Production. Plaintiffs proposed, and the Court agreed, that an appropriate way for Defendants to respond to some of the requests for production would be for Defendants to identify and briefly describe the people who were the most likely to have

responsive materials and, upon Plaintiffs' request, produce the custodial files of some portion of those people.

On November 9, 2022, Defendants provided a list of 51 individuals likely to have information relevant to Paragard in their custodial files. Per the Court's direction, the list set out each person's name, employer, title, employment dates, and a brief description of responsibilities.

On November 21, 2022, the Court entered a consent custodial-file protocol order. The order provided that Plaintiffs were entitled to request 50 custodial files and set deadlines for substantial completion of the production of the files and for privilege logs. Discovery proceeded accordingly.

However, new defense counsel was appointed over the course of late 2023 and early 2024, and they identified production deficiencies. Consequently, in May and June 2024, Defendants provided an updated custodian list identifying 31 additional custodians likely to have relevant material in their custodial files. At this point, Plaintiffs had only ten file requests remaining under the custodial-file protocol order.

Defendants agreed to produce an additional ten custodial files in addition to the original 50, but only in exchange for Plaintiffs' agreement not to seek further custodial files unless Plaintiffs first identified a basis, such as newly discovered information developed in the course of discovery, for the additional requests. Plaintiffs refused and instead filed the pending motion to compel production of all 31 files.

## II.     LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If one party does not comply with discovery requests, the opposing party may seek an order compelling discovery responses. Fed. R. Civ. P. 37(a)(1). The decision to grant or deny a motion to compel is within the broad discretion of the trial court and will be reversed only upon a finding of "clear error of judgment or appli[cation] of the wrong legal standard." United States v. Cuya, 964 F.3d 969, 970 (11th Cir. 2020).

Relevancy is construed broadly, and because "the Federal Rules strongly favor full discovery whenever possible, a civil litigant is generally entitled to any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence." Marbury v. Warden, No. 22-10916, 2022 WL 17175549, at *2 (11th Cir. Nov. 23, 2022) (citations and internal quotation marks omitted). On the other hand, a court may limit discovery "where such discovery is cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain that information, and the discovery is 'unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.' " Panola Land Buyers Ass'n. v. Shuman, 762 F.2d 1550, 1558-59 (11th Cir. 1985)

**III.   DISCUSSION**

There is no dispute that the custodial files of the 31 individuals added to the custodian list in 2024 are likely to contain relevant material. Nor could there be, as the whole point of creating the custodian list was to identify the people most likely to have responsive materials in their custodial files.

However, Defendants argue that they should not be required to produce the files because the custodian list was not a discovery response but rather a courtesy provided in good faith; it was Plaintiffs' responsibility to identify the custodial files to be produced; Plaintiffs have not provided a justifiable explanation for their request for production of the files of all of the 31 additional custodians; each of the 31 individuals was at some point identified in document discovery, 14 of them were discussed in deposition exhibits or the depositions themselves, and they were therefore known to Plaintiffs prior to production of the updated custodian list; and it would cost Defendants approximately $2,153,324 to produce all 31 files, and the production would therefore be disproportionate and unduly burdensome.

Having carefully reviewed the arguments and the record, the Court concludes that Plaintiffs' motion to compel should be granted.

As a threshold matter, the Court interprets Defendants' argument that the custodian list was a courtesy as a suggestion that the files of the custodians recently added to the list are not a proper subject of a motion to compel. If so, Defendants have misconstrued the Court's direction.

It is true, as Defendants point out, that in the course of discussing custodial-file production with the parties, the Court stated, "I know that this doesn't give Plaintiffs the comprehensive list of everyone that may have discoverable information" and "this is not a discovery response." The transcripts also support Defendants' recollection that the initial custodian list would be considered the starting point of the custodial-file process.

