# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN RE: PARAGARD IUD** | **)** | MDL DOCKET NO. 2974 |
| **PRODUCTS LIABILITY** | **)** | |
| **LITIGATION** | **)** | (1:20-md-02974-LMM) |
| | **)** | This Document Relates to All Cases |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CASES BARRED BY CERTAIN STATUTES OF LIMITATIONS AND REPOSE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION .................................................................................1

BACKGROUND .................................................................................2

ARGUMENT ....................................................................................5

   I.  Defendants' Motion is Untimely and a Waste of Resources. .........................6

   II.  Even if Plaintiffs' Claims Were Filed Outside the Required Time Period, Plaintiffs Sufficiently Allege Fraudulent Concealment to Toll All Time Limitations or Estop Defendants from Raising the Defense.......................8

      A.   The Court Has Already Ruled that Plaintiffs Have Sufficiently Alleged Fraud, and to the Extent the Court Did not Address the Precise Issue, Defendants Waived the Argument. .........................................9

      B.   Plaintiffs Sufficiently Plead Fraudulent Concealment. .........................11

   III.  Plaintiffs' Claims Are Not Barred by Any States' Statute of Limitations. ...................................................................................12

      A.   Plaintiffs' Complaints Do Not Allege When Plaintiffs Were Injured So Their Claims Cannot be Time Barred on the Face of the Complaint...........................................................................13

      B.   Plaintiffs' Claims Are Not Barred by the Statutes of Limitations of Alabama, Idaho, Michigan, Mississippi, New York, or Virginia ..............14

         i)  Alabama Plaintiffs' Claims Are Timely. ...............................14

         ii)  Idaho Plaintiffs' Claims Are Timely. ....................................16

         iii) Michigan Plaintiffs' Claims Are Timely. ...............................18

         iv) Mississippi Plaintiffs' Claims Are Timely. ...........................20

         v)  New York Plaintiffs' Claims Are Timely..............................22

         vi) Virginia Plaintiffs' Claims Are Timely. ................................24

IV. Plaintiffs' Claims Are Not Barred by the Statutes of Repose of Iowa, North Carolina, Tennessee, or Texas. ....................................................................26

    A.    Iowa Plaintiffs' Claims Are Timely. .....................................................26

    B.    North Carolina Plaintiffs' Claims Are Timely. ...................................28

       i)   The Statute of Repose Does Not Apply to Plaintiffs' Claims. ..............28

      ii)  Defendants are Estopped from Raising a Statute of Repose Defense. ...............................................................................................29

    C.    Tennessee Plaintiffs' Claims Are Timely .............................................31

    D.    Texas Plaintiffs' Claims Are Timely. ...................................................32

V.  Plaintiffs' Strict Liability Claims Are Not Barred by the Statutes of Repose of Georgia or Illinois. ................................................................................34

    A.    Georgia Plaintiffs' Claims Are Timely. ................................................34

    B.    Illinois Plaintiffs' Claims Are Timely. .................................................35

       i)   Injury in Subsection (d) Means Injury, Not Implantation, and Subsection (d) Expands (Not Retracts) Subsection (b). ............................36

      ii)  Illinois Plaintiffs' Claims Were Tolled via Fraudulent Concealment........................................................................................41

VI. The Court Should Deny the Motion for Any Case with a Choice-of-Law Dispute. ..............................................................................................................43

VII. The Court Should Deny the Motion for Any Case Where Defendants Relied on the PFS. ....................................................................................................48

CONCLUSION .......................................................................................................50

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
  2021 WL 4955910 (Aug. 30, 2021) ................................................................. 23

*In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*,
  840 F. Supp. 2d 1193 (D. Minn. 2012) ........................................................ 6, 7

*Alexander v. Wyeth*,
  897 F. Supp. 2d 489 (S.D. Miss. 2012) ........................................................... 22

*Allen v. A.H. Robins Co., Inc.*,
  752 F.2d 1365 (9th Cir. 1985) .................................................................. 17, 18

*Allstate Ins. Co. v. Menards, Inc.*,
  782 N.E.2d 258 (Ill. 2002) .............................................................................. 39

*Estate of Anderson v. Iowa Dermatology Clinic, PLC*,
  819 N.W.2d 408 (Iowa 2012) .......................................................................... 27

*Bauserman v. Unemployment Ins. Agency*,
  931 N.W.2d 539 (Mich. 2019) ........................................................................ 18

*Benton v. Snyder*,
  825 S.W.2d 409 (Tenn. 1992) .................................................................... 31, 32

*Best v. Taylor Mach. Works*,
  689 N.E.2d 1057 (Ill. 1997) ............................................................................ 35

*Blanco v. Am. Tel.& Tel. Co.*,
  689 N.E.2d 506 (N.Y. 1997) ........................................................................... 22

*Boardman v. United Servs. Auto. Ass'n*,
  470 So. 2d 1024 (Miss. 1985) ......................................................................... 46

*Borderlon v. Peck*,
  661 S.W.2d 907 (Tex. 1983) ........................................................................... 33

*Bryant v. Adams*,
  448 S.E.2d 832 (N.C. Ct. App. 1994) ........................................................ 29, 30

*Bullard v. Dalkon Shield Claimants Trust,*
   74 F.3d 531 (4th Cir. 1996) ..........................................................................28, 29

*Cacha v. Montaco, Inc.,*
   554 S.E.2d 388 (N.C. Ct. App. 2001)................................................................30

*Calaway v. Schucker,*
   193 S.W.3d 509 (Tenn. 2005) ..........................................................................31

*Cannon v. Mid-South X-Ray Co.,*
   738 So. 2d 274 (Miss. Ct. App. 1999)...............................................................20

*Carlen v. Coloplast Corp.,*
   2020 WL 3050752 (S.D. Ill. June 8, 2020) .......................................................40

*Cecchinato v. Town of Sheffield,*
   2021 WL 24580 (D. Mass. Jan. 4, 2021)...........................................................48

*Compass Bank v. Calleja-Ahedo,*
   569 S.W.3d 104 (Tex. 2018) .............................................................................32

*Computer Assocs. Int'l Inc. v. Altai, Inc.,*
   918 S.W.2d 453 (Tex. 1996) .............................................................................32

*Conner v. Hodges,*
   333 P.3d 130 (Idaho 2014) ...............................................................................17

*Coon v. Med. Ctr., Inc.,*
   797 S.E.2d 828 (Ga. 2017) ...............................................................................45

*Cramer v. Ethicon, Inc.,*
   2021 WL 243872 (W.D.N.C. Jan. 25, 2021)......................................................47

*Cummins v. Country Mut. Ins. Co.,*
   687 N.E.2d 1021 (Ill. 1997)..............................................................................37

*Daubach v. Honda Motor Co.,*
   707 N.E.2d 746 (Ill. Ct. App. 1999) .................................................................39

*Davis v. Toshiba Mach. Co., Am.,*
   710 N.E.2d 399 (Ill. 1999)..........................................................................36, 39

*DeLuna v. Burciaga*,
857 N.E.2d 229 (Ill. 2006).......................................................................41

*DGB, LLC v. Hinds*,
55 So. 3d 218 (Ala. 2010)........................................................................15

*Dohra v. Alcon (Puerto Rico), Inc.*,
1994 WL 7144 (N.D. Ill. Mar. 3, 1994) ..............................................40

*Douglas v. Sandoz Pharm. Corp.*,
2000 WL 33342286 (M.D.N.C. July 18, 2000)...............................29, 30

*Esener v. Kinsey*,
522 S.E.2d 522 (Ga. Ct. App. 1999)....................................................34, 35

*Evans v. Trinity Indus., Inc.*,
137 F. Supp. 3d 877 (E.D. Va. 2015) ....................................................26

*Ferro v. Soc'y of Saint Pius X*,
149 P.3d 813 (Idaho 2006) .....................................................................18

*Fiengo v. Gen. Motors Corp.*,
225 S.W.3d 858 (Tex. Ct. App. 2007)..................................................32, 33

*In re Fluoroquinolone Prods. Liab. Litig.*,
2017 WL 690188 (D. Minn. Feb. 21, 2017).........................................41

*Frank Brisco Co., Inc. v. Ga. Sprinkler Co., Inc.*,
713 F.2d 1500 (11th Cir. 1983) .............................................................45

*Frank v. Linkner*,
894 N.W.2d 574 (Mich. 2017)...............................................................19

*Fulmore v. Johnson & Johnson*,
2022 WL 18213493 (E.D.N.C. May 19, 2022) .....................................29

*In re Gen. Motors LLC Ignition Switch Litig.*,
2019 WL 952348 (S.D.N.Y. Feb. 27, 2019) .........................................31

*Griffin v. Unocal Corp.*,
990 So. 2d 291 (Ala. 2008).....................................................................14

*Grimes v. Suzukawa*,
    551 S.E.2d 644 (Va. 2001) ...................................................26

*Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*,
    785 N.E.2d 1 (Ill. 2003) ...............................................37, 38

*Hansen v. Stanley Martin Cos.*,
    585 S.E.2d 567 (Va. 2003) ...................................................25

*Harper v. Lawrence Cnty.*,
    592 F.3d 1227 (11th Cir. 2010) ...........................................48

*Harvey v. Merchan*,
    860 S.E.2d 561 (Ga. 2021) ...................................................45

*Henderson Square Condo Ass'n v. LAB Townhomes, LLC*,
    46 N.E.3d 706 (Ill. 2016) .....................................................42

*Herbst v. Givaudan Flavors Corp.*,
    341 F. Supp. 3d 1006 (N.D. Iowa 2018) ............................27

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) ...........................................48

*Hyer v. Pittsburgh Corning Corp.*,
    790 F.2d 30 (4th Cir. 1986) .................................................28

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,
    962 S.W.2d 507 (Tex. 1998) ...............................................33

*Johnston v. I-Flow Corp.*,
    2010 WL 11713179 (N.D. Ill. Aug. 26, 2010) ...................40

*Jones v. Smith & Nephew Inc.*,
    2022 WL 767709 (Tenn. Ct. App. Mar. 14, 2022)............31

*King-Bradwell P'ship v. Johnson Controls, Inc.*,
    865 S.W.2d 18 (Tenn. Ct. App. 1993)................................31

*Kiser v. A.W. Chesterton Co.*,
    736 S.E.2d 910 (Va. 2013) ...................................................24

*Knaysi v. A.H. Robins Co.*,
    679 F.2d 1366 (11th Cir. 1982) ....................................................22, 23

*Kraft, Inc. v. Edgar*,
    561 N.E.2d 656 (Ill. 1990)..............................................................40

*La Grasta v. First Union Sec., Inc.*,
    358 F.3d 840 (11th Cir. 2004) .......................................................49

*Leamanczyk v. A.H. Robins Co.*,
    596 F. Supp. 365 (N.D. Ill. 1984).............................................38, 39

*Lo v. Burke*,
    455 S.E.2d 9 (Va. 1995) .................................................................25

*Lusinski v. Wright Med. Tech., Inc.*,
    2021 WL 4522292 (N.D. Ill. Apr. 9, 2021)....................................40

*M.D. Russel Constr., Inc. v. Consol. Staffing, Inc.*,
    2023 WL 8798086 (4th Cir. Dec. 20, 2023)...................................44

*Maksym v. Bd. of Election Com'rs of City of Chicago*,
    950 N.E.2d 1051 (Ill. 2011) ...........................................................37

*Mason-Gibson, Inc. v. Sloan Valve Co.*,
    2022 WL 1434113 (Tex. App. May 6, 2022)..................................32

