**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: PARAGARD IUD PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) | MDL DOCKET NO. 2974 Case No. 1:20-md-02974-LMM<br><br>This Document Relates To: All Cases Listed on Exhibit 1 (ECF No. 709-1) to Defendants' Motion to Dismiss, ECF No. 709 |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CASES BARRED BY CERTAIN STATUTES OF LIMITATIONS AND REPOSE

Defendants' Motion to Dismiss time-barred cases is timely in addressing only the claims of individual Plaintiffs in their Short Form Complaints. Plaintiffs cannot on the one hand oppose Defendants' arguments in their Motion to Dismiss the Second Amended Master Complaint with promises of more specificity in their Short Form Complaints and on the other hand oppose this Motion by characterizing it as an additional motion against Master Complaint allegations. To be clear, this is a case-specific motion.

Plaintiffs' Response in Opposition to Defendants' Motion does not raise any bar to the Court exercising its discretion to winnow a selection of cases that are time-barred on the face of the Short Form Complaints. Under Plaintiffs' first primary attack, as to only cases barred by statutes of limitations, Plaintiffs ask the Court to conclude—generally and without reference to any specific Short Form Complaint—

1

that no Plaintiff has alleged a date of injury and so no Plaintiff's claim can be barred by any statute of limitations on the face of her Complaint. This argument disregards the focus of the allegations in this MDL from its inception, which has always alleged Paragard breakage as the common signature injury. More particularly, it ignores the allegations of the majority of these Plaintiffs included here that they underwent multiple removal procedures for the same Paragard breakage.

Plaintiffs' second focus in their opposition is that fraudulent concealment saves all these claims, even in states that do not permit tolling on this basis. The Court should decline Plaintiffs' suggestion that fraudulent concealment—supported by no particular allegations meeting the elements of any state's law—prevents dismissal here. Broadly, tolling based on fraudulent concealment is available to plaintiffs who can claim that a defendant has engaged in wrongful concealment to induce the delay of the filing or pursuit of legal claims. No allegation in the Second Amended Master Complaint assists these Plaintiffs, the majority of whom have pled fraudulent concealment with no specificity and the minority of whom have included only a generalized statement alleging no facts that would support these allegations.

Defendants' Motion is a reasonable measure to cull the cases from this MDL where it is already apparent that no discovery will change the story. These claims are subject to dismissal as time-barred—either under a statute of limitations in a state

that does not require discovery of causation, or under a statute repose that likewise does not apply a discovery rule.

## ARGUMENT

### I. Plaintiffs cannot avoid dismissal of time-barred claims by recasting the allegations of injury in this MDL.

As to the cases barred by statutes of limitations, Plaintiffs argue that these claims are timely because Defendants have incorrectly assumed that breakage of a Paragard at removal is an injury when instead it is an alleged defect. *See* Plfs.' Resp. at 12-13. This construction of the claims at issue in this MDL runs contrary to its history and the allegations in the Master Complaint.

The Judicial Panel on Multidistrict Litigation found centralization warranted because "[t]hese actions involve common allegations that the Paragard intrauterine device (IUD) has a propensity to break upon removal, causing complications and injuries, including surgeries to remove the broken piece of the device, infertility, and pain." *In re Paragard IUD Prod. Liab. Litig.*, 510 F. Supp. 3d 1376, 1377 (J.P.M.L. 2020). The Master Complaint follows this description of the claims and similarly focuses on breakage. In its opening paragraphs, Plaintiffs describe how breakage itself leaves pieces of the Paragard inside the body, necessitating further procedures. *See* 2d Amend. MPIC at p. 2. When Plaintiffs focus on what is common to all individual Plaintiffs, they allege: "Each plaintiff had a Paragard implanted that later broke while still in her body, and many women required surgery to remove the

broken product." *Id.* at ¶ 4. What is necessary to bring claims in this MDL is an allegation of breakage, whether or not that breakage necessitated any additional medical treatment. *See id.* at ¶ 62 ("This unanticipated breakage can cause serious complications and injuries, including but not limited to, surgery to remove the broken device (including hysterectomy), infertility, and pain."). Plaintiffs describe the failure to warn in a similar vein: "At no time did any Defendant include a warning on the label for Paragard that users may be injured because the Paragard could break before or during removal." *Id.* at ¶ 100.

Even though Plaintiffs now assert that breakage is a defect and not an injury, the Master Complaint separately alleges that "the design is flawed because Paragard does not provide sufficient flexibility." *Id.* at ¶ 52; *see also id.* at ¶ 55 ("The Paragard design is thus flawed for the additional reason that it does not account for the long expiration date and use of the product to decay and lose flexibility over time on the self and in situ."). At the hearing where the Court heard argument on Defendants' Motion to Dismiss the Second Amended Master Complaint, this Court asked Plaintiffs' counsel to describe the design defect claim, and in keeping with the description of the defect in the Master Complaint, she explained: "So the Design Defect claim is ultimately the product fails because there's an issue with the plastic. What the issue with the plastic is, is there's still a lot to be figured out, but we think

that one of the main reasons is because it's not sufficiently flexible." Case No. 1:20-md-02974, ECF No. 218, Transcript of Proceedings (Sept. 21, 2021) at 63:16-20.

Plaintiffs note that Plaintiffs in the MDL were not required to allege that their Paragards were removed. Plfs.' Resp. at 12. They do not cite any Plaintiff included in this Motion who did not allege breakage at removal. The Short Form Complaint asks about the dates of placement and removal and includes two additional questions that clarify the connection between the breakage and alleged injuries. Question 11. asks if the Plaintiff alleges breakage upon removal. Short Form Cmplt. (Blank), available at https://www.gand.uscourts.gov/20md2974. Question 12. provides a brief statement of alleged injuries. *Id.* All Plaintiffs included in Defendants' Motion answered "Yes" to Question 11.

Even more significantly, Plaintiffs' argument fails to account for the facts about removal actually pled in their Short Form Complaints. Most of the Plaintiffs included in this section list not one removal, but multiple removals of the same Paragard. One Mississippi Plaintiff, Amber Kettler, alleged six removals of a single Paragard. Leaving aside the Plaintiffs where New York's law will apply because, as will be discussed below, New York's accrual focuses on the malfunction itself rather than ascertainable injury, 26 Plaintiffs where Alabama, Idaho, Michigan, Mississippi, and Virginia's law will apply list more than one removal procedure—with breakage—of a single Paragard:

| | | Multiple Removals | | | Single Removal |
|---|---|---|---|---|---|
| Alabama | 2 | *Coats*; *Robinson* | 0 | | |
| Idaho | 4 | *Koncz*; *Moss*; *Thurman*; *Torres* | 2 | | *Foster*; *McDonald* |
| Michigan | 8 | *Carson*; *Deising*; *Earley*; *Gotham*; *Lane*; *Levens*; *Miller*; *Nestorak* | 6 | | *Fling*; *Higgins*; *McIntyre*; *Munger*; *Ott*; *Taylor* |
| Mississippi | 2 | *Kettler*; *Mosley* | 1 | | *Sharp* |
| Virginia | 10 | *Anderson*; *Barrett*; *Cook*; *Hamel*; *Johnson*; *Lemus Diaz*; *Mercado*; *Sarley-Gregory*; *Vann*; *Vetter* | 7 | | *Collantes*; *Crayton-Gay*; *Deeb*; *Durham*; *McLeod*; *Millner*; *Vera* |
| | **26** | | **16** | | |

For all of these Plaintiffs with multiple removals, Defendants calculated accrual of the statute of limitations from the latest listed removal date.

