

**Attorney at Law**                                                                                    Erin K. Copeland
**Licensed in Texas and Missouri**                                                      ecopeland@fibichlaw.com

April 7, 2025

Via Email
Honorable Leigh Martin May
c/o Courtroom Deputy Brittany Poley
US District Court | Northern District of Georgia
2167 U.S. Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303

      RE:    *Paragard* MDL No. 2974 - Plaintiffs' Letter Brief Regarding Witness Perez-
             Gibbins' 3.31.25 Testimony (Destruction of Evidence and more) – Motion to
             Compel

Dear Judge May:

      Destruction of relevant evidence during the pendency of this litigation. Absolute filth –
including mice nests and mice feces – in and around the area where the Paragard IUD that is
ultimately implanted inside of women's bodies is manufactured. No real investigation into reports
of Paragard breakage and breakage complaint handling process not being true, honest, and
accurate. Gamesmanship in the handling of relevant documents and witnesses. This is but a few
of the shocking discoveries from the recent deposition of Mariessa Perez-Gibbins, an employee of
Defendant Cooper.

      Exactly one week ago, on March 31, 2025, Ms. Perez-Gibbins was deposed in this case.
The following day (April 1, 2025), Plaintiffs requested a number of critical custodial files and
highly relevant documents and material surrounding the above revelations and more (including a
key manufacturing facility audit and an FDA inspection report both of which were requested by
Plaintiffs *prior to* the deposition that have still not been produced despite the witness's testimony
that the documents do, in fact, exist). A copy of those document requests are attached hereto as
**Exhibits A-C**. Plaintiffs made another follow-up request for the material on Wednesday (April 2,
2025). However, we have not heard anything since.

**<u>Plaintiffs' Ask</u>**

      In light of the close of corporate discovery and to avoid any suggestion that Plaintiffs have
somehow waived their right to seek this vital evidence because of the discovery deadline, Plaintiffs

bring this matter to the immediate attention of the Court and are also filing it on the docket as a formal motion to compel the production of this evidence on an expedited basis.[1]

The specific material Plaintiffs currently request is as follows:

1.  Full custodial files of William "Bill" Senatore, Mauro Castro, Stephanie Wagner, Mariessa Perez-Gibbins, Kim Schaffer, and Nicole Enderle;
2.  Updated full custodial files (*i.e.* post April 12, 2022 documents) for Brenda Angelo and Thomas Mehs;
3.  All North Tonawanda/Paragard related texts messages and photographs exchanged between any of these individuals and anyone else involved in quality and sanitation issues identified at the Paragard manufacturing facility by the FDA, IPS, and/or Nicole Enderle;
4.  A full unredacted copy of an audit and/or mock FDA inspection performed by IPS (or any other entity) of the Paragard manufacturing facility and Paragard systems;
5.  All internal communications about the IPS audit and communications with IPS and Nicole Enderle about the audit, including follow-up remedial work performed as a result of the audit;
6.  A full unredacted copy of the 2024 Establishment Inspection Report ("EIR") from the FDA to Cooper (which document was ordered by the Court to be produced yet has not produced).[2]

**Events Leading Up to the Deposition of Ms. Perez-Gibbins**

Mariessa Perez-Gibbins was never disclosed by Defendants on any of their relevant custodian lists in 2022 or 2024. In the fall of 2024, Plaintiffs became aware that Ms. Perez-Gibbins, among others, was involved in a 2024 FDA inspection of the Paragard manufacturing facility which dealt, in part, with Paragard quality systems and complaint handling, including complaints about breakage, and requested that Defendants produce material about the inspection to them.[3] Following the production of the 2022 and 2024 FDA Inspection material, it became clear that Ms. Perez-Gibbins was someone who needed to be deposed in this case. Accordingly, on February 10, 2025, pursuant to the scheduling order deadline for requesting certain depositions, Plaintiffs requested the deposition of Ms. Perez-Gibbins.

