THE FOLLOWING IS THE P.D.F. OF AN OFFICIAL TRANSCRIPT.

OFFICIAL TRANSCRIPTS MAY ONLY BE FILED IN CM/ECF BY THE

OFFICIAL COURT REPORTER AND WILL BE RESTRICTED IN CM/ECF FOR A

PERIOD OF 90 DAYS.  YOU MAY CITE TO A PORTION OF THE ATTACHED

TRANSCRIPT BY THE DOCKET ENTRY NUMBER, REFERENCING PAGE AND

LINE NUMBER, ONLY AFTER THE COURT REPORTER HAS FILED THE

OFFICIAL TRANSCRIPT.  HOWEVER, YOU ARE PROHIBITED FROM

ATTACHING A FULL OR PARTIAL TRANSCRIPT TO ANY DOCUMENT FILED

WITH THE COURT.

```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION



IN RE: PARAGARD IUD          )
PRODUCTS LIABILITY           )
LITIGATION                   )
                             )           DOCKET NUMBER
                             )           1:20-MD-2974-LMM
                             )
                             )           ATLANTA, GEORGIA
                             )            MAY 21, 2025
                             )
                             )
_____)



           TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
          BEFORE THE HONORABLE LEIGH MARTIN MAY,
                  UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:           ERIN COPELAND
                             FIBICH, LEEBRON, COPELAND & BRIGGS
                             HOUSTON, TEXAS  77005

                             ANDREW CHILDERS
                             CHILDERS, SCHLUETER & SMITH, LLC
                             ATLANTA, GEORGIA 30319


              (APPEARANCES CONTINUED ON THE NEXT PAGE.)



          MECHANICAL STENOGRAPHY OF PROCEEDINGS
          AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY

OFFICIAL COURT REPORTER:     MONTRELL VANN, RPR, RMR, RDR, CRR
                             2160 UNITED STATES COURTHOUSE
                             75 TED TURNER DRIVE, SOUTHWEST
                             ATLANTA, GEORGIA  30303
                             (404)215-1549
```

<u>APPEARANCES CONTINUED</u>

FOR THE PLAINTIFFS:        BUFFY MARTIES
                           LAMINACK, PIRTLE & MARTINES
                           HOUSTON, TEXAS  77006

                           FIDELMA FITZPATRICK & KRISTEN HERMIZ
                           MOTLEY, RICE, LLC
                           PROVIDENCE, RHODE ISLAND  02903
                           MT. PLEASANT, SOUTH CAROLINA  29464

FOR THE DEFENDANT:         PAMELA FERRELL
                           BUTLER, SNOW, LLP
                           ATLANTA, GEORGIA  30309

                           CHRISTOPHER MORRIS & KASEY ADAMS
                           BUTLER, SNOW, LLP
                           RIDGELAND, MISSISSIPPI  39157

                           CAROLINE WALKER
                           BUTLER, SNOW, LLP
                           BIRMINGHAM, ALABAMA  35203

                           KIMBERLY BUENO
                           KING & SPALDING
                           AUSTIN, TEXAS  78701

```
1         (IN ATLANTA, FULTON COUNTY, GEORGIA, MAY 21, 2025, IN

2    JUDGES' CONFERENCE ROOM.)

3         THE COURT:  BRITTANY TOLD YOU I HAVE A 1:30, SO I

4    PROBABLY HAVE TO LEAVE OUT OF HERE AT 1:15, BUT I CAN COME BACK

5    IF I NEED TO.  SO WE'LL GO AHEAD AND GET STARTED.

6         MR. CHILDERS:  HEY, JUDGE.  BEFORE WE GO ON THE

7    RECORD --

8         THE COURT:  YES.

9         MR. CHILDERS:  I'M SORRY.

10         (OFF-THE-RECORD DISCUSSION.)

11         THE COURT:  SO WE'LL GO AHEAD AND START.  THIS IS OUR

12   I DON'T KNOW WHAT NUMBER DISCOVERY CONFERENCE, BUT WE'RE

13   GETTING VERY HIGH UP THERE I THINK.  SO IT APPEARS THAT THE

14   PARTIES HAVE BEEN WORKING PRETTY HARD IN HERE THIS MORNING.

15   AND THERE'S A LIST OF ISSUES TO TAKE UP, SO WE'LL JUST JUMP

16   RIGHT ON INTO IT.  THE FIRST ONE RELATES TO THE PAOLUCCI

17   DEPOSITION TRANSCRIPT, SO LET ME HEAR FROM YOU ON THAT.

18         MS. COPELAND:  GOOD MORNING -- AFTERNOON, YOUR HONOR.

19   I HAVE NO IDEA WHAT TIME IT IS.  ERIN COPELAND FOR THE

20   PLAINTIFF.  SO THE PAOLUCCI TRANSCRIPT, YOU WILL RECALL THIS IS

21   THE WHISTLEBLOWER, AND YOU HAD ISSUED AN ORDER THAT SAID, HEY,

22   YOU KNOW, THIS IS NOT TO SUGGEST SHE CAN'T BE A TRIAL WITNESS

23   OR PERHAPS MAYBE THE PLAINTIFFS CAN GET A COPY OF THE

24   DEPOSITION TRANSCRIPT IN SOME WAY.  WE HAVE ASKED COOPER'S

25   COUNSEL IF THEY WOULD BE WILLING TO GIVE US A COPY OF THAT
```

1    TRANSCRIPT.  AND THIS MORNING WE WERE PROVIDED WITH A

2    PROTECTIVE ORDER THAT'S IN PLACE IN THAT CASE.  WE HAVEN'T HAD

3    A SIGNIFICANT AMOUNT OF TIME TO STUDY IT, BUT WE'VE STUDIED IT

4    ENOUGH TO KNOW THAT BOTH PARTIES CAN AGREE TO WAIVE ANY

5    CONFIDENTIALITY TO SHARE THAT WITH US.  AND WE HAVE ALSO

6    FOLLOWED UP, AND THE WHISTLEBLOWER'S LAWYERS HAVE AGREED TO

7    WAIVE.  SO AS IT STANDS RIGHT NOW, WE'RE JUST WAITING FOR

8    COOPER TO WAIVE AND ALLOW US TO HAVE A COPY OF THAT TRANSCRIPT.

9            THE COURT:  OKAY.  WOULD IT BE REASONABLE FOR COOPER

10   TO EITHER WAIVE THE PROTECTIVE ORDER OR PROVIDE ME A LEGAL

11   STATEMENT OF WHY LEGALLY THEY'RE NOT REQUIRED TO OR THAT I

12   DON'T HAVE JURISDICTION OVER IT OR THAT YOU DON'T HAVE ACCESS

13   TO IT IN SOME WAY BY MAYBE WEDNESDAY NEXT WEEK JUST TO FIGURE

14   OUT IF YOU'RE GOING TO WAIVE IT?  IF NOT, GIVE ME THE LEGAL

15   BASIS FOR WHY YOU DON'T WANT TO PROVIDE IT.

16      WOULD THAT BE A FAIR WAY TO HANDLE IT, MS. WALKER?

17            MS. WALKER:  YOUR HONOR, I'D LIKE TO ASK FOR SOME

18   ADDITIONAL TIME BECAUSE WE HAVE THE HOLIDAY IN THE MIDDLE.

19            THE COURT:  OKAY.

20            MS. WALKER:  AND BECAUSE NONE OF M.D.L. COUNSEL ARE

21   PRESENT IN THAT NEW JERSEY ACTION.  I'D ALSO LIKE TO BRIEFLY

22   RESPOND TO MS. COPELAND'S INFORMATION BECAUSE THERE WAS SOME

23   NEW BITS OF INFORMATION SHARED THERE THAT WEREN'T DISCUSSED IN

24   OUR CONFERRAL THIS MORNING.

25            THE COURT:  OKAY.

1          MS. WALKER:  WE WERE NOT AWARE THAT THE M.D.L.

2    PLAINTIFFS HERE HAD REACHED OUT TO MS. PAOLUCCI'S COUNSEL IN

3    THE NEW JERSEY ACTION AND THAT THEY HAD AGREED TO WAIVE

4    CONFIDENTIALITY DESIGNATIONS.  SO THAT'S NEW INFORMATION FOR US

5    TO CONSIDER.  OF COURSE COOPER SURGICAL IN THAT ACTION HAS ITS

6    OWN CONFIDENTIALITY DESIGNATIONS, SO WE'LL HAVE TO GO THROUGH

7    THAT PROCESS AND SEE WHAT IT IS.  IT WILL INVOLVE COUNSEL FOR

8    THAT ACTION.  M.D.L. COUNSEL HERE IS NOT PRESENT IN THAT

9    ACTION, NOR UNDER THE TERMS OF THE PROTECTIVE ORDER THAT WE

10   SHARED WITH PLAINTIFFS THIS MORNING, NOR DO WE HAVE THE ABILITY

11   OURSELVES TO GET THAT TRANSCRIPT BECAUSE WE ARE NOT FRIENDS

12   THAT HAVE APPEARED IN THAT ACTION.  IT IS AN EMPLOYMENT ACTION.

13   IT'S A DIFFERENT SUBJECT MATTER THAN WHAT WE HAVE HERE, SO

14   THERE ARE DIFFERENT ISSUES IN PLAY THERE.  BUT WE'LL CERTAINLY

15   TAKE A LOOK AT IT AND SEE WHAT WE CAN DO.  IF WE COULD HAVE A

16   LITTLE BIT MORE TIME TO DEAL WITH THAT SINCE WE HAVE MULTIPLE

17   SETS OF LAWYERS AND A DIFFERENT COURT'S ORDER THAT WE'D HAVE TO

18   INTERACT WITH.

19          THE COURT:  THAT'S FINE.  I THINK ULTIMATELY WHAT I'D

20   LIKE IS JUST FOR YOU TO QUICKLY PURSUE WHETHER THERE IS GOING

21   TO BE A WAIVER OF THAT CONFIDENTIALITY ISSUE TO THE EXTENT THAT

22   I CERTAINLY UNDERSTAND THAT YOU WOULD REQUIRE PLAINTIFFS'

23   COUNSEL IN THIS CASE POTENTIALLY TO AGREE TO THE TERMS OF THAT

24   PROTECTIVE ORDER AND NOT SHARING IT WITH OTHER PEOPLE AND

25   THINGS OF THAT NATURE.  SO THERE ARE THE LOGISTICS TO WORK OUT,

```
 1   BUT THEN THERE IS, IS THIS GOING TO HAPPEN OR NOT?  AND IF IT'S
 2   NOT, SHOULD I ORDER IT IN SOME WAY TO BE PRODUCED.  AND IF I
 3   WERE TO THINK ABOUT THAT, I'D WANT TO HEAR YOUR LEGAL REASONS
 4   FOR WHY THAT WOULD NOT BE APPROPRIATE.  I THINK I ALREADY KNOW
 5   WHY THE PLAINTIFF WANTS IT AND KIND OF THEIR ARGUMENT, SO IT'S
 6   MORE JUST GIVING YOU AN OPPORTUNITY TO BE HEARD IF YOU DIDN'T
 7   THINK I SHOULD ORDER IT OR YOU DIDN'T THINK I HAD THE POWER TO
 8   DO THAT OR KIND OF WORKING OUT THE DETAILS.  SO I THINK SINCE
 9   WE TALKED ABOUT IT A BIT BACK AND FORTH, I'M JUST READY FOR IT
10   TO MOVE A LITTLE MORE QUICKLY.
11            MS. WALKER:  I UNDERSTAND.
12            THE COURT:  SO MAYBE IF YOU COULD GET TO PLAINTIFFS
13   ON FRIDAY BY NOON IF YOU'RE WILLING TO KIND OF MOVE FORWARD IN
14   WHAT THEY NEED TO DO IN TERMS OF THE PROTECTIVE ORDER TO GET
15   THIS WORKED OUT, OR, IF NOT, TELL THEM THAT, AND THEN YOU CAN
16   HAVE UNTIL TUESDAY OF THE FOLLOWING WEEK TO GET ME A BRIEF.
17            MS. WALKER:  AND TO MAKE SURE I'M UNDERSTANDING THE
18   TIMEFRAME CORRECTLY, ARE YOU TALKING ABOUT NEXT FRIDAY BY NOON?
19            THE COURT:  YES.
20            MS. WALKER:  AND THE FOLLOWING TUESDAY?
21            THE COURT:  YES.
22            MS. WALKER:  THANK YOU, YOUR HONOR.
23            THE COURT:  YES.  AND THEN I'LL RULE QUICKLY ON
24   WHATEVER LEGAL ISSUES, IF ANY, ARE THERE.  I MEAN, WITHOUT
25   HEARING FROM THEM, I THINK IT IS AN IMPORTANT DEPOSITION, SO
```

