**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE: PARAGARD IUD** | ) | **MDL No. 2974** |
| **PRODUCTS LIABILITY** | ) | |
| **LITIGATION** | ) | **1:20-MD-02974-LMM** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | |
| **ALL CASES** | ) | |
| | ) | |

**RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF**
**THE DEPOSITION TRANSCRIPT OF CAROLYN PAOLUCCI**
**(DOC. 1082)**

Defendants CooperSurgical, Inc. and The Cooper Companies, Inc. (collectively, the "Cooper Defendants") submit this Response in opposition to Plaintiffs' Motion to Compel Production of the Deposition Transcript of Carolyn Paolucci (Doc. 1082, filed 6/20/2025).

**I.     BACKGROUND**

In June 2023, Ms. Paolucci filed an employment action against the Cooper Defendants and several individual defendants in New Jersey state court.[1] (Doc.

---

[1]  *Paolucci v. Cooper Companies, Inc.; CooperSurgical, Inc.; Priscilla Tavener; Jennifer Gates; Courtney Boyle; Greta Kolcon; ABC Corps. 1-5; and John Does 1-5,* Superior Court of New Jersey, Burlington County: Law Division, Docket No. BUR-L-1237-23.

1082-4). It asserts exactly two legal claims under New Jersey state law: (1) retaliation and (2) wrongful discharge.

The *Paolucci* court entered a Discovery Confidentiality Order on January 19, 2024, nearly 1.5 years ago. (Ex. 1: Discovery Confidentiality Order; *see also* Ex. 2 (detailing provisions in Order). The transcript of Ms. Paolocci's deposition (occurring 4/9/2025 and 4/21/2025) is subject to that Confidentiality Order.

There is no dispute that the Confidentiality Order restricts the use and disclosure of confidential materials like Ms. Paolucci's deposition transcript "*solely for purposes of the prosecution or defense of this matter* [meaning only the New Jersey action]." There is also no dispute that the Order prohibits disclosure of such materials "*in any manner to any other individual*" unless confidentiality is waived (it has not been) or the court—meaning the New Jersey state court—orders that the confidential material be disclosed (it has not).

Despite the existence of the Confidentiality Order in place for almost 1.5 years, and despite timely requesting and noticing Ms. Paolucci's deposition separately in the MDL, the PLC  chose not to depose Ms. Paolucci. Now the PLC is essentially asking for a mulligan.

Weeks after pulling down their deposition notice, the PLC made an informal request, asking this Court to order production of the transcript—notwithstanding the Confidentiality Order that protects confidential materials from disclosure "for any

purpose." The Court permitted the Cooper Defendants to submit a letter brief explaining why the Court should not do so. The Cooper Defendants did so via letter brief on June 3, 2025 (Ex. 2), outlining several points that—put simply—provided the PLC with a clear roadmap of what a requesting party should do to ask *this* Court to order production despite the existence of a properly entered confidentiality order of another court. After receiving the Cooper Defendant's letter brief, the Court entered an order stating that Plaintiffs should file a motion requesting production. (Doc. 1070).

The PLC filed a Motion to Compel on June 20, 2025. Procedurally, the PLC failed to follow the course of action that courts routinely require: rather than asking a federal court to issue an order that violates another court's validly entered order, the *requesting party should go to the court that issued the order* (e.g., by motion to intervene) to ask for modification. That is especially the case where, as here, the state court action has not been terminated; it is active and ongoing. The PLC elected not to do so here, an approach that courts addressing this same issue find "perplexing." Nor did the PLC ask this Court to modify or terminate the state court's order, as courts addressing this issue also routinely require. Instead, without citation to any rule, the PLC just asks this Court to compel production of protected materials from another case. Put differently, the PLC asks this Court to disregard that the

transcript is subject to the confidentiality order of another court and order its production anyway.

The Motion to Compel, procedurally improper as it is, seeks relief in two forms. First, the PLC requests production of the confidential deposition transcript of Carolyn Paolucci. That request should be denied for any of the many reasons already discussed in Cooper's letter brief and as further discussed below.

The PLC's Motion also proposes alternative relief: to allow the PLC to serve an untimely subpoena seeking to depose Ms. Paolucci in this MDL.

After the PLC did not proceed in the anticipated course (i.e., going to the state court that issued the order and asking *it* for a modification of its order) and instead filed the instant Motion to Compel, Cooper's counsel reached out to the PLC. On June 24, 2025, Cooper's counsel sent an email to the PLC. Ex. 3: June 24-26, 2025, Emails with Counsel. Cooper's counsel sought clarification on the terms of the "protective order" that the PLC's Motion alludes to and sought to resolve the dispute through an agreement to permit the untimely deposition of Ms. Paolucci in the MDL.

