IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: PARAGARD IUD PRODUCTS LIABILITY LITIGATION | )<br>)<br>)<br>) | MDL DOCKET NO. 2974<br><br>(1:20-md-02974-LMM)<br>This Document Relates to All Cases |

## PLAINTIFFS' MOTION TO STRIKE TEVA'S FRCP 30(b)(6) DEPOSITION (MATERIAL & DESIGN - DR. JOSEPH DEVITO) SECOND ERRATA SHEET

COME NOW Plaintiffs asking the Court to strike Teva's newly submitted second errata sheet for its corporate representative, Dr. Joseph Devito.

## BACKGROUND

On April 13, 2026, Teva submitted a second errata sheet for the deposition taken of its corporate representative, Dr. Joseph DeVito, on the topics of Material & Design. Plaintiffs move to strike this new errata sheet because it is both egregiously untimely and plainly improper under Rule 30(e) and controlling Eleventh Circuit precedent. Nearly a year after Dr. DeVito provided sworn testimony on behalf of Teva and after he already submitted a timely and lengthy errata sheet, Teva now attempts to rewrite testimony after determining that it no longer likes the testimony its corporate representative gave under oath. Rule 30(e) does not permit parties to treat sworn deposition testimony as a draft document that can be revised at will later once litigation strategy changes.

1

This second errata sheet does not arise in a vacuum. During the first bellwether trial, Defendants repeatedly attempted to limit or unwind Dr. DeVito's Rule 30(b)(6) testimony through serial motions related to this same issue, motion practice with which this Court is well familiar. Defendants also sought to present Dr. DeVito as a fact witness to reframe Teva's prior testimony, which this Court rejected. This second errata sheet is simply the latest attempt to undo testimony Defendants wish had been different.

Dr. DeVito testified as Teva's designated Rule 30(b)(6) witness on June 3, 2025. *See* **Exhibit A**. Two days later, on June 5, 2025, Teva received the deposition transcript and was reminded of its 30-day deadline under Rule 30(e) to make any corrections. *See* **Exhibit B**. Dr. DeVito then submitted a timely, 11-page errata sheet on June 14, 2025, identifying 58 corrections, primarily minor grammatical and transcription edits. *See* **Exhibit C**.  Now, 276 days after Rule 30(e)'s deadline expired and after the first bellwether trial, where the DuPont 2005-to-DuPont 20 switch was a central issue in Plaintiffs' design defect claims, Teva has served a second errata sheet seeking entirely new substantive revisions to the same testimony. *See* **Exhibit D**. These revisions do not correct transcription errors. They do not clarify ambiguous testimony. They directly contradict Teva's sworn statements by converting its repeated affirmative admissions into carefully crafted denials.

2

## **ARGUMENT**

Rule 30(e)(1) gives a deponent thirty days after being notified that a transcript is available to review the transcript and make any changes in form or substance. Fed. R. Civ. P. 30(e). The deponent must also sign a statement listing those changes and the reasons for making them. Errata sheets submitted after that deadline are improper. So too are substantive changes that contradict sworn testimony rather than correct transcription errors.

**I.    Teva's Second Errata Sheet Was Filed 276 Days Late and Should Be Stricken as Untimely**

Rule 30(e) clearly sets the deadline for making changes to a deposition transcript as 30 days from the receipt of the transcript. Fed. R. Civ. P. 30(e). After that 30-day deadline, a witness waives their opportunity to make changes to their testimony. *Norelus v. Denny's Inc.*, 628 F. 3d 1270, 1304 (11th Cir. 2010); *See also EBC, Inc. v. Clark Bldg. Sys., Inc.,* 618 F.3d 253, 265 (3rd Cir. 2010) (stating the procedural requirements of Rule 30(e) are clear and mandatory); *Agrizap, Inc. v. Woodstream Corp.,* 232 F.D.R. 491, 493 (E.D. Pa. 2006) (Stating that there is no debate that the procedural requirements of 30(e) must be adhered to). Errata sheets produced after the deadline are uniformly disregarded and treated as a nullity. *Norelus*, 628 F.3d at 1304; *Citing Welch v. Mercer Univ.*, 304 Fed.Appx. 834, 838 (11th Cir. 2008).

Teva received the deposition transcript for its corporate representative, Dr. DeVito, on June 5, 2025. *See* **Exhibit B**. This would make the 30-day deadline for producing any errata sheet July 5, 2025. Dr. DeVito did, in fact, produce a significantly long errata sheet within this deadline, which did not include any of the portions of testimony he now seeks to change. *See* **Exhibit C**. Dr. DeVito's second errata sheet is 276 days late, grossly outside of the 30-day deadline allowed by the Federal Rules. Dr. DeVito, as corporate representative of Teva, has long waived any opportunity to make changes to his June 2025 deposition, and this second errata sheet should be uniformly disregarded by the court and treated as a nullity.

