IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: PARAGARD IUD PRODUCTS LIABILITY LITIGATION | : : : : | MDL DOCKET NO. 2974 1:20-md-02974-LMM |
| This document relates to: Melody Braxton Alisa Robere | : : : : | CIVIL ACTION NOs.: 1:22-cv-00490-LMM [114] 1:22-cv-01583-LMM [148] |

**<u>ORDER</u>**

These cases are part of a multi-district litigation ("MDL") involving the contraceptive Paragard, an intrauterine device ("IUD"), which is regulated as a drug under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., and the federal Food and Drug Administration's ("FDA") implementing regulations in Title 21 of the Code of Federal Regulations. Discovery in the MDL has been completed, and the Court has conducted its first bellwether trial. There are currently more than 3,500 cases pending in the MDL. The cases are now before the Court on Teva's Renewed Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).[1] Upon due consideration, the Court enters the following order.

---

[1] "Teva" or "Defendant" refers collectively to Defendants Teva Pharmaceuticals USA, Inc.; Teva Women's Health, LLC; and Teva Branded Pharmaceutical Products R&D, Inc.

## I.    LEGAL STANDARD

A district court may certify an order for interlocutory appeal if it finds that the following three elements are met: (1) the subject order "involves a controlling question of law"; (2) there is a "substantial ground for difference of opinion" on the controlling question of law; and (3) an immediate appeal from the subject order "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The question of whether an interlocutory appeal would materially advance the ultimate termination of the litigation is often tied closely to consideration of whether the question of law is "controlling," rather than a piecemeal or side issue. Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C., 165 F. Supp. 3d 1330, 1334 (N.D. Ga. 2015) (citing Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) (hereinafter, "Ga. NAACP")). "A question of law is considered 'controlling' if it has the potential of substantially accelerating disposition of the litigation, even if it would not terminate the case." Ga. NAACP, 952 F. Supp. 2d at 1362 (cleaned up). A question is considered a sufficiently pure "question of law" if it is "stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004). In other words, questions of "pure" law are those that "the court of

appeals can decide quickly and cleanly without having to study the record." <u>Id.</u> at 1258 (cleaned up).

"[T]he requirement that there be substantial ground for difference of opinion is satisfied when (1) the issue is difficult and of first impression, (2) a difference of opinion as to the issue exists within the controlling circuit, or (3) the circuits are split on the issue." <u>Ga. NAACP</u>, 952 F. Supp. 2d at 1362. Be that as it may, the fact that the issue is one of first impression is not sufficient on its own. <u>Id.</u> "Instead, the district court has a duty to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." <u>Id.</u> (cleaned up). A party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference of opinion. <u>Consumer Fin. Prot. Bureau,</u> 165 F. Supp. 3d at 1339.

"Certification for immediate appeal of a non-final order under § 1292(b) is an extraordinary measure, which is permitted only in exceptional circumstances." <u>S. Pilot Ins. Co. v. CECS, Inc.</u>, 15 F. Supp. 3d 1335, 1336 (N.D. Ga. 2013) (citing <u>McFarlin</u>, 381 F.3d at 1256); <u>accord</u> <u>Caterpillar, Inc. v. Lewis</u>, 519 U.S. 61, 74 (1996) (recognizing that interlocutory appeals are intended for "exceptional" cases). "The proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final

judgment rule, and are threatened by too expansive use of the § 1292(b)

exception to it." McFarlin, 381 F.3d at 1259.

## II.    BACKGROUND

In a prior motion, Teva asked this Court to grant summary judgment in its

favor on failure-to-warn and design defect claims brought by bellwether plaintiffs

Pauline Rickard, Melody Braxton, and Alisa Robere (collectively, "Plaintiffs"),

arguing that those claims are preempted by federal law. Dkt. No. [50].[2] The Court

denied Teva's motion as to the failure-to-warn claims on grounds that Plaintiffs

presented evidence of "newly acquired information" that would have permitted

Teva to correct the allegedly deficient product label by using the Changes Being

Effected ("CBE") regulation, which allows for labeling changes without prior FDA

approval. Dkt. No. [127] at 9-13. The newly acquired information the Court

examined includes a 2015 analysis conducted by Teva Head of

Pharmacovigilance, Dr. Siyu Liu, identifying numerous adverse events that had a

reasonably strong causal association with the Paragard IUDs at issue in this case.

Id. at 9-10.

