IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: PARAGARD IUD PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL DOCKET NO. 2974<br><br>1:20-md-02974-LMM<br>**This Document Relates to All Cases** |

**TEVA'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE TEVA'S FRCP 30(b)(6) DEPOSITION (MATERIALS & DESIGN – <u>DR. JOSEPH DEVITO) SECOND ERRATA SHEET</u>**

The current record for the entire litigation is undisputedly incorrect. Teva has submitted documentary evidence to show that Dr. DeVito misspoke when asked at his deposition about a document he had never seen before. Plaintiffs were advised of this mistake last August, within weeks of Teva learning in Dr. Mays's expert report how Plaintiffs interpreted Dr. DeVito's testimony. Despite Teva's multiple attempts to fix this error, Plaintiffs still seek to use this factual misstatement in every case in this MDL. Notably, nowhere in their motion do Plaintiffs cite any evidence to dispute that Dr. DeVito misspoke. This is far from a quest for truth at trial; it is gamesmanship that fairness dictates against. This Court should not permit every case to be tainted with testimony that is erroneous.

## <u>BACKGROUND</u>

The deposition testimony at the heart of Dr. DeVito's second errata sheet and Plaintiffs' motion to strike centers on Plaintiffs' presentation of a document Dr. DeVito had never seen before his deposition, followed by this key exchange:

> Q.   Are you aware that in 2007 that the polyethylene actually was different?
>
> A.   **No, I'm not aware that it was different**. When you say "different," different than what?
>
> Q.   Well, what happened is it went from the Alathon 2005 to the DuPont 20. Are you aware of that?
>
> A.   **No, I'm not aware of it other than what's in this document**.
>
> Q.   Okay. Well, it was Dupont 20 that eventually was being used starting in 2007, right?
>
> A.   Yes, that's what it states.
>
> Q.   **In fact, that's what was used during the time that Teva held the NDA**.
>
> A.   **Yes**.

Pls.' Ex. A, Dr. Joseph DeVito (June 3, 2025) Dep. at 185:24-186:16 (emphasis added). As is evidenced by this testimony, Dr. DeVito's answer relied on incorrect and misleading suggestions from Plaintiffs' counsel that are refuted by evidence in the record. Indeed, the document Plaintiffs' counsel was referencing (a January 2007 memorandum) states that the company tested Dupont 20, but not that Teva actually started using it to manufacture Paragard. Plaintiffs' own expert confirmed as much during the *Rickard* trial. *See* Ex. 1, 1/23/26 Tr. at 742-43. Plaintiffs have zero corroborating evidence for the statement.[1]

---

[1] At the *Rickard* trial, the only other evidence Plaintiffs offered to support their position on this point was a previously undisclosed 2008 email attaching the Material Safety Data sheet for Dupont 20. But Plaintiffs have not presented any evidence proving that Teva ever actually used Dupont 20 to manufacture Paragards that were implanted in patients.

Teva has attempted to clarify the record and correct the misstatement in the above exchange since July 24, 2025, when it received the report of Dr. Jimmy Mays, Plaintiffs' materials expert. Dr. Mays relied on what Dr. DeVito said as the basis for his opinion that the alleged change to DuPont 20 caused breakage rates to increase after 2007. In response, Teva took the following steps:

- Teva included a correction and explanation in the expert report of Dr. Stephanie Benight, which was served on August 18, 2025. *See* Dkt. No. [62-4] Benight Report at 34 (discussing her review of Paragard inventory records from 2016, 2018, and 2021—which Dr. Mays did not review—and indicating that DuPont 2005 was still being used to manufacture Paragard tees even as of 2021).

- Teva cross-examined Dr. Mays about his basis for saying that DuPont 20 was used in the manufacture of Paragard by Teva in 2007, and he admitted that he does not know if this is true. *See* Ex. 2, Mays Dep. (excerpt) at 129:5-129:10 ("Q. And Dr. Mays, can you confidently say that any Paragard Tee that was sold to the public was made out of DuPont 20? A. As I've already said earlier, I simply don't know.").

- Teva sought to call Dr. DeVito at trial to correct this error, but the Court would not allow it, concluding that Dr. DeVito could not correct his 30(b)(6) testimony via fact witness testimony at trial.

- Teva provided the Court with documentary evidence showing that DuPont 20 was **not** used by Teva **at any time** before 2013 (the relevant time period for *Rickard* and *Robere*) and the report of Dr. Benight that records as of 2021 indicated DuPont 2005 was still being used to manufacture Paragard. *See* January 18, 2026, Letter Brief, attached here as Ex. 3. Plaintiffs have no evidence to refute this. And they offer no corroborating evidence that the testimony from Dr. DeVito is true, yet they seek to preserve it from correction, not only during the *Rickard* trial and in advance of *Robere*, but now for all cases in the MDL.