But while the Court stated that it knew that the initial list would not be comprehensive, it also stated its expectation that discovery, along with supplementation, would "potentially . . . identify other names and provide some information about their subject areas and such." Although the Court clearly expected Plaintiffs to use the discovery process to determine which of the originally identified custodial files were worth requesting and to identify others whose custodial files likely contained relevant information, the process was never intended to allow—and the requirement of good faith in the production of discovery should never have permitted Defendants to presume—that Defendants could remain silent when they themselves uncovered additional individuals meeting the criteria for the custodian list in the course of their own research.

The Court's statement that "this is not a discovery response" is likewise quoted out of context, as the statement pertained only to defense counsel's expressed concern about their ability as attorneys to accurately describe on the custodian list the responsibilities of former employees with regard to the Paragard product. The Court intended to convey—and the transcript makes

5

clear—simply that defense counsel would not be subject to sanctions over any good-faith error in describing a former employee's responsibilities.

It also bears remembering that the custodian list was to be produced at least in part in response to certain requests for production, and therefore was subject to the rule requiring supplementation for that reason as well. See Fed. R. Civ. P. 26(e)(1).

Thus, the custodian list was not a mere courtesy, and the files of the late-added custodians are a proper subject of a motion to compel.

Having concluded that the custodial files are the proper subject of a motion to compel, the Court also finds that the motion has merit. As discussed, there is no dispute that the files meet the relevance requirement. Given the circumstances of the case, the Court also finds that the requested discovery is proportional and that there is no other good cause to allow Defendants to withhold it.

First, the Court is not persuaded by Defendants' argument that discovery should have already signaled to Plaintiffs that the 31 late-added individuals were, in addition to those identified by Defendants, likely to hold relevant materials in their custodial files. Defendants show that those individuals were referenced in discovery but do not set forth any argument about why those mentions should have revealed those individuals' importance to Plaintiffs. See Dkt. No. [703] at 8, 20-40. As a result, the Court finds little reason to believe that Plaintiffs had ample opportunity to identify the individuals as likely custodians of relevant

materials and request their files prior to Defendants' supplementation of the custodian list.

Second, the Court does not find that the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation. Defendants point out that the production will cost an estimated $2,153,324, but that is for all 31 files, not the 21 files at issue. See id. at 14; Dkt. No. [703-44]. Granted, $1,458,703.68, the amount Defendants estimate it would cost to produce 21 files, is no small number when considered in isolation. That said, given the stakes of this lawsuit—approximately 2,500 plaintiffs asserting claims of significant and intimate injury against defendants representing tens of billions of dollars in market capitalization—a $1.5 million production is not at all disproportionate. Furthermore, had it originally been disclosed to the Court that it was not 51 individuals who likely held relevant materials but rather *82* individuals, it is highly unlikely that the Court would have limited Plaintiffs to requesting the custodial files of only 50 of them.

Finally, the Court finds that the lateness of the supplement to the custodian list provides substantial justification for ordering the production. On a blank slate, it would of course be the Court's preference for Plaintiffs to methodically cull the custodians through discovery rather than order production of all of the custodial files. The Court is not working from a blank slate, however: this case has been pending for nearly four years; the 31 individuals were added to the

7

custodian list approximately 18 months late and approximately six months past the original close of discovery; and the working extended close of discovery is set for the end of January 2025, only four short months away. There is simply no time to allow for the more methodical approach without either denying Plaintiffs relevant information or further lengthening this already protracted case.

## IV.   CONCLUSION

In accordance with the foregoing, Plaintiffs' motion to compel production, Dkt. No. [698], is **GRANTED**. Defendants are **ORDERED** to produce all of the 31 new custodial files on an expedited basis at Defendants' expense. Counsel, along with any necessary document-production vendors with knowledge of technical issues, are **ORDERED** to meet and confer within **THREE BUSINESS DAYS** of the entry of this order to discuss a reasonable schedule for production. If counsel cannot agree to an expedited schedule, they **SHALL** submit their competing proposals to the Court within **SEVEN BUSINESS DAYS** of the entry of this order.

**IT IS SO ORDERED** this 7th day of October, 2024.

_____
**Leigh Martin May**
**United States District Judge**