*Masters v. Hesston Corp.*,
    2001 WL 567736 (N.D. Ill. May 23, 2001), *aff'd*, 291 F.3d 985
    (7th Cir. 2002)...............................................................................35

*McGowen v. Roman Catholic Diocese of Biloxi*,
    319 So. 3d 1086 (Miss. 2021).........................................................20

*McKinley v. United States*,
    2015 WL 5842626 (M.D. Ga. Oct. 6, 2015)...................................44

*Morningstar v. Gen. Motors Corp.*,
    847 F. Supp. 489 (S.D. Miss.), *aff'd*, 36 F.3d 89 (5th Cir. 1994) .....................46

*Newman v. Walker*,
    618 S.E.2d 336 (Va. 2005) .............................................................26

*Nichols v. Volunteers of Am., N. Ala., Inc.*,
470 F. App'x 757 (11th Cir. 2012) ....................................................14

*Nuance Commc'ns, Inc. v. Int'l Bus. Machs. Corp.*,
544 F. Supp. 3d 353 (S.D.N.Y. 2021) ...............................................22

*Olawole v. ActioNet, Inc.*,
258 F. Supp. 3d 694 (2017) ..............................................................47

*Olson v. Owens Corning Fiberglass Corp.*,
556 N.E.2d 716 (Ill. App. Ct. 1990) .................................................40

*In re Paraquat Prods. Liab. Litig.*,
2022 WL 451898 (S.D. Ill. Feb. 14, 2022) ........................................42

*Penley v. Honda Motor Co., Ltd.*,
31 S.W.3d 181 (Tenn. 2000) .............................................................31

*People v. Morgan*,
2023 WL 3625735 (Ill. App. Ct. May 23, 2023) ...........................37, 38

*Perez v. Fedex Ground Package Sys., Inc.*,
587 F. App'x 603 (11th Cir. 2014) ....................................................46

*Pielage v. McConnell*,
516 F.3d 1282 (11th Cir. 2008) ......................................................6, 50

*PPG Architectural Finishes, Inc. v. Lowery*,
909 So. 2d 47 (Miss. 2005) ...........................................................20, 21

*PTI Royston, LLC v. Eubanks*,
861 S.E.2d 115 (Ga. Ct. App. 2021) ..............................................34, 35

*Putter v. N. Shore Univ. Hosp.*,
858 N.E.2d 1140 (N.Y. 2006) ...........................................................23

*RMS Tech., Inc. v. TDY Indus., Inc.*,
64 F. App'x 853 (4th Cir. 2003) .......................................................47

*Robinson v. Cobb*,
763 So. 2d 883 (Miss. 2000) .........................................................21, 22

*Rose Nat'l Collegiate Athletic Ass'n*, 346 F. Supp. 3d 1212 (N.D. Ill. 2018) ................................................................................................42

*S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*,
888 S.E.2d 553 (Ga. 2023) .................................................................45

*In re Skechers Toning Shoes Prods. Liab. Litig.*,
2014 WL 527703 (W.D. Ky. Feb. 7, 2014).......................................6, 7

*Slaney v. The Int'l Amateur Athletic Federation*,
244 F.3d 580 (7th Cir. 2011) ............................................................40

*Soniat v. Johnson-Rast & Hays*,
626 So. 2d 1256 (Ala. 1993)..............................................................15

*Spadaro v. City of Miramar*,
855 F. Supp. 2d 1317 (S.D. Fla. 2012) ...............................................5

*Spence v. Miles Laboratories, Inc.*,
810 F. Supp. 952 (E.D. Tenn. 1992)..................................................31

*St. George v. Pinellas Cnty.*,
285 F.3d 1334 (11th Cir. 2002) .........................................................48

*Stark v. Johnson & Johnson*,
2020 WL 1914767 (N.D. Ill. Apr. 20, 2020)......................................40

*Sun v. Girardot*,
2005 WL 8154510 (N.D. Ga. Feb. 10, 2005)......................................21

*In re Takata Airbag Prod. Liab. Litig.*,
462 F. Supp. 3d 1304 (S.D. Fla. 2020)...........................16, 19, 23, 26

*Torkie-Tork v. Wyeth*,
739 F. Supp. 2d 887 (E.D. Va. 2010) ................................................25

*Toyz, Inc. v. Wireless Toyz, Inc.*,
799 F. Supp. 2d 737 (E.D. Mich. 2011) ............................................19

*Travis v. Ziter*,
681 So. 2d 1348 (Ala. 1996)..............................................................15

*United States v. Siegelman*,
  786 F.3d 1322 (11th Cir. 2015) ...........................................................10

*Villareal v. R.J. Reynolds Tobacco Co.*,
  839 F.3d 958 (11th Cir. 2016) .............................................................16

*W. World Ins. Grp. v. KC Welding, LLC*,
  372 So. 3d 464 (Miss. 2023).................................................................20

*Wainberg v. Mellichamp*,
  93 F.4th 1221 (11th Cir. 2024) ..............................................................5

*Weaver v. Firestone*,
  155 So. 3d 952 (Ala. 2013)...................................................................16

*Wendel v. Ford Motor Co.*,
  2024 WL 4099909 (Mich. App. Ct. Sept. 5, 2024) ...........................18

*Wilder v. Amatex Corp.*,
  336 S.E.2d 66 (N.C. 1985)...............................................................28, 29

*Zatler v. Wainwright*,
  802 F.2d 397 (11th Cir. 1986) .............................................................48

*In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*,
  2012 WL 3582708 (Aug. 16, 2012).......................................................7

*Zimmerman v. Abbott Laboratories, Inc.*,
  545 N.E.2d 547 (Ill. Ct. App. 1989) (DES)........................................40

**Statutes**

28 U.S.C. § 1407...................................................................................1, 6

28 U.S.C. § 1407(a) .................................................................................7

735 Ill. Comp. Stat. 5/13-213(b).............................................................35

735 Ill. Comp. Stat. 5/13-213(d).............................................................36

735 Ill. Comp. Stat. 5/13-215.................................................................41

Ala. Code § 6-2-3....................................................................................15

Idaho Code § 5-219(4) ..................................................................17

Idaho Code § 6-1401 ....................................................................46

Iowa Code § 614.1(2A)(a) ...........................................................26

Iowa Code § 668.12 ......................................................................45

Mich. Comp. Laws § 600.585 .......................................................19

Mich. Comp. Laws § 600.5805(12) ..............................................18

Mich. Comp. Laws § 600.5827 .....................................................18

Miss. Code § 15-1-49(1) ...............................................................20

Miss. Code § 15-1-67 ....................................................................21

Miss. Code § 75-2-725(2) ..............................................................21

N.C. Gen. Stat. § 1-46.1 ...............................................................27

N.C. Gen. Stat. § 1-50(a)(6) (1995) .............................................28

N.Y. C.P.L.R. § 214(5) .................................................................22

O.C.G.A § 51-1-11(b)(2) ..............................................................34

Tenn. Code Ann. § 29-28-103(a) ..................................................31

Tex. Civ. Prac. & Rem. § 16.012(a)(2), (b) .................................32

Va. Code § 8.01-229(D) ................................................................25

Va. Code § 8.01-230 .....................................................................24

Va. Code § 8.01-243(A) ................................................................24

Va. Code § 8.01-249(9) .................................................................24

Va. Code § 8.01-249(1) .................................................................24

**Other Authorities**

Fed. R. Civ. P. 12(b) .................................................................6, 11

Fed. R. Civ. P. 12(c) ...................................................................................11

Fed. R. Civ. P. 12(d) ..................................................................................48

Ill. Sup. Ct. R. 23 .......................................................................................37

*Hurt,* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-
    webster.com/dictionary/hurt (last visited Nov. 11, 2024) .................................37

*Injury,* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-
    webster.com/dictionary/injury (last visited Nov. 11, 2024) ............................37

Plaintiffs submit this Opposition to Defendants' Motion to Dismiss Cases Barred by Certain Statutes of Limitations and Repose.

## INTRODUCTION

This MDL was formed in 2020 and the first trial initially scheduled for March 2024. After numerous discovery violations and stalling, we are more than six months past that long-lost trial date and at least a year from the first trial. Defendants continue to pursue their delay strategy with this Motion to Dismiss, which requires the parties to engage in plaintiff-specific, resource-intensive motion practice.

 Over three years ago, Defendants moved to dismiss Plaintiffs' Second Amended Master Personal Injury Complaint ("MPIC"), including all fraud-based claims. Dkt. 89 ("MTD I"). Unhappy with the Court's denial of that motion, Defendants now seek another bite at the apple. Despite that they have already lost (or waived) these arguments, Defendants now seek to dismiss hundreds of Plaintiffs' claims on a similar basis. Dkt. 709 ("Mot."). The Court should not countenance Defendants' obstructionist tactics, and regardless, their Motion is unsupported by relevant state law.

Defendants' Motion is untimely and inappropriate under 28 U.S.C. § 1407, and waived or barred by prior orders. The Motion should be denied for the further reason that Defendants misinterpret relevant state law, and Plaintiffs' claims were either tolled via fraudulent concealment or Defendants are estopped from raising the

affirmative defense for the same reason. To the extent Defendants dispute such tolling and equitable estoppel, the Court should deny the Motion so that those facts can be discovered and litigated. And finally, the Court should deny Defendants' Motion for any case that implicates more than one state law and requires a choice-of-law analysis, Dkt. 675 (Case Management Order Regarding Choice of Law ("COL Order")), or where Defendants rely on documents outside of the complaints.

## BACKGROUND

For decades, Defendants intentionally marketed Paragard to women—particularly younger women—as quick, easy, and safe to remove. Defendants told women that Paragard could effectively prevent pregnancy while the product was in place; and that it could be "quickly removed" "at any time," and a woman "could try to get pregnant the same day." MPIC ¶¶ 56, 58, 75, 76. Defendants' representations were false; Paragard poses significant health risks and has subjected untold thousands of women to material injuries. Defendants knew, or should have known, about these risks yet failed to inform Plaintiffs and took affirmative steps to keep Plaintiffs from discovering the risks associated with Paragard.

Starting in or around 2019, Plaintiffs began filing lawsuits against Defendants for their injuries caused by Paragard. In December 2020, the Judicial Panel on Multidistrict Litigation consolidated all federal cases before this Court. Plaintiffs filed the MPIC in April 2021, alleging, as relevant to the pending Motion, that

because of Defendants' fraudulent concealment, any time limitations were tolled and/or Defendants are estopped from raising the affirmative defenses they now seek to employ. *Id.* ¶¶ 160-65, 289-319. Plaintiffs allege that Defendants took affirmative actions to conceal information about Paragard's safety, and that Plaintiffs were unaware of and could not have discovered such information through reasonable diligence. *Id.* ¶¶ 164-65. Individual plaintiffs adopted these MPIC allegations in their Short Form Complaints ("SFC"),[1] and additionally allege fraudulent concealment by selecting "Yes" to Question 15(a) of the SFC: "Is Plaintiff alleging 'Tolling/Fraudulent Concealment?'" Dkt. 129-1.

Defendants moved to dismiss the MPIC in May 2021, and took broad aim at Plaintiffs' fraud-based claims, arguing they are not plead with the requisite specificity. Dkt. 89-1 at 26-30. Defendants did not make any other arguments targeted to Plaintiffs' claims of fraud or fraudulent concealment. *See id.* That motion is "deemed to have been pleaded in full in all member actions." Dkt. 55 ¶ 2.2.3.