At a minimum, these Plaintiffs who listed multiple removal procedures of the same Paragard cannot slink away from allegations of the date on which their injuries began. The Master Complaint repeatedly describes medical intervention at the time of removal as a typical injury: "personal injuries as a result of Defendants' dangerously defective Paragard breaking while inside Plaintiffs' bodies including, but not limited to, during routine removal and requiring further medical intervention." 2d Amend. MPIC at ¶ 14. *See also id.* at ¶ 65, 67-70, 81 ("that surgical intervention could be required as a result of a 'difficult' removal"), 121, 151 ("the risk of injury, including, but not limited to, further medical and/or invasive surgical

6

intervention"). On the face of these Short Form Complaints, it is apparent that these Plaintiffs had a Paragard, a breakage at removal, and a second, third, or even sixth, "medical intervention" procedure or attempt at removal. If the Court determines that for the remaining Plaintiffs, date of removal does not establish date of injury, Defendants submit that reference to their Plaintiff Fact Sheets, attached as Exhibits 1-15 to this Reply, amply establishes that their claims are time-barred. *See* Fed. R. Civ. P. 12(d); *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985)("The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion. However, once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment." (citations omitted)); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265 (11th Cir. 2002) ("The district court is required to notify the parties that the motion has been converted, and give the parties 10 days in which to supplement the record." (citation omitted)); *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (same).

Leaving aside Plaintiffs' definitions of defect and injury, and their attempt to sidestep this MDL's basic parameters, Plaintiffs' claims are barred based on the various states' definitions of accrual.

### A.   Claim Accrual for the Statutes of Limitations of New York, Alabama, Idaho, Michigan, Mississippi, and Virginia

#### i.   New York

Plaintiffs' argument does not suffice under New York law. For inserted products like the Paragard, New York's statute of limitations accrues upon the malfunction of the product that ultimately leads to injury, even if the malfunction occurs before the injury and the injury develops subsequently.

In *Martin v. Edwards Laboratories*, 457 N.E.2d 1150 (N.Y. 1983), New York's highest court determined the meaning of accrual for claims involving "a product inserted or implanted in but not assimilated by the body and intended to have a continuing function." *Id.* at 1153. The appeal addressed two separate cases—one involving a heart valve and the other, a contraceptive device. *Id.* at 1153-54. For the heart valve case, the accrual date was when the valve disintegrated and Teflon entered the bloodstream; for the contraceptive shield device case, the accrual date was when bacteria entered the plaintiff's uterus. *Id.* at 1156. Accrual did not require the resulting injuries to develop even to the point that they were apparent to the plaintiffs. For both devices, these events would have been later:  the accumulation of Teflon in his brain and death of the valve patient and the pelvic infection resulting in infertility in the contraceptive shield patient. *See id.* at 1152-53, 1156. *See also Michael v. Ametelco, Inc.*, 568 N.Y.S.2d 1003, 1005 (N.Y. Sup. Ct.), *aff'd sub nom. Michael v. E. Alloys, Inc.*, 573 N.Y.S.2d 945 (N.Y. App. Div. 1991) (describing the

New York date-of-injury rule as "trigger[ed]" by "the first onset of symptoms") (citation omitted); *Fitzpatrick v. A.H. Robins Co.*, 470 N.Y.S.2d 414, 415 (N.Y. App. Div. 1984) (the statute of limitations bars claims if "the evidence establishes that the onset of the process traceable to [the device]" "began more than three years before the commencement of the action").

Here, breakage of a Paragard at removal is the onset of a process that Plaintiffs allege is traceable to the drug. Plaintiffs ignore these more analogous New York cases linking accrual to malfunction and instead cite only *Blanco v. Am. Tel. & Tel. Co.*, 689 N.E.2d 506 (N.Y. 1997). *See* Plfs.' Resp. at 22. In *Blanco*, the plaintiffs alleged they developed repetitive stress injury from the manufacturer defendants' keyboards. 689 N.E.2d at 764. The Court of Appeals held that, "the cause of action accrues upon the onset of symptoms, or the last use of the keyboard, whichever is earlier." *Id.* The facts do not fit with the facts here, but even if accrual here waited until last use of the Paragard Plaintiffs claim malfunctioned by breaking, these claims would still be time-barred. The Court in *Blanco* further explains how its earlier opinion in *Martin* struck the appropriate balance in the implantable medical product context—no discovery rule was necessary for an implanted or inserted device (as opposed to a foreign object inadvertently left inside a patient), but accrual should not date all the way back to exposure, as with a toxic tort. *Id.* at 511.

9

Defendants are not arguing that any statute of limitations began to accrue on the date the Plaintiff was exposed to Paragard when it was placed. That is because New York, as well as the other states, when considering medical products typically does not compare them to chemicals that are inherently harmful. Instead, they await something more before claims begin to accrue. Here, that additional development in these Plaintiffs' medical histories is their allegations that their Paragards broke at removal.

### ii.    Alabama

At present, the Court need not decide whether breakage at removal alone is sufficient for accrual under Alabama law. Defendants only included two Plaintiffs whose claims are time-barred under Alabama law, and both had more than one removal procedure of the same Paragard they allege broke at removal. Both parties cited the seminal Alabama case, *Griffin v. Unocal Corp.*, 990 So. 2d 291 (Ala. 2008). Defs.' Mot. at 5; Plfs.' Resp. at 14. Plaintiffs argue that these Complaints do not indicate that they suffered symptoms that became manifest or medically identifiable. Plfs.' Resp. at 14. But there can be no reasonable dispute that having multiple medical interventions to remove a broken Paragard constitutes an alleged "'*manifest*, present injury" with accompanying "observable signs or symptoms." *Griffin*, 990 So. 2d at 310 ("'Manifest' in this sense does not mean that the injured person must be personally aware of the injury or must know its cause or origin. All that is required

is that there be in fact a physical injury manifested, even if the injured person is ignorant of it for some period after its development." *Id.*). *See also Mack v. CooperSurgical, Inc.*, No. 1:22-CV-54-RAH, 2024 WL 4427846, at *4 (M.D. Ala. Oct. 4, 2024) (claims accrued when the plaintiff first began to experience complications, which occurred before the plaintiff even had a reason to suspect the device was the source of the complications).

### iii.  Idaho

The Idaho Supreme Court held that the language describing accrual of claims in the Idaho statute, from "the time of the occurrence, act or omission complained of," Idaho Code Ann. § 5-219(4), must be read "to avoid an absurd result." *Davis v. Moran*, 735 P.2d 1014, 1020 (Idaho 1987). But the Court insisted that, "Our prior cases clearly hold that we do not apply a subjective test, based upon when the claimant knew or in the exercise of reasonable diligence should have known of the damage, because that would amount to a discovery rule which our prior cases have expressly rejected in light of the legislature's explicit rejection of the discovery rule." *Id.* Four of the six of the Idaho Plaintiffs included had multiple removal procedures of a broken Paragard, but even one removal where a Paragard broke would qualify as the "some damage" that Idaho requires. *Cosgrove By & Through Winfree v. Merrell Dow Pharms., Inc.*, 788 P.2d 1293, 1298 (Idaho 1989). Plaintiffs

offer no argument why a second removal of the same Paragard Plaintiffs allege broke would not constitute some damage.