---

[1] To the extent Defendants raise any issue with the timing of this request, Plaintiffs remind the Court that a number of documents the Court previously ordered to be produced are still outstanding and several depositions previously noticed by Plaintiffs will be taking place outside the discovery cutoff date due to no fault of Plaintiffs. In fact, one such deposition is that of Mr. Senatore (Ms. Perez-Gibbin's supervisor who, amongst other things, she testified told her to delete photographic evidence) who was scheduled to occur today (April 7, 2025) but got postponed by Defendants after Ms. Perez-Gibbins testimony.

[2] Plaintiffs reserve their right to request further evidence should this material yield any more highly relevant facts about which Plaintiffs are currently unaware and/or that should have already been disclosed. Moreover, this request is made without prejudice to Plaintiffs' right to seek relief surrounding these events in their upcoming sanctions and/or cost shifting requests.

[3] This material is part of the post April 12, 2022 material about which the parties have briefed a number of times since October 2024.

At the February 18, 2025 status conference and in a follow-up email that same date, defense counsel Walker informed Buffy Martines of the PLC that Ms. Perez-Gibbins was placed on medical leave sometime *shortly after she was hired* and that they "do not believe she will have too much to offer at a deposition due to her inactive status." *See* **Exhibit D**. On February 22, 2025, after giving thought to counsel's representations and considering the importance of the topics for which only Ms. Perez-Gibbins could give testimony per the documents and counsel's position about custodial file/sponsoring witness material, Plaintiffs decided to proceed with their request for the deposition. *See id.* On March 1, 2025, having heard nothing, Plaintiffs asked again for deposition dates. On March 3, 2025, defense counsel provided a date (3/31) but no location.

At the March status conference, counsel again questioned Plaintiffs' need for the deposition. Then, on March 18, 2025 (over a month since Plaintiffs' original request) defense counsel Adams sent an email advising the PLC that because of Ms. Perez-Gibbins leave status, "the Company is not permitted to request her perform her work duties." As such, she stated, they were providing her address "should" we "choose to subpoena her." *See* **Exhibit E**.[4]

As established herein and fortunately for the women in this MDL, the PLC proceeded with the subpoena despite being explicitly told the witness would not have much to offer and Mariessa Perez-Gibbins was deposed last Monday, on March 31, 2025.

### Perez-Gibbins' Testimony

In support of Plaintiffs' request for the material identified above, Plaintiffs rely on the complete deposition testimony of Mariessa Perez-Gibbins, the entirety of which is adopted and incorporated as if fully set forth herein.[5] In relevant part, however, Ms. Perez-Gibbins testified:

"During my time there, I was made aware that there was **falsification in the batch record** and confirmed and raised that to Bill Senatore and Mauro Castro. **I was aware of the complaint process not being true and honest and accurate**. I was aware of during final inspection of the **Paragard with SHI having a defect** and raised an awareness of an investigation on that defect, all of which I was told that it would be handled elsewhere." (P31/L18-P32/L2) (emphasis added).

*Falsification and Destruction of Evidence*

"The **process validation of the new product that was previously attempted by Thomas Mehs was not accurate, safe, or compliant to the FDA guidelines** of process validation. The **equipment wasn't properly validated and that deviations were not being documented** in the current system." (P32/L10-15) (emphasis added).

---

[4] It bears noting here that Ms. Perez-Gibbins testified that counsel Adams contacted her in February 2025 via phone saying that Ms. Perez-Gibbins needed to give dates that she was available for her deposition. (Page 24/Line 18-Page 25/Line 24). Ms. Perez-Gibbins further testified that she did not ask Ms. Adams to have Plaintiffs issue a subpoena for her to appear for the deposition. (Page 26/Line3-6). Instead, Ms. Perez-Gibbins testified that she expressed the dates that she was available and that counsel Adams sent an email "with CooperSurgical" and gave her "options to whether I could exercise my right to get a subpoena or agree on my own to the dates." (Page 26/Line 22-Page 27/Line 10).