1    IT'S MORE JUST KIND OF WORKING OUT HOW WE GO ABOUT THIS.  BUT

2    I'LL CERTAINLY HEAR FROM YOU ON IT.  AND I DON'T KNOW WHO HAS

3    WHAT AND WHO'S SUBJECT TO THE JURISDICTION OF WHAT.  AND THAT'S

4    SOME OF THE STUFF I DON'T KNOW, BUT IT SEEMS LIKE IT COULD BE

5    WORKED OUT.

6          MS. WALKER:  AND, YOUR HONOR, IF I MAY, TOO, JUST

7    REMIND THE COURT, THIS A DEPOSITION THAT PLAINTIFFS TOLD US

8    THAT THEY INTENDED TO PULL DOWN IN THE M.D.L.  AND THEY DID IN

9    FACT PULL DOWN THE M.D.L. DEPOSITION NOTICE OR THEY NEVER

10   NOTICED THIS DEPOSITION.  SO THIS IS A BIT OF AN AFTER-THE-FACT

11   TRYING TO GET THE DEPOSITION FROM A PRIOR ACTION.  THEY COULD

12   HAVE PURSUED HER DEPOSITION HERE IN THE M.D.L., AND THEY IN

13   FACT DECLINED TO DO SO --

14         THE COURT:  I KNOW, BUT THERE WAS THE REQUEST TO DO

15   THAT, WHICH I DENIED AT THE LATE HOUR.  SO I DID DO THAT BASED

16   ON PART WITH THE IDEA THAT THEY COULD GET THE TRANSCRIPT.  SO

17   IF THEY'RE NOT ABLE TO GET THE TRANSCRIPT, I MAY RECONSIDER

18   THEIR REQUEST TO TAKE THE DEPOSITION.  I DON'T KNOW IF I WOULD

19   ALLOW IT, BUT I WOULD POTENTIALLY PUT THAT BACK ON THE TABLE

20   SINCE MY ORDER WAS PREMISED IN PART WITH THE IDEA THAT THEY

21   COULD GET COPIES OF THIS DEPOSITION.

22         MS. WALKER:  ACTUALLY, YOUR HONOR, I THINK IT'S A

23   LITTLE BIT DIFFERENT.  THEY ACTUALLY PULLED DOWN -- THEY TOLD

24   US THAT THEY DID NOT INTEND TO PROCEED WITH MS. PAOLUCCI'S

25   DEPOSITION.  SO THAT ONE WAS NOT -- IF I'M RECALLING CORRECTLY,

1    WAS NOT SUBJECT OF THEIR REQUEST TO TAKE IT LATE, THAT THEY

2    ACTUALLY INFORMED US THAT THEY DID NOT INTEND TO PROCEED WITH

3    HER DEPOSITION IN THE M.D.L. AT ALL.

4          THE COURT:  OKAY.  WELL, I THINK THE BETTER WAY TO

5    SAY THIS IS THAT LET'S SEE IF YOU'LL GIVE IT TO THEM UNDER THE

6    PROTECTIVE ORDER.  IF NOT, THEN I'LL HEAR FROM YOU ON IT MORE

7    FULLY, AND THEN WE CAN TAKE IT TO THAT POINT.  I DON'T THINK

8    WE'RE DOWN THE ROAD ENOUGH TO KNOW IF IT NEEDS TO BE SOMETHING

9    WHERE I LOOK AT A FORMAL BRIEFING ON IT.  BUT I WILL.  I MEAN,

10   IF YOU HAVE LEGITIMATE OBJECTIONS TO PROVIDING IT, I'LL RULE ON

11   THEM.  IT'S JUST RIGHT NOW WE'RE NOT SURE IF YOU DO OR NOT.

12          MS. WALKER:  UNDERSTOOD.

13          MS. MARTINES:  YOUR HONOR, COULD I JUST ADD ONE --

14          THE COURT:  SURE.

15          MS. MARTINES:  -- 30 SECONDS OF COMMENT ON THAT?

16   MS. WALKER'S CORRECT THAT WE PULLED DOWN THE DEPOSITION OF

17   MS. PAOLUCCI IN -- FOR PURPOSES OF THIS M.D.L.  HOWEVER, WE

18   WANTED TO ATTEND --

19          THE COURT:  I REMEMBER.

20          MS. MARTINES:  -- MS. PAOLUCCI'S DEPOSITION BECAUSE

21   PARAGARD WAS GOING TO BE DISCUSSED AND COOPER WAS GOING TO BE

22   THERE, AND WE FELT THAT THE PLAINTIFFS HAD A RIGHT TO AT LEAST

23   ATTEND.

24          THE COURT:  I REMEMBER.

25          MS. MARTINES:  OKAY.

9

```
1          THE COURT:  I THINK WHAT I WAS JUST TELLING

2  MS. WALKER IS THAT WE CAN GET INTO ALL OF THAT IF IN FACT WE

3  NEED TO.

4          MS. MARTINES:  OKAY.

5          THE COURT:  I'M NOT TAKING ANYONE'S SIDE AS TO WHAT

6  EXACTLY HAPPENED.  IT'S JUST I'LL RULE ON THAT IF WE NEED TO,

7  AND WE CAN STEP -- IF THERE ARE LEGAL REASONS, TOO, ABOUT SOME

8  JURISDICTIONAL ISSUES AND THINGS LIKE THAT, THEN I'LL GIVE THEM

9  THE OPPORTUNITY TO LOOK AT THAT.  BUT AS I SAID TO MS. WALKER,

10  I MEAN, PART OF WHAT I DID IN THAT ORDER WAS PREMISED ON THE

11  IDEA THAT THE TRANSCRIPT WOULD BE AVAILABLE.  IF IT'S NOT,

12  THEN, I'LL TAKE A LOOK AT WHAT HAPPENS THEN, IF ANYTHING.

13  SO...

14          MS. MARTINES:  THANK YOU, YOUR HONOR.

15          MS. WALKER:  THANK YOU, JUDGE.

16          THE COURT:  ON THE NEXT ISSUE, THAT'S PROBABLY, BUT I

17  DON'T KNOW THAT FOR SURE, THE ISSUE ABOUT THE PRIVILEGE LOG AND

18  THE ORDER THAT YOU'RE WAITING FROM ME ON.  AND I JUST WAS

19  FINISHING THE DRAFT OF THAT TODAY, SO THAT SHOULD COME OUT

20  TODAY AT SOME POINT, OR AT THE LATEST TOMORROW, SO YOU'LL GET

21  AN ORDER ON THAT.  I COULD TELL YOU GENERALLY WHAT I'M DOING,

22  BUT I WANT YOU TO READ IT BECAUSE I WANT THE REASONING TO BE IN

23  THERE.  SO I DON'T WANT TO JUST HALF TELL YOU WHAT IS IN THE

24  ORDER AND GET SOMETHING ON THE RECORD THAT'S INACCURATE.  SO

25  YOU SHOULD GET THAT TODAY OR TOMORROW AT THE LATEST.  SO, WITH
```

1  THAT IN MIND, WHAT DID Y'ALL WANT TO TALK ABOUT WITH NUMBER

2  TWO?

3        MS. COPELAND:  WELL, THAT JUST KIND OF THREW US ALL

4  FOR A LOOP.

5        THE COURT:  SO YOU'RE GOING TO GET AN ORDER.  I DON'T

6  KNOW IF Y'ALL WANT TO DO SOMETHING DIFFERENT, BY YOU'RE ABOUT

7  TO GET AN ORDER, SO...

8        MS. COPELAND:  SO WE'RE GOING TO GET AN ORDER.

9  THAT'S GREAT.  THEN LET ME JUST GO AHEAD AND UPDATE YOU ON --

10       THE COURT:  BUT YOU DON'T HAVE TO GET THE ORDER IF

11  YOU WANT TO DO SOMETHING ELSE, SO...

12       MS. COPELAND:  UNFORTUNATELY I DON'T KNOW IF THAT'S

13  GOOD FOR ME OR BAD FOR ME, BUT UNFORTUNATELY I THINK WE'RE

14  GOING TO HAVE TO GET THE ORDER.  BUT LET ME JUST KIND OF SET

15  THE STAGE FOR YOU, JUDGE, AS TO WHAT'S GOING ON WITH THIS

16  PARTICULAR I.P.S. ISSUE.  AS YOUR HONOR KNOWS, WE ALSO ISSUED

17  THIRD-PARTY SUBPOENAS TO I.P.S. AND THE CONSULTANT WITH WHOM

18  I.P.S. CONTRACTED -- THAT'S NICOLE ENDERLY (PHONETIC) -- WHO

19  ACTUALLY WENT INTO COOPER'S FACILITY AND PERFORMED THE WORK.

20  WE HAD THE ISSUE ARISE MS. ENDERLY END DID PRODUCE DOCUMENTS.

21  I CAN'T REMEMBER WHAT THE DOCUMENT COUNT WAS, BUT SHE PRODUCED

22  DOCUMENTS.  COOPER OBJECTED AND THEN FLAGGED TWO POWERPOINTS.

23  THOSE HAVE BEEN BRIEFED.  THEN WE HAVE HEARD FROM I.P.S.'S

24  LAWYERS.  AND WE'VE BEEN DISCUSSING INFORMALLY WITH I.P.S.'S

25  LAWYERS MOSTLY JUST ABOUT WHAT DO THEY HAVE.  THEY DON'T KNOW

```
 1  ANY OF THE DETAILS ABOUT WHAT THEY HAVE, BUT THEY HAVE INFORMED

 2  US THAT THEY HAVE APPROXIMATELY 62,827 DOCUMENTS.  AND THEN

 3  THEY HAVE BROKEN THAT DOWN INTO, LIKE, E-MAILS.  SO THEY'VE GOT

 4  23,000 E-MAILS.  THEY'VE GOT 60,000 E-MAILS THAT HAVE

 5  ATTACHMENTS.  AND THEN, LASTLY, THEY'VE GOT SOMETHING THAT THEY

 6  DESCRIBE AS SHARE POINT DOCUMENT COUNT WHICH CONSISTS OF ABOUT

 7  2500.  AND SO WHERE WE ARE WITH I.P.S.'S KIND OF WHAT WE DO

 8  WITH THEM NEXT?  HOW DO WE GET OUR HANDS ON SOME, IF NOT ALL,

 9  OF THE MATERIAL?  WE JUST GOT THAT INFORMATION LAST NIGHT.  I

10  HAVE NOT SPOKEN WITH COUNSEL ABOUT IT, BUT ONE THING THAT I DID

11  SPEAK ABOUT WAS THE IDEA OF US REQUESTING MS. ENDERLY AND

12  I.P.S.'S DEPOSITION AT THIS STAGE TO KIND OF GET AT THIS

13  INFORMATION THAT SEEMS TO NOT BE COMING OUR WAY DESPITE THE

14  ORDERS SO FAR.

15          THE COURT:  WELL, WHAT DO YOU MEAN NOT COMING YOUR

16  WAY DESPITE THE ORDERS SO FAR?  DO YOU MEAN NOT COMING FROM

17  DEFENSE COUNSEL, OR DO YOU MEAN NOT COMING FROM I.P.S.?

18          MS. COPELAND:  YES.  WE UNDERSTOOD -- SO WE BROUGHT

19  THIS ISSUE UP AGAIN WITH THE DEFENSE IN FEBRUARY, MARCH.  WE

20  WERE NOT GIVEN A STRAIGHT ANSWER TO WHETHER OR NOT IT HAPPENED.

21  THEN WE KNEW IT -- WE FOUND OUT THAT IT ACTUALLY HAPPENED, THEN

22  IT WAS PRIVILEGED.  YOU ORDERED IT, AND THEN WE GOT FOUR

23  DOCUMENTS LAST WEEK, AND NO PRIVILEGE LOG.  SO I'M CONFUSED AS

24  TO WHAT WE -- WHAT WE WERE EVEN BRIEFING AND WHAT THIS

25  CONFIDENTIALITY PRIVILEGE ARGUMENT IS IF THERE WAS NO PRIVILEGE
```

1   LOG THAT WAS PROVIDED TO US.  SO I'M KIND OF AT A LOSS WITH

2   WHAT'S GOING ON.  AND THEN WE'VE ALSO TAKEN A 30(B)(6)

3   DEPOSITION LAST WEEK WHERE EXAMINATION ON THIS WAS SHUT DOWN

4   BASED ON PRIVILEGE.  SO WE DON'T REALLY KNOW WHERE TO GO NEXT.

5   YOUR ORDER MAY PROVIDE US WITH SOME GUIDANCE ON WHAT TO DO

6   NEXT, AND THIS IS A LITTLE BIT OF A PREVIEW UNTIL WE GET YOUR

7   ORDER.  I DON'T REALLY KNOW.  BUT WE'VE GOT A BIG MESS HERE

8   THAT WE NEED TO SORT THROUGH.

9         MS. WALKER:  YOUR HONOR, MAY I HAVE AN OPPORTUNITY TO

10  REPLY?

11        THE COURT:  NOT QUITE YET.  LET ME TELL YOU A LITTLE

12  BIT.  THIS IS A LITTLE VAGUE FOR SPECIFIC GUIDANCE.  AND SO

13  HERE'S SOME INITIAL THOUGHTS ON THIS, AND THEN I CAN HEAR FROM

14  YOU ALL.  IF THERE ARE CERTAIN ASSERTIONS OF PRIVILEGE AT

15  DEPOSITIONS, THAT'S PROBABLY -- UNTIL THE OVERARCHING ISSUE IS

16  ADDRESSED, THAT'S PROBABLY SOMETHING WHERE I'M GOING TO JUST

17  HAVE TO SEE THE TRANSCRIPT AND HEAR FROM YOU ON THAT.  I KNOW

18  THIS IS COMING UP LATER POTENTIALLY ABOUT THE DEPOSITION

19  ISSUES.  IT HAS TO BE A LITTLE BIT MORE CONCRETE FOR ME TO

20  ADDRESS IT.  AND SO IT SOUNDS LIKE THAT MIGHT BE SOMETHING

21  YOU'RE GOING TO BRIEF.  THERE'S ALSO THE ISSUE OF CALLING

22  DURING A DEPOSITION.  THAT IS A POTENTIAL.  THAT'S IN THE

23  STANDING ORDER.  YOU'RE ALWAYS ALLOWED TO DO THAT.  IF I'M

24  AVAILABLE, I'LL RULE ON WHAT I CAN.  IT'S YOU GUYS GETTING SOME

25  SORT OF STANDING ORDER IN PLACE TO DEAL WITH THESE ISSUES.

```
 1   MAYBE MY ORDER WILL HELP.  MAYBE IT WON'T.  I DON'T KNOW.  BUT

 2   THAT IS NOT SOMETHING I CAN GIVE A LOT OF GENERAL GUIDANCE ON.

 3   IT'S JUST A VERY SPECIFIC ISSUE AND IT'S A LEGAL ISSUE.  IT'S

 4   LESS OF ONE OF THOSE DISCRETIONARY-TYPE ISSUES.  THERE'S LAW

 5   AND THERE'S BURDEN AND THERE'S INFORMATION THAT ACCOMPANIES

 6   THAT.  SO THAT'S A LITTLE MORE VAGUE.

 7       NOW, I KNOW THAT THIS I.P.S. AND THIS NICOLE

 8   ENDERLY (PHONETIC) ISSUE IS BUBBLING UP, AND I SAW IT FROM SOME

 9   OF THE E-MAILS THAT YOU GUYS SENT LAST WEEK THAT ALSO I THINK

10   DIDN'T APPROACH IT MAYBE IN THE BEST WAY FOR ME TO GET A HANDLE

11   ON IT.  AND SO I KNOW IT'S IMPORTANT.  I KNOW WE NEED TO MOVE

12   ON IT, BUT IT ALSO NEEDS TO BE MORE CONCRETE FOR ME TO GIVE YOU

13   BETTER GUIDANCE.  SO I THINK THIS MIGHT BE A GOOD AREA FOR

14   Y'ALL TO WORK ON THIS AFTERNOON BECAUSE I CAN SEE A COUPLE OF

15   THINGS GOING ON AT ONCE.

16       ONE, IS THAT THE I.P.S. LAWYERS AND WHAT THEY'RE GOING TO

17   PRODUCE, THAT'S REALLY A LITTLE BIT OUTSIDE THIS ROOM.  AND

18   THERE'S A POINT WHERE MAYBE I HAVE TO HAVE A CALL WITH THEM,

19   TOO.  THERE ARE JURISDICTIONAL ISSUES WITH THAT THAT WE HAVE TO

20   LOOK AT.  SO IF THERE'S A SUBPOENA AND THEY'RE NOT RESPONDING

21   TO IT AND THEY HAVE OBJECTIONS, THEN WE HANDLE THAT THROUGH A

22   PROCESS.  THEY'RE NOT IN THE CASE, BUT I WOULD TYPICALLY

23   PROBABLY WITH THEM HAVE A ZOOM CALL, AND WE WOULD KIND OF HASH

24   IT ALL OUT AND SEE WHAT WE CAN DEAL WITH IF THAT'S WHAT IT

25   COMES TO.  BUT IT SOUNDS LIKE YOU'RE STILL TALKING TO THEM
```