Having received no reply from the PLC for two business days, Cooper's counsel reached out again on June 26, 2025. The PLC's counsel replied later that morning that they would have to get back to Cooper.

As of the filing of this brief, the PLC has yet to substantively respond. It would seem that the PLC could not in good faith decline an offer to resolve a dispute (a) which they created by choosing not to depose Ms. Paolucci months ago, and (b) where they proposed this as requested relief.

The Cooper Defendants are loathe to further paper this Court on an issue that could have been resolved. But given the Court-ordered deadline and the lack of a reply by the PLC, Cooper files this Response.

## II.    PAOLUCCI CONFIDENTIALITY ORDER

### A.    Discovery Confidentiality Order

On January 19, 2024, the *Paolucci c*ourt entered a Discovery Confidentiality Order, to which the parties' counsel stipulated. *See* Order at 7. Of note, the Order does not just protect confidential information of the plaintiff and the Cooper Defendants; the plaintiff has named several additional, individual defendants, who are also subject to the terms of the Order and protected by its provisions. *See* fn. 1, *supra* (listing named defendants).

The Order begins by acknowledging that "discovery in the above-captioned action [i.e., the *Paolucci* case] is likely to involve the disclosure of confidential information," Order at 1, and the court (in relevant part) ordered as follows:

- Any party shall have the right to designate any information, document, thing (or portion thereof) as "Confidential" as defined therein. Order at 1, ¶1.

- Any party shall have the right to designate any information, document, thing (or portion thereof) as "Attorneys' Eyes Only" as defined therein. Order at 1, ¶2.

In Paragraph 3, the Order explicitly provides that the use of material designated and marked as Confidential and Attorneys' Eyes Only material "shall be used by the receiving party solely for purposes of the prosecution or defense of this action," meaning only the *Paolucci* case. *See* Order at 2, ¶3. It specifies that such material "shall not be used by the receiving party" for any purpose. *Id*.

Also in Paragraph 3, the Order prohibits disclosure by the receiving party to anyone who is not explicitly authorized by other parts of the Order to receive it unless the restrictions are removed either by (1) written agreements of counsel for the parties (meaning both parties) or by Order of the Court, meaning (only) the *Paolucci* court. *See* Order at 2, ¶3.

Paragraph 4 defines those persons who may receive Confidential material, *see* Order at 2, ¶4(a)-(g), and Paragraph 6 defines those persons who may receive Attorneys' Eyes Only material, *id*. at 3, ¶6. Paragraphs 5 and 7 prohibit disclosure of Confidential and Attorneys' Eyes material "in any manner to any other individual" unless (1) outside counsel for the party asserting confidentiality waives the claim of confidentiality or (2) the Court (meaning the *Paolucci* court) orders such disclosure. *See id*. at 3, ¶5, ¶7.

Paragraph 8 addresses depositions that involve Confidential or Attorneys' Eyes Only material. *See* Order at 4, ¶8. It provides, inter alia, a 30-day window for a deposition transcript to be designated as containing protected information. *Id*. It further states that "[n]o such deposition transcript shall be disclosed to any individual other than the individuals described in Paragraph 4(a), (b), (c), (d) and (f) for Confidential material, or Paragraph 6 for Attorneys' Eyes Only material, and the deponent during these thirty (30) days, and no individual attending such a deposition shall disclose the contents of the deposition to any individual other than those described in Paragraph 4(a), (b), (c), (d) and (f), or Paragraph 6 for Attorneys' Eyes Only material, during said thirty (30) days. Upon being informed that certain portions of a deposition are to be designated as Confidential, or Attorneys Eyes Only, all parties shall immediately cause each copy of the transcript in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with Paragraphs 4 and 5 or Paragraphs 6 and 7, respectively." *Id*. Paragraph 9 provides the procedures for objections to such designations. *Id*. at 4, ¶9(a)-(b).