## II. Teva Cannot Use an Errata Sheet to Undo Damaging Testimony

The Eleventh Circuit, among many others, has found it improper to produce errata sheets that make a "slew" of substantive changes to a party's deposition. *Norelus,* 628 F. 3d at 1281; *See also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (upholding striking an errata sheet that made substantive changes, as Rule 30(e) is to be used for corrective, not contradictory changes); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002) (**condemning counsel** allowing for material changes of deposition testimony and disapproving of the use of such altered testimony that is controverted by the original testimony) (emphasis added); *Thorn v. Sundstrand Aerospace Corp.,* 207 F.3d 383, 388-89 (7th Cir. 2000) (an errata sheet that changes the substance and

contradicts the transcript is not permissible unless it can be plausibly represented as a correction of error in the transcript). Another court in the Western District of Louisiana aptly stated:

> The Purpose of Rule 30(e) is obvious. . .The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

> *Greenway v. Int'l Paper Co.,* 144 F.R.D. 322, 325 (W.D. La. 1992).

The Eleventh Circuit has further affirmed a district court's decision to follow *Thorn* and *Garcia* and disregard an errata sheet that attempted to contradict a deposition when the deponent claimed confusion at the deposition. *Reynolds v. IBM, Corp.*, 320 F. Supp. 2d 1290, 1301 (M.D. Fla. 2004), aff'd 125 Fed. Appx. 982 (11th Cir. 2004). In *Reynolds*, a party claimed that changes to his deposition transcript were necessary as he confused the dates of two meetings and what was discussed in the meetings. *Id.* at 1300-1. The court held that since the party did not contend that what he attempted to amend was an error in transcription, the amendments to the testimony should be disregarded. *Id.* This principle has also been upheld by other courts within the Northern District of Georgia and the Eleventh Circuit. *See ChemFree Corp v. J. Walker, Inc.*, 2008 WL 5234247, at *10-11 (N.D. Ga) (granting motion to strike errata sheet because the deponent "never stated that he misunderstood the questions or that the questions were confusing or unclear," nor

did he express any "obvious confusion"); *Great Lakes Ins. SE v. Wave Cruiser LLC,*36 F.4th 1346, 1357 citing to *Thorn v. Sundstrand Aerospace Corp*., 207 F. 3d 383, 389 (7th Cir. 2022) ("[a] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription").

Dr. DeVito's stated reason for all of the changes he seeks to make in his second errata sheet is simply:

> I am not aware of Teva ever commercially switching to Dupont 20. My "yes" was intended only to confirm what the document appears to suggest, that Teva started testing Dupont 20 in 2007, based on the line of questioning by Plaintiff's counsel.

**Exhibit C**.

Dr. DeVito does not contend that any of these revisions are necessary to correct transcription errors. Nor does he identify any portion of the transcript that inaccurately reflects what he said under oath. Instead, the explanation provided in his newly submitted second errata sheet makes clear that he is attempting to revise Teva's substantive testimony based on purported confusion that was never expressed during the deposition or in the first errata sheetTeva timely filed after the deposition. Teva never stated that it misunderstood the questions being asked, sought clarification, or otherwise indicated any confusion on the record. Moreover, Teva's counsel never attempted to clear up any supposed confusion at the time of the deposition with any questioning of their own. It is only since Teva became aware of

Plaintiffs' strategy as it relates to the testimony that Teva and/or Dr. Devito is attempting to rewrite the testimony.

As reflected in the chart below, Teva's proposed revisions do not clarify its testimony. They materially change it. Repeated affirmative answers are replaced with carefully crafted denials that better align with Defendants' current litigation position. Rule 30(e) does not permit a witness to retroactively rewrite sworn testimony simply because it it) now wishes it had answered differently.

If Defendants believe their own sworn testimony was inaccurate, their remedy was to cure it on the record at the time of the deposition or challenge that testimony through impeachment or competing evidence, not through judicial erasure of testimony Teva gave under oath and later verified as "true and accurate." A side-by-side comparison of Teva's original testimony and its proposed revisions demonstrates that these are not corrections, they are substantive reversals of sworn testimony:

| PG | LINE | FROM | TO | Why This Revision is Improper |
|---|---|---|---|---|
| 186 | 12 | **Q**. Okay. Well it was Dupont 20 that eventually was being used starting in 2007, right?<br><br>**A**. (Line 12) Yes. That's what it states. | "No. Dupont 20 was only tested in 2007." | Dr. DeVito changes a clear "yes" answer into a "no." He also testified that "that's what it states," confirming he understood the document being discussed. Nothing in the transcript suggests confusion. |