The Court concluded, over Teva's contrary position, that Dr. Liu's analysis

triggered the CBE exception even though it was submitted to the FDA after the

---

[2]    Unless otherwise noted, record citations are to the documents filed in Robere v. Teva Pharmaceuticals USA, Inc., No. 1:22-cv-01583-LMM (N.D. Ga.). The page numbers cited are those generated by the Court's electronic filing system.

bellwether plaintiffs' IUD placements. Id. at 10-11. The Court based its decision on evidence that Teva caused the delay in discovering the information by miscoding adverse events and by failing to conduct an FDA-mandated study that would have revealed device breakage as a reportable adverse event earlier. Id. In other words, Teva's failure to conduct the study before the FDA's deadline was the only reason it was not timely. Based on that evidence, the Court permitted the report to be used retroactively to establish newly acquired information because the information was legally required to have been acquired by Teva earlier. Id. at 10-12. With the CBE exception available, Teva could have complied with both state tort law and FDA requirements, thereby defeating its preemption defense. Id. at 13.

Following the Court's preemption ruling, Teva filed a motion for interlocutory appeal. Dkt. No. [111]. Teva disagreed with the Court's decision that the 2015 report applied retroactively to trigger the CBE exception. Id. at 1-2. It therefore asked the Court to stay the bellwether trials—the first of which was set to begin in three weeks—and certify the following question to the Eleventh Circuit for interlocutory review:

> Whether information can retroactively qualify as "newly acquired" under the CBE exception where the information was not actually "acquired" by the drug manufacturing defendant before the relevant time period (i.e., before a plaintiff's ingestion or insertion of the prescription drug).

Id. at 5.

The Court denied Teva's motion because, while the question presented substantial grounds for a difference of opinion (the second § 1292(b) factor), it found that the question was not purely a question of law (first factor) and certifying it for interlocutory review at that stage would not materially advance the ultimate termination of the case (third factor). Dkt. No. [125] at 6-10.

The third factor weighed particularly heavily against granting the motion for interlocutory appeal at that time. "An interlocutory appeal will materially advance the termination of the litigation if it promises to advance the time for trial or shorten the time required for trial." Doe ex rel. M.W. v. DeKalb Cnty. Sch. Dist., 1:15-CV-03276, 2019 WL 13292975, at *2 (N.D. Ga. Jan. 17, 2019) (cleaned up). Discovery had concluded, and the first bellwether case was ready for trial. Certifying the question for interlocutory appeal, had the Eleventh Circuit even accepted it, would have meant staying the first bellwether trial on the eve of trial after all parties and the Court were ready for trial; waiting months for the case to be briefed, heard, and decided; reevaluating the case in the instance of a remand; and rescheduling all of the bellwether trials for a far later date. Accordingly, the Court found it more prudent and efficient to move forward with the first bellwether trial, after which Teva or Plaintiff could evaluate their learnings and possibly file a direct appeal, and the Court could reevaluate whether to delay the second and third bellwether trials to provide the parties with the opportunity to appeal before proceeding further.

The first bellwether trial, Rickard v. Teva Pharmaceuticals USA, Inc., No. 1:21-cv-03861-LMM (N.D. Ga.), resulted in a defense verdict. After the trial, the Court heard from the parties and determined that the best course would be to delay the next bellwether trial, which had been scheduled for May, to September so that the parties could digest the information gleaned from the first bellwether. No appeal was filed in the first bellwether case, but with the Court's leave, Teva filed the renewed motion for interlocutory appeal that is presently before the Court in the two remaining bellwether cases. The parties have informed the Court that uncertainty as to this preemption issue has impacted their ability to engage in fruitful settlement discussions.

## III.    DISCUSSION

In its renewed motion for interlocutory appeal, Teva again argues that the Court erred in determining that Dr. Liu's 2015 report applied retroactively to trigger the CBE exception and asks the Court to certify the same question to the Eleventh Circuit for interlocutory review:

> Whether information can retroactively qualify as "newly acquired" under the CBE exception where the information was not actually "acquired" by the drug manufacturing defendant before the relevant time period (i.e., before a plaintiff's ingestion or insertion of the prescription drug).

Dkt. No. [148] at 10. It also asks that the second bellwether case, Robere, which is scheduled for trial in September 2026, proceed as scheduled, and that the Court stay the third bellwether case, Braxton v. Teva Pharmaceuticals USA, Inc.,

No. 1:22-cv-00490-LMM (N.D. Ga.), pending resolution of the interlocutory appeal. Id. at 16 & n.4. At this juncture, and with the benefit of further discussion and briefing, the Court finds that this is the rare case warranting interlocutory review.