- Teva was not permitted to introduce at trial the batch records and Certificates of Conformance – which identify the specific polyethylene material used to make each batch of Paragard Tees – as business records because they were produced by Cooper and not Teva, and by that time, Cooper had been dismissed from the case. The FDA requires those records to be kept and maintained by the NDA holder and, therefore, Cooper acquired possession of these records (including those created by Teva and its predecessors) when it obtained the Paragard NDA. As the owner of the records, Cooper produced them in discovery. These records undisputedly show that only Dupont 2005 was used, further illustrating that Dr. DeVito made a misstatement in his deposition.

Plaintiffs insist the jury should hear testimony that everyone else in the courtroom knows to be wrong. In the interest of justice and the jury's search for the truth, Plaintiffs should not be permitted to base one of their core liability theories in this litigation on that testimony. Thus, in an effort to make this crucial change and allow the *Robere* trial to proceed on a corrected record, Teva served a second errata sheet to correct Mr. DeVito's testimony. Teva acknowledges that it was served after the Rule 30(e) 30-day window for errata sheets. But given the importance of the correction—and Plaintiffs' inability to say that the correction is wrong—Teva urges this Court to permit the four changes in the second errata sheet.

## I.    The Eleventh Circuit permits substantive changes to depositions in errata sheets.

Federal Rule of Civil Procedure 30(e)(1) provides:

On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

> **(A)** to review the transcript or recording; and
> **(B)** if there are **changes in form or substance,** to sign a statement listing the changes and the reasons for making them.

(Emphasis added). The text of the rule itself, therefore, permits changes to substance in an errata sheet.

Just over a year ago, the Eleventh Circuit affirmed a district court's order allowing substantive changes to deposition testimony in an errata sheet. *Fernandez v. Seaboard Marine LTD*, 135 F.4th 939, 950 (11th Cir. 2025). In *Fernandez*, the

Court noted that it had never defined the limits of changes permitted under Rule 30 but confirmed that the text of Rule 30 expressly permits such changes. *Id*. Because of that, the district court did not abuse its discretion in allowing the plaintiff to change her testimony concerning ownership of stock from the "no" expressed in her deposition to a "yes" due to "confusion at the time of questioning, fatigue, and mistake." *Id*. The change in testimony was also supported by other corroborating evidence, indicating that the correction was consistent with the evidence to be submitted at trial. *Id*.

The rationale allowing such changes under a plain reading of the text of Rule 30(e) was underscored in *Garcia-Ramos v. Hamilton*, 2025 WL 2055533, at *1 (M.D. Ga. July 22, 2025). There, the court found that "[c]ontrary to Defendants' assertions and as recognized by the Eleventh Circuit [in *Fernandez*], Rule 30(e) specifically allows substantive changes in an errata sheet where the sheet is signed by the deponent and a reason is provided." *Id*. at *1; *see also id*. at *2 ("Again, the mere fact that the changes are substantive or material is irrelevant. Rule 30(e) specifically allows substantive changes—so long as the deponent signs the changes and states a viable reason for he changes."); *Wilkerson v. Carnival Corp*., 2025 WL 2269861, at *2 (S.D. Fla. June 17, 2025) (permitting substantive changes in an errata sheet "because a broader interpretation is more consistent with the plain language of Rule 30(e)"); *De Fernandez v. Seaboard Marine, Ltd.*, 2022 WL 2304513, at *3

(S.D. Fla. June 27, 2022) (discussing at length that it is the minority view in the Eleventh Circuit to preclude substantive changes in an errata sheet when a good reason, including confusion or mistake, is provided), *aff'd sub nom. Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939 (11th Cir. 2025).

Plaintiffs rely on *Norelus v. Denny's Inc.*, 628 F.3d 1270 (11th Cir. 2010) and cases cited therein, including pre-*Fernandez* decisions of the Eleventh Circuit and non-binding, extra-jurisdictional cases, to argue that substantive changes to deposition testimony are not permitted under Rule 30. Pls.' Br. at 4-5. Plaintiffs reliance on law that *Fernandez* has now called into question is unpersuasive and contrary to binding precedent here: *Fernandez*.

Moreover, the facts in *Norelus* "are so egregious as to be in a category certainly separate from this case, if not in a class of its own." *Garcia-Ramos*, 2025 WL 2055533, at *2. In *Norelus*, the plaintiff sued her former bosses, alleging almost daily rape, sexual abuse, and sexual harassment for a year. 628 F.3d at 1274. Other than the testimony of the plaintiff, there was no corroborating testimony as all fact witnesses refuted her allegations. Thus, the plaintiff's deposition and its varied and multiple contradictions were the only piece of evidence she had for her claims. Because of contradictions in her deposition testimony, the plaintiff submitted a 63-page errata sheet with 868 attempted material changes to her testimony, which the court referred to as a "novella-length errata sheet making a slew of material

changes." *Norelus*, 628 F.3d at 1281. In fact, the changes were so vast and substantive that they rendered "the eight days spent on Norelus's deposition a waste of time and money...." *Id*. at 1282. This peculiar set of facts were decisive in finding the errata sheet to be improper.[2] It was not merely that substantive changes were made, as Plaintiffs assert. Pls.' Br. at 4. *See also De Fernandez*, 2022 WL 2304513, at *4 (finding that *Norelus* did not "squarely set forth the standard regarding changes under Rule 30(e) at the motion to strike stage").