In November 2021, the Court rejected Defendants' MTD I in full. Dkt. 235. As to the fraud-based claims, the Court held that "at this stage in the case, it is enough for the master complaint to set forth factual allegations concerning the marketing and promotion of Paragard sufficient to put Defendants on notice of the types of

---

[1] "A 'Short Form Complaint' is an abbreviated, plaintiff-specific complaint . . . that adopts the allegations in the Second Amended Master Complaint." Dkt. 129 at 2.

representations that form the basis of Plaintiffs' claims," and that "Plaintiffs here

have set forth such allegations." *Id.* at 17. The Court summarized Plaintiffs claims:

> Defendants deliberately failed to follow up on the adverse results from
> clinical studies and/or formal and informal reports from physicians
> and/or other healthcare providers and either **ignored, concealed,
> and/or misrepresented** those findings"; and that Defendants therefore
> knew and failed to disclose in representations to Plaintiffs and their
> healthcare providers that Paragard was designed and manufactured
> negligently and defectively, that "Paragard was not as safe as other
> products and procedures available to aid in the long-term prevention of
> pregnancy," that "the risk of adverse events with Paragard was higher
> than with other products and procedures available for birth control,"
> that "Paragard was not adequately tested," that Paragard had defects
> that "caused dangerous and adverse side effects, including but not
> limited to unacceptable incidence of breakage upon removal," and that
> the Paragard removal procedure "had a very high failure rate."

*Id.* at 17-18 (quoting MPIC) (emphasis added). The Court further noted that the

"pleadings are adequate to allow discovery into what Defendants knew of the safety

of Paragard and each defendant's role in the gathering of information and the

dissemination of marketing messaging." *Id.* at 18. The Court found that Plaintiffs

pointed to specific marketing communications as fraudulent, meeting the Rule 9(b)

standard, and Plaintiffs pled that Defendants "gave the impression to consumers that

Paragard was safer than other long-acting reversible contraceptives." *Id.* at 20.

After the Court denied Defendants' MTD I, Defendants filed Answers to the

MPIC. *See* Dkt. 265–69. Defendants' Answers are "deemed to have been pleaded in

full in all member actions." Dkt. 55 ¶ 2.2.5. And the Court set an initial trial for

March 2024. Dkt. 372.

Separately, Defendants have pushed to define the contours of choice-of-law issues in individual cases. The parties agreed on, and the Court entered, the COL Order providing for a general framework for the choice-of-law analysis to be used in direct-filed cases. The COL Order mandates that "No Party may file a motion that requires the Court to resolve the issue of what law applies to a particular case until after the completion of the initial Bellwether trials, except in cases where the applicable law is not reasonably in dispute." COL Order ¶ 4.

## ARGUMENT

"A statute of limitations [or repose] bar is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in its complaint. So dismissal on [timeliness] grounds is proper only where it is apparent from the face of the complaint that the claim is time-barred." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (citations omitted). "Generally, whether a claim is [time-]barred . . . should be raised as an affirmative defense in the answer rather than in a motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012). This Court has already recognized that "both the Supreme Court and the Eleventh Circuit Court of Appeals have affirmed time and again that a plaintiff does not have a burden to plead around an affirmative defense. Rather, a Rule 12 motion may be granted on an affirmative defense only in the exceptional

circumstance where 'the defense clearly appears on the face of the complaint.'" Dkt.

235 at 22-23 (citations omitted).

A motion under Rule 12(b)(6) "must be made before pleading if a responsive

pleading is allowed." Fed. R. Civ. P. 12(b). And the Court must take "the factual

allegations in the complaint as true and construe them in the light most favorable to

the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). As such,

under Rule 12, Plaintiffs are not required to plead facts necessary to defeat a statute

of limitations or repose defense. And if it is not clear from the face of the MPIC plus

a Plaintiff's SFC (together, "the Complaint") that the Complaint is time-barred,

Defendants' Motion fails.

## I.    Defendants' Motion is Untimely and a Waste of Resources.

Consistent with the purpose of 28 U.S.C. § 1407 and the posture of this case,

case-specific issues—e.g., timeliness defenses—should be resolved during the

bellwether process or deferred until cases are remanded or transferred to district

courts of original jurisdiction. "The primary purpose behind assigning multidistrict

litigation to a transferee court is to promote efficiency through the coordination of

discovery." *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales

Practices Litig*., 840 F. Supp. 2d 1193, 1198 (D. Minn. 2012) (citations omitted);

*accord In re Skechers Toning Shoes Prods. Liab. Litig*., 2014 WL 527703, at *1

(W.D. Ky. Feb. 7, 2014). "The proper court to hear dispositive motions concerning

the sufficiency of plaintiff-specific allegations is the transferor court, . . . , or this [C]ourt when it considers exemplar cases." *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 2012 WL 3582708, at *4 (Aug. 16, 2012).

> Case specific rulings "are neither the purpose, nor the forte, of a court presiding over a multidistrict litigation." Instead, the function of an MDL is to "promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters common among all cases" and, therefore, the transferee court typically does not rule on case-specific legal issues. Quite simply, deciding case specific issues is not the role of a MDL court.

*In re Skechers*, 2014 WL 527703 at *1 (internal citations omitted).

At the close of MDL pretrial proceedings, transferor courts, "each of which is familiar with the state law of their respective jurisdiction," "are in a better position to assess" "claims . . . aris[ing] under the laws of the states." *In re Activated Carbon-Based Hunting Clothing*, 840 F. Supp. 2d at 1199 (quotations and citations omitted); *see also In re Skechers*, 2014 WL 527703, at *1 ("[T]he 'transferor' court is better suited to decide case specific legal issues particularly in cases involving local laws where they naturally have more familiarity and expertise.").

Resolution of hundreds of individualized, case-specific issues in this MDL is the antithesis of "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Instead, Defendants' Motion would be best addressed when individual cases are at issue: either by this Court as part of the bellwether process or by the transferor courts after remand/transfer. If Defendants have their way, the Court and

parties will be burdened with continuous litigation of individual plaintiff's cases that will not move this MDL forward. *See* Mot. at 3 n.1 (noting that Defendants plan to update the Motion to address later-filed cases).

Deferring these case-specific decisions is particularly appropriate at this juncture of the MDL where Defendants' own discovery failures and abuses have significantly delayed the bellwether trials and resulted in the recent identification of a significant number of additional custodians and tens of thousands of new documents. That Defendants seek to have the parties shift focus from MDL-wide pretrial discovery to address individualized issues in non-bellwether cases confirms Defendants' goal to delay the litigation. This tactic is even more evident by Defendants' attack of just strict liability claims under Illinois and Georgia law, *see* Mot. at 29-33, which will require the parties and the Court to expend significant time and energy on issues that will not fully resolve any of those cases. The Court should deny Defendants' Motion as to all Plaintiffs.

## II.    Even if Plaintiffs' Claims Were Filed Outside the Required Time Period, Plaintiffs Sufficiently Allege Fraudulent Concealment to Toll All Time Limitations or Estop Defendants from Raising the Defense.

Defendants bring their Motion in a vacuum, with no mention of the MPIC or the Court's Order on MTD I. But that is not the posture of this case. Every SFC incorporates the MPIC, and the Court must consider those allegations. And here, that is where the analysis ends because the Court has already ruled on the arguments

rehashed in the Motion. Plaintiffs' incorporation of the MPIC, bolstered by the election of tolling/fraudulent concealment in the SFC, is enough to allege tolling or estoppel based on fraud on a motion to dismiss, rendering Plaintiffs' claims timely.

> ### A. The Court Has Already Ruled that Plaintiffs Have Sufficiently Alleged Fraud, and to the Extent the Court Did not Address the Precise Issue, Defendants Waived the Argument.

Even if Plaintiffs' claims would otherwise be barred by a time limitation, Defendants' fraudulent concealment tolled Plaintiffs' claims or estops Defendants from raising the affirmative defense. Defendants broadly claim that Plaintiffs fail to properly allege tolling based on fraud, *e.g.*, Mot. at 8, ignoring entirely the allegations in the MPIC and the Court's prior Order finding otherwise.[2] In denying Defendants' MTD I, the Court held that Plaintiffs "set forth factual allegations concerning the marketing and promotion of Paragard sufficient to put Defendants on notice of the types of representations that form the basis of Plaintiffs' claims." Dkt. 235 at 17. The Court spelled out those allegations, including that Defendants were aware of over 2,000 reports of Paragard breakages; failed to follow up on adverse events; and ignored, concealed, and misrepresented those findings. *Id.* at 17-18 (quoting MPIC). The Court also noted that Plaintiffs "have asserted facts pertaining

---

[2] During the meet-and-confer process, Defendants confirmed, as they must because they already moved to dismiss and answered the MPIC, that the current Motion attacks only the allegations in the SFC. But, here, the MPIC's tolling allegations were incorporated into each SFC, Dkt. 129 at 2, and Defendants' Motion is simply a back-door attempt at a second attack on that pleading.

to specific marketing communications," and allegations about the FDA admonishing Defendants for false or misleading misrepresentations. *Id.* at 18-20. The Court's Order was clear: The pleadings are adequate.[3]

- "These pleadings are adequate to allow discovery into what Defendants knew of the safety of Paragard and each defendant's role in the gathering of information and the dissemination of marketing messaging." *Id.* at 18.

- "These pleadings are also sufficient to establish the 'what, where, and how,' and should likewise set the stage for targeted discovery to determine from information under Defendants' control who it was that was responsible for making the statements." *Id.* at 20.

The Court's Order "govern[s] the *same issues*" here. *United States v. Siegelman*, 786 F.3d 1322, 1327 (11th Cir. 2015). Because the Court already found the allegations sufficient, and Defendants are bound by that Order, Defendants' Motion fails.

Further, after the Court denied Defendants' MTD I, Defendants answered the MPIC. *See* Dkt. 265-69. And while the MTD I and master answer "shall not be deemed or determined to waive any ***defenses specific to individual member actions***," e.g., jurisdiction, venue, service, Dkt. 55 ¶ 2.2.2 (emphasis added)— Plaintiffs' fraudulent concealment claims rely on information solely within Defendants' control; they are not "specific to individual member actions." As such, even if we assume that the Court has not already addressed Defendants' arguments,

---

[3] Although the Court recognized that in the MDL context it should view a master complaint with "substantial leniency" in favor of particularity, Dkt. 235 at 16, it ultimately concluded that Plaintiffs did meet Rule 9's requirements.

which it undoubtedly has, Defendants may not now file a second Rule 12(b)(6) motion attacking the same allegations in the MPIC. *See* Fed. R. Civ. P. 12(b).[4] The Court should deny Defendants' Motion on that ground alone.

## B.    Plaintiffs Sufficiently Plead Fraudulent Concealment.[5]

If, however, the Court determines that the Motion is not controlled by the prior Order and permits Defendants to move anew, the Motion must still be denied because Plaintiffs sufficiently plead fraud and fraudulent concealment.

Plaintiffs allege that Defendants affirmatively withheld or misrepresented facts to keep Plaintiffs from knowing they had been exposed to Paragard's risks or that those risks caused their injuries. For example, Defendants knew of Paragard's propensity for causing injury, yet never warned Plaintiffs. *See* MPIC ¶¶ 62-70. And when Defendants amended the Paragard label in 2019, they still omitted an adequate warning. *See id.* ¶¶ 78-81. Defendants continued to misrepresent Paragard's safety, telling the public (and Plaintiffs) that Paragard was safe and effective. *See id.* ¶¶ 121, 311. Further, Defendants made "material representations that were false and misleading" in information intended for Plaintiffs and medical professionals, including assurances that Paragard was safe. *Id.* ¶¶ 298-300. Plaintiffs further allege

---

[4] Defendants also may not convert the motion into one for judgment on the pleadings because the pleadings are not closed as to the SFC. *See* Fed. R. Civ. P. 12(c).