Under Idaho law, it is not necessary that the plaintiff even be aware that the damage has occurred. *See Chariton v. Ethicon, Inc.*, No. 2:13-CV-00364-BLW, 2014 WL 1689738, at *2 (D. Idaho Apr. 29, 2014) (citing an asbestos exposure case, the court observed that, "While these cases soften one of the statute's sharp edges, they leave untouched another: When detectable damage occurs without symptoms, the limitations clock begins to tick silently, and the deadline could expire quietly before the plaintiff is even aware that he has been wronged.").

### iv.   Michigan

Michigan's statute of limitations begins to run even before damage or injury: "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws Ann. § 600.5827. Specifically, "The 'wrong' under M.C.L. § 600.5827 occurs when the product fails to function as intended . . . not [] when the plaintiff suffers symptoms or discovers the injury." *McMan v. C.R. Bard Inc.*, No. 19-12670, 2021 WL 3079894, at *4 (E.D. Mich. July 21, 2021); *see also Good v. Howmedica Osteonics Corp.*, No. 15-CV-10133, 2015 WL 8175256, at *3 (E.D. Mich. Dec. 8, 2015), *aff'd*, No. 16-1173, 2017 WL 11716360 (6th Cir. Dec. 4, 2017), and *aff'd*, No. 16-1173, 2017 WL 11716360 (6th Cir. Dec. 4, 2017) ("Accordingly, the wrong is done at the first

moment of harm, and is not tolled because the plaintiff did not discover the harm until later."); *Smith v. Stryker Corp.*, No. 294916, 2011 WL 445646 (Mich. Ct. App. Feb. 8, 2011) ("The fact that plaintiff contends that she did not manifest the damages until 2007 when she required replacement surgery is not the correct date to utilize for purposes of the statute of limitations. The date the damage results is not the appropriate standard." (citations omitted)).

*Wendel v. Ford Motor Company*, 2024 WL 40999909, which the Plaintiffs reference as a case where the court found an issue of fact with respect the application of the statute of limitations, Plfs.' Resp. at 18-19, was focused on insanity tolling, and has no discernable relevance here. Plaintiffs also cite *Bauserman v. Unemployment Ins. Agency*, which unlike the cases discussed above (which apply Michigan's law about accrual in drug and device context), mentioned the relevant statute, § 600.5827, only briefly in establishing the definition of "actionable harm," in another inapplicable statute. 931 N.W.2d 539, 546-47 (2019).

Accrual in Michigan is more similar to New York than Idaho, but regardless, Defendants calculated accrual for the Michigan cases from the date of latest listed removal of the Paragard the Plaintiff alleged broke. More than half of these cases included multiple removal dates alleging second, third, and fourth removals. Even a

single breakage at removal is sufficient for Michigan's statute to begin to run, and these cases are time-barred.[1]

### v.   Mississippi

Like all the other states discussed here, Mississippi does not apply a traditional discovery rule to toll the statute of limitations until the plaintiff knows or reasonably should know either the cause of injury or the causal link between the defendant's conduct and injury. *See Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (Miss. 2010) ("the plain language of the statute supports Defendants' argument that the cause of action accrued upon discovery of the injury, *not discovery of the injury and its cause*." (emphasis in original)). Diagnosis of injury can be an indication that the plaintiff should know of the injury but is not requisite under Mississippi law. *See Am. Optical Corp. v. Est. of Rankin*, 227 So. 3d 1062, 1074 (Miss. 2017).

Plaintiffs cite *PPG Architectural Finishes, Inc. v. Lowery* for the court's consideration of the plaintiff's own actions in demonstrating knowledge of an injury: "For instance, seeking medical attention for side effects or symptoms confirms that Lowery 'knew' she was injured." 909 So. 2d 47, 51 (Miss. 2005). *See* Plfs.' Resp. at 20. Surely, at a minimum returning for a second or sixth removal constitutes

---

[1] Even if the Court determines that a different statute of limitations should apply to fraud claims under Michigan law, this would be a six-year statute of limitations, with no discovery rule, running from the time of placement. *See Good*, 2015 WL 8175256, at *4 (citing *Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557, 559-60 (2003)). Thus, the fraud claims in these Michigan cases would still be time-barred because the Paragards that Plaintiffs alleged broke were placed six years before they filed suit.

seeking medical attention and knowledge of alleged injury. The *Lowery* case supports Defendants' position rather than Plaintiffs'. In *Lowery*, the Mississippi Supreme Court reversed the lower court, finding that the plaintiff "clearly knew or reasonably should have known of her exposure to paint fumes on the very night it occurred." *Id.* at 48.

The same is true when a Plaintiff's Paragard breaks at removal. There is no delay in knowledge, or reasonable knowledge, of injury. In one of the other cases Plaintiffs cite, *McGowen v. Roman Catholic Diocese of Biloxi*, the plaintiff, who alleged sexual abuse as a child, argued repressed memory tolling as an issue of first impression before the Supreme Court, and the Court agreed and reversed the lower court's decision granting the motion to dismiss. 319 So. 3d 1086, 1090 (Miss. 2021). There is no parallel between that case and the allegations here.

Mississippi law should apply to three Plaintiffs included in this Motion. One listed six removals in her Short Form Complaint, one listed two removals, and the last listed a single removal of a broken Paragard. Certainly, returning for an additional removal of a broken Paragard is an alleged injury, and Plaintiffs knew of that injury at the time of the procedure. Even a single removal procedure where a Paragard broke is sufficient for the Plaintiff to discover injury.

### vi. Virginia

Paragard is a drug, not a medical device, so Virginia's discovery rule applicable to medical devices does not apply to Paragard. Order on Defs.' Mot. to Dismiss, ECF No. 235 at 1. Plaintiffs cite no cases where this discovery rule has been applied to a pharmaceutical product the FDA regulates as a drug. *See* Plfs.' Resp. at 24 n.10.

"Virginia courts have repeatedly explained that a plaintiff's cause of action accrues on the actual date of injury, not the date on which that injury is discovered by or communicated to the plaintiff." *Adams v. Am. Optical Corp.*, 979 F.3d 248, 256 (4th Cir. 2020) (citations omitted). In *Adams*, the Fourth Circuit referenced the case Plaintiffs cited, *Kiser v. A.W. Chesterton Co.*, 736 S.E.2d 910, 915 (Va. 2013), noting that it discusses "a specific exception to this rule for asbestos-related illnesses." *See* Plfs.' Resp. at 24. In Virginia, unlike in Mississippi, even the date the plaintiff actually discovers the injury is not relevant. *See Smith v. Danek Med., Inc.*, 47 F. Supp. 2d 698, 701 (W.D. Va. 1998). Ten of the Plaintiffs with claims where Virginia law will apply have alleged breakage and multiple removals of their Paragards, and seven have included a single removal. Based on the allegations in

this litigation, all had sustained injuries or harm under Virginia law outside of the limitations period for filing their complaints.[2]

### B.    Claim Accrual for Illinois's Statute of Repose

With respect to Illinois, Plaintiffs argue that Defendants use a different definition of injury than that used for the accrual of the other states' statutes of limitations. Plfs.' Resp. at 36 n.17. However, Defendants' argument is well-founded in a series of cases interpreting the Illinois statute in the context of other products liability suits. Breakage at removal is sufficient to meet the definition of accrual in the states addressed in the previous section. But under Illinois law, for accrual of its eight-year statute of repose for strict products liability claims, injury begins even earlier, with exposure, ingestion, or implantation.