[5] Plaintiffs are providing the transcript to the Court but are not filing on the public docket at this time. Plaintiffs reserve the right to do so at a later date.

"I was approached by one of the quality specialists[6], that she was doing quality checks on the product, and she had gotten a couple of failures in the final packaging process, and she went to Thomas Mehs to ask what the process was, I believe, because this was at the time she was new…[S]**he was instructed that -- that it happens sometimes with that system and to just go ahead and write pass.** At that time she had came to me, she had already completed the batch record, and I was not -- that was not in my scope of roles. During that time, I went to confirm that in the computer system in the final packaging area, to confirm the severity of the failures, whether there was a grading – a grading scale… [A]nd I believe -- I'm not citing any SOPs at the time. I don't know the exact citations of the SOP, but **there were confirmed failures via the computer system. I took photos of those,** and I went and I brought it up to Advanced Clinical first, my connection there. I then called Bill Senatore and explained to him what I had found and what I had heard." (Page 34/L11-Page 35/Line 11) (emphasis added).

Mr. Senatore's response was that "[H]e would take that information and think about it and talk to his boss, Mauro" (*confirmed as Mauro Castro*). (Page 35/Line 12-19).

As to the photos Ms. Perez-Gibbins testified she, "shared them with Bill Senatore…via text message" and confirmed she regularly communicated with Mr. Senatore via text message using her personal device. (Page 40/L6-19).

When specifically asked if Mr. Senatore or anybody else ever told her to delete or to destroy the photographs that she had taken, Ms. Perez-Gibbins said, "[Y]es…Bill Senatore." She went on to testify that **Mr. Senatore specifically asked her to "delete the photographs" and he also asked her not to speak to anybody else about this issue**. Ms. Perez-Confirmed she deleted them at his specific request and complied with his request that she not discuss this with anyone else at CooperSurgical. (Page 43/Line 23-Page 44/Line 20).

*Mock Audit (SOPs not compliant and Pests)* [7]

In discussing the mock audit that Plaintiffs' have now requested from defense counsel on multiple occasions, including prior to the deposition, Ms. Perez-Gibbins testified that she knew of the deficiencies that were outlined in the report and those included, amongst other things:

- The **SOPs presented in the audit were not compliant**; and
- **There were topics of pest control and handling of pests**;

When asked for details about the pest control at the North Tonawanda site (which, again, is where Paragard is manufactured), Ms. Perez-Gibbins testified that "[T]here was a deviation, I believe, that had **mouse feces in the copper spindle bags and around the facility**." She

---

[6] Per Ms. Perez-Gibbins, the quality specialist was Stephanie Wagner (who is an individual who has never been identified to Plaintiffs). (Page 35/L22-23).

[7] Plaintiffs refer to **Exhibits A and B** which show Plaintiffs' repeated requests for the mock audit from defense counsel Walker before and after the deposition. The audit has yet to be produced so Plaintiffs were not able to question Ms. Perez-Gibbins about it despite her confirming it happened and being intimately involved in the process.

confirmed **the copper spindle bags are stored at the site and hold the copper that's actually used in the Paragard**. She also testified:

- This did not surprise people although it surprised her.
- This was known to Thomas Mehs, who "did not keep a cleanly or organized office and areas around his office" and that he kept old food and garbage there.
- That it was **close to where some of the parts of the Paragard device were stored**.
- That it was **close to where the final Paragard products were stored** as well.
- That it was apparent to everyone that worked at the site with Mr. Mehs

(Page 138/L5-Page 142/Line 14) (emphasis added).

Thomas Mehs was removed from his office and ultimately the site (to work from home). When asked to describe the state of Mr. Meh's office when Ms. Perez-Gibbins went in to clean it after his removal, she stated, "[I]t was very filthy. There were some mouse nests under and inside his desk and, like, insulation taken from walls and boxes underneath the bookshelf." She further stated when they moved the furniture to clean it that's when they discovered "the mice feces and mice homes." (Page 144/Line 3-19).