14

1    ABOUT THAT.

2        NOW, IN TERMS OF A REQUEST TO TAKE ADDITIONAL DEPOSITIONS,

3    THAT'S ALSO SOMETHING THAT I WOULD WANT TO LOOK AT A LITTLE BIT

4    MORE FORMALLY IN TERMS OF DEADLINES, AGREEMENTS, WHERE WE ARE.

5    I DO THINK THAT THIS ISSUE IS BUBBLING UP IN KIND OF A NEW WAY,

6    BUT AT THE SAME TIME I'M VERY COGNIZANT OF THE FACT THAT WE'RE

7    GETTING TO THE END OF THIS.  AND IT DOESN'T LAST FOREVER.

8    THERE'S GOING TO BE A MYRIAD OF THINGS THAT POP UP THAT PEOPLE

9    WANT TO PURSUE, AND AT A CERTAIN POINT YOU JUST DON'T GET TO

10   BECAUSE WE'RE DONE.  I DON'T KNOW IF THAT FALLS IN THAT

11   CATEGORY, BUT I THINK IT HAS TO BE PRESENTED IN A MORE CONCRETE

12   WAY FOR ME TO KNOW THAT.  SO I WILL MOVE ON IT QUICKLY WHEN YOU

13   GUYS GET IT TEED UP FOR ME, BUT I THINK THAT IT'S STILL TOO

14   VAGUE.  AND SO IT MAY BE THAT THE DOCUMENTS SOLVE THE PROBLEM.

15   IT MAY BE THAT WE HAVE TO TAKE THE DEPOSITIONS.  IT MAY BE THAT

16   IT'S TOO LATE.  BUT I THINK YOU GUYS HAVE TO CONFER AND GET ME

17   SOME LETTER BRIEFS ON IT, AND THEN I'LL RULE IMMEDIATELY ON IT.

18   AND SO Y'ALL MAY WANT TO INTERNALLY WITH YOURSELF SET A

19   DEADLINE FOR KIND OF CONFERRING AND GETTING THE LETTER BRIEFS

20   BECAUSE WE'RE RUNNING OUT OF TIME.  SO THERE WAS A POINT IN

21   THESE DISCOVERY CONFERENCES WHERE WE HAD A LOT OF TIME AND

22   THINGS COULD TAKE THE BENEFIT OF LONG CONFERRING TIMES, AND

23   WE'RE PAST THAT.  BUT I THINK THIS ONE NEEDS A LITTLE BIT MORE

24   KIND OF A SOLID FORMAT FOR ME TO PROPERLY ADDRESS IT.  BUT IT'S

25   IMPORTANT, SO I'M NOT SAYING YOU CAN'T DO IT.  I THINK THAT NEW

1    INFORMATION PERHAPS HAS MADE THIS MORE IMPORTANT, BUT I'M SURE

2    MS. WALKER WOULD DISAGREE WITH THAT.  SO I THINK WE HAVE TO

3    STIPULATE THROUGH IT.  AND THAT'S GOING TO PROBABLY BE TRUE

4    WITH PROBABLY WITH WHERE WE ARE WITH NUMBER SIX, TOO.  THE

5    DEPOSITION SCHEDULING CONCERNS ARE PROBABLY ALL WRAPPED UP IN

6    THIS.  SO I'M NOT SAYING YOU CAN AND CAN'T DO THIS.  IT'S JUST

7    A LITTLE TOO VAGUE.

8          MS. FITZPATRICK:  YOUR HONOR, FIDELMA FITZPATRICK FOR

9    THE PLAINTIFF.  APPRECIATING THAT, THERE'S A SUB ISSUE THAT

10   COMES, I THINK, OUT OF THE ORDER THAT YOUR HONOR ISSUED ON

11   FRIDAY, MAY 9TH.  AND SO IN RESPONSE TO THAT ORDER, AS

12   MS. COPELAND SAID, WE RECEIVED FOUR DOCUMENTS, TWO WHICH WERE

13   TRANSMITTAL E-MAILS AND TWO WHICH ARE VARIATIONS OF THE SAME

14   POWERPOINT, WHICH BASED ON THE DEPOSITION TESTIMONY, AND

15   DOESN'T COMPORT WITH OUR UNDERSTANDING OF WHAT DOCUMENTATION

16   THERE WOULD BE.

17     IN THE MEET-AND-CONFER WE HAD THIS MORNING, I THINK WHAT

18   WE GLEANED IS THAT THE PARTIES MAY BE DIFFERENTLY INTERPRETING

19   YOUR USE OF THE WORD "THE RESULTS" IN THAT ORDER BECAUSE WE HAD

20   LOOKED AT THAT MORE BROADLY.  THE POWERPOINTS REFLECT REMEDIAL

21   ACTION, NEXT STEPS AFTER THE AUDIT, SOME THINGS THAT WERE GOING

22   TO HAPPEN WHICH ARE -- BUT THEY DON'T REFLECT WHAT ACTUALLY

23   HAPPENED IN THE AUDIT.  THEY DON'T REFLECT THE FINDINGS IN THE

24   AUDIT, THE CONCLUSIONS IN THE AUDIT, THE OBSERVATIONS OF THE

25   CONDITIONS IN THE FACILITY, ET CETERA.  WE HAD INTERPRETED YOUR

```
1   ORDER SAYING THE RESULTS TO BE ALL OF THE STUFF THAT WAS FOUND,

2   ALL OF THE CONCLUSIONS, ALL OF THE FACTS, AND NOT SIMPLY THE

3   DECISION THAT WAS THEN MADE ON WHAT TO DO WITH THESE STILL

4   UNKNOWN TO US FACTS THAT WERE GLEANED AT THE AUDIT.  AND I HAD

5   ASKED A COUPLE OF QUESTIONS BECAUSE THERE'S A GENTLEMAN,

6   MR. SANITOR (PHONETIC), WHO WAS A 30(B)(6) WHO WAS THERE AT THE

7   TIME.  WE DON'T HAVE ANY OF HIS DOCUMENTS SURROUNDING THIS.  SO

8   IT MAY BE THAT'S AN ISSUE THAT WE HAVE TO TEE UP FOR YOU, WHICH

9   IS WHAT WE THOUGHT WAS CLEAR FROM RESULTS, BUT WHAT I'M

10  GLEANING FROM WHAT MS. WALKER SAID MAY BE A DIFFERENT

11  INTERPRETATION BY THE DEFENDANTS OF THAT TERM TO UNDERSTAND HOW

12  IT COULD BE THAT WE ONLY HAVE REALLY TWO SUBSTANTIVE DOCUMENTS

13  COMING OUT OF YOUR ORDER AND NOTHING REFLECTED ON A PRIVILEGE

14  LOG.

15          THE COURT:  WOULD Y'ALL BE AGREEABLE TO JUST AT THE

16  END OF TODAY E-MAILING ME WHAT YOUR THOUGHTS ARE ON WHAT THAT

17  ORDER MEANS TO YOU, AND THEN I CAN TELL YOU TOMORROW IN A QUIET

18  ROOM LOOKING AT BOTH OF YOUR PROPOSALS AND MY ORDER WHO IS

19  RIGHT OR WHO IS HALF RIGHT AND WHO IS HALF WRONG?

20      MS. WALKER, WOULD THAT BE AGREEABLE TO YOU?  BECAUSE IT

21  DOES SOUND LIKE MAYBE YOU -- MY ORDER WASN'T CLEAR TO EVERYONE,

22  AND I COULD PROBABLY CLEAR THAT UP VERY QUICKLY IF I KNEW WHAT

23  YOUR QUESTIONS WERE.

24          MS. WALKER:  I DON'T THINK THAT WE HAD QUESTIONS

25  ABOUT YOUR ORDER.  I THINK WE UNDERSTOOD IT AND COMPLIED WITH
```

```
 1   IT.  I THINK THE DIFFERENCE IN VIEWPOINT THAT WE MAY HAVE, AND

 2   I WANT TO ANSWER YOUR QUESTION FIRST BEFORE GETTING INTO

 3   RESPONDING TO WHAT MS. COPELAND AND MS. FITZPATRICK SAID, WE

 4   BELIEVE THAT WE COMPLIED WITH YOUR ORDER AND THAT WE UNDERSTOOD

 5   IT.  I THINK THAT THERE'S AN EXPECTATION FROM PLAINTIFFS THAT

 6   THERE'S MORE THERE, BUT WE HAVE TRIED TO EXPLAIN THAT IN PRIOR

 7   BRIEFING AS WELL THAT -- LETTER BRIEFS ON THIS SUBJECT THAT

 8   THERE WAS NOT A REPORT THAT WAS ISSUED.  AND SO THERE IS NOT --

 9   TO REPEAT WHAT MS. FITZPATRICK SAID, THERE IS NOT A DOCUMENT

10   WITH THE FINDINGS AND THE CONCLUSIONS RELATED TO THIS WORK THAT

11   I.P.S. DID IN JUNE OF 2023.

12        THE COURT:  SO WE CAN PUT THIS TO BED, WHY DON'T WE

13   HAVE MS. FITZPATRICK KIND OF WRITE UP HER UNDERSTANDING OF WHAT

14   IT WAS YOU WERE SUPPOSED TO PRODUCE.  AND IF YOU HAVE COMPLIED

15   WITH THAT, SAY SO, AND THEN SEND THAT TO ME.  IF YOU HAVE READ

16   THE ORDER DIFFERENTLY, LET ME KNOW, AND THEN WE CAN SEE IF

17   THERE'S AN ISSUE.

18      BUT AT SOME POINT, MS. FITZPATRICK, IF THEY GIVE YOU A

19   FINAL ANSWER, THEN IF YOU -- THERE'S THE ISSUE OF WHAT MAY HAVE

20   EXISTED, WHAT EXISTS NOW, AND WHAT NEVER EXISTED.  AND SO IF

21   THEY HAVE NOT GIVEN YOU A PRIVILEGE LOG, AND THEY HAVE SAID

22   THAT THEY HAVE COMPLIED, THEN THERE'S NOTHING ELSE FOR ME TO

23   ORDER BECAUSE I'VE ALREADY ORDERED THEM TO DO THAT.

24        MS. FITZPATRICK:  YES, YOUR HONOR, AND WE UNDERSTAND

25   THAT.  AND THE I.P.S. DOCUMENTS THAT ARE HOPEFULLY FORTHCOMING,
```

```
 1   WHICH ARE LARGE IN SCOPE -- I SHOULDN'T SAY LARGE IN SCOPE, BUT
 2   THERE'S MORE THAN A FEW DOCUMENTS MAY REFLECT SOME OF THAT.
 3   BUT IF OUR UNDERSTANDING IS THE SAME AND THE DOCUMENTS SIMPLY
 4   DON'T EXIST, I COMPLETELY AGREE.  IF WE'RE ON DIFFERENT
 5   UNDERSTANDINGS AS TO WHAT --
 6            THE COURT:  THEN I RULE ON IT.
 7            MS. FITZPATRICK:  THAT WOULD BE GREAT.  THANK YOU,
 8   YOUR HONOR.  I APPRECIATE THAT.
 9            THE COURT:  AND THAT WAY WE CAN SMOKE OUT TRULY IF
10   THERE IS SOME SORT OF DISAGREEMENT.
11            MS. WALKER:  THANK YOU, JUDGE.
12            MS. FITZPATRICK:  WONDERFUL.
13            MS. WALKER:  AND MAY I HAVE THE OPPORTUNITY TO JUST
14   BRIEFLY RESPOND TO SOME OF THE OTHER POINTS THAT WERE RAISED ON
15   THIS TOPIC?  I THINK IT HELPFUL, YOUR HONOR, JUST TO KIND OF
16   REORIENT US INTO -- AS TO HOW THIS ISSUE EVEN CAME ABOUT.
17   OBVIOUSLY THE DISCOVERY CUT-OFF FOR THIS M.D.L. WAS IN APRIL OF
18   2022.  AND THEN LAST FALL PLAINTIFFS MADE A REQUEST FOR SOME
19   ADDITIONAL DISCOVERY ON LIMITED TOPICS, THE '24 F.D.A.
20   INSPECTION, THE APPROVAL OF THE LOADER INSERTER FOR PARAGARD
21   AND ALSO THE 2024 LABEL CHANGE.  AND I WON'T REPEAT THE
22   LONG-SORTED HISTORY OF OUR NEGOTIATIONS OVER THAT AND
23   ULTIMATELY WHAT WAS PRODUCED, BUT THOSE WERE THE THREE TOPICS
24   THAT WERE CARVED OUT TO BE SOMETHING DIFFERENT THAN THE
25   APRIL 2022 CUT-OFF.  AND AS PART OF OUR COMPLYING WITH THE
```