The Order contains a mandatory notice provision in Paragraph 11: no party may disclose Confidential or Attorneys' Eyes Only material unless it gives "notice to the producing party and as directed by the Court." *See* Order at 5, ¶11. Paragraph

15 further provides that if a "non-party serves a party in this action" with a request for disclosure of Confidential or Attorneys' Eyes Only material,

> the party receiving the demand, if not prohibited under applicable law, shall promptly deliver a copy of the demand to the designating party's counsel, and shall notify the party who served the request that some or all of the materials sought by the request are subject to this Confidentiality Order. The party receiving the demand shall not disclose any Confidential or Attorneys' Eyes Only material prior to the date specified for disclosure, or prior to resolution of any dispute regarding production of such material in response to the request, whichever is later. In its sole discretion and at its own cost, the designating party may oppose or seek to limit the demand in any legal manner. The party who received the demand shall not oppose or otherwise interfere with the designating party's actions.

*Id*. at 5-6, ¶15.

*Paolucci* is currently pending—but even beyond its eventual termination, the Order survives "and shall remain in full force and effect unless modified by an Order of this Court" or by written, filed stipulation of the parties. *See* Order at 6, ¶18.

The Order contains, in Paragraph 20, additional protections for confidential information, even where an additional party joins, intervenes or appears in the action: "such party shall not have access to Confidential Information unless such party has filed with the Court its agreement to be bound by this Order." *See* Order at 6, ¶20.

Finally, the Order contains a Non-Disclosure Agreement to be Bound by Discovery Confidentiality Order, which requires any person receiving information

under the Order to execute a sworn statement under penalty of perjury that they will comply with the terms of the Discovery Confidentiality Order. The sworn agreements include that affiant will hold in confidence and not disclose to anyone not qualified to receive any Confidential or Attorneys' Eyes Only material—as well as "any words [or ] summaries" of such material. *See* Order at 8 (¶5). Affiants must likewise swear that they will "limit use" of material "solely for purpose of this action," meaning (only) the *Paoloucci* case. *Id*. at 8 (¶6).

## III.   ANALYSIS

The PLC asks this Court to order production of the Paolucci transcript despite the provisions in the Confidentiality Order. That request is procedurally improper and otherwise lacks merit.

### A.   The Eleventh Circuit prohibits the use of legally protected materials from another case.

The law in the Eleventh Circuit is clear: "evidence subject to a protective order of a court, a **confidentiality agreement**, or otherwise legally protected **may not be used in litigation that the order or agreement does not authorize**." *Glock v. Glock, Inc*., 797 F.3d 1002, 1007 n. 6 (11th Cir. 2015) (emphasis added), *also cited in Huffman v. Davey Tree Expert Co*., No. CV 418-184, 2023 WL 9775790, at *2 (S.D. Ga. Oct. 25, 2023); *Dushkin Pub. Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335-336 & n. 4 (D. D.C. 1991) ("As for those documents shielded by the [other

court's] protective order, this court as a matter of comity respects the order issued by [that court] . . . Therefore, the court will not require the production of documents which contain information that has been deemed confidential pursuant to the [ ] protective order.").

That prohibition is even more pronounced here, as the Confidentiality Order explicitly provides that material designated and marked as Confidential and Attorneys' Eyes Only "shall be used by the receiving party **solely for purposes of the prosecution or defense of this action**," meaning only the *Paolucci* case. Ex. 1, Confidentiality Order at 2, ¶3 (emphasis added); *id.* at 8, ¶6. It further specifies that such material "**shall not be used by the receiving party" for any purpose**. *Id.* (emphasis added).

The PLC asks the Court to simply order production of the transcript, but the PLC's ask itself violates the above statement of law.

## B.    The PLC's request violates principles of comity, federalism, and courtesy.

By asking this Court to order production of Ms. Paolucci's deposition transcript, when it is not subject to disclosure under the plain terms of a Confidentiality Order in that active case, the PLC disregards oft-cited jurisprudential principles of comity, federalism and courtesy.

Federal district courts, when faced with a (proper) motion to modify a protective order entered by another federal or state court (which is not what the PLC filed here) often apply four "rules of reason" as derived from *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000). *Tucker* articulated that courts facing this issue have "frequently felt constrained by **principles of comity, courtesy, and,** where [*as in this case*] a federal court is asked to take such action with regard to a previously issued state court protective order, **federalism**."

The PLC's Motion never uses the word "federalism" and only once uses the word "comity." The Motion does not even attempt to address these jurisprudential issues. Instead, the Motion seeks an order of production through the "*Tucker*" factors. This effort fails.

*Tucker* identified four factors that a court can review to determine whether it will modify or terminate another court's order (which is not what the PLC filed here): (1) "the nature of the protective order issued by the first court," (2) "the identity of the party from whom the discovery is sought," (3) "whether the case in which the original protective order was issued is still pending . . . .", and (4) "whether it is possible to incorporate terms in its own order which will further the protections originally ordered by the [first] court." *Tucker*, 191 F.R.D. at 501.