7

| 186 | 15 | **Q**. In fact, that's what was used during the time that Teva held the NDA?<br><br>**A**. (Line 15)<br>Yes. | "No. Dupont 20 was not used commercially while Teva held the NDA. It was tested in 2007." | This revision directly contradicts Dr. DeVito's sworn testimony by replacing a clear affirmative answer with a denial. He expressed no confusion about this question in his deposition. |
|---|---|---|---|---|
| 188 | 6-18 | Q.<br>Back to Polymers. Was Polymer Conversions ever told about the switch from the Alathon 2005 to the DuPont 20?<br><br>A. (Lines 6-18)<br>Yeah. I don't have direct documentation, but they would have to know of the difference, because when you receive in material, you have to confirm the receipt of the material and the vendor. So on the receiving they would see a different name. So I would -- I don't have the documentation in front of me, but you would have to, in our industry, know that the material is different because you receive it in, and that's one of the first | "There was no commercial switch from Dupont 2005 to Dupont 20, so there was no reason to notify Polymer Conversions." | Dr. DeVito did not give a confused or incomplete answer—he provided detailed testimony explaining why Polymer Conversions would have known about the material change, including Teva's receiving and verification procedures. He now seeks to replace that testimony with an entirely new explanation that was never provided during the deposition. Rule 30(e) does not permit a witness to erase detailed sworn testimony and substitute a new narrative after the fact. |

8

| | | | | |
|---|---|---|---|---|
| | | things we do on receiving is verify the material and the name. So you would see the different name and you would say -- you would go through a change in your system. | | |
| 190 | 10-14 | **Q**. But you told me the resin changed in '07, correct?<br><br>**A**. (Lines 10-14) By the year, yeah. By the year. Because it's 2009 that the design of experiment would be with the DuPont material.<br><br>**Q**. 20?<br><br>**A**. Yeah, DuPont 20. | "No. Dupont 20 was not used while Teva held the NDA. It was tested in 2007." | This testimony was not ambiguous. Plaintiff's counsel expressly asked Dr. DeVito to confirm that the resin changed in 2007 and then specifically clarified, "DuPont 20?" Dr. DeVito again confirmed, "Yeah, DuPont 20." This exchange gave Dr. DeVito a clear opportunity to correct any prior misunderstanding, yet he reaffirmed the same testimony. He now seeks to replace that unequivocal testimony with an entirely different answer. Rule 30(e) does not permit that reversal. |

These revisions are plainly improper under Eleventh Circuit precedent. Notably, every proposed change relates to Teva's testimony regarding DuPont 20 and attempts to transform repeated affirmative answers into carefully crafted denials. That pattern is telling. It demonstrates that this was not a matter of confusion,

9

misunderstanding, or transcription error. These are lawyer driven changes to address a hotly contested litigation issue. Teva was asked about DuPont 20 repeatedly throughout tits 30(b)(6) deposition and answered consistently each time. In fact, Teva confirmed the same point on four separate occasions.

Teva should not now be permitted to offer new justifications for these revisions that were never included in the original errata sheet. Rule 30(e)(1)(B) requires the deponent, not counsel, to state the reasons for any proposed changes. Dr. DeVito's stated explanation is insufficient to justify these substantive reversals, and Defendants cannot cure that deficiency through after-the-fact arguments in motion practice.

## **CONCLUSION**

For these reasons, the Court should strike Teva's second errata sheet in its entirety. Teva, through Dr. DeVito, testified under oath, reviewed that testimony, and submitted a lengthy and timely errata sheet after the deposition. Nearly a year later and after having the benefit of learning Plaintiffs' strategy as to the testimony, Teva now seeks to replace its repeated affirmative answers with carefully crafted denials that better align with its current litigation position. Rule 30(e) does not permit parties to rewrite sworn testimony after the fact. These changes are not corrections. They are substantive reversals of sworn testimony, submitted nearly a year too late. The Court should strike them in full.

10

Dated: April 24, 2026    Respectfully submitted,

/s/C. Andrew Childers   /s/ Erin K Copeland
C. Andrew Childers    Erin K Copeland
Georgia Bar No. 124398   Texas Bar No. 24028157 Fibich
Childers, Schlueter & Smith, LLC Leebron Copeland & Briggs
1932 N. Druid Hills Rd., Suite 100 1150 Bissonnet Street
Atlanta, GA 30319    Houston, TX 77005
Tel: (404) 419-9500    Tel: (713) 751-0025
Fax: (404) 419-9501    Fax: (713) 751-0030
achilders@cssfirm.com   ecopeland@fibichlaw.com

**Plaintiffs' Liaison Counsel**

/s/ Molly C. Wells
Edward A Wallace
Illinois Bar No. 6230475
Molly C. Wells
Illinois Bar No. 6320461
Wallace Miller
200 W. Madison, Suite 3400,
Chicago, IL 60606
Tel: (312) 261-6193
Fax: (321) 275-8174

11

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

This 25th day of April 2026.

*/s/ Erin K. Copeland*
*Erin K. Copeland*