A.    **Controlling Question of Law**

Upon reconsideration, the Court finds that this case involves a controlling question of law. The Court recognizes that in this Circuit, certified questions must be abstract enough "to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." McFarlin, 381 F.3d at 1259. And, to Plaintiffs' point, the facts were important to the Court's holding on summary judgment: the circumstances driving the timing of Dr. Liu's analysis were key to the Court's determination that his study should qualify as "newly acquired information" despite the fact that it did not become available at a time when it could have made any difference to Plaintiffs. As the Court explained, the evidence showed that the information would have been timely acquired had Teva's conduct not delayed its discovery:

> [T]he evidence show[ed] that Defendants themselves caused the delay in discovering the information: that Defendants obscured the breakage reports by miscoding them; that the FDA had ordered a new study of the adverse event reporting to be undertaken years earlier, well before Plaintiffs had their Paragards placed[]; that Defendants simply failed to do it; and that once Teva did undertake the required analysis, both the breakage risk and the causal relationship became immediately apparent.

Dkt. No. [127] at 10-12. And, indeed, by framing the question broadly as "whether newly acquired information can be applied retroactively," Teva invites the Eleventh Circuit to dig into the record to establish the context of the question and misconstrues the reach of the Court's decision.

The Court did not decide the preemption issue as broadly as Teva's question suggests. Instead, to the Court, the question was whether a drug manufacturing defendant may avoid application of the CBE exception by delaying tactics of its own manufacture. Thus, by narrowing the question only slightly, to fit the facts of this case, the legal question comes into focus:

> Whether a study can retroactively qualify as "newly acquired" under the CBE exception where the study would have been timely "acquired" by the drug manufacturing defendant before the relevant time period (i.e., before a plaintiff's ingestion or insertion of the prescription drug) but for the drug manufacturing defendant's failure to comply with the FDA's requirement to conduct the study before that time.

The Court of Appeals need not get into the weeds of the case to determine whether such an equitable exception exists.

### B.    Substantial Ground for Difference of Opinion

The Court also remains convinced that the issue here creates substantial grounds for a difference of opinion. It is beyond dispute that this question, like many involving federal preemption, is a "difficult" one that the Eleventh Circuit has yet to address. See Ga. NAACP, 952 F. Supp. 2d at 1362. And courts that have wrestled with similar temporal questions have reached diverging conclusions. Compare, e.g., In re Taxotere (Docetaxel) Prods. Liab. Litig., 508 F. Supp. 3d 71,

84-85 (E.D. La. 2020) (holding that the preemption defense failed where newly acquired information permitting a CBE change was presented after the plaintiff began taking the drug but was discoverable, and disregarded by the defendant, years earlier); <u>Newman v. McNeil Consumer Healthcare</u>, No. 10-CV-01541, 2012 WL 39793, at *2, 9-11 (N.D. Ill. Jan. 9, 2012) (same), <u>with</u> <u>Gayle v. Pfizer Inc.</u>, 452 F. Supp. 3d 78, 88 (S.D.N.Y. 2020) (rejecting argument that defendant's failure to analyze preexisting adverse event reports constituted newly acquired information permitting a CBE change), <u>aff'd</u>, 847 F. App'x 79 (2d Cir. 2021); <u>also compare, e.g.,</u> <u>Wyeth v. Levine</u>, 555 U.S. 555, 569 (2009) (suggesting that it may be sufficient for a plaintiff to point to information that a manufacturer "should have had" but did not); <u>McGee v. Boehringer Ingelheim Pharms., Inc.</u>, No. 4:16-cv-2082, 2018 WL 1399237, at *4 (N.D. Ala. Mar. 20, 2018) (same); <u>Montalbano v. Ariad Pharms., Inc.</u>, No. 15-60508-CIV, 2015 WL 11198245, at *9 (S.D. Fla. Aug. 4, 2015) (same) <u>with</u> <u>Lyons v. Boehringer Ingelheim Pharms., Inc.</u>, 491 F. Supp. 3d 1350, 1364 (N.D. Ga. 2020) (suggesting that the plaintiff must establish that the manufacturer in fact had the information in time to modify its label). The equitable question is also a thorny one: while a black-letter rule wholly precluding a later-produced study from qualifying as "newly discovered information" under the CBE rule would undoubtedly be simpler to apply, Congress's intent to maintain state tort law as a means of consumer protection from unsafe drugs suggests that it did not mean to imply preemption where the

NDA holder itself manufactured the putative "impossibility" of complying with both federal and state law. See Wyeth, 555 U.S. at 574-79 (explaining that Congress enacted the FDCA not to preclude state tort actions but rather to enhance consumer protection against harmful products). The question therefore supplies fertile ground for difference of opinion.