So, too, Plaintiffs' reliance on *ChemFree Corp. v. J. Walter, Inc*., 2008 WL 5234247 (N.D. Ga. Sept. 30, 2008) is not instructive. Once again, the errata sheet was lengthy and made many changes on a host of issues: 40 pages making substantial changes to 87 separate portions of the expert's deposition. *Id*. at *1. Moreover, unlike the procedural status here, the errata sheet in *ChemFree* was filed responsively to defeat defendants' motion for summary judgment, and the court noted that "substantive changes to deposition testimony are particularly suspect when they are offered in response to a motion for summary judgment." *Id*. at *2. Despite this, the court did not strike the errata only because it made substantive changes. Instead, the court considered the proposed reasons for the errata changes and found them lacking.

---

[2] The *Norelus* court was not discussing the errata sheet in a motion to strike; it was part of a motion for sanctions due to vexatious litigation conduct.

The facts from these cases are not on all fours with the situation here. Dr. DeVito's second errata sheet makes 4 changes—all on the same topic. The stated reason for the change is valid: Dr. DeVito knows that DuPont 20 was only tested by Teva and not employed in the production of Paragard by Teva, so clarification was needed. *See* Pls.' Ex. D, DeVito Second Errata Sheet. While his first errata sheet included 58 changes, even Plaintiffs admit that those changes were not substantive in nature and included "primarily minor grammatical and transcription edits." Pls.' Br. at 2. Thus, counting both errata sheets together, Dr. DeVito – who was deposed three times in this litigation and provided over 700 pages of recorded testimony – has made just 4 substantive changes on a single topic with a valid explanation for the changes. Teva has submitted corroborating evidence that the errata sheet change is correct, and Plaintiffs have not refuted that. The situation at hand is not comparable to the egregious abuse of the errata process in the cases that Plaintiffs cite.

**II.    This Court has the authority to allow the second errata sheet changes, and Plaintiffs are not prejudiced by the changes.**

    **A.    The second errata sheet may be submitted late when additional evidence supports the four changes made.**

This Court has the inherent authority to permit Dr. DeVito's second errata sheet. Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed,

administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Teva recognizes that the second errata sheet is past the 30-day time window in Rule 30. Of note, however, Rule 30(e) provides that a deponent "must be allowed 30 days" to make changes; it does not say "only" 30 days are permitted. Given the recent decision in *Fernandez* affirming a broader interpretation of the rule under the plain text of the rule itself, this Court would not abuse its discretion by extending the time period as is appropriate under the unique circumstances of this MDL. *Fernandez*, 135 F.4th at 950 (finding district court did not abuse its discretion by allowing errata sheet changes that the text of Rule 30(e) permits); *see also Cultivos Yadran, S.A. v. Rodriguez*, 258 F.R.D. 530, 533 (S.D. Fla. 2009) (a broad interpretation of Rule 30 "furthers the purpose of the discovery process–to allow the parties to elicit the true facts before trial.")

As discussed, the factual inaccuracy in Dr. DeVito's deposition has long been known to Plaintiffs. They had the opportunity to explore Teva's position on this factual error when deposing Dr. Benight. Despite knowing since August 2025 that Dr. DeVito misspoke in his June 2025 deposition and was incorrect in affirming use of DuPont 20 by Teva in manufacturing Paragard rather than only testing, Plaintiffs continue to cling to this inaccuracy, doing all they can to ensure that no explanation or attempt to tell the truth on this issue is ever heard by a jury.

10

**B.    Plaintiffs' citation to the dissent in an Eleventh Circuit opinion does not state the correct legal standard.**

Plaintiffs rely upon the dissenting opinion in *Norelus* and the law cited therein to argue that "errata sheets produced after the deadline are uniformly disregarded and treated as a nullity." Pls.' Br. at 3. The dissenting opinion in *Norelus* called for a strict and onerous application of Rule 30(e), giving the courts little leeway under that Rule. *Norelus*, 628 F.3d at 1304. As explained above, *Fernandez* calls into question the validity of such a restrictive interpretation of the rule.