[5] There is variation in the fraudulent concealment laws of each of the states involved in the Motion, and those state-specific issues are addressed below. Exhibit A identifies which Plaintiffs' claims are subject to a particular argument.

that any statutory timelines were tolled, and Defendants are estopped from relying on a statute of limitation or repose defense because of Defendants' fraudulent concealment, "through affirmative misrepresentations and omissions to Plaintiffs and defects associated with Paragard." *Id.* ¶¶ 160-64.

Plaintiffs' Complaint is replete with allegations that Defendants concealed the dangers of Paragard to mislead plaintiffs, *see, e.g.*, *id.* ¶¶ 10, 66, 315, 324, 344, and that Plaintiffs could not have discovered those concealed facts through reasonable diligence, *id.* ¶¶ 160-65, 304, 328. *See also* Dkt. 136 at 23-28. Plaintiffs also allege fraudulent concealment in their SFC.[6] Because Plaintiffs sufficiently allege fraud and fraudulent concealment, Defendants' Motion must be denied.

## III.  Plaintiffs' Claims Are Not Barred by Any States' Statute of Limitations.

Although some Plaintiffs allege in the SFC the date their Paragard was removed, they were not required to and otherwise did not allege when they were injured. Consequently, any limitations argument that relies on the date of injury must fail on this Motion. Further, because of Defendants' fraudulent concealment, Plaintiffs claims were tolled, or Defendants are estopped from raising the affirmative defense on the same grounds. In either case, Plaintiffs' claims are timely.

---

[6] Six plaintiffs subject to this Motion did not select "Yes" to "Is Plaintiff alleging 'Tolling/Fraudulent Concealment'" in their SFC, *see* Ex. A, but the SFC adopts the fraudulent concealment allegations in the MPIC, *see* Dkt. 129 at 2.  If the Court finds the MPIC allegations alone insufficient to allege fraudulent concealment, those plaintiffs request to amend their SFCs to allege fraudulent concealment therein.

**A.     Plaintiffs' Complaints Do Not Allege When Plaintiffs Were Injured So Their Claims Cannot be Time Barred on the Face of the Complaint.**

Defendants Motion begins with the inaccurate assumption that "the common initial injury of all plaintiffs in this MDL is a signature and discrete event—the breakage of the Paragard at the time of removal." Mot. at 1. But breakage is the signature *defect*; it is not an *injury*. Plaintiffs allege in the MPIC that the defect is that the Paragard broke, sometimes inside a plaintiff's body and often discovered during removal, but the MPIC is silent about *when* Plaintiffs were injured. *See* MPIC ¶ 5 ("a product defect causing the device to break inside the body, causing injuries"), ¶ 62 ("unanticipated breakage can cause serious complications and injuries"). For example, the MPIC states that for many women, the injury is the resulting surgery and/or hysterectomy, but it says nothing about when those procedures took place. *See id.* ¶¶ 11, 65 ("removing broken pieces of Paragard could require additional medical intervention, including but not limited to hysterectomy"), ¶ 67 (hysteroscopy, laparoscopy, laparotomy, hysterectomy), ¶ 150 (surgery, infertility, pain). The SFCs include dates of removal but do not include dates of injury. Defendants cannot simply substitute "breakage" for "injury." Because the MPIC and SFC are silent as to the date of injury—a fact unique for each plaintiff—the Motion must be denied to the extent it relies on injury as the trigger for a statute of limitation defense.

**B.      Plaintiffs' Claims Are Not Barred by the Statutes of Limitations of Alabama, Idaho, Michigan, Mississippi, New York, or Virginia**

   **i)      *Alabama Plaintiffs' Claims Are Timely.*[7]**

Alabama's two-year statute of limitations begins to run when a plaintiff's injury manifests—i.e., "observable signs or symptoms or the existence of which is medically identifiable." *Griffin v. Unocal Corp.*, 990 So. 2d 291, 293, 310 (Ala. 2008) (reversing grant of summary judgment on statute of limitation grounds). The Alabama Supreme Court "has again and again reaffirmed the proposition . . . that there are cases where the defendant's act does not cause a contemporaneous injury to the plaintiff, but an injury later manifests as a result of, and in furtherance and subsequent development of, the defendant's act." *Id.* at 308. Defendants argue that Alabama Plaintiffs' claims are barred by the statute of limitations. Mot. at 5-8. But the Complaints say nothing about when Plaintiffs suffered symptoms, or when Plaintiffs' injuries manifested or were medically identifiable. Defendants may not simply infer that breakage equals injury. Because it is not clear from the face of the Complaints that the actions are time-barred, the Motion must be denied.

---

[7] Defendants argue for the first time in a footnote that the Alabama Plaintiffs' consumer protection claims are "alternatively barred by a statute of repose." Mot. at 7, n.5. This is impermissible. *See* Dkt. 700 (requiring meet-and-confer on issues to be raised in this Motion); *Nichols v. Volunteers of Am., N. Ala., Inc.*, 470 F. App'x 757, 763 (11th Cir. 2012) (barring argument raised in a footnote). The Court should likewise reject Defendants' other footnote-only "arguments."

Further, Alabama provides that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar," a claimant has two years from when the claimant discovers "the fact constituting the fraud" to file a claim. Ala. Code § 6-2-3; *see DGB, LLC v. Hinds*, 55 So. 3d 218, 225-26 (Ala. 2010) (applying Section 6-2-3 to "a fraudulent concealment of the existence of a cause of action"). "[D]ismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent that the tolling provisions do not apply." *Travis v. Ziter*, 681 So. 2d 1348, 1351 (Ala. 1996).

To sufficiently plead fraudulent concealment, a plaintiff must allege (1) the defendant had a duty to disclose, (2) and either failed to disclose or concealed a material fact, (3) that defendant's failure to disclose or his concealment induced the plaintiff to act, and (4) that the plaintiff was injured as a result. *See Soniat v. Johnson-Rast & Hays*, 626 So. 2d 1256, 1258-59 (Ala. 1993). Alabama Plaintiffs easily meet this burden. *See* MPIC ¶¶ 299, 312, 321-22, 370 (Defendants' duty); ¶¶ 19, 82, 164, 211, 290, 309 (misrepresented or omitted material fact); ¶¶ 296, 327 (induced Plaintiffs to act); ¶¶ 307, 319, 338 (Plaintiffs were injured). Plaintiffs allege both that Defendants failed to properly warn *before* Plaintiffs used Paragard, and also that Defendants continued to misrepresent Paragard's safety *after* their Paragards were implanted, including by withholding safety information, *id.* ¶ 63, assuring Plaintiffs and providers that Paragard was safe, ¶¶ 298-300, and updating the 2019 label but

still omitting crucial information, ¶¶ 78-81; *see also supra* Section II. Here, it is not apparent from the face of the Complaint that the tolling provisions do not apply, and Defendants' Motion must be denied. *See, e.g.*, *In re Takata Airbag Prod. Liab. Litig.*, 462 F. Supp. 3d 1304, 1322–23 (S.D. Fla. 2020) (finding sufficient for fraudulent concealment allegations that defendant knew of risk, failed to investigate or disclose the risk, and continued selling defective product).

Alabama Plaintiffs' claims are further saved by equitable tolling because Plaintiffs plead extraordinary circumstances prevented timely filing. *See Weaver v. Firestone*, 155 So. 3d 952, 957-58 (Ala. 2013). Whether equitable tolling is applicable is a fact-specific inquiry, *id.* at 958, and a plaintiff is not required to make equitable tolling allegations in her complaint. *Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016). Here, Plaintiffs allege that Defendants affirmatively misrepresented Paragard as safe and effective while at the same time concealing Paragard's defects, and as a result neither Plaintiffs nor their healthcare providers were aware or could have been aware, through reasonable diligence, of Paragard's defects. *See supra* Section II.

### ii) *Idaho Plaintiffs' Claims Are Timely.*[8]

Idaho's two-year statute of limitations begins to run when a plaintiff suffers

---

[8] Forgetting the posture of their Motion, Defendants raise for the first time in a footnote that "summary judgment is warranted on all counts." Mot. at 9, n.8.

"some damage" and the injury becomes "objectively ascertainable." *Conner v. Hodges*, 333 P.3d 130, 135 (Idaho 2014) ("[I]n a negligence action, because the plaintiff must prove actual damage, the statute of limitations cannot begin to run until some damage has occurred . . .").[9] Defendants claim that Idaho Plaintiffs' claims are barred by the statute of limitations but point to no allegations about when Plaintiffs' injuries occurred. Mot. at 8-10. Because the Complaints are silent about when Plaintiffs suffered "some damage," the Motion fails.

Plaintiffs also sufficiently plead tolling based on Defendants' fraudulent concealment. Idaho Code § 5-219(4). Fraudulent concealment tolling applies when a plaintiff alleges that "the fact of damage has . . . been fraudulently and knowingly concealed from the injured party." *Id.* § 5-219(4). Idaho Plaintiffs easily meet this burden. *See supra* Section II, III.B.i. Plaintiffs allege that Defendants fraudulently concealed from Plaintiffs and their providers the serious and potentially permanent effects of Paragard. *See, e.g.*, MPIC ¶¶ 292, 295. "This constitutes a sufficient allegation that [Defendants] fraudulently concealed the 'fact of damage' for which [Plaintiffs] now seek[] redress." *Allen v. A.H. Robins Co., Inc.*, 752 F.2d 1365, 1371 (9th Cir. 1985).

---

Defendants cannot convert the Motion into one for summary judgment, and waived their argument by failing to raise it prior to filing the Motion. *See supra* n.7.

[9] Although *Conner* is a medical malpractice case, it is controlled by the same statute as personal injury.

Additionally, Defendants are precluded from asserting the statute of limitations defense. Equitable estoppel bars a statute of limitations defense for a reasonable time after the party asserting estoppel discovers the truth, and applies when there is

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Ferro v. Soc'y of Saint Pius X,* 149 P.3d 813, 815 (Idaho 2006). "[E]ach of the four elements [of equitable estoppel] requires a factual determination." *Allen v. A.H. Robins Co., Inc.*, 752 F.2d 1365, 1376 (9th Cir. 1985). The allegations in the MPIC are sufficient to demonstrate a threshold showing of equitable estoppel to defeat a motion to dismiss. *See, e.g.*, MPIC ¶¶ 161-62, 164, 167, 291-94, 296, 298, 304.

### iii) *Michigan Plaintiffs' Claims Are Timely.*

Michigan's three-year statute of limitations begins to run from "the time of the wrong upon which the claim is based." Mich. Comp. Laws §§ 600.5805(12), 600.5827. This is "the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty." *Bauserman v. Unemployment Ins. Agency*, 931 N.W.2d 539, 546 (Mich. 2019) (citation omitted); *see also Wendel v. Ford Motor Co.*, 2024 WL 4099909, at *4 (Mich. App. Ct. Sept.