Both parties cite district court cases where the courts were attempting to determine how Illinois would interpret "injury" in 735 Ill. Comp. Stat. Ann. 5/13-213(d). Plaintiffs argue that this Court should follow the district court in *Leamanczk v. A.H. Robins Co.*, which proposed that Illinois would apply a "manifestation" theory to decide when injury began. 596 F. Supp. 365, 367 (N.D. Ill. 1984). *See* Plfs.' Resp. at 38-39. *Leamanczk* was decided 40 years ago, and yet Plaintiffs cite

---

[2] If the Court concludes that Virginia would apply a different statute of limitations to fraud claims, six of the Plaintiffs (*Anderson*, *Collantes*, *Durham*, *McLeod*, *Sarley-Gregory*, and *Vetter*) where Virginia law should apply do not bring fraud claims, i.e., they selected "No," in answer to Question 16. on their Short Form Complaints.

no authority since that time indicating that Illinois has adopted this interpretation of the statute. Defendants, on the other hand, cite several later cases that reach a different conclusion. Defs.' Mot. at 33.

Plaintiffs additionally provide their own reading of the Illinois statute. *See* Plfs.' Resp. at 38-39. But this interpretation would have applied equally in the other products liability cases Defendants cited and those courts still maintained that, "for the purposes of a statute of repose, the injury is the date that [the plaintiff] was exposed to harm during the implant of the device, not when an adverse effect manifested itself with [the plaintiff]." *Johnston v. I-Flow Corp.*, No. 09 C 3567, 2010 WL 11713179 (N.D. Ill. Aug. 26, 2010).

More district court cases, in part in reliance on Illinois appellate court decisions, have concluded Illinois would connect injury to initial exposure, ingestion, or implantation rather than manifestation. *See, e.g.*, *Dohra v. Alcon (Puerto Rico), Inc.*, No. 92 C 2624, 1994 WL 71449 (N.D. Ill. Mar. 3, 1994) (citing *Zimmerman v. Abbott Lab'ys, Inc.*, 545 N.E.2d 547 (Ill. App. Ct. 1989); *Olson v. Owens-Corning Fiberglass Corp.*, 556 N.E.2d 716 (Ill. App. Ct. 1990)). This Court should do likewise.

## II.    Plaintiffs cannot avoid dismissal based on their generic allegations of fraudulent concealment.

Plaintiffs wrongly construe Defendants' Motion as a Motion to Dismiss their allegations of Tolling/Fraudulent Concealment in their Second Amended Master

Complaint. Plfs.' Resp. at 1, 9-11. Instead, Defendants' Motion is aimed only at individual Plaintiffs' Short Form Complaints, with no argument about the sufficiency of allegations of tolling or fraudulent concealment in the Master Complaint alone. *See* 2d Amend. MPIC at ¶¶ 160-65.

The only relevance of the fraudulent concealment allegations in the Master Complaint is that Plaintiffs rely on them throughout their Response to attempt to plead fraudulent concealment. Upon review of the Short Form Complaints, it becomes clear why Plaintiffs wish to divert the Court's attention to the general allegations. The substantial majority (192) of these Plaintiffs, including those who checked the box that they are alleging fraudulent concealment, when asked for their particular allegations stated, "N/A," "None at this time", or simply left the space on the Short Form Complaint blank. As Plaintiffs also admitted in their Response, a few Plaintiffs even stated they were not alleging fraudulent concealment at all. Of the remaining Plaintiffs, 6 included a fraudulent concealment allegation addressing only the application of the discovery rule, which is not relevant to this Motion, and the remaining 38 included an allegation that is insufficient under the law of any state.

When Defendants moved to dismiss the fraud claims in the Second Amended Master Complaint, Plaintiffs' counsel argued that these allegations were sufficient to withstand dismissal because fraud would be addressed with particularity in individual Short Form Complaints:

So we have alleged the who, what, when, where and how. And everything else, *all the specifics will be in the Short Form Complaint*. . . . The Master Complaint and your decision on the Master Complaint and what Defendants are asking is that nobody can ever allege a fraud claim. The fact that [Defendants' counsel] can put up one Short Form Complaint and say that this person hasn't sufficiently alleged a fraud claim isn't the issue. . . . We don't have an obligation to cite where those statements come from. We just have to allege them. At a later point in time we will have to defend where those came from. We will probably include snapshots and exhibits, and that will come, but that time is not here. Here, the time is to allege our claims and to make them be strong enough that this Court decides that they are.

Case No. 1:20-md-02974, ECF No. 218, Transcript of Proceedings (Sept. 21, 2021) at 62:8-63:9 (emphasis added). The Court accepted Plaintiffs' argument that the fraud claims were sufficiently alleged in the Master Complaint to withstand Defendants' Motion to Dismiss. Order on Defs.' Mot. to Dismiss, ECF No. 235 at 20. Defendants did not move to dismiss fraudulent concealment/tolling from the Master Complaint in that earlier Motion to Dismiss. And Defendants are not moving to dismiss any Master Complaint claim or allegations now. But with respect to the Plaintiffs included in this motion, whose claims are time-barred on the face of their Complaints, even taking into account all allegations in the Master Complaint *and* their individual allegations of fraudulent concealment in their Short Form Complaints, they have not sufficiently pled fraudulent concealment to avoid dismissal of their time-barred claims.

Of the states that permit fraudulent concealment as a bar to either a statute of limitations or statute of repose, all require one or more of the following elements: concealment of the cause of action itself (or concealment of the injury or fact of damage), concealment intended to delay the plaintiff from filing suit or to hinder or delay prosecution, and/or allegations of wrongdoing separate from or subsequent to the wrongdoing alleged in the underlying claims. *See* § II.C. This concealment must target the specific plaintiff alleging fraudulent concealment. *Id.* The Master Complaint does not include these allegations, and neither do any of these Plaintiffs' Short Form Complaints.

### A. The allegations of Fraudulent Concealment in the Master Complaint are insufficient.

Plaintiffs repeatedly cite the allegations in the Master Complaint in their Response, but those are insufficient to establish fraudulent concealment as to any plaintiff. *See* Plfs.' Resp. at 11-12. In the Master Complaint's tolling/fraudulent concealment section, there are no allegations that Defendants concealed any causes of action or injuries. Instead, Plaintiffs allege that Defendants concealed "facts concerning Paragard's safety," 2d Amend. MPIC at ¶ 164, and "known but non-public information about the defects—information over which Defendants had exclusive control," *id.* at ¶ 165. Plaintiffs cite ¶¶ 62-70, 78-81, 121, 298-300, 311. *See* Plfs.' Resp. at 11. Paragraphs 62-70 and 78-81 include the Master Complaint's factual allegations of Paragard's defect, Defendants' knowledge of this defect, and

21

failure to warn, including in a revision to the warning label, as well as Plaintiff's allegations about adverse event reporting. Nothing in these paragraphs describes any affirmative concealment of causes of action.