When asked where Mr. Mehs' office was in relation to the manufacturing part of the plant, Ms. Perez-Gibbins testified: "[T]hey share a wall. The office is in the warehouse connected to the clean room. The door leads into a clean room space or…a pass-through space into the quality lab that is connected to the manufacturing floor." (Page 145/L3-10).

*Paragard Breakage Complaint Handling*

Ms. Perez-Gibbins testified that Brenda Angelo's "role was to intake the – the complaints and process the complaints" and "one of the manager or quality director role's responsibilities was to confirm and sign all complaints." This included complaints about broken Paragards. (Page 58/L5-23).

When questioned about what led her to believe the complaint process was not true or honest or accurate, as it specifically pertained to complaints about Paragard - including reports of breakage, Ms. Perez-Gibbins testified that there was a pre-written script that Brenda (Angelo) had saved in a document that would coincide with a – journal of lot numbers that had previous complaints attached to them, and those investigations would be copied and pasted into that system. A conclusion of the investigation would be copied and pasted into that system, and then Brenda (Angelo) and Thomas (Mehs) would sign them. (Page 57/L14-Page 58/L4). She further testified:

"Brenda showed me a document that she stored on her computer that Thomas Mehs documented -- authored of what to put in those investigations. And when I was trained, I was told to utilize the same documents and the same wording, and I was copying and pasting and not doing investigations."

"I can speak for the ones that I completed. I did not perform any investigations as I was instructed and trained to copy and paste. I can speak for my…involvement."

(Page 312/Line 15-Page 313/Line 19)

When discussing what she did to redo the investigation for a number of complaints concerning broken Paragards that were part of a key 2022 FDA inspection, Ms. Perez-Gibbins testified that she was instructed that the complaint process needed to be revamped or restructured as a whole. (Page 83/Line 4-18). She also testified that while working with Brenda Angelo about understanding how she performs those investigations is when she "understood the depths of the lack of what is stated in the findings." (Page 83/Line 25-Page 84/Line 15).

Ms. Perez-Gibbins further testified, "[H]olistically, I thought there was a problem" with the way the North Tonawanda site was handling the complaints related to Paragard, including Paragard breakage and that (referring to an exhibit) "there was a lack of root cause, a lack of implementation, and then adequate corrective action or preventative action that could be related to the complaint process, a lack of trending." (Page 88/L15-Page 89/Line 6).

At some point, Ms. Perez-Gibbins (who ultimately took over Thomas Meh's job and was responsible for Brenda Angelo) asked that signing off on final complaint investigations be transferred back to Mehs because she "knew that they were just being copied and pasted and that there was no strenuous efforts putting into my recommendations of how we could come to a root cause or a trending or new remediation of the process." (Page 203/Line 2-Page 205/Line 3).

**<u>Conclusion</u>**

Plaintiffs respectfully request that the Court order the production of the material requested herein, and any other relief to which they are entitled, on an expedited basis. Denying the production of this highly relevant material will severely prejudice Plaintiffs' case by preventing access to key evidence needed to prove their claims. These documents clearly contain information central to liability and damages, and without them, Plaintiffs are left at a significant disadvantage. Defendants, on the other hand, have this information available to them to prepare their witnesses and Plaintiffs will not have an opportunity to challenge it at upcoming depositions or trial because they have not been given access to it by virtue of the limited discovery and search term process surrounding the post April 2022 material. Denying this production undermines the fairness of these legal proceedings and hampers Plaintiffs' ability to fully present their case to the jury. Courts have long recognized that full disclosure of relevant evidence is essential to justice. Without it, the truth risks being obscured and/or manipulated unfairly.

Respectfully submitted,

Erin Copeland on behalf of
Plaintiffs' Leadership Committee

<u>Meet and Confers</u>

As established by the emails attached to this letter brief, namely **Exhibits A-C**, Plaintiffs have attempted to meet and confer but have not had any substantive response to their request.