1    SEARCH TERMS AND THE COURT'S GUIDANCE IN ITS ORDER, THAT'S HOW

2    SOME OF THESE DOCUMENTS WERE PRODUCED THAT SHOWED THAT I.P.S.

3    HAD DONE SOME WORK ON COOPER SURGICAL'S BEHALF.  BUT IT DOES

4    APPEAR AS IF THIS IS BECOMING AN EXCEPTION THAT'S SORT OF

5    SWALLOWING THE RULE HERE WHERE THEY'RE NOW TRYING TO GET

6    ADDITIONAL DISCOVERY, DOCUMENTS, DEPONENTS, WELL BEYOND EVEN

7    THE ADDITIONAL SUBSTANTIVE, LARGE AMOUNT OF DISCOVERY THAT WAS

8    ORDERED OUTSIDE OF THOSE THREE TOPICS.  AND JUST TO REMIND THE

9    COURT OF THE SCALE OF THAT EXPANSION, WE HAVE TEN DIFFERENT

10   DEPONENTS THAT -- COOPER WITNESSES THAT ARE BEING DISPOSED

11   SOLELY RELATED TO THE EXPANSION OF THOSE THREE TOPICS.  THREE

12   OF THOSE ARE 30(B)(6) WITNESSES.  IT'S BEEN AN INCREDIBLE

13   EXPANSION OF THE SCOPE OF DISCOVERY HERE, AND YET WE'RE NOW

14   REACHING THE FINISHED LINE ONCE AGAIN, AND THERE'S FURTHER

15   DISCUSSION OF YET AN ADDITIONAL 60,000 DOCUMENTS, POTENTIALLY

16   MULTIPLE WITNESSES.  SO WE --

17            THE COURT:  WELL, I WILL TELL YOU IT'S NOT THAT I'VE

18   ORDERED ANY OF THIS TO HAPPEN.  SO WHAT THE LIMITED RULING I'VE

19   MADE IS JUST TO MAKE SURE THAT WE'RE NOT ON DIFFERENT WAVE

20   LENGTHS IN TERMS OF MY PAST ORDER.  SO THAT IS AN EASY THING TO

21   CLEAR UP.  THE I.P.S. ISSUE IS NOT YOU GUYS.  IT'S SOMEBODY

22   ELSE I.P.S., AND THEY'VE GOT, I GUESS, A SUBPOENA AND

23   OBJECTIONS.  AND SO CERTAINLY I HAVEN'T DONE ANYTHING ON THAT,

24   SO THAT'S OUT THERE, BUT I DON'T KNOW THE ANSWER TO ANY OF THE

25   QUESTIONS ABOUT WHERE WE GO NEXT.  AND THEN AS TO THESE

```
 1   ADDITIONAL DEPOSITIONS, I HAVEN'T SAID ANYTHING ON THAT.

 2              MS. WALKER:  YEAH.

 3              THE COURT:  SO IT'S ALL SOMETHING THAT WE CAN

 4   DISCUSS, BUT NOTHING'S HAPPENED YET.  SO I'M REALLY CONCERNED

 5   ABOUT GETTING ALL OF THE REST OF THIS DONE GIVEN THE BRIEFING

 6   AND THE EXPERTS AND THE OTHER THINGS WE HAVE TO DO.  SO I

 7   UNDERSTAND.  I'M TRYING TO KIND OF PUT TO BED THE OLD STUFF AND

 8   NOT GET NEW STUFF, BUT THE OLD STUFF IS KICKING UP NEW STUFF,

 9   SO WE'VE GOT TO PUT EVERYTHING TO BED.  BUT I UNDERSTAND.  AS I

10   KEEP SAYING, THIS DOES END AT SOME POINT.  EVERYTHING DOES KICK

11   UP NEW THINGS, BUT THAT DOESN'T MEAN EVERY NEW THING GETS TO BE

12   FOLLOWED ALL THE WAY DOWN THE ROAD.

13              MS. WALKER:  THANK YOU, JUDGE.

14              THE COURT:  JUST DEPENDS ON WHAT IT IS AND HOW IT

15   COMES UP.

16              MS. WALKER:  I APPRECIATE IT.  THANK YOU, YOUR HONOR.

17              THE COURT:  OKAY.  ANYTHING ELSE ON NUMBER TWO.

18              MS. COPELAND:  NOTHING FURTHER ON NUMBER TWO.  WE'LL

19   RESERVE OUR RESPONSE TO COUNSEL'S COMMENTS --

20              THE COURT:  YEAH.

21              MS. COPELAND:  -- FOR ANY POTENTIAL BRIEFING.

22              THE COURT:  AND I WILL SAY WHEN SOMEONE KICKS

23   SOMETHING UP, AND I SAY I'M NOT READY TO TALK ABOUT IT, I WANT

24   TO HEAR FROM YOU ON IT, I WILL NOT REMEMBER WHAT THEY SAID BY

25   THE TIME I ACTUALLY ADDRESS IT.  SO I WILL BE IN THE DOCUMENTS
```

```
 1   YOU GIVE ME, SO IT'S NOT AS IMPORTANT AS YOU THINK TO ADDRESS
 2   IT POINT TO POINT.  I WILL LITERALLY LOOK AT WHAT YOU SENT ME
 3   AND DEAL WITH IT ON THAT BASIS.  SO...
 4           MS. WALKER:  THANK YOU, JUDGE.
 5           THE COURT:  I KNOW IT SEEMS DIRE.  LIKE, SHE'S GOING
 6   TO THINK THAT'S WHAT HAPPENED.  AND THAT'S NOT HOW THIS WORKS
 7   AT ALL, SO I WILL NOT GO BACK AND READ THIS BEFORE -- I WILL
 8   LOOK AT WHAT YOU GIVE ME, SO...
 9           MS. WALKER:  THANK YOU, JUDGE.
10           THE COURT:  YOU'RE WELCOME.  OKAY.  NUMBER THREE,
11   2024 F.D.A. E.I.R.
12           MS. FITZPATRICK:  YOUR HONOR, THIS IS JUST AN UPDATE
13   FOR THE COURT ON THAT ISSUE.  WE DID TAKE A 30(B)(6) DEPOSITION
14   OF COOPER.  AND THE WITNESS AT COOPER ON BEHALF OF COOPER BOUND
15   THE COMPANY TO AN ASSERTION THAT THEY DON'T BELIEVE THAT THEY
16   HAD EVER RECEIVED THAT 2024 E.I.R.  AND IN LIGHT OF THAT AND
17   YOUR PRIOR COMMENTS, IF THEY DON'T HAVE IT, THEY CAN'T GIVE IT
18   TO US, WE BELIEVE THAT THAT DEPOSITION TESTIMONY SUFFICES FOR
19   OUR NEEDS ON THAT PARTICULAR TOPIC.
20           THE COURT:  OKAY.  GREAT.  AND I WILL NEVER MAKE YOU
21   PRODUCE SOMETHING THAT YOU DO NOT HAVE.  I CANNOT MAKE AN
22   IMPOSSIBLE THING HAPPEN, SO...
23           MS. WALKER:  AND NEITHER CAN WE, YOUR HONOR.  I'M
24   GLAD WE ALL UNDERSTAND THAT.  THANK YOU.
25           THE COURT:  SO THAT WILL NOT HAPPEN.  SO, OKAY.
```

1    NUMBER FOUR, THE CLAW-BACK E-MAIL THAT SOUNDS LIKE THAT'S GOING

2    TO BE BRIEFED.

3          MS. COPELAND:  IT IS GOING TO BE BRIEFED, YOUR HONOR.

4    JUST TO GIVE YOU A LITTLE BIT OF A PREVIEW ON THIS, WE, AS PART

5    OF OUR -- I THINK IT'S APPROXIMATELY 60-PAGE DRAFT MOTION FOR

6    SANCTIONS OR COST-SHIFTING, WHATEVER WE'RE GOING TO CALL IT,

7    INCLUDED AN EXHIBIT THAT WAS PRODUCED.  AND WE GOT A CLAW-BACK

8    LETTER FROM COUNSEL SUBSEQUENT TO THAT.  THERE ARE SOME

9    COMMENTS FROM PRIOR COUNSEL CONTAINED WITHIN THIS DOCUMENT.  SO

10   WHAT WE DID IN RESPONSE TO COUNSEL'S CLAW-BACK LETTER, IS WE

11   SEQUESTERED THAT PARTICULAR DOCUMENT, AND THINK THAT THIS

12   BLURRY LINE, IF YOU WILL, BETWEEN PRIOR LITIGATION COUNSEL

13   REPRESENTING THE DEFENDANTS IN THIS ACTION, BUT ALSO ACTING ON

14   BEHALF OF COOPER WITH F.D.A. AND OTHER PEOPLE IS A QUESTION

15   THAT NEEDS TO BE ADDRESSED BY YOU.

16         THE COURT:  AND THAT WILL PROBABLY BE HANDLED BY

17   BRIEFING AND AN IN-CAMERA REVIEW.  I WOULD BE SHOCKED IF I

18   DIDN'T WANT TO DO IT DIFFERENTLY THAN THAT.

19         MS. WALKER:  THANK YOU, YOUR HONOR.

20         THE COURT:  OKAY.  YEAH, WE'RE GOING TO TALK ABOUT

21   THE SANCTIONS, COST-SHIFTING MOTION.  AND I'M NOT TELLING YOU

22   GUYS WHAT TO CALL IT.  I'M JUST SAYING THAT THERE ARE DIFFERENT

23   WAYS TO GET AT THE ISSUE.  SO ULTIMATELY IT'S YOUR MOTION.  YOU

24   CAN CALL IT WHAT YOU WANT TO CALL IT.  I JUST SEE THAT THERE

25   ARE DIFFERENT PATHS TO GET TO WHERE WE NEED TO GO.  AND

```
1   DEPENDING ON I COULD SEE THERE MIGHT BE TWO MOTIONS OR TWO

2   SUBSETS.  ONE IS SANCTIONS AND ONE IS MORE JUST A DISCOVERY

3   COST-SHIFTING.  I DON'T KNOW, BUT ULTIMATELY THAT'S NOT MY

4   DECISION.  THAT'S YOURS, WHAT YOU WANT TO CALL IT.  I'M NOT

5   GOING TO MICROMANAGE THAT.  BUT, AS I'VE SAID BEFORE, I WILL

6   GET YOU GUYS TO SEE WHAT YOU CAN NARROW ON THAT, BUT WE'LL TALK

7   ABOUT THAT IN A MINUTE.

8       OKAY.  DEPOSITION ISSUES.  IT LOOKS LIKE ALL OF THAT IS

9   GOING TO BE POTENTIALLY BRIEFED EXCEPT FOR THE NUMBER FOUR

10  PERHAPS.  SO WHAT DID Y'ALL WANT TO TELL ME ABOUT THESE ISSUES?

11          MS. FITZPATRICK:  YOUR HONOR, I'LL START WITH NUMBER

12  ONE, WHICH IS THE DOCUMENTS USED TO REFRESH RECOLLECTION.  IN

13  THE DEPOSITION OF DR. VOLIOVITCH WHICH HAPPENED LAST WEEK --

14          MS. COPELAND:  LAST FRIDAY.

15          MS. FITZPATRICK:  -- LAST FRIDAY, SHE HAS NOT BEEN

16  WITH THE COMPANY, WITH TEVA FOR ABOUT SIX YEARS.  SHE TESTIFIED

17  THAT DURING HER DEPOSITION PREPARATION SHE HAD REVIEWED

18  DOCUMENTS THAT REFRESHED HER RECOLLECTION AS TO HER TIME AT

19  TEVA AND WHAT HAPPENED AND WHAT DID NOT HAPPEN.  SHE WAS ASKED

20  A NUMBER OF QUESTIONS ON THOSE, AND THE REQUEST WAS MADE OF

21  COUNSEL FOR TEVA TO PRODUCE THOSE DOCUMENTS.  AND THAT WAS

22  DECLINED AT THE TIME.  I UNDERSTAND FROM THE CONVERSATION I HAD

23  WITH MR. MORRIS THIS MORNING THEY ARE GOING TO CONSIDER THAT

24  ISSUE.  HE IS GOING TO LET ME KNOW HOPEFULLY BY FRIDAY, IF NOT

25  BY FRIDAY, HE'LL LET ME KNOW WHEN IT IS, WHETHER THEY WILL
```