Other courts—such as *Santiago*, 2017 WL 3610599, at *2, which explained that the Eleventh Circuit does not have a "definitive test to apply to a request to

11

modify a protective order," consider these federalism/comity/courtesy concerns, favoring a "balancing test" to determine whether any justification exists to modify another court's protective order. *See id.* at \*3; *Huffman,* 2023 WL 9775790, at \*2.

These considerations weigh against modification or termination of the Confidentiality Order (which, again, is not the relief the PLC seeks). First, the Confidentiality Order was entered by stipulation, so that is not in play. The second factor, the identity of the party from whom discovery is sought, is not instructive here; the Confidentiality Order provisions apply to all parties which, here, involves several individuals who were named as defendants. In other words, even though the PLC says the plaintiff has agreed to disclose the transcript, the Order provides that *no party* may disclose any material that is protected under the terms of the Order "for any reason." Ex. 1, Confidentiality Order, at 2 ¶3.

The third factor—whether the case has been terminated or is still pending— weighs against the PLC's Motion.  Federal courts considering whether to modify another court's order (although that is not what the PLC filed here) regularly reject such requests, ruling that the requesting party should *first* seek relief from the court that issued the protective order. As one federal district court noted: "The Court finds it **perplexing that [the requesting party] has not even attempted to petition for relief in the courts that entered the Confidentiality Orders by following procedures for doing so as set forth therein**." *DVL, Inc. v. Congoleum Corp.*, 2019

WL 13417209, at *4 (D. N.J. Dec. 2, 2019) (emphasis added). Similarly, in *Entrust Datacard Corp. v. Atl. Zeiser GmbH*, No. 3:17-CV-110-J-39MCR, 2018 WL 3599216, at *2 (M.D. Fla. Jan. 16, 2018), the court explained:

> The better course of action would be for parties to seek modification or termination of the Stipulated Protective Order and resolution of any outstanding confidentiality disputes before the [court which issued the order]. To the extent that a party believes an attempt to modify or terminate the Stipulated Protective Order is proper before this Court (as opposed to the [court which issued it]), that party may file a motion articulating such a basis, bearing in mind that 'there is a strong presumption against modification of a protective order.'

*Dushkin,* 136 F.R.D. at 335-336, likewise ruled: "[t]o the extent that the plaintiff should desire to obtain those additional documents [shielded by a protective order], that request should be addressed to the issuing court." And the court in a frequently cited case, *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 111 F.R.D. 65, 67-68 (D. Puerto Rico 1986), concluded that the appropriate way for a third party to challenge a protective order is to seek intervention in the action where it was issued; comity dictates that the subsequent court should await ruling by the court that issued the order. *See also, e.g.*, *Santiago v. Honeywell Int'l, Inc.*, No. 16-CIV-25359, 2017 WL 3610599, at *3 (S.D. Fla. Apr. 6, 2017) ("In light of the general rule (and limited exceptions) that the issuing court retains jurisdiction over any modifications to its own protective order, Plaintiff has failed to articulate any reasons in support of why

her Motion is properly before this Court.").[2] Further, if a party is permitted to intervene, modification of an order would require a showing of good cause. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 104CV03066JECRGV, 2014 WL 11352937, at *4 (N.D. Ga. Apr. 23, 2014) ("modification of the Court's protective order requires [ ] a demonstration of good cause." ).

Here, at least to the Cooper Defendants' knowledge, Plaintiffs have never moved to intervene in the state court action to seek modification of the Confidentiality Order. The PLC's Motion is silent on this, providing no explanation why the PLC did not pursue the above approach that would respect comity, courtesy and federalism. Nor do they make any showing of good cause.

The fourth and final *Tucker* factor, "whether it is possible to incorporate terms in its own order which will further the protections originally ordered by the [first] court," does not support the PLC's request. The Motion gives lip service to Plaintiffs being "willing to provide additional, reasonable protections," Pl. Mot. at 9, but there

---

[2]  Plaintiffs' cited case law does not support their position. Plaintiffs cite, for instance, *Carter-Wallace v. Hartz Mountain Indus., Inc.*, 92 F.R.D. 67 (S.D. N.Y. 1981), but the underlying case there had been settled and was not active. *Id*. at 68.  Plaintiffs also rely on *City of Rome v. Hotels.com*, 2011 WL 13232091 (N.D. Ga. Sept. 12, 2011), but that case is procedurally distinguishable: there, the plaintiffs sought unredacted records from a case that had since closed, and the plaintiffs had also filed a motion to unseal in the state court which had not been ruled on.

is no explanation for what this may mean.[3] Cooper's counsel requested information from the PLC about what these "additional, reasonable protections" were, but the question has gone unanswered. Ex. 3, June 24-26, 2025, Emails.