### C.    Advancement of Litigation

An immediate appeal from the summary judgment order is also likely to materially advance the termination of litigation. The efficiencies to be gained by interlocutory appeal in these cases are particularly substantial. The preemption issue identified above as a controlling issue of law could be dispositive of the failure-to-warn claims not only in the two remaining bellwether cases but also in myriad others in this MDL of well over 3500 individual cases. Additionally, because appellate jurisdiction applies to the entire order certified to the Court of Appeals, the Court of Appeals could review the entire order upon granting interlocutory review, including the Court's rulings on the preemption of Plaintiffs' design-defect claims. Interlocutory review therefore could be dispositive of all claims in thousands of cases. Even if the Court of Appeals were only to take up the CBE issue, its decision would provide certainty likely to enable more informed settlement discussions and potentially avoid many months—and millions of dollars' worth—of work by the litigants and the Court.

It also bears noting that it is not clear that any of the preemption issues would timely reach the Court of Appeals on direct appeal. The first bellwether case, Rickard, resulted in a defense verdict and is not being appealed. Dkt. No. [154-1] at 9. Although the Court is proceeding with the next bellwether case, Robere, it is unclear as to whether it will provide a suitable platform for raising this issue before the Court of Appeals. The parties and Court would expend considerable resources in trying multiple bellwethers when the parties have indicated that this preemption issue has been a significant barrier to a global settlement. Accordingly, the Court concludes that certification for interlocutory review is likely to materially advance termination of this litigation.

### D.    Next Steps

#### 1.    *Certified Question*

For these reasons, the Court concludes that interlocutory appeal is both appropriate and would likely accelerate resolution of this massive litigation. Thus, the Court intends to certify the summary judgment orders in Robere and Braxton for interlocutory review. As indicated above, in doing so, the Court has not adopted the language Teva requested. As such, the Court is reluctant to move forward without hearing from the parties as to specific objections or suggestions to the proposed language. The parties shall have **SEVEN DAYS** to file objections to the Court's framing of the question for certification as set out above in Part III.A. and an additional **SEVEN DAYS** to file a response to any objections. These filings shall not exceed 10 pages.

2.    *Bellwether Trials*

The Court recognizes that the Court of Appeals may exercise its discretion to decline interlocutory review and that even if it does take up the appeal, it may be many months before a mandate is entered. Furthermore, discovery in <u>Robere</u> is complete, and, as it is only the second bellwether case, trial is likely to provide the parties with additional learning, despite <u>Robere</u>'s close resemblance to <u>Rickard</u>. Thus, while the Court will stay <u>Braxton</u> pending resolution of the motion for interlocutory appeal, <u>Robere</u> will remain on the September trial calendar. Additionally, the parties are **DIRECTED** to meet and confer to discuss parameters and a timeline for working up a second round of bellwether cases and to present a proposal to the Court within **30 DAYS** of the entry of this order.

## IV.   CONCLUSION

For the reasons set out above, Teva's Renewed Motion to Certify Order for Interlocutory Appeal is **CONDITIONALLY GRANTED IN PART**, pending receipt of objections. The second bellwether trial, <u>Robere v. Teva Pharmaceuticals USA, Inc.</u>, No. 1:22-cv-01583-LMM (N.D. Ga.), will proceed as scheduled, and the third bellwether trial, <u>Braxton v. Teva Pharmaceuticals USA, Inc.</u>, No. 1:22-cv-00490, is **STAYED** until further Order of the Court. The parties are **DIRECTED** to present a joint proposal for a second round of bellwether cases within **30 DAYS** of the entry of this order. The Clerk is **DIRECTED** to retain submission of the motion to certify order for interlocutory appeal until the

13

Court's final order on the motion. The Court will expedite rulings on the pending motions in <u>Robere</u>.

    **IT IS SO ORDERED** this 24th day of April, 2026.

**Leigh Martin May**
**Chief United States District Judge**