The Court and the parties have an obligation to provide the jury with accurate information in their search for truth. Corroborating evidence establishes that DuPont 20 was not used by Teva in a manufactured Paragard prior to 2013, the relevant time period for both Rickard and Robere. Likewise, Dr. Benight reviewed records dated as recently as 2021, which continued to show DuPont 2005 was being used to manufacture Paragard tees. The batch records and documents identified by Dr. Benight in the Letter Brief on January 18, 2026, fully support Dr. DeVito's errata sheet. Plaintiffs have not—and cannot—refute that these records conclusively state that DuPont 20 was <u>not</u> used by Teva in the time periods analyzed. Allowing this error to stand uncorrected burdens every trial going forward with a mini-trial on this issue. Or worse, the incorrect testimony will somehow be viewed as binding on

11

Teva.[3] That is a distinctly and patently unfair result, but one that is unavoidable if Plaintiffs' overly restrictive view of Rule 30 is applied here.

## III. While Plaintiffs cannot establish prejudice in allowing the correction, alternative remedies to striking the errata sheet can be employed.

There are alternative safeguards that can be employed here that preclude the "extreme remedy" of striking this crucial evidence. As recognized in *Cruz v. Versogenics, Inc.*, 2017 WL 11093618, at *8 (N.D. Ga. Aug. 2, 2017), Rule 30 permits substantive changes to deposition testimony via errata sheets, and the existence of other supporting record evidence for the change underscores this. Rather than precluding the jury from hearing the explanatory testimony—which occurs with Plaintiffs' restrictive reading of Rule 30 here—this Court may order that the original deposition testimony be retained as part of the record, making the unamended testimony admissible at trial. *Id*. at *12. That would permit the opposing party to

---

[3] To be clear, even if Dr. DeVito's unamended testimony is retained as part of the record, that testimony would not constitute a judicial admission that would preclude Teva from presenting other evidence demonstrating that the unamended testimony is incorrect on this specific point. *See*, *e.g.*, *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015) ("Rule 30(b)(6) testimony is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements."); *Cont'l Cas. Co. v. First Fin. Emp. Leasing*, Inc., 716 F. Supp. 2d 1176, 1190 (M.D. Fla. 2010) (a designated corporate representative is "free to testify differently at trial from the way he testified in a deposition, albeit at the risk of having his credibility impeached by introduction of the deposition testimony"); 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, § 2103 (Supp. 2007) ("the testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party.'").

impeach the witness with the unamended testimony and allow the jury to weigh the credibility of the amended testimony versus the unamended testimony. Weighing credibility is expressly within the jury's province and is the better course of action to striking the explanatory errata testimony entirely.

Alternatively, the Court could permit the limited re-opening of Dr. DeVito's testimony, at Teva's expense, to allow Plaintiffs to explore this limited line of testimony. *Cruz*, 2017 WL 11093618, at \*12 (collecting authority for this alternative); *see also Cultivos Yadran*, 258 F.R.D. at 533, n.1 (after denying motion to strike errata sheet, noting "[t]he parties may address the issue of whether the plaintiff should be permitted to reopen [the] deposition and inquire into the circumstances concerning the errata sheet at the … informal discovery conference before the undersigned.").

## CONCLUSION

Evidence at trial should support a jury's search for truth. Allowing Plaintiffs to stand behind a known misstatement of fact impedes that search. Plaintiffs are not surprised by Dr. DeVito's errata, as they have long known that what Dr. DeVito said was erroneous. Teva has identified corroborating evidence for the errata sheet changes and Plaintiffs have not refuted it. Defendants urge this Court to permit the four limited changes in Dr. DeVito's second errata sheet to be admitted at trial and become part of the record in this MDL.

13

Respectfully submitted,

| | |
|---|---|
| _/s/ Christopher D. Morris_ | _/s/ Pamela L. Ferrell_ |
| Christopher D. Morris | Pamela L. Ferrell |
| Butler Snow LLP | Butler Snow LLP |
| Mississippi Bar No. 102981 | Georgia Bar No. 596713 |
| Renaissance at Colony Park | 170 Peachtree Street NE |
| Suite 1400 | Suite 1900 |
| 1020 Highland Colony Parkway | Atlanta, GA 30309 |
| Ridgeland, MS 39158 | Telephone: (678) 515-5011 |
| Telephone: (601) 985-4437 | pamela.ferrell@butlersnow.com |
| chris.morris@butlersnow.com | |
| | |
| **_Co-Lead Counsel for the Teva Defendants_** | **_Co-Lead Counsel for the Teva Defendants_** |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that I have prepared the foregoing in compliance with Local Rule 5.1 in Times New Roman 14-point font.

This 11th day of May, 2026.

_/s/ Christopher D. Morris_
Christopher D. Morris, Esq.

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to registered attorneys of record.

This 11th day of May, 2026.

/s/ Christopher D. Morris
Christopher D. Morris, Esq.