5, 2024) (finding issue of fact existed as to whether tolling applied). Defendants claim that Michigan Plaintiffs' claims are barred by the statute of limitations but point to no allegations in the Complaints about when Plaintiffs were harmed. Mot. at 10-12. Because the Complaints are silent about when Plaintiffs were harmed by the Defendants' breach, the Motion fails.

Even if Plaintiffs' claims were facially untimely, they were tolled because Defendants "fraudulently conceal[ed] the existence of the claim . . . from the knowledge of the person entitled to sue on the claim." Mich. Comp. Laws § 600.5855; *Frank v. Linkner*, 894 N.W.2d 574, 582-83 (Mich. 2017). To sufficiently allege fraudulent concealment on a motion to dismiss, a plaintiff must allege that "(1) the defendant wrongfully concealed actions; (2) the plaintiff did not discover the operative facts which are the basis of the cause of action within the statute of limitations; and (3) the plaintiff exercised due diligence until discovery of the facts." *Toyz, Inc. v. Wireless Toyz, Inc.*, 799 F. Supp. 2d 737, 743-44 (E.D. Mich. 2011) (denying motion to dismiss because "Plaintiffs properly plead the necessary elements of fraudulent concealment and the statute of limitations may have been tolled"). Michigan plaintiffs easily meet this burden. *See supra* Section II, III.B.i. That is enough at the motion to dismiss stage. *See In re Takata Airbag Prod. Liab. Litig.,* 462 F. Supp. 3d at 1322–23 (finding sufficient for fraudulent concealment

under Michigan law allegations that defendant knew of risk, failed to investigate or disclose the risk, and continued selling defective product).

### iv)   *Mississippi Plaintiffs' Claims Are Timely.*

Mississippi's three-year statute of limitations begins to run when the plaintiff knew or should have known of her injury. Miss. Code § 15-1-49(1). To determine when a plaintiff should have discovered her injury, the Court considers actions taken by the plaintiff, for example, "seeking medical attention for side effects or symptoms." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 51 (Miss. 2005). "Because there is no bright line rule, the specific facts of the case will determine whether the plaintiff knew or reasonable [sic] should have known that an injury existed." *Id.*; *see also Cannon v. Mid-South X-Ray Co.*, 738 So. 2d 274, 276-77 (Miss. Ct. App. 1999) (reversing grant of summary judgment because issue of material fact existed as to date of accrual). Further, "when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act," the discovery rule tolls the statute of limitations "until a plaintiff should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent." *W. World Ins. Grp. v. KC Welding, LLC*, 372 So. 3d 464, 467-69 (Miss. 2023); *McGowen v. Roman Catholic Diocese of Biloxi*, 319 So. 3d 1086, 1090 (Miss. 2021) (reversing grant of motion to dismiss because plaintiff's allegation that he did not know of his injury sufficiently invoked

discovery rule). Mississippi's six-year statute of limitations for breach of warranty claims begins to run when the breach occurs. Miss. Code § 75-2-725(2).

Defendants include a section on Mississippi, presumably claiming these actions are barred by the statute of limitations, but they offer no argument or allegation of when the injury occurred. *See* Mot. at 12-14. When Plaintiffs were injured is an issue of fact, *see PPG Architectural Finishes*, 909 So. 2d at 51, and those facts are not in the Complaints and have not yet been discovered in these cases. Likewise, as alleged, Plaintiffs had no reason to believe their injuries were caused by *any* negligent conduct. Additionally, Defendants point to no facts in the Complaints showing that any breach occurred more than six years before the Complaints were filed. Defendants have thus not satisfied their "'very high burden' of showing that the plaintiff[s] cannot conceivably prove any set of facts that would entitle [them] to relief." *Sun v. Girardot*, 2005 WL 8154510, at *4 (N.D. Ga. Feb. 10, 2005), and their Motion as to Mississippi Plaintiffs should be denied in full.

Further, all of Plaintiffs' claims were tolled because Defendants fraudulently concealed the cause of action from Plaintiffs. Miss. Code § 15-1-67; *see Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000) ("The fraudulent concealment doctrine 'applies to any cause of action.'"). To sufficiently plead fraudulent concealment, a plaintiff must allege that defendants "engaged in affirmative acts of concealment," and that plaintiffs could not have discovered the fraud even through the exercise of

due diligence. *Id.*; *Alexander v. Wyeth*, 897 F. Supp. 2d 489, 492-96 (S.D. Miss. 2012) (reversing grant of summary judgment because plaintiff sufficiently alleged fraudulent concealment). Mississippi Plaintiffs meet this burden. *See supra* Section II, III.B.i. Defendants' Motion fails.

v)   *New York Plaintiffs' Claims Are Timely.*

New York's three-year statute of limitations, N.Y. C.P.L.R. § 214(5), begins to run "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." *Blanco v. Am. Tel.& Tel. Co.*, 689 N.E.2d 506, 510 (N.Y. 1997). This is not until the plaintiff suffers "actual injury." *Id.* Although this may often "correlate[] with the date the product malfunctioned," *id.*, that is a fact question yet to be discovered. Here, Defendants have pointed to no facts in the Complaints that show when Plaintiffs noticed symptoms or suffered "actual injury," because there are none. The Motion fails as to the injury-based claims.

In any case, Plaintiffs have sufficiently pled that Defendants are equitably estopped from raising the statute of limitations defense because they fraudulently concealed Plaintiffs' causes of action. *See Knaysi v. A.H. Robins Co.,* 679 F.2d 1366, 1368 (11th Cir. 1982). Equitable estoppel precludes "a defendant from using the statute of limitation as a defense where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and

the institution of the legal proceeding." *Nuance Commc'ns, Inc. v. Int'l Bus. Machs. Corp.*, 544 F. Supp. 3d 353, 384 (S.D.N.Y. 2021). This is a fact question. *Putter v. N. Shore Univ. Hosp.,* 858 N.E.2d 1140, 1143 (N.Y. 2006).

In *Knaysi*, a product liability case involving an intrauterine device ("IUD"), the Eleventh Circuit noted "[t]wo unifying factors" in New York cases applying equitable estoppel: (1) "the defendant has control and superior, or exclusive, knowledge of facts necessary for the plaintiff to make out a cause of action," and (2) "the defendants by affirmative misstatements conceal these essential facts from the plaintiff." 679 F.2d 365 at 1369. The Eleventh Circuit concluded that both factors were present because (1) plaintiff and her healthcare provider relied upon defendant's published information about its IUD, and (2) the defendant published information it knew to be false and suppressed damaging information about the IUD's danger. *Id*. at 1369-70. The facts alleged were "essential to make out the cause of action for products liability" and "sufficient to invoke the application" of equitable estoppel. *Id.*

The facts here "offer no grounds for distinction." *Id.* at 1369; *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 4955910, at *2-3 (Aug. 30, 2021) (finding issue of fact whether New York's equitable estoppel applies where there was evidence that defendants were aware product was defective, yet concealed reports and continued to make false representations about the product's defects); *In*

*re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d at 1322–23 (finding plaintiff sufficiently alleged equitable estoppel under New York law to survive motion to dismiss). Plaintiffs allege Defendants knew that the Paragard was defective yet concealed that information and continued to falsely advertise Paragard as safe. *See supra* Section II, III.B.i. This is enough for Plaintiffs' claims to survive Defendants' Motion.

### vi) *Virginia Plaintiffs' Claims Are Timely.*

Virginia's two-year statute of limitations begins to run "from the date the injury is sustained." Va. Code §§ 8.01-230, 8.01-243(A). Because "injury" means "positive, physical or mental hurt to the claimant, not legal wrong to [her], [Virginia] ties[s] the running of the statute of limitations to the fact of harm to the plaintiff, without which no cause of action would come into existence." *Kiser v. A.W. Chesterton Co.*, 736 S.E.2d. 910, 915 (Va. 2013). The relevant question is "When was the plaintiff hurt?" *Id.* Defendants point to no allegations in the Complaints that answer that question.[10]

Further, the statute of limitations for fraud claims under Virginia law does not accrue until the "fraud, mistake, misrepresentation deception, or undue influence is

---

[10] Effective July 1, 2016, Va. Code § 8.01-249(9) instituted a discovery rule for products liability claims arising from implanted medical devices that runs from "when the person knew or should have known of the injury and its causal connection to the device." For Virginia Plaintiffs with claims arising after this date, the discovery rule provides another basis for the timeliness of their claims.

discovered or by the exercise of due diligence reasonably should have been discovered." Virginia Code § 8.01-249(1). This discovery rule applies "without any exceptions, and without reference to the nature of the injury alleged or the 'gravamen' or 'object' of the claims." *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 887, 892 (E.D. Va. 2010). When a plaintiff knew or reasonably should have known she has a claim is an issue of fact usually reserved for the jury. *Id.*; *see id.* (denying summary judgment on fraud claims where prescription drug manufacturer "purposely concealed and misrepresented risks" of the drug and fact issues as to plaintiff's discovery of fraud); *Hansen v. Stanley Martin Cos.*, 585 S.E.2d 567, 575 (Va. 2003) (reversing summary judgment where reasonable persons could disagree as to plaintiff's knowledge of fraud). It is Defendants' burden to prove a statute of limitations defense, *Lo v. Burke*, 455 S.E.2d 9, 12 (Va. 1995), yet they fail to identify any allegations in the Complaints that show when Plaintiffs were hurt or when Plaintiffs discovered the fraud. The Motion should be denied.

In addition, Plaintiffs' claims are tolled because Defendants' fraudulent concealment obstructed, debarred, and deterred Virginia Plaintiffs from filing their claims. Va. Code § 8.01-229(D).[11] To sufficiently plead fraudulent concealment, a

---

[11] Va. Code § 8.01-229(D) provides in relevant part: "When the filing of an action is obstructed by a defendant's . . . using any . . . direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought."

plaintiff must allege the "defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action," *Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001), and these acts "have the effect of debarring or deterring the plaintiff from [her] action." *Newman v. Walker*, 618 S.E.2d 336, 340 (Va. 2005). Virginia Plaintiffs meet this burden. *See supra* Section II, III.B.i.; *see also Evans v. Trinity Indus., Inc*., 137 F. Supp. 3d 877, 882 (E.D. Va. 2015) (denying motion to dismiss based on fraudulent concealment where plaintiffs allege defendant petitioned agency to modify product but omitted information about known defects and concealed from the public facts necessary for a products liability claim); *In re Takata Airbag Prod. Liab. Litig.,* 462 F. Supp. 3d at 1337.

## IV. Plaintiffs' Claims Are Not Barred by the Statutes of Repose of Iowa, North Carolina, Tennessee, or Texas.

### A. Iowa Plaintiffs' Claims Are Timely.

Iowa prohibits claims against a manufacturer more than 15 years after the product was first purchased. Iowa Code § 614.1(2A)(a). But the statute of repose "shall not apply if the manufacturer . . . of the product intentionally misrepresents facts about the product or fraudulently conceals information about the product and that conduct was a substantial cause of the [plaintiff's] harm." *Id*.[12] The statute of

---

[12] Defendants acknowledge the fraudulent concealment exception but reject its application in a footnote without any analysis or explanation. Mot. at 20 n.15; *see supra* n.7.

26

repose may also be tolled through common law fraudulent concealment if (1) the defendant made a false representation or concealed material facts, (2) the plaintiff lacks knowledge of the true facts, (3) the defendant intended the plaintiff to act upon such representations, and (4) the plaintiff relied upon such representations to her prejudice. *Estate of Anderson v. Iowa Dermatology Clinic, PLC*, 819 N.W.2d 408, 414-15 (Iowa 2012)[13]; *Herbst v. Givaudan Flavors Corp.*, 341 F. Supp. 3d 1006, 1012-13, 1014 (N.D. Iowa 2018) (comparing statutory and common law exceptions).