Plaintiffs do not even claim the Master Complaint includes any allegations that Defendants acted to induce them to delay filing suit. Plaintiffs claim that their Complaint is "replete with allegations that Defendants concealed the dangers of Paragard to mislead plaintiffs . . . and that Plaintiffs could not have discovered those concealed facts through reasonable diligence." Plfs.' Resp. at 12 (citing 2d Amend. MPIC at ¶¶ 10, 66, 160-65, 304, 315, 324, 328, 344). But that is not what the cited paragraphs allege. Rather, the Complaint includes allegations addressing exactly what Plaintiffs allege Defendants' concealment was intended to induce: "to induce them to purchase, prescribe, and/or dispense Paragard and/or to mislead them into reliance upon and cause them to use Paragard." 2d Amend. MPIC at ¶ 315. Later, Plaintiffs claim there are allegations that Defendants "induced Plaintiffs to act." Plfs.' Resp. at 15 (citing 2d Amend. MPIC at ¶¶ 296, 327). Again, these are allegations that Plaintiffs were induced to use Paragard, not induced to delay filing suit: "were induced to, and did use Paragard, thereby causing Plaintiffs' severe and permanent personal injuries and damages," 2d Amend. MPIC at ¶ 296, and "were induced to and did use Paragard, thereby causing Plaintiffs to endure severe and permanent injuries," *id.* at ¶ 327.

**B.      Plaintiffs do not establish Fraudulent Concealment in their Short Form Complaints.**

The individual allegations included in the Short Form Complaints at issue here fare no better and are likewise insufficient to prevent dismissal of time-barred claims. Here, Defendants can best illustrate this point by referencing an example because the language takes a similar form for most of the Plaintiffs who included any allegations in this section. The allegations in Plaintiff Lyndsie Moss's Short Form Complaint were among the most specific of any of the thirty-eight, and still fail to allege elements necessary to fraudulent concealment:

> Prior to having the ParaGard Device implanted, Plaintiff was informed by her OB-GYN and provided written information that the ParaGard IUD was safe, 99% effective, and easily removed by a simple procedure. Further, she read that the ParaGard IUD was safe, effective and convenient.
>
> She did not realize that she might have a cause of action regarding the ParaGard IUD until December 2020. Until that time, she did not know that there was an issue with the ParaGard Device. She contacted her lawyers immediately after learning that she may have a claim.

Short Form Complaint, Case No. 1-21-cv-05320-LMM, Doc. No. 1 (Dec. 29, 2021) at 5 (15(b)). The majority of these Plaintiffs that include any description use similar language, but only two actually reference December 2020. *See also Lacey M. Thurman*, Short Form Complaint, Case No. 1:22-cv-02088-LMM, Doc. No. 1 (May 25, 2022) at 4-5 (15(b)). The other main variation, from a different Plaintiffs' firm states, "Plaintiff did not learn of the facts supporting her cause of action and the

23

Defendants' negligence, fraud, and concealment until within the statutory time period." *See, e.g.*, *Moori Abdul*, Short Form Complaint, Case No. 1:23-cv-05302-LMM, Doc. No. 1 (Nov. 17, 2023) at 5 (15(b)).

None of these Plaintiffs even allege that Defendants concealed their cause of action or that this concealment was intended to induce or delay the filing of their lawsuits. The longer version, quoted above, focuses on information the Plaintiffs learned prior to having the Paragard implanted, continuing the theme from the Master Complaint. Plaintiffs do not distinguish their allegations of fraudulent concealment from any other allegations of fraud or failure to warn contained in either the Master Complaint or any of these Short Form Complaints. They do not allege the elements that the states at issue in this Motion require, as will be discussed below.

### C.    States' requirements for pleading Fraudulent Concealment

As explained above, the generic allegations in Plaintiffs' Short Form Complaints are insufficient to establish fraudulent concealment under the laws of any state.

#### i.    Alabama

Alabama's fraudulent concealment doctrine does not apply here. To invoke fraudulent concealment under Alabama law, the "complaint must allege the time and circumstances of the discovery of the cause of action." *DGB, LLC v. Hinds*, 55 So. 3d 218, 226 (Ala. 2010). "The complaint must also allege the facts or circumstances

by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury." *Id*. "[G]eneralized allegations that a defendant had concealed a cause of action, unsupported by specific facts concerning that concealment or the plaintiffs' discovery of that concealment, [are] insufficient to toll the statute of limitations under § 6-2-3." *McKenzie v. Janssen Biotech, Inc.*, 295 So. 3d 617, 623 (Ala. 2019) (rejecting argument for fraud-based tolling in a products liability case); *Mack v. CooperSurgical, Inc.*, No. 1:22-CV-54-RAH, 2024 WL 4427846, at *4 (M.D. Ala. Oct. 4, 2024) (same).

Fraudulent concealment requires action "above and beyond the wrongdoing upon which the plaintiff's claim is founded to keep a plaintiff from suing in time." *Fedance v. Harris*, 1 F.4th 1278, 1286 (11th Cir. 2021) (quotations omitted). Further, the Alabama Supreme Court has held that "a mere failure or refusal to warn, without more, while actionable, does not rise to the level of fraudulent concealment and, hence, does not toll the running of the statute." *Cazalas v. Johns-Manville Sales Corp.*, 435 So. 2d 55, 58 (Ala. 1983). Accordingly, "a breach of the duty to warn by a manufacturer does not toll the statute of limitations under Alabama law." *Scharff v. Wyeth*, No. 2:10-CV-220-WKW, 2011 WL 3320501, at *11 (M.D. Ala. Aug. 2, 2011); *see also Mack*, 2024 WL 4427846, at *4 (holding allegations that "form the basis of the [plaintiffs'] failure to warn claims" "[w]ithout more . . . even if true or viewed in the light most favorable to the [plaintiffs], cannot form the basis of a

fraudulent concealment theory for statute of limitations purposes."); *In re Cook Med., Inc., IVC Filters Mktg., Sales Practices and Prod. Liab. Litig.*, No. 114ML02570RLYTAB, 2023 WL 7548736, at *2 (S.D. Ind. Apr. 25, 2023) (granting Rule 12(c) motion under Alabama law and holding "[i]n the absence of allegations establishing that Cook prevented Plaintiff from discovering the facts surrounding her alleged injury, Plaintiff may not rely on fraudulent concealment to toll the statute of limitations on her products liability and negligence claims").

Plaintiffs state that the "Alabama Plaintiffs easily meet their burden" to establish fraudulent concealment, but the allegations they cite are nothing more than the allegations forming the basis of their failure to warn claims. Plfs.' Resp. at 15-16. Plaintiffs do not allege any wrongdoing "above and beyond" their other causes of action, nor do they allege facts or circumstances of concealment of a cause of action and what prevented each individual plaintiff from discovering the facts.

Plaintiffs also do not establish equitable tolling. "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way as to the filing of his action." *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013) (brackets and quotations omitted). There are no such allegations in the Complaints here. Although Plaintiffs claim that they need not plead equitable tolling, "[a] plaintiff nonetheless can plead h[er]self out of court by alleging facts that foreclose

26

a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc). Plaintiffs' allegations about the risk of breakage in the publicly available FDA Adverse Event Reporting database do just that. *See Shepard v. Sanofi-Aventis U.S. LLC*, No. 2:23-CV-1594-ACA, 2024 WL 1514451, at *6 (N.D. Ala. Apr. 8, 2024) (declining to apply equitable tolling and noting that "[t]he pleaded examples of publicly available information regarding a potential link between Taxotere and permanent hair loss suggest that Ms. Shepard could have discovered her cause of action through reasonable diligence."). The allegations further show there are no "extraordinary circumstances" here, but rather typical claims of failure to warn. "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Weaver v. Firestone*, 155 So. 3d 952, 958 (Ala. 2013) (quotation marks omitted). Equitable tolling does not apply here.