1    AGREE TO PRODUCE THOSE DOCUMENTS VOLUNTARILY.  IF THEY DO AGREE

2    TO PRODUCE THOSE DOCUMENTS, DR. VOLIOVITCH SAID THAT SHE WOULD

3    BE -- SHE'S THE DEPONENT FROM ISRAEL, SO WE HAD THAT.  SHE SAID

4    THAT SHE WOULD BE AVAILABLE BY ZOOM TO CONCLUDE A DEPOSITION,

5    IF NECESSARY, DEPENDING ON WHAT THOSE DOCUMENTS ARE.  SO WHAT

6    WE WOULD LIKE TO DO WITH THAT IS OBVIOUSLY I'M GOING TO WAIT

7    'TIL I HEAR FROM MR. MORRIS AS TO WHETHER THEY'LL IDENTIFY

8    THOSE DOCUMENTS FOR US.  IF NOT, WE WOULD LIKE TO VERY QUICKLY

9    GET SOME LETTER BRIEFS IN FRONT OF YOU, AND WOULD LOOK TO YOU

10   FOR SOME GUIDANCE ON WHEN TO DO THAT.  AS YOU RECALL,

11   DR. VOLIOVITCH, WE HAD DIFFICULTY WITH SCHEDULING HER

12   DEPOSITION.  WE, I THINK, TOLD THEM IN OCTOBER, AND SHE HAD NO

13   DATES UNTIL MAY.  SO I'M JUST A LITTLE CONCERNED.  HOPEFULLY

14   WITH THE ZOOM IT WILL BE A LOT EASIER, BUT I JUST WANT TO MAKE

15   SURE WE GET A DATE ON THE BOOKS IF WE INDEED ARE GOING TO GET

16   THOSE DOCUMENTS SOONER RATHER THAN LATER.

17            THE COURT:  I WILL SAY THAT THAT WILL BE A VERY QUICK

18   THING FOR ME TO GIVE YOU AN ANSWER ON.

19            MS. FITZPATRICK:  OKAY.

20            THE COURT:  HONESTLY LITERALLY IF YOU GIVE ME THE

21   DEPOSITION TRANSCRIPT WHERE THAT HAPPENED, AND YOU BOTH -- I

22   MEAN, THAT'S SOMETHING THAT TYPICALLY IN A COURTROOM I WOULD DO

23   IN, LIKE, 30 SECONDS.

24            MS. FITZPATRICK:  OKAY.

25            THE COURT:  SO LITERALLY IF YOU GIVE ME THE

1    TRANSCRIPT, THE PIECE OF IT, AND IF SOMEONE WOULD HAVE SAID

2    OBJECTION, YOU WOULD HAVE SOMETHING, AND THEY WOULD HAVE SAID

3    SOMETHING, AND IF YOU GIVE ME THAT, I CAN GIVE YOU AN ANSWER ON

4    IT.

5             MS. FITZPATRICK:  OKAY.

6             THE COURT:  SO MY ROLE ON IT WOULD BE VERY QUICK.  I

7    MEAN, THAT'S NOT SOMETHING THAT ANYONE NEEDS TO CITE A BUNCH OF

8    CASES TO.  JUST TELL ME WHAT'S GOING ON AND WHAT YOUR POSITION

9    IS, AND THEN I COULD JUST GIVE YOU A QUICK ORDER ON THAT.  IN

10   TERMS OF THE TIMING AND GETTING THE DEPOSITION RESCHEDULED, IF

11   THAT'S WHAT WE NEED TO DO, AGAIN, I THINK Y'ALL HAVE TO CONFER

12   A LITTLE BIT AND GET SOME DATES.  AND IF THAT DOESN'T WORK, WE

13   CAN GO FROM THERE.  I DO AGREE IT NEEDS TO BE DONE QUICKLY.  IF

14   IN FACT SHE DOES NEED TO BE DEPOSED AGAIN, IT'S BECAUSE SHE

15   WAS -- SOMETHING HAPPENED THAT LATER WAS DETERMINED THAT MAYBE

16   IT SHOULDN'T HAVE HAPPENED.  SO I WOULD EXPECT THE DEFENDANTS

17   TO JUST REALLY HELP GETTING THAT LAST PIECE DONE, AND THE

18   DEPOSITION WOULD JUST BE LIMITED TO THAT PIECE.  IT WOULDN'T BE

19   SOME FREE-RANGING THING.  SO I THINK WE COULD AGREE TO A TIME

20   LIMIT THAT WOULD BE RELATIVELY SHORT JUST TO DO THAT, AND THAT

21   MIGHT HELP WITH THE SCHEDULING AS WELL, THAT SHE DOESN'T HAVE

22   TO HAVE SOME LONG TIME PERIOD THAT -- LIKE, AN HOUR AT THE

23   MOST, SOMETHING LIKE THAT.

24             MS. FITZPATRICK:  YEAH.

25             THE COURT:  SO WE CAN FIGURE THAT OUT.

```
1              MS. FITZPATRICK:  OKAY.

2              THE COURT:  BUT I CAN GET YOU A VERY QUICK ANSWER ON

3    THAT.  THAT'S EASY.

4              MS. FITZPATRICK:  SO, YOUR HONOR, AND I'LL TALK TO

5    MR. MORRIS ON THE BREAK, WE'D LOVE TO BE ABLE TO GET THIS TO

6    YOU.  I -- I SHOULD -- WE, THE PLAINTIFFS.  I DON'T WANT TO

7    SPEAK FOR MR. MORRIS.  I'M NOT SURE WHAT HE THINKS.  -- WOULD

8    LOVE TO GET THIS TO YOU AT SOME POINT NEXT WEEK FOR A QUICK

9    DECISION, IF THAT WOULD WORK WITH YOUR SCHEDULE, AND WE CAN --

10             THE COURT:  I'M IN ALL NEXT WEEK OBVIOUSLY EXCEPT FOR

11   MONDAY, SO...

12             MS. FITZPATRICK:  OKAY.  WONDERFUL.

13             THE COURT:  I HAVE TIME.

14             MS. FITZPATRICK:  THANK YOU.

15             THE COURT:  I'D GET IT DONE, YES.

16             MS. FERRELL:  CHRIS MORRIS, YOUR HONOR, FOR TEVA.  IF

17   I MAY SPEAK --

18             THE COURT:  TOTALLY.

19             MS. FERRELL:  SO JUST TO PREVIEW OUR POSITION, WE DO

20   NOT BELIEVE THAT PROPER FOUNDATION WAS LAID TO GET AT THE

21   DISCLOSURE OF THIS INFORMATION, BUT WE ARE GOING TO SEE IF WE

22   CAN MAYBE REACH AN AGREEMENT ON THIS JUST TO MOVE PAST IT

23   SINCE, YOU KNOW, THE WITNESS WAS NOT EVEN ASKED WHICH DOCUMENTS

24   REFRESHED HER RECOLLECTION.  BUT, AGAIN WE'LL SEE IF WE CAN

25   MAYBE REACH SOME KIND OF UNDERSTANDING ON THIS DISCRETE ISSUE.
```

```
1              THE COURT:  OKAY.

2              MR. MORRIS:  THIS DISCRETE WITNESS.

3              THE COURT:  AND THEN MAYBE, TOO, AS PART OF THAT,

4   Y'ALL CAN KIND OF COME UP WITH A PROTOCOL FOR MOVING FORWARD

5   WITH SOMETHING SIMILAR IF -- BECAUSE I THINK YOU GUYS ARE

6   TAKING A BUNCH OF DEPOSITIONS COMING UP.  SO I THINK THE

7   MORE -- KIND OF LIKE YOU DID AT THE BEGINNING WHERE YOU HAD ALL

8   THESE KIND OF PROTOCOLS, I THINK THAT SOME OF THAT, AS IT KIND

9   OF GETS KICKED UP, MEMORIALIZING THOSE UNDERSTANDINGS IN A WAY

10  THAT CAN HELP YOU GO FORWARD AND MAKE SURE THAT YOU'RE ON THE

11  SAME PAGE.  IF THERE'S MORE FOUNDATION THAT YOU WOULD EXPECT,

12  IT WOULD BE HELPFUL TO LET THEM KNOW SO THAT WE CAN CLEAR THAT

13  UP NEXT TIME.  IF THAT IS IN FACT IMPORTANT TO YOU AND YOU

14  DON'T MIND ASKING ONE MORE QUESTION, WE CAN JUST TAKE THAT

15  WITHOUT YOU HAVING TO SAY THAT YOU HAD TO ASK THAT QUESTION,

16  BUT IF YOU DID, MR. MORRIS WOULD BE HAPPY, AND WE CAN JUST PUT

17  IT TO BED.  SO I KNOW WE CAN'T DO THAT GOING BACK, BUT IF YOU

18  CONVEYED TO HER THAT THAT WOULD HAVE HELPED YOU WITH THAT, THAT

19  MIGHT BE SOMETHING THAT SHE COULD DO GOING FORWARD, TOO.

20              MR. MORRIS:  YES, YOUR HONOR.

21              MS. FITZPATRICK:  AND, YOUR HONOR, THAT IS HELPFUL,

22  AND WE CAN TALK ABOUT THIS.  I BELIEVE THAT THERE WAS THE

23  FOUNDATION.

24              THE COURT:  I KNOW YOU DO.

25              MS. FITZPATRICK:  YEAH, YOU KNOW, OBVIOUSLY, I
```

```
 1   MEAN --

 2              THE COURT:  YOU DON'T HAVE TO TELL ME THAT.

 3              MS. FITZPATRICK:  WELL, I -- I WENT BACK AND LOOKED

 4   AT THEM, LIKE, I DON'T KNOW WHAT THEY'RE TALKING ABOUT.  BUT

 5   ANYHOW --

 6              THE COURT:  RIGHT.  BUT IF HE WANTS ANOTHER QUESTION,

 7   WE COULD PROBABLY ACCOMMODATE THAT.

 8              MS. FITZPATRICK:  AND THAT IS -- AND I WOULD BE HAPPY

 9   TO DO THAT, BUT I THINK YOU'RE EXACTLY RIGHT.  THERE ARE --

10   WHEN WE GET TO DEPOSITIONS, THERE ARE A NUMBER OF DEPOSITIONS

11   THAT ARE STILL OUTSTANDING.  TO THE EXTENT THAT THERE WAS

12   SOMETHING -- WELL, (A), YOU FIND THAT IT WAS ADEQUATE, THAT

13   WILL BE HELPFUL FOR US GOING FORWARD, OR WHATEVER IT IS.  WE

14   JUST -- WE DON'T WANT TO KEEP REPLICATING WHATEVER THIS ISSUE

15   MAY BE IF IT COMES UP AGAIN.  AND SO WHAT WE'RE HOPING IS IF WE

16   CAN -- EVEN IF WE AGREE, I WANT US TO GET SOME KIND OF

17   UNDERSTANDING ON WHAT THAT FOUNDATION IS.  IF WE AGREE TO GET

18   THE DOCUMENTS, BUT WE STILL HAVE THIS OUTSTANDING QUESTION

19   ABOUT FOUNDATION, WE MAY STILL HAVE TO GO TO YOU TO ENSURE

20   WE'RE NOT PERPETUATING AN ISSUE.

21              THE COURT:  YEAH.  I MEAN, WHAT I REALLY LOOKED AT

22   THIS LIST OF ISSUES ON THIS DEPOSITION ISSUE KIND OF AREA WAS

23   IT ALMOST SEEMED TO ME THAT YOU GUYS JUST NEEDED TO WORK OUT A

24   PROTOCOL FOR DEPOSITIONS THAT ENCOMPASSED THESE

25   EVIDENTIARY-TYPE ISSUES BECAUSE THERE WAS SOME DIFFERENCE OF
```

```
 1   OPINION, AND THAT I COULD RULE ON.  I MEAN, THIS IS STUFF I DO,
 2   LIKE I SAID, ON THE FLY, SO I DON'T WANT TO DO THAT ON THE FLY
 3   RIGHT THIS SECOND, BUT I CAN GIVE YOU QUICK ANSWERS ON THIS.
 4   WHEN YOU GIVE ME AN EXAMPLE OF HOW THIS SHOWED UP IN A
 5   DEPOSITION AND YOUR POSITIONS, I CAN GIVE YOU GUIDANCE.  THAT'S
 6   EASY.
 7            MS. FITZPATRICK:  OKAY.  WONDERFUL.  THANK YOU.
 8            THE COURT:  SO YOU JUST HAVE TO GIVE ME THE EXAMPLE
 9   AND YOUR POSITIONS.
10            MS. FITZPATRICK:  GREAT.  I APPRECIATE THAT.
11            THE COURT:  I DON'T MIND DOING THAT AT ALL.  AND THEN
12   WE'LL HAVE IT IN AN ORDER AND YOU GUYS CAN MOVE ON AND YOU ALL
13   HAVE AN UNDERSTANDING HOW I'LL HANDLE THAT.  AND IT'S PROBABLY
14   GOING TO BE THE SAME FOR TRIAL, TOO, SO IT WOULD BE HELPFUL
15   PROBABLY FOR ALL OF YOU.
16       OKAY.  SO GIVEN WHAT I JUST SAID ABOUT DEPOSITION ISSUES,
17   IT DOES APPEAR THAT THERE ARE A LOT OF THESE KIND OF STRAY
18   ISSUES RELATING TO THAT THAT NEED TO BE BRIEFED.  WHAT ELSE DID
19   WE NEED TO TALK ABOUT AS IT RELATES TO THOSE?
20            MS. COPELAND:  WE'RE JUST GOING TO -- JUST PICKING
21   OFF THE NEXT ONE, THIS WAS A 2008 F.D.A. INSPECTION THAT WAS
22   PRODUCED TO US THE DAY BEFORE A 30(B)(6) TWO WEEKS AGO.
23            MS. FERRELL:  CORRECTION.  2018 NOT 2008.
24            MS. COPELAND:  2018.  AND THEN WE DID NOT EXAMINE THE
25   30(B)(6) WITNESS ABOUT IT, BUT THE DEFENDANTS DID.  I OBJECTED
```