The arguments and cases cited in the PLC's Motion do not support their request. Plaintiffs continue to assert that *Paolucci* is not really an employment case, even though the only legal claims asserted in that action are in fact (1) retaliation and (2) wrongful discharge. Moreover, since the 2015 amendments, the Rule 26(b)(1) relevance threshold has included a component of proportionality to the relevance threshold.[4] Here, Plaintiffs have had the opportunity to depose multiple witnesses who can and have testified to the same points that the PLC presumably believes Ms. Paolucci will testify about, including Ann Peets, Priscilla Tavener, and others.

---

[3] Plaintiffs' cited authority on this point misses the mark. *Rome,* as noted above, involved an already-closed case. In *Graceway Pharms., LLC v. River's Edge Pharms., LLC*, 2008 WL 4787517 (N.D. Ga. 2008), the Court focused on the fact that the defendant resisting production pointed to *no* protective orders that would be violated if the then-narrowed request to produce were granted. *Id*. at *1.

[4]    (b) Discovery Scope and Limits. (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Plaintiffs also accuse the Cooper Defendants of trying to "shield" materials through alleged obstructionist tactics. Not so, and comparison to *Tucker* is instructive on this point. In *Tucker*, the defendant could not avoid producing documents simply because it produced those documents in another case governed by a protective order. No such facts or procedure occurred here; the Order is not "one-sided," the information at issue is a deposition transcript, not document production, and multiple individual defendants are named in the *Paolucci* suit.

In addition, *Tucker* involved the same defendant in both the current and prior cases; but here, the Cooper Defendants are defendants in the MDL, but Paolucci involves other individually named defendants. Also, in *Tucker*, the prior action was already closed and thus returning to that court for modification of an order was not practical. But *Paolucci* is pending and currently active, and the PLC—had it not tried to save resources in choosing not to take Ms. Paolucci's deposition in hopes they would just be given the state court transcript—could have gone to the state court. But the PLC did not try, at least as the Cooper Defendants are aware.

Where—unlike here—a requesting party has filed a motion for modification or termination of another court's order, courts apply the above factors and other balancing considerations. The facts here do not warrant modification of another court's protective order, had that been requested—and there is no justification

offered by the PLC for an order of production without regard for the existing confidentiality order.

## IV.  CONCLUSION

In this Motion alone, the PLC twice characterizes Cooper's arguments as "absurd." Compliance by the Cooper Defendants and their counsel with a valid order entered by another court in separate litigation is not "absurd;" it is a lawyer's duty.

In closing, even if the Motion were procedurally proper and even if the undersigned counsel had the transcript, the PLC's motion offers no legitimate basis for an order to compel. Courts caution against one court disregarding another court's properly issued order in a currently pending case, and the issues of comity and courtesy are coupled with federalism concerns where a federal and state court are involved. Plaintiffs provide no valid basis for an Order of production as they request.

Alternatively, the Cooper Defendants were and are willing to try and resolve the motion through the very relief which Plaintiffs sought in the alternative—a subpoena to depose Ms. Paolucci in this MDL—but have yet to receive an answer from the PLC.

The Cooper Defendants pray for all other relief to which they are entitled.

Respectfully submitted,

*/s/ Caroline D. Walker*
Caroline D. Walker
Alabama Bar No. ASB-3439-B10T

Butler Snow LLP
1819 5th Avenue North, Suite 1000
Birmingham, AL 35203
Telephone: 205.297.2200
caroline.walker@butlersnow.com

*/s/ Kasey M. Adams*
Kasey M. Adams
Butler Snow LLP
Mississippi Bar No. 105025
Renaissance at Colony Park
Suite 1400
1020 Highland Colony Parkway
Ridgeland, MS 39158
Telephone: (601) 985-4413
kasey.adams@butlersnow.com

***Co-Lead Counsel for The Cooper Defendants***

## CERTIFICATE OF SERVICE

I certify that on this 27th day of June, 2025, a copy of the foregoing was served electronically on Plaintiffs via their Lead and Liaison counsel.

*/s/ Caroline D. Walker*
Caroline D. Walker, Esq.