Plaintiffs sufficiently allege both the statutory exception and common law tolling. Plaintiffs allege that Defendants intentionally misrepresented and concealed facts about Paragard, MPIC ¶¶ 10, 82, 211, 325, 395, *supra* Section II, III.B.i.; that Plaintiffs were not aware of the actual risks of Paragard and had they known about these misrepresented or concealed facts, they would not have used Paragard, MPIC ¶ 305; that Defendants intended to deceive plaintiffs, *id.* ¶¶ 295, 385; and that "Defendants' conduct was a substantial factor in causing Plaintiffs' injuries," *id.* ¶¶ 246, 306, 337. The Iowa statute of repose thus does not apply to Plaintiffs' claims, and the Motion must be denied.

---

[13] *Anderson* involved medical malpractice, which does not have a statutory exception to the statute of repose. Because Defendants concede common law fraudulent concealment applies in products cases, Plaintiffs will not dispute such application.

**B.     North Carolina Plaintiffs' Claims Are Timely.**

North Carolina's statute of repose bars claims more than 12 or six years after the date of initial purchase. N.C. Gen. Stat. § 1-46.1; N.C. Gen. Stat. § 1-50(a)(6) (1995). But the statute of repose does not apply to Plaintiffs' claims because it is difficult or impossible to establish the exact time of Plaintiffs' injuries, and the harm was not readily apparent. Even if Plaintiffs' claims were otherwise barred by the statute of repose, Defendants are estopped from raising the defense.

**i)     *The Statute of Repose Does Not Apply to Plaintiffs' Claims.***

The North Carolina statute of repose does not apply when "[i]t is impossible to identify . . . the 'first injury,'" and so the "first *identifiable* injury" is "when the disease is diagnosed." *Wilder v. Amatex Corp.*, 336 S.E.2d 66, 70-73 (N.C. 1985); *see also Hyer v. Pittsburgh Corning Corp.*, 790 F.2d 30, 33-34 (4th Cir. 1986) (extending exception to N.C. Gen. Stat. § 1-50(a)(6) (1995)). In *Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531, 525, 537 (4th Cir. 1996), the Fourth Circuit applied the exception to claims arising from injuries caused by an implantable medical device, rejecting that the exception applies only to occupational diseases. The Fourth Circuit noted that the exception is premised on "two characteristics: the difficulty or impossibility of establishing the exact time the injury first occurs or the disease process begins, and some period of time between first exposure to the

product and the discovery of the disease, so that the harm caused by the product would not be readily apparent until the disease is diagnosed as such." *Id.* at 535.

Plaintiffs allege that Paragard "decays and loses flexibility over time on the shelf and in situ," leading to arm breakage. MPIC ¶¶54-55. Plaintiffs could not identify that their Paragards were decaying and losing flexibility while they were *in situ*, and they have not identified in the Complaints when their "injury first occur[ed]." *See Wilder*, 336 S.E.2d at 70. Thus, this case meets the criteria for the "disease exception," and the statute of repose does not apply.

### ii)   *Defendants are Estopped from Raising a Statute of Repose Defense.*

Even if the statute of repose otherwise applied, Defendants are estopped from raising the defense. In North Carolina, "[e]quitable estoppel may . . . defeat a defendant's statute of repose defense." *Bryant v. Adams*, 448 S.E.2d 832, 838-39 (N.C. Ct. App. 1994) (reversing and remanding Rule 12(b)(6) dismissal because the plaintiffs sufficiently stated a claim for equitable estoppel). Although Defendants point to federal courts that find courts split as to whether North Carolina's statute of repose may be tolled, *see* Mot. at 24 (citing *Douglas v. Sandoz Pharm. Corp.*, 2000 WL 33342286, at *6 (M.D.N.C. July 18, 2000)), the "split" arises from a distinction in equitable theories. *Cf. Fulmore v. Johnson & Johnson*, 2022 WL 18213493, at *2-3 (E.D.N.C. May 19, 2022) (noting split of authority but still analyzing fraudulent concealment of product liability claim).

North Carolina courts have held that fraudulent concealment cannot toll the statute of repose because substantive rights are not subject to tolling. *See, e.g.*, *Cacha v. Montaco, Inc.*, 554 S.E.2d 388, 392-94 (N.C. Ct. App. 2001). But those cases also recognize that while the statute of repose may not be *tolled*, a defendant may be *estopped* from raising the defense when the plaintiff alleges "a false representation or concealment of material facts." *Id.* at 393; *Douglas*, 2000 WL 33342286 at *6-7 (holding the statute of repose cannot be tolled, then analyzing whether defendants were estopped from raising the defense but finding elements not met). Here, Plaintiffs allege that Defendants should be barred from raising the defense, MPIC ¶¶ 160-65, and *Bryant* controls.

Defendants are estopped from raising the statute of repose defense if (1) Defendants made a false representation or concealed material facts; (2) intending that Plaintiffs will rely on the false representation or concealment; (3) Defendants knew, actual or constructive, the real facts; (4) Plaintiffs lacked knowledge and means of knowledge of the real facts; and (5) Plaintiffs relied on the false representation or concealment. *See Bryant*, 448 S.E.2d at 838. North Carolina Plaintiffs sufficiently allege equitable estoppel, *see supra* Section II, III.B.i, and Defendants' Motion fails.

### C.     Tennessee Plaintiffs' Claims Are Timely.

The Tennessee products liability statute of repose requires claims be filed within 10 years of purchase of a product. Tenn. Code Ann. § 29-28-103(a). But Defendants are barred from raising the Tennessee statute of repose defense because of their fraudulent concealment. "[T]he Tennessee Supreme Court itself has not ruled on whether 'fraudulent concealment' can toll the statute of repose" in product liability cases. *In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 952348, at *3 (S.D.N.Y. Feb. 27, 2019). Although the Tennessee Supreme Court held mental incompetency cannot toll a repose period, *see, e.g.*, *Penley v. Honda Motor Co., Ltd.*, 31 S.W.3d 181, 189 (Tenn. 2000), *Calaway v. Schucker*, 193 S.W.3d 509, 517 (Tenn. 2005),[14] the Tennessee appeals court considered application of fraudulent concealment to the product liability repose period but ultimately found the requirements were not met, *King-Bradwell P'ship v. Johnson Controls, Inc.*, 865 S.W.2d 18, 22 (Tenn. Ct. App. 1993). *See also Spence v. Miles Laboratories, Inc.*, 810 F. Supp. 952, 964-65 (E.D. Tenn. 1992); *cf. Benton v. Snyder*, 825 S.W.2d 409, 413-14 (Tenn. 1992).

Fraudulent concealment requires that the "cause of action was known to and fraudulently concealed by the defendant." *Benton*, 825 S.W.2d at 414. Generally,

---

[14] Defendants rely on *Jones v. Smith & Nephew Inc.*, 2022 WL 767709, at *3-4 (Tenn. Ct. App. Mar. 14, 2022), which in turn relies on *Penley* and is inapposite.

31

there must be "affirmative action" by the defendant "to conceal the cause of action" and "that the plaintiff could not have discovered the cause of action despite exercising reasonable diligence." *Id.* "[M]ere silence or mere failure to disclose known facts" is insufficient. *Id.* Plaintiffs sufficiently allege fraudulent concealment here, *see supra* Section II, III.B.i, and Defendants' Motion should be denied.

### D.   Texas Plaintiffs' Claims Are Timely.

The Texas statute of repose bars products liability claims filed 15 years after the date of sale. Tex. Civ. Prac. & Rem. § 16.012(a)(2), (b). But Defendants are barred from raising the Texas statute of repose defense because of their fraudulent concealment. The Texas Supreme Court has not addressed whether fraudulent concealment may toll a statute of repose or estop a defendant from raising the defense for a product liability case. *See Fiengo v. Gen. Motors Corp.*, 225 S.W.3d 858, 860 (Tex. Ct. App. 2007) (finding no published Texas cases addressing whether equitable estoppel bars the products liability statute of repose); *see also* Mot. at 27-29 (citing no Texas Supreme Court case that holds fraudulent concealment does not apply to bar the Texas products liability statute of repose).[15] At least one Texas appellate court, however, has considered the application of equitable estoppel to bar

---

[15] Defendants' cases are inapposite. *See Mason-Gibson, Inc. v. Sloan Valve Co.*, 2022 WL 1434113, at *8 (Tex. App. May 6, 2022) (DTPA case); *Compass Bank v. Calleja-Ahedo*, 569 S.W.3d 104, 112 (Tex. 2018) (BCC case).

the products liability statute of repose. *See Fiengo*, 225 S.W.3d at 860-62 (ultimately finding plaintiff did not prove each element of equitable estoppel).

Under Texas law, fraudulent concealment estops a defendant from relying on the statute of repose as an affirmative defense. *See Computer Assocs. Int'l Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). "Texas courts have long adhered to the view that fraud vitiates whatever it touches, and have consistently held that a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations." *Borderlon v. Peck*, 661 S.W.2d 907, 908-09 (Tex. 1983). "To reward a wrongdoer for his own fraudulent contrivance would make the statute a means of encouraging rather than preventing fraud." *Id*. That policy applies equally to statutes of repose and, accordingly, bars Defendants' Motion here.

Fraudulent concealment under Texas law requires (1) defendant's false representation or concealment of material facts, (2) defendant's knowledge, constructive or actual, of those facts, (3) defendant's intention that plaintiff act on this representation/concealment, (4) plaintiff's lack of knowledge or means of obtaining knowledge of the facts, and (5) plaintiff's detrimental reliance on the representation/concealment. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998). Plaintiffs sufficiently plead fraudulent concealment and equitable estoppel here. *See supra* Section II, III.B.i.

33

V.    **Plaintiffs' Strict Liability Claims Are Not Barred by the Statutes of Repose of Georgia or Illinois.**

Highlighting the fruitlessness of the Motion, Defendants move to dismiss just the strict liability claims of over one hundred plaintiffs in Georgia and Illinois, leaving all other claims intact. The Motion fails because all the claims were tolled or Defendants are estopped from raising the defense because of their fraudulent concealment, and Defendants misapply Illinois's statute of repose.

A.    **Georgia Plaintiffs' Claims Are Timely.**

Georgia's statute of repose bars strict liability design defect claims after ten years from the date of the first sale of a product. O.C.G.A. § 51-1-11(b)(2). The statute expressly does not apply to Georgia Plaintiffs' strict liability failure to warn claims, *id.* § 51-1-11(c)—a fact that Defendants completely ignore. And Defendants are estopped from asserting statute of repose as a defense when the defendant's fraud or wrongful conduct "prevented the plaintiff from exercising reasonable diligence to learn the nature and cause of the injury attributable to the defendant." *Esener v. Kinsey*, 522 S.E.2d 522, 524 (Ga. Ct. App. 1999); *accord PTI Royston, LLC v. Eubanks*, 861 S.E.2d 115, 122 (Ga. Ct. App. 2021). Whether a defendant is estopped from raising the defense is "generally a jury issue." *See Esener*, 522 S.E.2d at 524.