### ii.    Idaho

Plaintiffs cannot save their claims by invoking the fraudulent concealment provision of Idaho Code § 5-219(4). That provision requires that for fraudulent concealment there must be a fraudulent and knowing concealment of "the fact of damage." Idaho Code § 5-219(4). Here, the "fact of damage," i.e., the breakage of the Paragard, has not been concealed from plaintiffs. This case is therefore unlike the infection case primarily relied on by Plaintiffs where "individuals suffering from

infections are not likely to view their symptoms as an indication that more lasting damage has taken place." *Allen v. A.H. Robins Co., Inc.*, 752 F.2d 1365, 1371(9th Cir. 1985).

Moreover, in a more recent IUD case involving the same defendant as in *Allen*, the Idaho Supreme Court rejected fraudulent concealment and equitable estoppel arguments. *See Theriault v. A.H. Robins Co., Inc.*, 698 P.2d 365, 368 (Idaho 1985). In *Theriault* the court rejected the fraudulent concealment doctrine in the summary judgment context, noting that "Theriault has failed to produce any evidence of conduct by Robins designed to conceal facts in an effort to hinder her in prosecuting her claim; nor is there anything in the record to show that Robins concealed material facts or made false representations which lulled Theriault into inaction during the period in which she could have brought this lawsuit." *Id.* Notably, the fraudulent concealment, as framed by the Idaho Supreme Court in *Theriault*, must be to the plaintiff specifically, not fraud to the general public. Plaintiffs have failed to plead any such facts here.

The *Theriault* court further rejected the application of the equitable estoppel doctrine to toll the statute of limitations. Again, the acts giving rise to equitable estoppel must have prevented the individual plaintiff from filing her lawsuit, requiring allegations of:

> (1) a false representation or concealment of a material fact
> with actual or constructive knowledge of the truth, (2) the

> party asserting estoppel did not know or could not discover
> the truth, (3) the false representation or concealment was
> made with the intent that it be relied upon and (4) the
> person to whom the representation was made or from
> whom the facts were concealed, relied and acted upon the
> representation or concealment to his prejudice.

*Id.* Equitable estoppel did not apply in *Theriault* where "there is no evidence in the record to show that Robins concealed any material facts or made any false representations which lulled Theriault into inaction during the statutory period. Furthermore, there is no evidence before us to indicate that Theriault relied on any representations by Robins in waiting to file her action." *Id.* There are no such allegations here.

### iii.    Michigan

Plaintiffs' citation to the fraudulent concealment provision of Mich. Comp. Laws § 600.5855 does not save their claims. To establish fraudulent concealment, Plaintiffs must allege "that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Kott v. Howmedica Osteonics Corp.*, No. 15-CV-11349, 2015 WL 13037419, at *4 (E.D. Mich. Oct. 13, 2015) (citation omitted).

As the Michigan Court of Appeals has recently reiterated, "fraudulent concealment that will postpone the operation of a statute must be concealment of the fact that the plaintiff has a cause of action," *i.e.*, not the cause of action itself. *Wendel v. Ford Motor Co.*, No. 365678, 2024 WL 4099909, at *12 (Mich. App. Sept. 5,

2024). Accordingly, in *Wendel*, allegations that the defendant knew about the alleged defect in the product were insufficient to allege fraudulent concealment where the plaintiff "never alleged, let alone with any supporting facts, any affirmative action by Ford designed to prevent discovery of a potential cause of action." *Id.* The fraudulent concealment provision is "triggered by affirmative acts or misrepresentations; 'mere silence on the part of the defendant is not enough.'" *Chandler v. Wackenhut Corp.*, 465 F. App'x 425, 427 (6th Cir. 2012) (citations omitted); *see also McMan v. C.R. Bard Inc.*, No. 19-12670, 2021 WL 3079894, at *4 (E.D. Mich. July 21, 2021) (holding that an alleged omission from a medical device's warning label "is far from an 'affirmative act or misrepresentation' concealing the risks of fracture for the purposes of fraudulent concealment"). Plaintiffs have failed to plead an any such acts.

### iv.    Mississippi

Plaintiffs cannot establish fraudulent concealment under Miss. Code. Ann. Section 15-1-67. In order to plead fraudulent concealment, "two showings must be made: "(1) that the defendant engaged in affirmative acts of concealment, and (2) despite investigating with due diligence, the plaintiff was unable to discover the claim.'" *Nevins v. Jelliffe*, No. 3:16-CV-472-WHB-JCG, 2017 WL 1017659, at *4 (S.D. Miss. Mar. 15, 2017) (quoting *Nygaard v. Getty Oil Co.*, 918 So.2d 1237, 1242 (Miss. 2005)). "Additionally, under Mississippi law, allegations relating to fraud

'such as the time, place and contents of any false representations or conduct' must be stated with particularity, and, the failure to so do, can result in the dismissal of fraud-related claims." *Id.* (citations omitted) (holding complaint insufficient to plead fraudulent concealment). As explained in Defendants' opening brief, Mississippi law requires that the fraudulent concealment be distinct from the allegations forming the basis of the plaintiff's cause of action. *See, e.g.*, *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 438 (Miss. 2010) ("The trial court aptly stated the law that an act cannot be both an act of fraud in the inducement and an act of fraudulent concealment.").

Here, Plaintiffs' allegations are simply the same as those forming the basis for their failure to warn claim. And they are not pleaded with requisite particularity. In *Tanner v. Pfizer, Inc.*, the court held there were insufficient allegations of fraudulent concealment where "Plaintiff does not allege that any of the information from these sales and marketing campaigns reached him or influenced his ability to discover his claim against Defendant." No. 1:15CV75-HSO-JCG, 2015 WL 6133207, at *3 (S.D. Miss. Oct. 19, 2015); *see also O'Bannon v. Guardian Life Ins. Co. of Am.*, 331 F. Supp. 2d 476, 478 (S.D. Miss. 2004) (granting motion to dismiss where complaint did not allege that the defendants "affirmatively prevented" the plaintiffs from discovering their claims). In addition, plaintiff had not properly alleged fraudulent concealment because "the Complaint does not allege that Plaintiff 'acted with due

diligence' to discover his claim 'but was unable to do so.'" *Tanner*, 2015 WL 6133207, at *3. There are similarly no such allegations here.

### v.   New York

Plaintiffs have not sufficiently alleged fraudulent concealment under New York law. In their opposition to the motion to dismiss, Plaintiffs seek to align this case with a 40-year-old IUD case from the Eleventh Circuit applying New York law, *Knaysi v. A. H. Robins Co.*, 679 F.2d 1366, 1369 (11th Cir. 1982), but the allegations in these two cases are markedly different. In *Knaysi*, the plaintiff alleged that "Mrs. Knaysi and her gynecologist so relied" on statements by defendant. *Id.* There are no such allegations here. Further, the *Knaysi* plaintiff alleged that defendant "published information about the Dalkon Shield which it knew to be false and to have suppressed damaging information about the device's danger." *Id.* Here, by contrast, Plaintiffs have simply alleged a failure to warn. Similarly, there are no allegations of "subsequent, specific actions after the initial distribution . . . .to conceal" information as the court found in *Blum v. 3M (In re 3M Combat Arms Earplug Products Liab. Litig.*), No. 3:19MD2885, 2021 WL 4955910, at *3 n.6 (N.D. Fla. Aug. 30, 2021).