1  AND MOVED TO STRIKE AND SAID THAT I WOULD JUST BE TAKING IT UP

2  WITH YOU AS A LATE-PRODUCED INSPECTION THAT SHOULD HAVE BEEN

3  PRODUCED TO US SEVERAL YEARS AGO.  SO YOU'RE GOING TO GET A

4  BRIEF TO THAT EFFECT.

5          THE COURT:  OKAY.

6          MS. COPELAND:  SO NOW YOU KNOW.

7          THE COURT:  AND Y'ALL ARE GOING TO SAY.

8          MS. FERRELL:  OF COURSE WE WILL DISAGREE THAT IT WAS

9  LATE PRODUCED, YOUR HONOR, BUT WE WILL TAKE IT UP IN A BRIEF.

10         THE COURT:  YEAH, I FEEL CERTAIN, SO -- AND I WILL

11  READ IT.

12         MS. COPELAND:  THE THIRD ONE, THE COUNSEL INSTRUCTION

13  NOT TO ANSWER.  FIDELMA CAN PROBABLY TALK ABOUT THIS MUCH MORE,

14  BUT IT'S WRAPPED UP IN THE I.P.S.

15         THE COURT:  YEAH, I THINK THAT WE JUST HAVE A BIG

16  ISSUE ABOUT THE I.P.S. AND THE PRIVILEGE AND CONFIDENTIALITY.

17  I THINK THAT MY ORDER WILL HELP.  TO THE EXTENT IT DOESN'T AND

18  YOU NEED MORE DETAIL, I THINK THAT THAT WOULD BE SOMETHING THAT

19  YOU JUST NEED -- IF MY ORDER DOES NOT COVER SOME OF THESE OTHER

20  ISSUES THAT YOU GUYS ARE DEALING WITH, THEN I'LL PROBABLY HAVE

21  TO BE PROVIDED SOME MORE SPECIFIC EXAMPLES OF THE DIFFERENT

22  AREAS THAT THE SAME PRIVILEGE IS BEING ASSERTED, AND THEN I CAN

23  ADDRESS IT.

24         MS. FITZPATRICK:  AND THANK YOU, YOUR HONOR.  THIS

25  ACTUALLY COMES OUT OF THE 30(B)(6) ON THE 2022, 2024

```
 1    INSPECTIONS AND THE REMEDIATIONS.  THERE IS A LINE OF
 2    QUESTIONING THERE THAT WE WILL PUT IN FRONT OF YOU EITHER IN
 3    CONJUNCTION WITH THE I.P.S. OR IT MAY BE JUST KIND OF A
 4    SEPARATE BECAUSE THERE ARE -- IN ADDITION TO IMPLICATING
 5    I.P.S., THERE WERE JUST ALSO QUESTIONS ABOUT ESTABLISHING
 6    FOUNDATION FOR DOCUMENTS THAT HAD ALREADY BEEN PRODUCED THAT --
 7    SOME OF THE 30(B)(6) WAS INSTRUCTED NOT TO ANSWER.  SO I'VE
 8    RAISED THIS, AND WE'RE GOING TO TRY TO GO BACK AND LOOK AT
 9    THOSE TO SEE WHICH QUESTIONS THEY MAY WITHDRAW THOSE ASSERTIONS
10    ON.  BUT JUST TO LET YOU KNOW, THERE IS A COROLLARY NOT
11    NECESSARILY -- IT'S TANGENTIAL OR ADJACENT -- I'M GOING TO CALL
12    IT ADJACENT TO THE I.P.S. PRIVILEGE ISSUE ON SOME OF THESE
13    DOCUMENTS.
14         THE COURT:  OKAY.  AND I WILL SAY, AS I'VE SAID
15    EARLIER IN THIS CALL -- NOT CALL, THIS MEETING, SOMETIMES
16    THINGS ARE NOT CONCRETE, BUT WHEN YOU HAVE ACTUAL QUESTIONS AND
17    ANSWERS AND INSTRUCTIONS, THEY ARE CONCRETE.  SO THAT TENDS TO
18    BE A LITTLE EASIER FOR ME TO ADDRESS IN A WAY THAT IS KIND OF
19    VERY SPECIFIC TO WHAT YOU WERE DOING.  SO I DON'T HAVE ANY
20    PROBLEM DOING THAT WHEN YOU GET ME WHAT I NEED.  SOMETIMES JUST
21    A MARKED-UP TRANSCRIPT, LIKE I SAID, OR EVEN WE CAN EVEN GET ON
22    THE PHONE AND I CAN ASK QUESTIONS ABOUT WHAT HAPPENED.  THAT
23    WORKS, TOO.  IF THE BRIEFING IS NOT MAYBE THE MOST EFFICIENT
24    WAY TO DO IT, YOU CAN SEND ME A MARKED-UP TRANSCRIPT, AND WE
25    CAN GET ON THE PHONE.  THAT'S ANOTHER WAY TO DO IT.
```

```
 1              MS. FITZPATRICK:  OKAY.  THANK YOU.

 2              THE COURT:  WHATEVER Y'ALL WANT TO DO, BUT I'LL GET

 3    TO IT QUICKLY.  OKAY.  THE PROCEDURE FOR CONFIDENTIALITY

 4    DESIGNATIONS.  I CAN'T BELIEVE WE DON'T HAVE ONE OF THOSE.

 5              MS. MARTINES:  MAY I COMMENT ON THAT, YOUR HONOR?

 6              THE COURT:  YES.  I FEEL LIKE CERTAINLY THERE IS ONE.

 7              MS. MARTINES:  WE DO, YOUR HONOR, AND THIS IS UNDER

 8    THE CATEGORY OF WORKING AHEAD, PLANNING FOR THE FUTURE.  THERE

 9    IS A CONFIDENTIALITY PROCESS IN AN ORDER, AND IT HAS A FEW

10    STEPS IN THERE.  AND I THINK THE PLAINTIFFS -- AND WE SPOKE

11    ABOUT THIS IN THE MEET-AND-CONFER, PERHAPS A LITTLE

12    CLARIFICATION SO THAT WE CAN KIND OF START WORKING ON THIS

13    PROCESS.  IT'S GOING TO TAKE SOME TIME.  IT'S GOING TO BE A

14    LITTLE TEDIOUS.  THE WAY THE ORDER READS RIGHT NOW IS THE

15    PARTIES -- WHOEVER'S DEPOSITION IT IS, THEY SUBMIT THEIR

16    CONFIDENTIALITY DESIGNATIONS, WHICH HAS BEEN HAPPENING, THEN

17    THERE'S A MEET-AND-CONFER AMONGST THE PARTIES, THEN IT LOOKS

18    LIKE WE NEED TO REACH OUT TO YOU AND ASK FOR LEAVE TO LIFT THE

19    CONFIDENTIALITY -- OR TO HAVE THE CHALLENGES ADDRESSED.  I

20    THINK BY NOW, AND SOMEBODY CORRECT ME, THERE'S PROBABLY UPWARDS

21    OF 50, 60 DEPOSITIONS.  MOST OF THEM HAVE SOMETHING.  AND I'M

22    WONDERING IF YOU WANT 50 OR 60 INDIVIDUAL REACH-OUTS AND

23    MOTIONS FOR LEAVE, OR IS THERE A WAY WE COULD ADDRESS THAT A

24    LITTLE MORE EFFICIENTLY FOR THE COURT SO THAT YOU AREN'T

25    BOMBARDED WITH LOTS OF MOTIONS FOR LEAVE.
```

```
 1              THE COURT:  WHY DON'T -- I THINK THE PROCESS IS STILL
 2    FINE.  I THINK WHAT MIGHT BE BETTER IS THE NEXT TIME WE HAVE A
 3    DISCOVERY CONFERENCE, LITERALLY Y'ALL JUST BRING ALL OF THOSE
 4    AND HIGHLIGHT AND TAB THE PARTS OF THEM THAT ARE IN DISPUTE OR
 5    MAIL THEM TO ME.  I THINK IT DOESN'T HAVE TO BE, BRING THEM TO
 6    ME.  SO I GET THE TRANSCRIPT, I GET TABS ON THE PARTS WHERE
 7    THERE ARE CONFIDENTIALITY DISPUTES, THE LANGUAGE HIGHLIGHTED.
 8    AND THEN WHAT WE CAN DO IS TAKE KIND OF A SUBSET OF THIS
 9    CROWD -- Y'ALL DON'T HAVE TO BE IN THIS ROOM FOR THIS.  WE CAN
10    GO INTO A ROOM, AND I CAN ASK WHY CONFIDENTIALITY IS ASSERTED,
11    WHY YOU BELIEVE IT'S NOT, AND THEN I CAN TAKE A PEN AND RULE ON
12    ALL OF THAT.  AND THEN MR. VANN CAN PUT A TRANSCRIPT OF THAT
13    AND WE CAN TURN IT INTO AN ORDER.
14              MS. MARTINES:  OKAY.
15              THE COURT:  THAT'S PROBABLY THE BEST WAY TO DO THAT.
16              MS. MARTINES:  OKAY.
17              THE COURT:  AND THEN WE CAN DO THAT IN CHUNKS.  SO IF
18    IT'S NOT A TIME WHEN YOU ARE COMING, WE CAN DO IT ON A ZOOM
19    CALL.  A ZOOM CALL WOULD PROBABLY BE FINE.  BUT HAVING THE
20    PRINTED OUT TRANSCRIPTS WITH THE TABS AND THE HIGHLIGHTS, THAT
21    WOULD HELP ME.
22              MS. MARTINES:  OKAY.  SO JUST FOR CLARIFICATION, YOU
23    WOULD LIKE A PRINTED OUT TRANSCRIPT WITH THE CHALLENGES
24    HIGHLIGHTED.
25              THE COURT:  AND TABBED.
```

```
1              MS. MARTINES:  AND TABBED, AND YOU WOULD LIKE THOSE
2  SENT TO YOU IN HARD COPY FORM.
3              THE COURT:  YES.
4              MS. MARTINES:  AND WE CAN EITHER ADDRESS IT DURING
5  ONE OF THESE CONFERENCES OR WE CAN SET UP A SEPARATE ZOOM
6  CONFERENCE TO ADDRESS THOSE.
7              THE COURT:  YES.  AND I'LL JUST STEP THROUGH THEM.
8              MS. MARTINES:  OKAY.  THANK YOU.
9              THE COURT:  YES.  AND UNLESS Y'ALL THINK SOMETHING IS
10 BETTER.  BUT I THINK THAT'S THE BEST WAY, AND WE'LL GET IN A
11 GROOVE AND ACTUALLY HAVING A BIG STACK TO DO, IS PROBABLY FINE
12 BECAUSE WE'LL GET IN A GROOVE WITH DEALING WITH THEM.
13             MS. MARTINES:  OKAY.
14             THE COURT:  AND THAT'LL BE FINE.
15             MS. MARTINES:  THANK YOU, YOUR HONOR.
16             THE COURT:  THAT DOESN'T SOUND FUN, BUT IT SOUNDS
17 LIKE --
18             MS. FERRELL:  EFFICIENT.
19             THE COURT:  -- YES, EXACTLY.  SO WE CAN DO THAT.
20             MS. MARTINES:  MAYBE IF WE BRING SNACKS, YOUR HONOR.
21             THE COURT:  EXACTLY.  BUT WE CAN DO THAT.  THAT'S
22 FINE.  OKAY.  THE MEHS DEPOSITION DOCUMENTS.
23             MS. ADAMS:  THIS IS OURS, YOUR HONOR.  KASEY ADAMS ON
24 BEHALF OF COOPER DEFENDANTS.  THIS IS ANOTHER ONE WE FLAGGED TO
25 BE BRIEFED, BUT JUST TO PREVIEW FOR YOUR HONOR, YOU -- THERE
```

```
 1    WAS SOME DISPUTES, SOME LETTER BRIEFING ON THE SCOPE OF THE
 2    THIRD TOM MEHS DEPOSITION.  YOUR HONOR ENTERED AN ORDER
 3    INDICATING THAT DOCUMENTS PRODUCED PRIOR TO DECEMBER OF 2024
 4    WOULD BE OUTSIDE THE SCOPE.  THAT DEPOSITION DID MOVE FORWARD,
 5    AND WE BELIEVE THERE'S A SIGNIFICANT VIOLATION OF THAT ORDER.
 6    OVER HALF -- OR NOT -- OVER HALF (VERBATIM) OF THE DOCUMENTS
 7    THAT WERE EXHIBITS IN THE DEPOSITION WE BELIEVE ARE VIOLATIVE
 8    OF THAT.  SO WE WILL BE BRIEFING THAT AND SEEKING RELIEF ON
 9    THAT.
10           THE COURT:  OKAY.  WE'LL SEE WHAT --
11           MS. FITZPATRICK:  I'M SORRY.
12           THE COURT:  I KNOW YOU'RE GOING TO SAY THAT IT IS
13    NOT.
14           MS. FITZPATRICK:  WELL, YOUR HONOR, I MEAN, NO,
15    BECAUSE IT'S MUCH MORE COMPLICATED.  EVERYONE AGREES THAT THE
16    DOCUMENTS I USED AT THE DEPOSITION WERE PRODUCED AFTER
17    DECEMBER 1ST OF 2024.  EVERYONE AGREES ON THAT.  THE ARGUMENT
18    THAT WAS RAISED FOR THE FIRST TIME AT THE DEPOSITION IS THAT
19    YOUR ORDER, WHICH SAYS THAT ALL PARTIES WILL BE LIMITED IN
20    SCOPE OF DOCUMENTS PRODUCED ON OR AFTER DECEMBER 1ST, 2024,
21    ALSO INCLUDED IN THERE AN OBLIGATION THAT WE GO BACK AND TRY TO
22    DETERMINE WHETHER THE POST DECEMBER 1ST, 2024 DOCUMENTS WERE
23    SOMEHOW PREVIOUSLY PRODUCED IN THE PREVIOUS 1.6 MILLION PAGES,
24    AND THAT IF IT HAD PREVIOUSLY BEEN PRODUCED AND IT WAS SIMPLY A
25    DUPLICATE, THAT I WAS THEN NOT ALLOWED TO USE THAT.  THAT'S NOT
```

```
 1    THE -- THAT'S NOT WHAT YOU SAID.  BUT IT RAISES A BIGGER ISSUE
 2    THAT WE ARE CONCERNED ABOUT.  AND IF YOUR HONOR RECALLS, WE HAD
 3    A LOT OF, LIKE, POST 2022 DOCUMENTS.  WE DEALT WITH THEM WITH
 4    YOU, AND THE DECISION WAS MADE THAT WE WOULD GET 92 --
 5    APPROXIMATELY 92,000 DOCUMENTS THAT HIT ON SEARCH TERMS, PLUS
 6    SPREADSHEETS, PLUS POWERPOINTS.  AND WE ALL ESTIMATED THAT WAS
 7    GOING TO BE BETWEEN A HUNDRED THOUSAND TO 110,000 DOCUMENTS
 8    THAT WOULD BE COMING OUR WAY BY APRIL 10TH, I THINK IT IS,
 9    EITHER 8TH OR 10TH.  I CAN'T REMEMBER THE DATE.  WE GOT 75,000.
10    WE THOUGHT THAT THAT MAY HAVE BEEN, AND I SHOULD NOT HAVE
11    ASSUMED, THAT THAT WAS A DE-DUPLICATION ISSUE.  BUT NOW WE HAVE
12    A QUESTION OF WHERE ARE THE OTHER 25- TO 35,000 DOCUMENTS THAT
13    WE AGREED TO THAT THE COURT GAVE THE CHOICE TO.  THEY'RE NOT
14    DUPLICATES -- IF THEY WEREN'T REMOVED BECAUSE THEY WERE
15    DUPLICATES OF PRIOR DISCOVERY, WHICH CLEARLY IS THE ISSUE HERE,
16    WHY DON'T WE HAVE THEM?  AND SO I DID RAISE THAT QUESTION.
17    WE'RE GOING TO TRY TO GET OUR I.T. PEOPLE TOGETHER TO
18    UNDERSTAND THAT ISSUE.  BUT WHEN THIS CAME UP, IT KIND OF SET
19    OFF A FEW ALARM BELLS FOR US ON SOME OTHER ISSUES.  AND I DON'T
20    WANT EVERYTHING TO MUSHROOM, BUT IT'S KIND OF AN IMPORTANT
21    ISSUE NOT ONLY FOR MR. MEHS, BUT ALSO FOR THE COMPLETENESS OF
22    PRODUCTIONS THAT WERE DONE PURSUANT TO THE COURT ORDER.  AND SO
23    WE WILL BE ADDRESSING THAT ISSUE, TOO.
24              THE COURT:  OKAY.  THAT SOUNDS LIKE A SEPARATE ISSUE,
25    BUT BOTH OF THEM SOUND LIKE Y'ALL NEED TO TALK ABOUT THEM, AND
```

```
 1   THEN I'LL RULE ON THEM.  OKAY.  DEPOSITION SCHEDULING CONCERNS.
 2          MS. FITZPATRICK:  SO, YOUR HONOR, I'LL TAKE THIS
 3   INITIALLY FOR THE PLAINTIFFS TO SEE IF THIS ACTUALLY GETS US
 4   SOMEWHERE.  WE SAT DOWN -- WHEN I SAT DOWN WITH MS. BUENO TO
 5   LOOK AT THE SCHEDULING ORDER, WE HAVE A SIGNIFICANT NUMBER OF
 6   DEPOSITIONS, BOTH FACT WITNESS DEPOSITIONS THAT WE AGREE COULD
 7   BE CONCLUDED BY APRIL 18TH, AND 30(B)(6) DEPOSITIONS THAT HAVE
 8   NOT BEEN SCHEDULED, OR WE HAVE DATES FOR, BUT THEY GO WELL INTO
 9   JUNE AND WELL PAST PLAINTIFFS' EXPERT REPORT DEADLINE.  AND SO
10   WE HAVE BEEN TRYING TO WORK ON HOW DO WE GET THOSE DEPOSITIONS
11   DONE, WHICH IS THE IMPORTANT THING, IN A WAY THAT WE CAN
12   ACTUALLY INCORPORATE THEM INTO OUR EXPERT REPORTS, WHICH IS THE
13   NECESSITY OF DOING THESE DEPOSITIONS.  AND MS. MARTINES HAS THE
14   ACTUAL NUMBER, BUT IT'S MORE THAN ONE OR TWO THAT WE HAVE.  I
15   THINK WE'VE GOT PROPOSED DATES ON MOST, BUT NOT ALL OF THEM,
16   FROM THE DEFENDANTS RIGHT NOW.  SO WE DECIDED THAT WHAT WE WERE
17   GOING TO DO IS APPROACH THIS BY FIRST LOOKING AT THE SCHEDULING
18   ORDER, AND PARTICULARLY THE EXPERT DEADLINE DATE, THAT IF WE
19   COULD DO AN ADJUSTMENT TO THAT, THEN WE SHOULD BE ABLE TO GET
20   ALL OF THESE DEPOSITIONS DONE IN A WAY THAT WE CAN USE IT.  WE
21   HAVE NOT COMMITTED TO IT, BUT WE HAVE GONE THROUGH AND --
22          THE COURT:  AND JUST TO KNOW, IS THIS A CONSENT ISSUE
23   OR IS THIS SOMETHING THAT YOU GUYS WANT TO DO?
24          MS. FITZPATRICK:  IT'S AN ISSUE I GOT TO RAISE WITH
25   YOU BECAUSE WE'RE TRYING TO --
```

```
 1          THE COURT:  OKAY.  THAT'S FINE.  I JUST WANTED TO PUT
 2   IT IN MY BRAIN.
 3          MS. FITZPATRICK:  AS WE'RE GOING THROUGH THE DATES
 4   AND AS WE'RE LOOKING AT IT, WE CAME UP WITH A WAY TO MOVE THE
 5   EXPERT -- THE PLAINTIFFS' EXPERTS OUT BY FOUR WEEKS FROM JUNE 6
 6   TO JULY 3RD, BUT IT DOES THIS.  IT PUTS THE REPLIES TO THE
 7   DAUBERT MOTIONS AND DISCOVERY MOTIONS, DISPOSITIVE MOTIONS,
 8   INSTEAD OF THOSE BEING OCTOBER 24TH, IT MOVES THOSE TO
 9   NOVEMBER 7TH, WHICH IS TWO WEEKS.  SO WE'RE GETTING FOUR WEEKS
10   ON THE END, BUT WE'VE MADE UP TWO WEEKS IN BETWEEN.
11          THE COURT:  AND YOU'VE TAKEN TWO OF MY WEEKS.
12          MS. FITZPATRICK:  -- THAT'S WHAT OUR --
13          THE COURT:  I KNOW.  I HEARD THAT.  THAT'S WHAT I
14   HEARD.
15          MS. FITZPATRICK:  THAT'S EXACTLY WHY WE'RE RAISING IT
16   WITH YOU.  AND WE DON'T WANT TO OBVIOUSLY TAKE TIME AWAY FROM
17   WHAT THE COURT IS DOING.  ONE OF THE THOUGHTS THAT WE HAD,
18   DEPENDING ON YOUR HONOR'S SCHEDULE, IS IF WE COULD MAYBE MAKE
19   UP ONE OF THOSE WEEKS BY GOING FROM A JANUARY 12TH TRIAL TO
20   JANUARY 28TH TRIAL, KICK THE TRIAL ONE WEEK TO MAKE UP ONE OF
21   THOSE WEEKS.  WE HAD ORIGINALLY ANTICIPATED, I THINK, TOLD YOUR
22   HONOR THAT IT WOULD BE A THREE-WEEK TRIAL.  I THINK IN TALKING
23   TO EACH OTHER WE DON'T THINK IT WILL GO THE FULL THREE WEEKS.
24   WE -- I MEAN, YOU NEVER KNOW WITH THE FIRST TRIAL, BUT WE'RE
25   THINKING MORE REALISTICALLY SOMEWHERE IN THE NEIGHBORHOOD OF
```

```
1   TWO WEEKS IS WHAT WE JOINTLY WOULD ANTICIPATE.  SO IF WE MOVED

2   IT TO JANUARY 20TH, WE'RE STILL PROBABLY LOOKING AT THE TRIAL

3   ENDING AT OR AROUND THE SAME TIME THAT THE COURT HAD ORIGINALLY

4   ANTICIPATED, BUT IT STILL TAKES A WEEK AWAY FROM YOU.  AND SO

5   THAT'S MY CONCERN.

6           THE COURT:  I'M PROBABLY OKAY WITH THIS.  WHY DON'T

7   YOU SEND ME A RED-LINE PRETTY SOON, AND I'LL LOOK AT THE

8   RED-LINE.  I THINK THAT THIS WOULD WORK.

9           MS. FITZPATRICK:  OKAY.

10          THE COURT:  AND I WILL ALSO TELL, YOU, TOO, LIKE, FOR

11  WHATEVER IT'S WORTH, TRIALS TEND TO GO FASTER RATHER THAN

12  SLOWER BECAUSE, AS YOU MIGHT IMAGINE, WE'LL DO A LOT OF

13  PRETRIAL WORK.  IT'S NOT LIKE, SUDDENLY, OH, IT WILL BE FOR THE

14  FIRST TIME, WHAT IS THIS.  AND SO IT WILL GO PRETTY FAST.

15  YEAH, JUST SENT SEND ME A RED-LINE.  IT'S PROBABLY GOING TO BE

16  OKAY.  AND THE OTHER WAY OF DOING IT MIGHT BE THAT THERE COULD

17  BE EXPERT REPORTS AND THEN SUPPLEMENTS IF SOMETHING NEW NEEDED

18  TO BE ADDED, BUT THAT'S NOT REALLY THE CLEAN WAY TO DO IT.  SO

19  IF IT JUST ENDS UP BEING A WEEK, AND THIS JANUARY 20TH IS IN

20  THE THREE WEEKS WE HAD, IT'S PROBABLY GOING TO BE FINE.

21          MS. FITZPATRICK:  OKAY.

22          THE COURT:  A WEEK IS NOT GOING TO CHANGE ANYTHING

23  DRAMATICALLY.

24          MS. FITZPATRICK:  ALL RIGHT.  AND IF IT DOES, YOUR

25  HONOR, I THINK WE -- I DON'T KNOW HOW WE'LL DO IT, BUT WE CAN
```