Defendants acknowledge that equitable estoppel may bar their statute of repose defense, yet they summarily dispose of its application without reason. *See* Mot. at 31-32. As explained above, and in accordance with Georgia law, Plaintiffs

sufficiently allege Defendants' fraud and that such fraud deterred the earlier filing of lawsuits. *See supra* Section II, III.B.i. That is all that is required at this stage to defeat Defendants' Motion. *Esener*, 522 S.E.2d at 524 ("Assuming that the allegations of fraud are true for purposes of this motion for judgment on the pleadings and that such fraud deterred the earlier filing of this suit as alleged in the complaint, the trial court properly denied the motion. . . ."); *PTI Royston, LLC*, 861 S.E.2d at 123 (remanding for trial court to determine whether plaintiffs' fraud allegations were enough to preclude defendant from raising repose defense).

### B.     Illinois Plaintiffs' Claims Are Timely.

Illinois's statute of repose prohibits strict product liability actions commenced more than 12 years from the date of first sale by a seller, or 10 years from the date of first sale to its initial user, consumer, or other non-seller. 735 Ill. Comp. Stat. 5/13-213(b).[16] The statute also includes its own discovery rule, which provides that

> Notwithstanding the provisions of subsection (b) . . . if the injury complained of occurs within any of the periods provided by subsection (b) . . . , the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury . . . , but in no event shall such action be brought more than 8 years after the date on which such personal injury . . . occurred.

---

[16] The 1995 statute was held unconstitutional by the Illinois Supreme Court. *Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1105 (Ill. 1997). The 1991 version remains effective and does not apply to negligence claims. *See Masters v. Hesston Corp.*, 2001 WL 567736, at *2 (N.D. Ill. May 23, 2001), *aff'd*, 291 F.3d 985 (7th Cir. 2002).

735 Ill. Comp. Stat. 5/13-213(d).

Defendants turn the Illinois statute on its head by arguing Illinois Plaintiffs'
claims are barred eight years after the date of sale (i.e., implantation) of a Plaintiff's
Paragard. Defendants misinterpret Illinois law by re-defining "injury" and ignoring
precedent that clearly shows subsection (d) operates to extend and not shorten the
repose period. Under either interpretation, however, Illinois Plaintiffs' claims are
rendered timely through tolling based on fraudulent concealment.

### i)      *Injury in Subsection (d) Means Injury, Not Implantation, and Subsection (d) Expands (Not Retracts) Subsection (b).*

Subsection (d)'s eight-year period runs from the date of a plaintiff's injury—
here, when Illinois Plaintiffs suffered harm. Defendants' argument that the date of
injury is the date of implantation is contrary to the statute's plain language, would
render absurd and unjust results, and would make other portions of the statute
obsolete.[17]

"The primary rule of statutory construction is to give effect to legislative intent
by first looking at the plain meaning of the language." *Davis v. Toshiba Mach. Co.,
Am.*, 710 N.E.2d 399, 401 (Ill. 1999). If that language is clear and unambiguous, "a
court must give it effect as written, without reading into it exceptions, limitations or
conditions that the legislature did not express." *Id.* (quotations and citations omitted).

---

[17] This argument also conflicts with Defendants' earlier assertion that "the common
initial injury [is] the breakage of the Paragard at the time of removal." Mot. at 1.

And "where a term has a settled legal meaning, [courts] will normally infer that the legislature intended to incorporate that settled meaning." *Maksym v. Bd. of Election Com'rs of City of Chicago*, 950 N.E.2d 1051, 1061 (Ill. 2011).

Further "where the same words appear in different parts of the same statute, they should be given the same meaning unless something in the context indicates that the legislature intended otherwise." *Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d 1, 8 (Ill. 2003); *see also Maksym*, 950 N.E.2d at 1061("Where the same . . . words or phrases appear in different parts of the same statute they will be given a generally accepted and consistent meaning, where the legislative intent is not clearly expressed to the contrary."). "In construing statutory language, a court will assume that the legislature did not intend to produce an absurd or unjust result." *Cummins v. Country Mut. Ins. Co.*, 687 N.E.2d 1021, 1024 (Ill. 1997).

The legislature does not define "injury" in section 5/13-213. "[I]njury" means "hurt, damage, or loss sustained." *Injury*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/injury (last visited Nov. 11, 2024); *see People v. Morgan*, 2023 WL 3625735, at *10 (Ill. App. Ct. May 23, 2023) (unpublished)[18] (interpreting "injury" to have dictionary meaning). And "hurt" means "wound" or "damage." *Hurt*, MERRIAM-WEBSTER DICTIONARY,

---

[18] Under Ill. Sup. Ct. R. 23, unpublished decisions entered after January 1, 2021 may be cited for persuasive purposes.

https://www.merriam-webster.com/dictionary/hurt (last visited Nov. 11, 2024). If "injury" instead meant implant, that meaning would have to be consistent throughout all of subsection (d), which would then read

> if the [implant] complained of occurs within any of the periods provided by subsection (b) . . . , the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the [implant] . . . , but in no event shall such action be brought more than 8 years after the date on which such [implant] . . . occurred.

That result is absurd. Under Defendants' interpretation, all products cases involving an implantable product must be filed within two years of that implant date, regardless of whether an injury had occurred, rendering the discovery rule, subsection (b), and the eight-year period moot. Such an interpretation cannot stand absent an express indication from the legislature that was its intent. *See Guillen ex rel. Guillen*, 785 N.E.2d at 8. Even if "injury" only meant "implant" for the eight-year period, which cannot be true, that would render subsection (b) meaningless, creating a new statute of repose—eight years from date of implant. If the legislature had intended injury to mean implantation, regardless of whether that caused harm, it would have said so. *See Morgan*, 2023 WL 3625735, at *10.

*Leamanczyk v. A.H. Robins Co.*, 596 F. Supp. 365 (N.D. Ill. 1984), in which the plaintiff suffered infertility because of her Dalkon Shield IUD, addressed this definition of injury. The court concluded that "injury" for the eight-year limitation in subsection (d) did not occur "immediately upon the insertion of a Dalkon Shield,"

which "is not, in and of itself, harmful." *Id.* at 366–67. The record was not clear about when she was "injured," and so the court could not determine if the action was brought within the eight-year period. The court therefore denied the defendant's motion for summary judgment. *Id.* at 367.

Additionally, subsection (d) was intended to expand, not retract, the statute of repose, and should be read to give that effect. The Illinois Supreme Court is clear that subsection (d) "creates an exception to the 10–year repose period found in subsection (b) and allows a plaintiff to bring an action within two years from when she knew or should have known of her injury, even though the 10–year repose period has expired." *Davis*, 710 N.E.2d at 401 (rejecting argument that subsection (d) applies only to latent injuries). In other words, "subsection (d) is an exception to the statute of repose and not a statute of limitations *at all*." *Allstate Ins. Co. v. Menards, Inc.*, 782 N.E.2d 258, 263 (Ill. 2002) (rejecting defendant's argument that the two-year period created a new time limitation for property damage claims). "[S]ubsection (d) avoids . . . unjust result[s] by giving the plaintiff back his two-year limitations period" and was enacted to "protect plaintiffs." *Daubach v. Honda Motor Co.*, 707 N.E.2d 746, 749 (Ill. Ct. App. 1999) (rejecting as "absurd" argument that subsection (d) applies only to latent injuries).

Defendants' position relies on a line of unreported federal cases to argue that for the eight-year period in subsection (d), "injury" means implantation. But those

39

cases draw unsupported conclusions, result from inapposite facts, and cling to snippets from prior unrelated cases. All of Defendants' cases derive from *Olson v. Owens Corning Fiberglass Corp.*, 556 N.E.2d 716 (Ill. App. Ct. 1990) (asbestos), and *Zimmerman v. Abbott Laboratories, Inc.*, 545 N.E.2d 547 (Ill. Ct. App. 1989) (DES). Both cases determined what constituted a reasonable period of time for a plaintiff to file suit after the statute of repose was enacted, when their claim was based on exposure to a toxic substance over a prolonged period. Neither case holds that "injury" is the date of implantation. *See* Mot. at 33 (citing *Dohra v. Alcon (Puerto Rico), Inc.*, 1994 WL 7144 (N.D. Ill. Mar. 3, 1994) (citing *Olson*); *Stark v. Johnson & Johnson*, 2020 WL 1914767, at *5 n.9 (N.D. Ill. Apr. 20, 2020) (citing *Zimmerman*)[19]; *Johnston v. I-Flow Corp.*, 2010 WL 11713179, at *3 (N.D. Ill. Aug. 26, 2010) (citing *Dohra*); *Lusinski v. Wright Med. Tech., Inc.*, 2021 WL 4522292, at *1 (N.D. Ill. Apr. 9, 2021) (citing *Stark* and *Johnston*); *Carlen v. Coloplast Corp.*, 2020 WL 3050752, at *3 (S.D. Ill. June 8, 2020) (citing *Stark*)). The Court should instead look to the plain language of the statute and find that "injury" means when a plaintiff was injured and suffered harm.

---

[19] *Stark* was ultimately reversed and remanded. On appeal, the Seventh Circuit did not address this footnote in the district court's opinion. Because the Seventh Circuit could have affirmed the dismissal on any ground supported by the record, *Slaney v. The Int'l Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2011), this suggests it was intentionally not adopted here.

Under Defendants' interpretation of subsection (d), every injury resulting from an implanted product would be barred eight years after implant, effectively creating an eight-year statute of repose and rendering subsection (b) irrelevant. *See Kraft, Inc. v. Edgar*, 561 N.E.2d 656, 661 (Ill. 1990) ("[A] statute should be read as a whole with all relevant parts considered . . . [and] construed so that no word or phrase is rendered superfluous or meaningless."). That interpretation should be rejected.

Accordingly, any Illinois Plaintiff that filed suit after the 10- or 12-year repose period, but was injured within that period, may still have a timely claim until two years from when they discovered that their injury was wrongfully caused by Defendants. This is a fact issue that cannot be resolved by the present Motion.

### ii)   *Illinois Plaintiffs' Claims Were Tolled via Fraudulent Concealment.*

Plaintiffs have also sufficiently alleged fraudulent concealment to toll the statute of repose. Under Illinois law, the statute of repose is tolled when a defendant fraudulently conceals the cause of action. 735 Ill. Comp. Stat. 5/13-215; *DeLuna v. Burciaga*, 857 N.E.2d 229, 243 (Ill. 2006); *see also In re Fluoroquinolone Prods. Liab. Litig.*, 2017 WL 690188, at *2 (D. Minn. Feb. 21, 2017) ("[U]nder *DeLuna*'s statutory interpretation, the fraudulent concealment exception applies to the products liability statute of repose."). To sufficiently allege fraudulent concealment, a plaintiff must plead (1) a defendant knowingly made affirmative misrepresentations

with the intent to deceive the plaintiff, and (2) the plaintiff relied on these misrepresentations such that she delayed filing until after the statute of repose expired. *See In re Paraquat Prods. Liab. Litig.*, 2022 WL 451898, at *3 (S.D. Ill. Feb. 14, 2022). The "conduct establishing fraudulent concealment need not be different from the statements or omissions that form the basis of the cause of action." *Id*. at *4 (citing *Henderson Square Condo Ass'n v. LAB Townhomes, LLC*, 46 N.E.3d 706, 717 (Ill. 2016)). And fraudulent concealment is a "plaintiff-specific inquiry that require[s] fact discovery." *In re Paraquat Prods. Liab. Litig.*, 2022 WL 451898, at *4. Further, plaintiffs have "no obligation under Rule 9(b) to plead around [the statute of repose]." *Id.* at *3 (finding allegations sufficient to allege fraudulent concealment).