Equitable estoppel also does not apply. Under New York law, "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's

underlying cause of action." *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (citation omitted). Rather, the doctrine requires the plaintiff to demonstrate that the "defendant conducted himself in such an overt manner, *after his wrongdoing*, as to induce the plaintiff to delay commencement of her action on time or otherwise prevent her from doing so." *Id* at 265-66 (emphasis in original) (citation omitted). In addition, "Plaintiff must allege more than that the defendant remained silent regarding the initial wrong." *Id.* (citation omitted). Furthermore, "even if a plaintiff sufficiently alleges misconduct by a defendant, the plaintiff also is required to allege that justifiable reliance upon the misrepresentation was the reason for failing to timely commence the action." *Id.* This requires the plaintiff to plead "that he used due diligence to detect" the fraud. *Id.* Plaintiffs' Complaints are entirely devoid of such allegations here.

### vi.  Virginia

Fraudulent concealment is not properly alleged here to toll the statute of limitations. Under Virginia law, fraudulent concealment "must consist of affirmative acts of misrepresentation" and it "must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action." *Newman v. Walker*, 618 S.E.2d 336, 339–40 (Va. 2005) (citation and internal quotation marks omitted); *Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001) (same).

Plaintiffs do not allege any acts involving moral turpitude that prevented the filing of their lawsuits. In their opposition to the motion to dismiss, Plaintiffs rely on a particular fact pattern in *Evans v. Trinity Industries, Inc.*, 137 F. Supp. 3d 877, 883 (E.D. Va. 2015), where the defendant was alleged to have actively concealed certain design changes from federal regulators. But even in *Evans*, the court acknowledged that the result would have been different "[i]f the Defendants had merely failed to inform the FHWA of the design modifications," as "such conduct would not likely rise to the level of an affirmative act of misrepresentation." *Id.* This is because, as explained in Defendants' opening brief, "[m]ere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action." *Mackey v. McDannald*, 842 S.E.2d 379, 385 (Va. 2020). Here, Plaintiffs' allegations consist of failure to inform, not any affirmative act of concealment that actually prevented discovery of the cause of action.

### vii.    Iowa

Under Iowa law, to claim the benefit of fraudulent concealment, the party "must plead and prove the following:  '(1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his

prejudice.'" *Herbst v. Givaudan Flavors Corp.*, 341 F. Supp. 3d 1006, 1012 (N.D. Iowa 2018) (quoting *Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005)). Although Plaintiffs suggest there is some distinction between the statutory and common law elements of fraudulent concealment, Plfs.' Resp. at 26-27, that is not supported by Iowa case law. Indeed, the case Plaintiffs cite concludes the opposite. *See Herbst*, 341 F. Supp. 3d at 1012 ("I agree with the parties that these elements of common-law fraudulent concealment apply to proof of the 'fraudulent concealment' exception expressly stated in Iowa Code § 614.1(2A)(a)").

Plaintiffs have not pleaded that they relied on any representations by Defendants here that prevented them from filing their lawsuits. Further, unless a fiduciary or confidential relationship exists, the Iowa Supreme Court has held that "[t]he affirmative conduct of concealment must be independent of and subsequent to the liability-producing conduct." *Est. of Anderson ex rel. Herren v. Iowa Dermatology Clinic, PLC*, 819 N.W.2d 408, 415 (Iowa 2012). Otherwise, the Iowa Supreme Court observed, "there would never be a time limit for failure-to-disclose-type claims." *Downing v. Grossmann*, 973 N.W.2d 512, 515 (Iowa 2022) (holding that "[w]hen the underlying cause of action is one for failure to disclose a medical condition, as here, a defendant's continued failure to disclose the condition that goes to the heart of the plaintiff's underlying claim does not meet the requirement for an independent and subsequent act of concealment to trigger equitable estoppel").

Again, Plaintiffs' purported allegations of fraudulent concealment are simply those constituting their failure to warn claims.

### viii.    North Carolina

Plaintiffs appear to agree that fraudulent concealment cannot toll the statute of repose under North Carolina law, but they argue that statute of repose may be defeated by equitable estoppel.

As explained in Defendants' opening brief, "North Carolina cases interpreting whether the products liability statute of repose is subject to equitable estoppel appear at times to be in conflict." *Fulmore v. Johnson & Johnson*, No. 5:21-CV-7-BO, 2022 WL 18213493, at *2 (E.D.N.C. May 19, 2022). However, even if recognized, equitable estoppel does not apply here.

"In order for equitable estoppel to bar application of the statute of repose, a plaintiff must have been induced to delay filing of the action by the conduct of the defendant that amounted to the breach of good faith." *Wood v. BD & A Constr.*, L.L.C., 166 N.C. App. 216, 221 (2004). In the *Bryant* case cited by Plaintiffs, the court in *Bryant* set forth the elements of equitable estoppel as follows:

> The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to

>the real facts in question; and (2) relied upon the conduct
>of the party sought to be estopped to his prejudice.

*Bryant v. Adams*, 448 S.E.2d 832, 838 (N.C. App. 1994). Once again, there are no allegations here that any plaintiff was prevented from filing her lawsuit because she relied on some false representation by Defendants.

### ix.    Tennessee

Plaintiffs argue that there should be tolling of the Tennessee statute of repose on the basis of fraudulent concealment. However, they acknowledge that the Tennessee Supreme Court has never adopted fraudulent concealment, and they do not cite a single Tennessee decision where the court applied fraudulent concealment to the statute of repose period. *See* Plfs.' Resp. at 31-32.

Plaintiffs cite *In re General Motors LLC Ignition Switch Litigation* for the observation that the Tennessee Supreme Court has not ruled on whether fraudulent concealment can toll the statute of repose. But they ignore the very next sentence where that court observed that "the Tennessee Court of Appeals and multiple federal courts, including the Sixth Circuit, are unanimous in holding that it cannot." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2019 WL 952348, at *3 (S.D.N.Y. Feb. 27, 2019) (citing cases). This Court should not be the first to adopt fraudulent concealment under Tennessee law.

As the court observed in *Damron v. Media Gen.*, "[a]n exception is not found in the statute itself, and it appears that the choice not to include the exception was

deliberately made by the legislature." *Damron v. Media Gen., Inc.*, 3 S.W.3d 510, 513 (Tenn. App. 1999). As explained by the court in *Damron*, a fraudulent concealment amendment was specifically proposed for the TPLA and was rejected by the legislature. *Id.* The court should not insert a fraudulent concealment exception where the legislature has specifically declined to do so. *Jones v. Smith & Nephew Inc.*, No. W202100426COAR3CV, 2022 WL 767709, at *4 (Tenn. App. Mar. 14, 2022) ("This Court cannot expand/rewrite the statute to create a general latent disease exception or a fraudulent concealment exception to the TPLA's statute of repose."). "Without some persuasive indication that the state's highest court would rule otherwise," this Court is bound by the Tennessee Court of Appeals' decisions unanimously rejecting recognition of a fraudulent concealment exception for the statute of repose. *See CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 791 (11th Cir. 1999). And even if acknowledged, Plaintiffs have failed to plead it here with the requisite specificity.

### x.    Texas

Plaintiffs acknowledge in their opposition that the Texas Supreme Court has never adopted a fraudulent concealment exception to its statute of repose. *See* Plfs.' Resp. at 32-33.

As Plaintiffs admit, the Texas Court of Appeals acknowledged this fact in *Fiengo v. Gen. Motors Corp.*, 225 S.W.3d 858, 860 (Tex. App.—Dallas 2007), when

it stated that "[w]e have found no published Texas case addressing the precise issue of whether an equitable principle, such as estoppel, can be asserted to prevent a defendant from raising a statute of repose as an affirmative defense." But contrary to the Plaintiffs' suggestion, the *Fiengo* court did not assume that fraudulent concealment applied, it simply stated that it "need not decide that issue today because, even if we assume it can, appellants have failed to produce sufficient evidence on each element of equitable estoppel so as to raise a fact issue." *Id. Fiengo* provides no basis for this Court to apply the fraudulent concealment doctrine for the first time under Texas law. As explained above, that is not this Court's role sitting in diversity.