1    GO BACK AND REJIGGER.  I THINK WE ALL WERE IN AGREEMENT THAT I

2    THINK WE PUT IN JULY 3RD FOR PLAINTIFFS' EXPERT REPORTS, AND

3    THEN FOUR WEEKS LATER, WHICH WAS WHAT WAS ORIGINALLY

4    CONTEMPLATED BY JULY 31ST --

5             THE COURT:  WELL, AND WHAT YOU CAN DO POTENTIALLY IS

6    THAT NOTHING SAYS THAT YOU CAN'T FILE SOMETHING EARLY, TOO.  SO

7    IF YOU HAVE ONE THAT ISN'T AS DEPENDENT ON THE NEW INFORMATION,

8    OR YOU JUST FINISH IT, YOU COULD JUST FILE IT, AND THEN WE CAN

9    WORK ON IT.  SO I KNOW Y'ALL ALWAYS WANT TO FILE THINGS ON,

10   LIKE, THE DATE, BUT IT CAN BE, LIKE, TWO DAYS BEFORE THAT, TOO,

11   AND THEN IT WOULD BE EARLIER.  SO THAT'S ALSO OUT THERE.

12            MS. BUENO:  COULD I ADD A COUPLE COMMENTS?

13            THE COURT:  SURE.

14            MS. BUENO:  I DON'T WANT TO INTERRUPT YOU.  YOU

15   FINISH.

16            MS. FITZPATRICK:  I WAS GOING TO MOVE ON TO THE

17   SECOND ISSUE WHICH IS THE ORDERING OF TRIAL, SO I DON'T WANT TO

18   MOVE THERE UNTIL YOU GET THROUGH THIS.

19            MS. BUENO:  THANK YOU.  LET ME JUST ADDRESS A COUPLE

20   OF QUICK THINGS.  ONE OF THE THINGS THAT WE ARE CONCERNED ABOUT

21   AND WANT TO MAKE SURE THAT YOU'RE AWARE OF, IS THAT THE WAY THE

22   SCHEDULE IS NOW, IF WE DO PUSH IT OUT, AS WE DISCUSSED, TO

23   NOVEMBER 7TH BEING THE END OF THE BRIEFING FOR DAUBERTS AND

24   DISPOSITIVE MOTIONS, WE STILL HAVEN'T SCHEDULED YET THE

25   PRETRIAL ISSUES, THE MOTIONS IN LIMINE, THE DEPO DESIGNATIONS,

```
 1   THE EXHIBIT LIST OBJECTIONS.  AND SOME OF THIS I THINK
 2   MS. FITZPATRICK WILL MENTION WHEN WE TALK ABOUT WHICH TRIAL
 3   WE'RE GOING TO MOVE FORWARD WITH.  BUT THAT IS THEN GOING TO BE
 4   ON YOUR PLATE, AS WELL AS WHAT WE BELIEVE ARE GOING TO BE VERY
 5   MEATY ISSUES WITH BOTH DISPOSITIVE MOTIONS AND DAUBERTS.  TO
 6   THE EXTENT THAT TEVA CAN FILE SOME OF OUR DISPOSITIVE MOTIONS
 7   EARLY, AND I BELIEVE COOPER FEELS THE SAME WAY, WE HOPE TO DO
 8   THAT.  WE HOPE WE CAN GET SOME --
 9           THE COURT:  I WOULD LIKE THAT.
10           MS. BUENO:  -- TO YOU.
11           THE COURT:  ANYTHING YOU CAN GET ME EARLIER IS
12   BETTER.
13           MS. BUENO:  SOME OF IT WILL REQUIRE THE EXPERT
14   DISCOVERY TO BE COMPLETED.  SOME OF IT MAY NOT.  BUT JUST SO
15   YOUR HONOR'S AWARE, WE HAVE WHAT WE BELIEVE TO BE A VERY SOLID
16   PREEMPTION MOTION COMING.  WE THINK THERE ARE SOME DAUBERT
17   ISSUES THAT WILL REQUIRE PERHAPS EVEN A HEARING, DEPENDING ON
18   HOW YOUR HONOR WANTS TO HANDLE IT.  I MEAN, I KNOW YOU'RE AWARE
19   OF MORENA (PHONETIC) LITIGATION, AND SOME OF THE DECISIONS
20   THERE WE THINK ARE SIMILAR HERE.  SO I JUST WANT TO MAKE SURE
21   WE HAVE TIME FOR THAT.  AND THAT'S WHEN WE WERE DISCUSSING AND
22   CONFERRING, WE DON'T WANT TO PUT YOU IN A PINCH WHERE YOU'VE
23   GOT THESE BIG MEATY ISSUES IN ADDITION TO DEALING WITH THE
24   PRETRIAL DESIGNATIONS AND THE LIKE.  SO I THINK WE'VE COME UP
25   WITH A PLAN.  I WILL TELL YOU RIGHT NOW I'M CONCERNED IF THIS
```

1    GETS PUSHED ANY FURTHER, THAT I THINK WE'VE GOT A PROBLEM.  IF

2    WE CAN KEEP UP ON THE SCHEDULE, I KNOW THAT BOTH SIDES ARE

3    COMMITTED TO TRYING TO KEEP THIS JANUARY TRIAL DATE.  I KNOW

4    TEVA IS ABSOLUTELY.

5         THE COURT:  WELL, I AM, SO WE'RE GOING TO HAVE TO SAY

6    IT.

7         MS. BUENO:  WE'RE GOING TO HAVE IT.  BUT WE JUST -- I

8    JUST WANT YOUR HONOR TO BE AWARE.  AND THEN THE OTHER THING

9    I'LL SAY IS THAT WE HAVE A VERY LIMITED WINDOW FOR EXPERT

10   DEPOSITIONS BASED ON OUR DISCUSSION.  SO ONE OF THE THINGS WE

11   DISCUSSED WAS FOLLOWING UP WITH OUR EXPERTS AND MAKING SURE

12   THEY HAVE AVAILABILITY TO OFFER THREE DAYS WITHIN THE FOLLOWING

13   FEW WEEKS AFTER THEIR REPORTS THAT THEY CAN BE AVAILABLE FOR A

14   DEPOSITION.  BECAUSE WE'RE IN THE SUMMER WITH HOLIDAYS AND

15   VACATIONS, WE HAVE AGREED TO LET EACH OTHER KNOW IF WE KNOW

16   WE'RE GOING TO DESIGNATE AN EXPERT WHO IS GOING TO HAVE A

17   PROBLEM WITH THIS SCHEDULE, ASSUMING THAT THIS IS ORDERED, THEN

18   WE'LL LET EACH OTHER KNOW BECAUSE THERE COULD BE A SITUATION

19   BECAUSE OF VACATIONS THAT WE HAVE TO DO THINGS A LITTLE LATER.

20   BUT WE'LL COORDINATE ON ALL THAT.

21        THE COURT:  AND WHILE -- SO SEND ME A RED-LINE OF THE

22   SCHEDULING ORDER.  ALSO PUT IN IT -- IF WE DO ONLY NEED TWO

23   WEEKS FOR TRIAL, THEN WHAT WE CAN PROBABLY DO IS DEDICATE THAT

24   JANUARY 12TH WEEK TO A LOT OF WORK, TOO.

25        MS. BUENO:  PERFECT.

```
 1            THE COURT:  SO WHY DON'T YOU GUYS -- BECAUSE I'VE
 2   ALREADY BLOCKED THAT OUT SO THERE'S NOTHING THERE.  SO WHEN
 3   YOU'RE LOOKING AT THE SCHEDULING ORDER, ALSO KIND OF LOOK AT
 4   PUTTING IN SOME MORE SPECIFIC DATES ABOUT DEPOSITION
 5   DESIGNATIONS AND OBJECTIONS.  WHAT I LIKE TO DO ON THE
 6   DEPOSITION DESIGNATIONS IS, FIRST OFF, DO THEM CLOSE ENOUGH TO
 7   TRIAL THAT WE'RE DEALING WITH ACTUALLY THE ONES WE NEED.  I
 8   DON'T WANT TO DO A BUNCH OF DEPOSITION DESIGNATIONS FOR PEOPLE
 9   THAT ARE GOING TO BE THERE.  THAT'S JUST A BIG OL' WASTE OF
10   TIME.  WHEN YOU DO THE DEPOSITION DESIGNATIONS, WHAT I WANT TO
11   HAVE HAPPEN IS THE PARTY THAT'S DESIGNATING, SEND TO THE
12   OPPOSING PART THEIR DESIGNATIONS, THE OPPOSING PARTY TO SEND
13   BACK THEIR COUNTERS AND THEIR OBJECTIONS, AND THEN FOR YOU ALL
14   TO CONFER.  USUALLY IT'S, LIKE, OH, YOU DIDN'T DO THE WHOLE
15   THING, IT NEEDS TO BE COMPLETE, AND THEN THE OTHER SIDE'S,
16   OKAY, I CAN DO THIS OTHER SENTENCE.  AND SO GET IT TO THE POINT
17   WHERE I HAVE TO RULE ON SOMETHING.  AND AT THE POINT WHEN I
18   NEED TO RULE ON SOMETHING, I'LL NEED THE TRANSCRIPT AND THE
19   OBJECTIONS THAT I NEED TO RULE ON.  WHAT REALLY HELPS IS IF YOU
20   WANT TO MARK UP A DEPOSITION COPY WITH, THESE ARE THE
21   DESIGNATIONS, THESE ARE THE OBJECTIONS IN A WAY THAT I CAN
22   FOLLOW, AND THEN WE'LL SIT DOWN AND DO THEM.  BUT I THINK Y'ALL
23   NEED A SCHEDULE FOR EXCHANGING THOSE, AND SO PUT THAT IN THE
24   NEW SCHEDULING ORDER.
25            MS. BUENO:  WE WILL.
```

44

```
 1          MS. FITZPATRICK:  WE WILL DO THAT, YOUR HONOR.  ON

 2   THE DEPO DESIGNATIONS, AND I'LL -- WE'VE COME UP WITH A PROCESS

 3   THAT WE ACTUALLY LOAD THEM INTO A -- BASICALLY A SPREADSHEET SO

 4   IT LEAVES A COLUMN OF WHAT THE OBJECTION IS AND IT LEAVES A

 5   COLUMN FOR THE COURT TO RULE, SO WE CAN MAYBE WORK OUT

 6   SOMETHING LIKE THAT.  OTHER JUDGES HAVE BEEN --

 7          THE COURT:  YEAH, WHATEVER.  IT JUST NEEDS TO BE EASY

 8   BECAUSE WE'RE GOING TO SIT DOWN --

 9          MS. FITZPATRICK:  -- NOT GOING BACK AND FORTH BETWEEN

10   VARIOUS THINGS.

11          THE COURT:  AND I DON'T WANT RIDICULOUS STUFF THAT

12   YOU WOULD NEVER DO IN FRONT OF A JURY IN A MILLION YEARS.  I

13   MEAN, I FIND THAT PEOPLE ARE VERY AGGRESSIVE WITH DEPOSITION

14   DESIGNATIONS IN WAYS THAT THEY WOULD NEVER BE OTHERWISE, AND SO

15   LET'S NOT DO THAT.

16          MS. FITZPATRICK:  AND SO I'M ALSO HEARING, JUDGE, AND

17   I JUST WANT TO MAKE SURE I'M HEARING THIS RIGHT, AGREE THAT THE

18   DEPO DESIGNATIONS, YOU WANT ONLY FOR PEOPLE WHO AREN'T GOING TO

19   BE THERE.

20          THE COURT:  YES.

21          MS. FITZPATRICK:  AND SO WE'LL OBVIOUSLY -- SOME OF

22   THAT'S GOING TO DEAL WITH CORPORATE WITNESSES, TOO, SO WE'LL

23   NEED TO KNOW WHO TEVA IS GOING TO --

24          THE COURT:  AND Y'ALL KNOW NEED TO KNOW THAT ANYHOW.

25   I MEAN, IN A TRIAL LIKE THIS, IT JUST DOESN'T MAKE SENSE TO
```