Defendants acknowledge that the Illinois statute of repose may be tolled but argue that Illinois Plaintiffs fail to allege fraudulent concealment with the specificity required by Rule 9(b). Plaintiffs are not required to plead "the fraudulent concealment exception with particularity." *Rose Nat'l Collegiate Athletic Ass'n*, 346 F. Supp. 3d 1212, 1224 (N.D. Ill. 2018). But they do: Plaintiffs sufficiently plead Defendants took affirmative acts to prevent them from discovering their claims. *See supra* Section II, III.B.i. Defendants' Motion fails.

## VI.    The Court Should Deny the Motion for Any Case with a Choice-of-Law Dispute.

The COL Order mandates that "No Party may file a motion that requires the Court to resolve the issue of what law applies to a particular case until after the completion of the initial Bellwether trials, except in cases where the applicable law is not reasonably in dispute." COL Order ¶ 4. The COL Order resolves the issue of which choice-of-law analysis applies to direct-filed cases when more than one state is involved but saves for another day application of that analysis and the resulting substantive law that would control the underlying claims. Defendants now seek to circumvent this Order by claiming that even though two or more states are implicated for several of the cases in the Motion, the Motion is proper because "there is no reasonable question as to applicable choice-of-law test or *the resulting applicable law*." Mot. at 4 (emphasis added). But the COL Order stops Defendants from getting to anything after the "or"—it is inappropriate and barred by the COL Order for Defendants to ask this Court to apply the COL analysis to determine which substantive law applies when more than one state's law is at issue. And the COL Order does not allow Defendants to unilaterally decide there is no reasonable dispute when there are allegations demonstrating otherwise.[20]

---

[20] Defendants do not identify relevant state contacts that would enable Plaintiffs and the Court to understand why they are applying a certain state's law in the disputed cases. They simply assert one state's law applies.

Tellingly, Defendants begin each state-specific argument by setting out the choice-of-law rules in an over-simplified, argumentative style. *See, e.g.*, Mot. at 12 (Mississippi applies its own SOL law), 29 (Georgia's COL test is *lex loci*). But if the Motion stayed clear of "any cases where the applicable law is not reasonably in dispute," there would be no need to start with a choice-of-law analysis.

The applicable law is reasonably in dispute and "[a] choice of law analysis is relevant when (1) the events of the case touch more than one state and (2) a conflict of laws exists between the states that are touched by the events." *McKinley v. United States*, 2015 WL 5842626, at *3 (M.D. Ga. Oct. 6, 2015). "[D]etermining what law applies to a particular claim is often a fact-intensive undertaking." *M.D. Russel Constr., Inc. v. Consol. Staffing, Inc*., 2023 WL 8798086, at *3 (4th Cir. Dec. 20, 2023). Because "appropriate and persuasive choice-of-law arguments" may not be possible "without the benefit of discovery," courts "regularly defer choice-of-law issues until after the parties have completed discovery." *Id*.

In many of the cases subject to the Motion, Plaintiffs pled that Defendants' negligence, fraud, or omission occurred in one state, and that plaintiff had the Paragard implanted or removed in another state. *See* Ex. A (identifying cases with more than one relevant state contact based on the SFCs). Some plaintiffs have a connection to even more states—e.g., residence when injury discovered, residence at time of removal. *See id*. Other plaintiffs did not identify the state of their implant

or removal. *See id*. The Motion for these plaintiffs should be deferred until after the completion of discovery, or, consistent with the COL Order, after they are remanded.

Consider Defendants' Motion as it relates to a case that implicates Georgia and another state. Georgia recently clarified that statutes of repose are treated as substantive, *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 888 S.E.2d 553, 563-64 (Ga. 2023), and a court faced with a choice-of-law dispute would apply Georgia's choice-of-law analysis to determine which state's law applies.[21] But in Georgia, the issue is not so simple. Although a tort is "*generally* governed by the substantive law of the place where the tort was committed," *Harvey v. Merchan*, 860 S.E.2d 561, 567 (Ga. 2021) (emphasis added), "a Georgia court will defer to another state's statutes, as well as its judicial decisions authoritatively interpreting those statutes, in determining the law of that state. . . . In the absence of a statute, . . . a Georgia court will apply the common law as expounded by the courts of Georgia." *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 834 (Ga. 2017); *see also Frank Brisco Co., Inc. v. Ga. Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir. 1983). So Georgia may apply its law to some claims if another state treats them as common law but may defer to the other state's law if it is statutory. Here, some states have codified

---

[21] Notably, when Defendants first circulated their potential cases subject to the motion, they believed Georgia treated the statute of response as procedural, and that the Court would simply apply Georgia law with no analysis of the choice of law. Since learning of the 2023 case, however, Defendants have refused to remove from their Motion cases that clearly implicates choice-of-law issues.

their product liability law (*e.g.*, Iowa Code § 668.12; Idaho Code § 6-1401). Even if we agree that Georgia would most likely apply the law of the state where the tort was committed, that opens another can of worms—was the tort committed where Plaintiff relied on Defendants' false marketing? Is it where Plaintiff was when she discovered an issue with the defective Paragard and contacted her doctor? This is exactly the kind of analysis that is prohibited by the COL Order.

Similarly, Mississippi treats statutes of limitation as procedural except "where a particular state's limitations period is considered to be part of its substantive law because the limitations period is 'built in' or 'in the same enactment' as the statute which creates the right of action." *Morningstar v. Gen. Motors Corp.*, 847 F. Supp. 489, 491 (S.D. Miss.), *aff'd,* 36 F.3d 89 (5th Cir. 1994). If a claim implicates two conflicting state laws, the Court must look to the other state's laws to determine if that state treats the statute of limitations as substantive or procedural. *E.g.*, *Perez v. Fedex Ground Package Sys., Inc.*, 587 F. App'x 603, 606 (11th Cir. 2014) (Florida considers the statute of limitation to be substantive). If substantive, the Court would then apply Mississippi's "center of gravity" test to determine which state's law controls the statute of limitations. *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985).

Likewise, Virginia looks to the forum state's statute of limitations *unless* the statute of limitations is "so bound up with the substantive law of a claim that the

limitations period is itself considered substantive." *RMS Tech., Inc. v. TDY Indus., Inc.*, 64 F. App'x 853, 857 (4th Cir. 2003); *see Olawole v. ActioNet, Inc.*, 258 F. Supp. 3d 694, 704 (2017) (noting a distinction between "substantive" and "procedural" limitations periods in Virginia's choice-of-law rules).

In some states, the argument is nuanced as between claims. In North Carolina, for example, courts have applied the *lex loci delicti* test to determine that the law of the state of injury applies to tort claims, but apply the most significant relationship test to warranty claims, which considers "the place of sale, distribution, delivery, and use of the product, as well as the place of injury." *Cramer v. Ethicon, Inc.*, 2021 WL 243872, at *3 (W.D.N.C. Jan. 25, 2021). Here, Defendants have simply assumed that all plaintiffs who had a Paragard removed in North Carolina were injured in North Carolina and are subject to the North Carolina statute of repose for all claims. But where each Plaintiffs' injury occurred is not a fact pled in the Complaints; it is a question of fact still subject to discovery. *See supra* Section III.A.

This is an important exercise, and one that has a time and a place, but now is neither of those given the COL Order and the posture of this case. The Court should deny the Motion for any case that requires the Court to first resolve the issue of what law applies. *See* Ex. A.

## VII. The Court Should Deny the Motion for Any Case Where Defendants Relied on the PFS.[22]

The Court's review on a motion to dismiss is "limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). If the Court relies on matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In rare circumstances a court may consider a document attached to a motion without converting the motion to one for summary judgment, but "only if the attached document is (1) central to the plaintiff's claim, and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1232 (11th Cir. 2010) (finding district court properly exercised discretion to not consider documents outside the pleadings, and not convert the motion to summary judgment). Discovery responses, such as the plaintiff fact sheet ("PFS"), do not fall within the types of documents that can be considered by the Court on a motion to dismiss. *See Zatler v. Wainwright*, 802 F.2d 397, 399 n.2 (11th Cir. 1986) (treating order as one granting summary judgment because district court considered affidavits and interrogatories); *see also Cecchinato*

---

[22] Defendants agreed to remove from the Motion Plaintiff Latoya Pitts (No. 1:23-cv-03395), who since the filing of the Motion amended dates relevant to the timeliness of her claims in both her SFC and PFS.

*v. Town of Sheffield*, 2021 WL 24580, at *3 (D. Mass. Jan. 4, 2021) (allowing defendant to use discovery responses would "require the court to accept the parties' written discovery responses at face value before those responses have been tested, clarified by examination, or placed in context at deposition"). As such, Defendants cannot look to documents outside the pleadings to dismiss Plaintiffs' claims. Even if Defendants could look to documents outside the pleadings, they certainly cannot use information from the PFS, which is not a verified record and has not been subjected to scrutiny through discovery.

Defendants admit that for 26 cases, they have relied on the PFS to "determine the most accurate date of placement and/or removal." Mot. at 34. In some cases, the SFC was silent as to date of placement or removal, *see, e.g.*, Mot. at Ex. 1, Katelynn Look (No. 1:23-cv-02973); in others, the SFC has a less-specific date and Defendants pulled a more specific date (even if it conflicted) from the PFS, *see, e.g.*, Mot. at Ex. 1, Tela Garrett (No. 1:22-cv-01561); and in others still, the SFC has one date and Defendants rely on the conflicting date from the PFS, *see, e.g.*, Mot. at Ex. 1, Tiffany Wheeler (No. 1:22-cv-01563). If, however, the SFC is silent as to date of placement or removal, and Defendants rely on that date for their timeliness argument, then "[f]rom the face of the complaint," the action is not time barred. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 846 (11th Cir. 2004). If the dates on the SFC and PFS conflict, Defendants are limited to whatever information in

contained on the SFC. And, even if this Court were to consider the PFS, a conflicting date would clearly create an issue of fact, and all reasonable inferences must be drawn in the plaintiff's favor. *See Pielage*, 516 F.3d at 1284. In all cases in which Defendants rely on the PFS, the Motion should be denied.[23] *See* Dkt. 709-1 (Defs.' Ex. 1, Time-Barred (reference to PFS)).

## CONCLUSION

Defendants' Motion to Dismiss should be denied. To the extent Defendants' Motion is granted in full or part, Plaintiffs request to amend their Complaints.

---

[23] If Defendants need to clear up something vague or ambiguous, there are other procedural vehicles that may be proper (e.g., a motion for more definite statement). A motion to dismiss that relies on documents outside the pleadings is not proper.

Dated: November 11, 2024

Respectfully submitted,

*/s/ Erin K. Copeland*
Erin K. Copeland (*pro hac vice*)
Texas Bar No. 24028157
Fibich Leebron Copeland & Briggs
1150 Bissonnet Street
Houston, Texas 77005
Tel: 713-751-0025
ecopeland@fibichlaw.com

**Plaintiffs' Lead Counsel**

*/s/ Nicole C. Berg*
Nicole C. Berg (*pro hac vice*)
Illinois Bar No. 6305464
Keller Postman LLC
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Tel: 312-948-8477
ncb@kellerpostman.com

*/s/ C. Andrew Childers*
C. Andrew Childers
Georgia Bar No. 124398
Childers, Schlueter & Smith, LLC
1932 N. Druid Hills Rd., Suite 100
Atlanta, Georgia 30319
Tel: 404-419-9500
AChilders@cssfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2024 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.


*/s/ Erin K. Copeland*
Erin K. Copeland