Further, as with the other states, Plaintiffs do not plead the elements of fraudulent concealment here. *See* Plfs.' Resp. at 33 (describing five required elements of fraudulent concealment: (1) defendant's false representation or concealment of material facts, (2) defendant's knowledge, constructive or actual, of those facts, (3) defendant's intention that plaintiff act on this representation/concealment, (4) plaintiff's lack of knowledge or means of obtaining knowledge of the facts, and (5) plaintiff's detrimental reliance on the representation/concealment."). They do not plead with specificity that they relied on any false representation that delayed the filing of their actions.

### xi.    Georgia

Plaintiffs' assertion of equitable estoppel under Georgia law fails. Equitable estoppel requires allegations that "the plaintiff reasonably relied on a fraudulent act or statement by the defendant that occurred *after* the plaintiff's injury accrued and, as a result of that fraud, the plaintiff did not file suit until after the repose period expired." *Wilhelm v. Houston Cnty.*, 713 S.E.2d 660, 663 (Ga. App. 2011). Equitable estoppel prevents the application of the statute of repose defense only in "narrow circumstances." *Georgia S. U. Hous. Found. One, LLC v. Capstone Dev. Corp.*, No. 6:11-CV-104, 2018 WL 4954079, at *6 (S.D. Ga. Oct. 12, 2018). "[T]he plaintiff must have acted diligently for equitable estoppel to be available after the fraud was first discovered or should have been discovered." *Id.*

Plaintiffs argue that allegations of fraud are "all that is required at this stage to defeat Defendants' Motion." Plfs.' Resp. at 35. But as explained above, Plaintiffs' have not stated any such claim with particularity.[3]

### xii.    Illinois

Plaintiffs argue that they are not required to plead fraudulent concealment with particularity, but in one of the very cases they cite the court held that

---

[3] Plaintiffs also claim that Georgia's statute of repose does not apply to strict liability failure to warn claims. Plfs.' Resp. at 34 (cite § 51-1-11(c)). But this exception only applies to negligence failure to warn claims, not strict liability failure to warn claims. *See Paulsen v. Abbott Lab'ys*, 563 F. Supp. 3d 787, 791-92 (N.D. Ill. 2021), *aff'd*, 39 F.4th 473 (7th Cir. 2022) (collecting cases applying Georgia law).

"[a]llegations of fraudulent concealment must satisfy the Rule 9(b) particularity standard." *In re Fluoroquinolone Products Liab. Litig.*, No. CV 15-3417 (JRT), 2017 WL 690188, at *3 (D. Minn. Feb. 21, 2017). As the Illinois Supreme Court has stated, "[a] plaintiff must plead and prove that the defendant made misrepresentations or performed acts which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied." *Orlak v. Loyola U. Health Sys.*, 885 N.E.2d 999, 1009 (Ill. 2007) (emphasis added).

As explained above, there are no allegations of fraudulent concealment of a cause of action—pled with particularity or not. Under Illinois law, fraudulent concealment must consist of "affirmative acts or representations which are calculated to lull or induce a claimant into delaying filing of his claim or to prevent a claimant from discovering his claim." *Wisniewski v. Diocese of Belleville*, 943 N.E.2d 43, 73 (Ill. App. 5th Dist. 2011). Absent a fiduciary or confidential relationship, which does not exist here, "mere silence on the part of the defendant and a failure by the plaintiff to learn of the cause of action are not enough to establish fraudulent concealment." *Wisniewski*, 943 N.E.2d at 73. As explained above, there is no allegation of affirmative concealment of a cause of action here, but rather allegations of a typical claim of failure to warn.

**CONCLUSION**

In sum, Paragard breakage has always been the focus of this MDL. All of the Plaintiffs in Defendants' Motion allege a breakage at removal. Most include multiple removals of the same Paragard that they allege broke. Certainly, having a repeat removal procedure constitutes an injury under the included states' laws. But based on how each of these states define injury, even breakage at a single removal procedure should begin accrual. The allegations in the Master Complaint are not sufficient under the law of any state, even combined with the allegations these Plaintiffs have included in their Short Form Complaints, to allege tolling due to fraudulent concealment.

Finally, Plaintiffs claim that they have reasonable disputes about choice of law, but they do not provide the legal basis for each of these disputes here. Defendants will take up these arguments in reply to individual responses, should Plaintiffs make individual arguments explaining their alleged reasonable dispute of law. To the extent that the Court believes a Plaintiff Fact Sheet is necessary to conclude dismissal is warranted, the Court can convert the Motion, with respect to that Plaintiff, to a Motion for Summary Judgment pursuant to Federal Rule of Procedure 12(d).

Defendants request that the Court dismiss the Plaintiffs' claims addressed in their Motion to Dismiss. Defendants seek all other relief to which they are entitled.

Respectfully submitted,

This 2nd day of December, 2024

/s/ Christopher D. Morris
Christopher D. Morris
Butler Snow LLP
Mississippi Bar No. 102981
Renaissance at Colony Park
Suite 1400
1020 Highland Colony Parkway
Ridgeland, MS 39158
Telephone: (601) 985-4437
chris.morris@butlersnow.com

**Co-Lead Counsel for the Teva Defendants**

/s/ Pamela L. Ferrell
Pamela L. Ferrell
Butler Snow LLP
Georgia Bar No. 596713
170 Peachtree Street NE
Suite 1900
Atlanta, GA 30309
Telephone: (678) 515-5011
pamela.ferrell@butlersnow.com

**Co-Lead Counsel for the Teva Defendants**

/s/ Caroline D. Walker
Caroline D. Walker
Butler Snow LLP
Alabama Bar No. ASB-3439-B10T
One Federal Plaza
Suite 100
1819 Fifth Avenue N.
Birmingham, AL 35203-2118
Telephone: (205) 297-2200
caroline.walker@butlersnow.com

**Co-Lead Counsel for the Cooper Defendants**

/s/ Kasey M. Adams
Kasey M. Adams
Butler Snow LLP
Mississippi Bar No. 105025
Renaissance at Colony Park
Suite 1400
1020 Highland Colony Parkway
Ridgeland, MS 39158
Telephone: (601) 985-4413
kasey.adams@butlersnow.com

**Co-Lead Counsel for the Cooper Defendants**

<u>/s/ Lori G. Cohen</u>
Lori G. Cohen
Allison Ng
Greenberg Traurig, LLP
Georgia Bar No. 174455
Terminus 200
3333 Piedmont Rd., NE
Suite 2500
Atlanta, GA 30305
Telephone: (678) 553.2385
cohenl@gtlaw.com nga@gtlaw.com

***Co-Liaison Counsel for Defendants***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that I have prepared the foregoing in compliance with Local Rule 5.1 in Times New Roman 14-point font and in compliance with the Parties' agreement as to its length, as communicated to the Court.

This 2nd day of December, 2024.

*/s/ Christopher D. Morris*
Christopher D. Morris
Mississippi Bar No. 102981

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

This 2nd day of December, 2024.

*/s/ Christopher D. Morris*
Christopher D. Morris
Mississippi Bar No. 102981