1    PLAY GAMES ABOUT WHO'S GOING TO BE HERE AND WHO'S NOT AND DO A

2    BUNCH OF WORK ON DEPOSITION DESIGNATIONS.  I MEAN, THERE'S A

3    POINT THAT WE GET CLOSER TO TRIAL THAT Y'ALL ARE PROFESSIONALS.

4    YOU KNOW WHO'S GOING TO BE HERE AND WHO'S NOT.  AND LET'S NOT

5    DO A WHOLE BUNCH OF EXTRA WORK WHEN WE DON'T --

6            MS. FITZPATRICK:  OKAY.

7            THE COURT:  IT'S JUST NOT EFFICIENT WORK GOING

8    THROUGH TRANSCRIPTS THAT WE DON'T NEED.  SO KIND OF FOCUS ON

9    THAT, BOTH SIDES.

10            MS. FITZPATRICK:  OKAY.  THAT'S GREAT, YOUR HONOR.

11    WE CAN WORK WITH THAT SCHEDULE ON HOW WE DO THAT.

12            THE COURT:  YEAH.  AND KIND OF, AGAIN, TALKING ABOUT

13    THINGS THAT CAN BE DONE EARLIER, I DON'T WANT TO DO THINGS

14    PIECEMEAL TOO MUCH, BUT IF THERE ARE DOCTOR DEPOSITIONS AND

15    THINGS LIKE THAT WHERE YOU GUYS ALL KNOW WHO'S GOING TO COME

16    AND WHO'S NOT GOING TO COME, WE CAN ALREADY DO SOME OF THAT, I

17    WOULD THINK.

18            MS. BUENO:  I THINK THAT'LL BRING US TO OUR NEXT

19    QUESTION.  DO YOU WANT ME TO ADDRESS THAT?

20            MS. FITZPATRICK:  SURE.  GO RIGHT AHEAD.

21            MS. BUENO:  WELL, WE'VE TALKED ABOUT, AND I DON'T

22    THINK WE NEED A RULING FROM YOUR HONOR RIGHT NOW, BUT WE NEED

23    TO START THINKING ABOUT THE PROCESS OF HOW TO DETERMINE WHICH

24    OF THE THREE TRIAL PICKS GOES FIRST.  SO WE'RE ALL IN AGREEMENT

25    THAT WE DON'T WANT A SITUATION WHERE, FOR WHATEVER REASON, ONE

```
1   OF THEM'S NOT GOING FORWARD, WHETHER SUMMARY JUDGMENT'S GRANTED

2   OR WHATNOT.  SO RIGHT NOW THE SCHEDULE HAS THREE DIFFERENT

3   TRIAL DATES, AND WE THINK IT WOULD BE A MISTAKE TO ASSIGN

4   PARTICULAR PLAINTIFFS TO CERTAIN TRIAL DATES BECAUSE THEN IF

5   ONE FALLS OFF, WE COULD POTENTIALLY NOT HAVE SOMEBODY FOR

6   JANUARY.

7            THE COURT:  BUT AT SOME POINT WE NEED ONE.

8            MS. BUENO:  AT SOME POINT WOULD NEED TO.

9            THE COURT:  YES.

10           MS. BUENO:  SO JUST SO YOUR HONOR'S AWARE, TOO, THERE

11  ARE THREE PLAINTIFFS IN OUR TRIAL POOL.  THEY HAVE DIFFERENT

12  INSERTION DATES FOR THE PARAGARD, 2010, 2011 AND 2014, I

13  BELIEVE.

14           UNIDENTIFIED FEMALE SPEAKER:  CORRECT.

15           MS. BUENO:  AND SO SOME OF THE EVIDENTIARY RULINGS

16  MAY BE DIFFERENT.  DEFENDANTS OBVIOUSLY WILL TAKE THE POSITION

17  THAT POST INSERTION EVIDENCE MAY NOT BE RELEVANT IN MOST

18  SITUATIONS.  SO THERE COULD BE, FOR EXAMPLE -- AND I'M THROWING

19  THIS OUT JUST AS AN EXAMPLE, A 2013 DOCUMENT THAT WOULD BE

20  IMPORTANT FOR A PLAINTIFF WHO HAD AN INSERTION IN 2010, BUT

21  PERHAPS WOULD BE IRRELEVANT, AND WE WOULD SEEK TO EXCLUDE FOR A

22  PLAINTIFF WITH A LATER INSERTION DATE.

23           THE COURT:  GEORGIA HAS A CONTINUING DUTY TO WARN, SO

24  THAT COMPLICATES SOME OF THAT.

25           MS. BUENO:  THAT COMPLICATES IT AS WELL.  AND THEN WE
```

 1    ALSO HAVE, YOU KNOW, OTHER DEFENDANTS WITH DIFFERENT POSITIONS.

 2    SO I JUST BRING THIS UP TO SAY THAT SOME OF THE MOTION IN

 3    LIMINES (VERBATIM) WILL BE CASE-SPECIFIC.  SOME OF THE DEP

 4    DESIGNATION (VERBATIM), EVEN ON THE CORPORATE WITNESS FRONT,

 5    MAY HAVE DIFFERENT OBJECTIONS DEPENDING ON WHO ENDS UP AS THE

 6    PLAINTIFF.  SO WHAT WE HAVE TALKED ABOUT IS CONTINUING TO THINK

 7    ABOUT IT AND MAYBE COMING BACK TO YOUR HONOR AT THE NEXT

 8    DISCOVERY CONFERENCE, OR SOMETIME SOON, WITH PERHAPS SOME TYPE

 9    OF PLAN ABOUT WHEN TO ADDRESS IT.

10           THE COURT:  PUT IN THE NEW SCHEDULING ORDER A

11    DROP-DEAD DATE FOR YOU GUYS TO DO THAT.  Y'ALL DO BETTER WITH

12    DATES.  THIS IS GOING TO BE IMPORTANT, SO I WANT Y'ALL TO TALK

13    ABOUT IT, BUT I THINK THERE NEEDS TO BE A POINT WHERE IF Y'ALL

14    HAVEN'T DECIDED, I'LL DECIDE OR SOMETHING, BUT WE NEED TO

15    DECIDE.

16           MS. FITZPATRICK:  I THINK WE'RE IN AGREEMENT.  YOU

17    KNOW, THERE'S -- WE'VE JUST GOT COMPETING ISSUES.  IN A BEST OF

18    ALL POSSIBLE WORLDS WE WOULD GET THROUGH DISPOSITIVE MOTIONS

19    AND DAUBERTS, AND THEN DECIDE.  AND WE DON'T HAVE IT UNDER ANY

20    SCHEDULING ORDER.  THE CURRENT SCHEDULING ORDER, THE TWO-WEEK

21    ADJUSTMENT, WE DON'T HAVE THAT.  SO I THINK WE'RE TRYING TO

22    COME UP WITH THE BEST OF IMPERFECT SOLUTIONS BECAUSE IT WILL BE

23    AN IMPERFECT SOLUTION.  IT IS OUR COMMITMENT, AND WE TALKED

24    ABOUT THIS, THAT WE ARE GOING TO DO EVERYTHING WE CAN TO

25    RESOLVE, AND WE WOULD LIKE TO COME TO YOU ON JULY 2ND, WHICH IS

```
 1  OUR NEXT CONFERENCE, AND SCHEDULE SOME TIME WITH THIS IN THE
 2  EVENT THAT WE'RE NOT ABLE TO KIND OF FIGURE OUT WHAT IS THE
 3  BEST SOLUTION BETWEEN US.  SO IF THAT WORKS WITH YOUR HONOR, WE
 4  MIGHT -- WE PROBABLY WILL BE ABLE TO GIVE YOU SOMETHING IN
 5  ADVANCE, TOO, SO WE'RE NOT JUST BLINDSIDING YOU AT THE
 6  CONFERENCE, BUT HERE'S WHERE WE ARE WITH IT --
 7            THE COURT:  THAT'S FINE.
 8            MS. FITZPATRICK:  -- TO GET SOME RULINGS, AND THEN
 9  THAT WOULD TRIGGER OFF THE DATE.
10            THE COURT:  AND Y'ALL DO HAVE A MEDIATION SCHEDULED
11  AT SOME POINT, SO...
12            MS. BUENO:  YES.
13            THE COURT:  SO Y'ALL CAN HAVE YOUR SUMMERS BACK.
14            MS. FITZPATRICK:  I WILL SAY I DID MAKE A REQUEST OF
15  MS. BUENO, I'M, LIKE, IF YOU'RE GOING TO SETTLE ANY OF THESE
16  CASES, CAN YOU PLEASE DO IT BEFORE CHRISTMAS?  LIKE, PLEASE
17  DON'T MAKE US GO THROUGH ALL OF THIS, AND THEN A WEEK BEFORE
18  TRIAL PUT SOME SETTLEMENT MONEY ON THIS SO WE CAN --
19            MS. COPELAND:  BUT I LIKE YOUR HONOR'S SUGGESTION.
20  WE'D LOVE TO HAVE OUR SUMMERS BACK.
21            MS. FITZPATRICK:  SUMMER IS EVEN BETTER.  I WAS JUST
22  HOPING FOR THE HOLIDAYS, BUT --
23            THE COURT:  I COULD JUST THROW THAT OUT THERE, SO...
24            MS. BUENO:  I THINK WE SHOULD PUT SOMETHING TOGETHER,
25  AND I THINK IT WILL BE A LITTLE BIT MORE COMPLICATED.  AND TO
```

```
 1   YOUR HONOR'S POINT, WE NEED TO THINK ABOUT WHAT STATE LAW WILL
 2   APPLY AND WHAT THOSE CAUSES OF ACTION MAY BE BECAUSE THERE --
 3   IT IS A LITTLE MORE COMPLICATED.
 4           THE COURT:  IF THAT'S THE DISPUTED ISSUE, I WANT TO
 5   DECIDE THAT BEFORE I GET A BUNCH OF BRIEFS UNDER DIFFERENT
 6   STATE LAWS.  THAT'S NOT HELPFUL EITHER.  BECAUSE IF YOU'RE
 7   APPLYING ONE STATE, AND YOU'RE APPLYING ANOTHER STATE, I'M
 8   GOING TO NEED DIFFERENT BRIEFS, SO THAT'S NOT HELPFUL.
 9           MS. BUENO:  WELL, AND I GUESS WHAT I MEAN IS FOR
10   DIFFERENT PLAINTIFFS, TOO.  SO EVEN IF WE'RE IN AGREEMENT, ONE
11   PLAINTIFF MAY HAVE A DIFFERENT ISSUE THAN ANOTHER, SO...
12   THEY'RE ALL FLORIDA.
13           THE COURT:  OH, FLORIDA.
14           MS. COPELAND:  VERY REPRESENTATIVE OF THE DOCKET TO
15   HAVE THREE FROM THE SAME STATE.
16           MS. FITZPATRICK:  WE OBVIOUSLY WILL GET THOSE ISSUES
17   RESOLVED PRE-BRIEFING BECAUSE --
18           THE COURT:  YEAH, MAKE SURE THAT Y'ALL TALK ABOUT
19   THAT BECAUSE WE DON'T WANT THE SHIPS-PASSING-IN-THE-NIGHT
20   PROBLEM.
21           MS. BUENO:  YEAH.
22           MS. FITZPATRICK:  THAT HAS BEEN A PROBLEM, BUT WE'RE
23   GOING TO SOLVE THAT.  THAT'S NOT GOING TO HAPPEN GOING FORWARD
24   ON TRIAL STUFF, SO...
25           THE COURT:  SO THINK OF ALL THAT YOU HAVE TO DO.
```

```
 1              MS. FITZPATRICK:  WE'LL SPEND SOME TIME OVER THE NEXT

 2   FOUR WEEKS --

 3              THE COURT:  YOU HAVE A LOT TO DO.

 4              MS. FITZPATRICK:  -- GETTING THE TRIAL STUFF MORE

 5   BUTTONED DOWN AND COME TO YOUR HONOR WITH EITHER A PROPOSAL OR

 6   PLANS.

 7              THE COURT:  SEE, YOU CAN PUT ALL OF THIS INTO

 8   RESOLVING IT.

 9              MS. FITZPATRICK:  FROM YOUR LIPS TO GOD'S EARS,

10   JUDGE.  THAT WOULD BE OUR CHOICE, TOO.

11              THE COURT:  BUT, AGAIN, AND, AS I'VE SAID BEFORE, IF

12   THERE ARE CERTAIN RULINGS ON THINGS LIKE PREEMPTION OR

13   SOMETHING LIKE THAT THAT WOULD HELP FOR SETTLEMENT PURPOSES,

14   AND THEY CAN BE TEED UP, THAT'S ALWAYS OUT THERE, TOO.

15              MS. BUENO:  OUR GOAL IS TO GET YOU AS MUCH AS WE CAN

16   AS SOON AS POSSIBLE.  AND AFTER WE GET THE EXPERT REPORTS IN, I

17   THINK THAT PROCESS CAN START.

18              MS. FITZPATRICK:  YEAH, AND LET'S JUST COORDINATE.  I

19   DON'T WANT YOU TO FILE A MOTION THAT'S, LIKE, RIGHT IN THE

20   MIDDLE OF SOMETHING.  LIKE, WHEN WE'RE TAKING ALL OF YOUR

21   EXPERTS, IT'S HARD TO RESPOND.  WE'LL WORK OUT THAT SCHEDULING

22   ORDER AS WELL.

23              MS. BUENO:  YEAH.  THANK YOU, YES.

24              THE COURT:  AND WITH SOME OF THE MOTIONS IN LIMINE,

25   PLEASE, PLEASE, ON THOSE, FIND OUT IF SOMEONE IS GOING TO DO
```

1    SOMETHING BEFORE YOU FILE A BIG BRIEF TELLING THEM THEY CAN'T

2    DO SOMETHING THAT THEY'RE NOT GOING TO DO.

3             MS. BUENO:  YES.

4             THE COURT:  YOU CAN AT THAT POINT -- YEAH, SO MUCH OF

5    A PRETRIAL CONFERENCE IS, I'M NOT GOING TO DO THAT ANYHOW, SO

6    WHY ARE WE TALKING ABOUT IT?  SO PEOPLE JUST WANT TO GET SOME

7    CERTAINTY ABOUT WHAT'S GOING TO HAPPEN, AND JUST MAKE SURE

8    THAT'S PART OF YOUR PROCESS AS WELL.  I HAVE ABOUT FIVE

9    MINUTES, SO LET'S TALK ABOUT THE SANCTIONS, COST-SHIFTING

10   MOTION TO THE EXTENT THERE IS ANYTHING TO TALK ABOUT THERE.

11            MS. HERMIZ:  YOUR HONOR, KRISTEN HERMIZ FOR

12   PLAINTIFFS.  SO A LOT OF THIS HAS BEEN SENT UNDER RULE 408, SO

13   PERHAPS WE CAN GO OFF THE RECORD AND THEN MAYBE GO BACK ON.

14            THE COURT:  OKAY.  SO WE'RE OFF THE RECORD.

15               (OFF-THE-RECORD DISCUSSION.)

16            MS. FITZPATRICK:  I DON'T WANT TO RUSH THIS, JUDGE

17   BECAUSE I KNOW THAT YOU HAVE TO RUN.  DO YOU --

18            THE COURT:  HERE'S WHAT I'LL SAY.  THIS PLEA SHOULD

19   LAST 45 MINUTES, SO I'LL BE THROUGH AT 2:15.  AND THEN I HAVE A

20   DISCOVERY CONFERENCE AT 3, SO I HAVE A LITTLE TIME.  BUT WHEN

21   WE TALKED ABOUT THIS LAST TIME, IT SEEMED TO ME THAT THIS WAS

22   HAGUE CONVENTION ISSUES AND THERE WASN'T A WAY FORWARD.  BUT IF

23   IT'S SOMETHING ELSE, THEN LET MS. POLEY KNOW, AND I CAN COME

24   BACK, OR YOU CAN JUST SEND ME LETTER BRIEFS ON IT, BUT I HAVE

25   TO BE READY FOR THE PLEA, SO I CAN'T STAY.

52

```
1              MS. FITZPATRICK:  I THINK IT MIGHT BE HELPFUL FOR US

2    TO GRAB ABOUT 15 OR 20 OF YOUR MINUTES IN -- MINUTES OF YOUR

3    TIME IN BETWEEN JUST TO DEAL WITH THIS.

4              THE COURT:  E-MAIL MS. POLEY AT 2:00 AND LET HER KNOW

5    IF YOU STILL WANT ME, AND THEN I'LL COME BACK.

6              MS. FITZPATRICK:  OKAY.  THANK YOU.

7              THE COURT:  SHE CAN GET E-MAILS WHILE I'M TALKING

8    BECAUSE SHE'S NOT TALKING.  AND THEN AFTER IT'S OVER, I CAN

9    COME BACK.

10             MS. FITZPATRICK:  OKAY.  THANK YOU.

11                  (PROCEEDINGS ADJOURNED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

    I, MONTRELL VANN, RPR, RMR, RDR, CRR, OFFICIAL COURT

REPORTER FOR THE UNITED STATES DISTRICT COURT, FOR THE NORTHERN

DISTRICT OF GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING

52 PAGES CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS HAD BEFORE

THE SAID COURT, HELD IN THE CITY OF ATLANTA, GEORGIA, IN THE

MATTER THEREIN STATED.

    IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS, THE

23RD DAY OF MAY 2025.


                           /S/ MONTRELL VANN
                           MONTRELL VANN, RPR, RMR, RDR, CRR
                           OFFICIAL COURT REPORTER
                           UNITED STATES DISTRICT COURT