

# Deposition of
# **Joseph DeVito**
# **\*Confidential\***

**Date:** June 3, 2025

**Case:** PARAGARD IUD PRODUCTS LIABILITY LITIGATION

**No.** 1:22-CV-02974-LMM

**Court Reporter:** Renee J. Ogden, CSR-3455, RPR

Paszkiewicz Court Reporting
Phone: (618) 307-9320 / (855) 595-3577 toll-free
Fax: 618-855-9513
Web Site: www.spreporting.com

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION


IN RE: PARAGARD IUD    )        MDL DOCKET NO. 2974

PRODUCTS LIABILITY     )        (1:20-md-02974-LMM)

LITIGATION             )        1:22-CV-02974-LMM


_____/


The Videoconference Deposition of JOSEPH DE VITO

Taken on behalf of the Plaintiffs

At 54 State Street

Albany, New York

Commencing at 8:57  a.m.

Tuesday, June 3, 2025

Before Renee J. Ogden, CSR-3455, RPR.

Page 2

APPEARANCES:

EDWARD A. WALLACE
Wallace Miller
150 North Wacker Drive
Suite 1100,
Chicago, Illinois 60604
(312) 626-9760
    Appearing on behalf of the Plaintiffs.

MOLLY CONDON WELLS
Wallace Miller
150 North Wacker Drive
Suite 1100,
Chicago, Illinois 60604
(312) 626-9760
    Appearing on behalf of the Plaintiffs.

Page 3

C. ANDREW CHILDERS
Childers, Schlueter & Smith
1932 North Druid Hills Road
Suite 100
Atlanta, Georgia 30319
(404) 419-9500
AChilders@cssfirm.com.
    Appearing via videoconference on behalf of the
    Plaintiffs.

SUZANNE E. SMITH
Porter & Malouf PA
825 Ridgewood Road
Ridgeland, Mississippi 39157
(866) 957-1173
Suzanne@portermalouf.com
    Appearing via videoconference on behalf of the
    Plaintiffs.

Page 4

CHAD R. HUTCHINSON
Butler Snow
1020 Highland Colony Parkway
Suite 1400
Ridgeland, Mississippi 39157
(601) 985-4401
Chad.Hutchinson@butlersnow.com
    Appearing on behalf of the Defendant.

JIN YOSHIKAWA
Butler Snow LLP
1320 Adams Street
Suite 1400
Nashville, Tennessee 37208
(615) 651-6622
Jin.Yoshikawa@butlersnow.com
    Appearing via on behalf of the Defendant.


ALSO PRESENT:
Mike Lewis, CLVS - Video Technician
Teresa Kapelle - Fibich Leebron Copeland & Briggs

Page 5

TABLE OF CONTENTS

WITNESS                    PAGE
JOSEPH DE VITO
EXAMINATION                    11
BY ATTORNEY WALLACE
EXAMINATION                    202
BY ATTORNEY WELLS
EXAMINATION                    300
BY ATTORNEY HUTCHINSON
RE-EXAMINATION                    348
BY ATTORNEY WALLACE


INDEX TO EXHIBITS
EXHIBIT                    PAGE
(Exhibits 1-4, 6-9, 19-24, 28-46
Defense Exhibits 1-4, 5-7, 9-10 attached to transcript.)

DEPOSITION EXHIBIT 1                    12
Joseph De Vito Curriculum Vitae
DEPOSITION EXHIBIT 2                    36
Second Amended Notice of Deposition
DEPOSITION EXHIBIT 3                    92
New Drug Application 9/4/81

HIGHLY                           Joseph DeVito                    HIGHLY
CONFIDENTIAL                       6/3/2025                    CONFIDENTIAL

Page 6

DEPOSITION EXHIBIT 4                95
9/4/81 NDA
DEPOSITION EXHIBIT 6                125
1/18/90 Handwritten Notes
DEPOSITION EXHIBIT 7                136
GMP Audit of Ametex Westchester
Plastics Division
DEPOSITION EXHIBIT 8                146
4/26/91 Richard Mach Letter
DEPOSITION EXHIBIT 9                151
5/4/92 James R. Collie Letter
DEPOSITION EXHIBIT 19               156
DuPont Packaging & Industrial Polymers
DuPont 20 Series Resins Product Data
Sheet
DEPOSITION EXHIBIT 20              160
9/29/05 Background on DuPont Resin and
Molded T blend
DEPOSITION EXHIBIT 21             164
8/21/06 DuPont Report - Assessment of
Material Supply
DEPOSITION EXHIBIT 22              173
1/31/07 Paragard Alternative Vendor
DEPOSITION EXHIBIT 23              188
MDL2974COOPERSURG-00374833-4835

Page 8

DEPOSITION EXHIBIT 37              245
KEMA Report
DEPOSITION EXHIBIT 38             247
5/8/2008 KEMA Report
DEPOSITION EXHIBIT 39             252
7/30/20 KEMA Report
DEPOSITION EXHIBIT 40             258
6/15/11 Global Regulatory Audit
DEPOSITION EXHIBIT 41            268
Establishment Inspection Report
3/15/2012
DEPOSITION EXHIBIT 42            275
Establishment Inspection Report
6/25/2013
DEPOSITION EXHIBIT 43            277
Global Internal Audit
August 2013
DEPOSITION EXHIBIT 44            290
Global Risk Assessment September 2013
DEPOSITION EXHIBIT 45            293
Polymer Conversion Facility Audit
DEPOSITION EXHIBIT 46            296
Global Risk Assessment Audit - Executive
Summary Report

Page 7

DEPOSITION EXHIBIT 24             190
The TCu380A Intrauterine Contraceptive
Devise (IUD) Specification,
Prequalification and Guidelines for
Procurement, 2010
DEPOSITION EXHIBIT 28             206
Finishing Enterprises
Summary of Findings
DEPOSITION EXHIBIT 29            216
Mdl2974coopersurg00004432-4438
DEPOSITION EXHIBIT 30            217
11/15/84 438 Response
DEPOSITION EXHIBIT 31            219
11/24/87 Summary of Findings
DEPOSITION EXHIBIT 32            223
7/26/90 Summary of Findings
DEPOSITION EXHIBIT 33            226
11/19/91 GMP Audit of Finishing
Enterprises
DEPOSITION EXHIBIT 34            236
1992 Field Examination
DEPOSITION EXHIBIT 35           239
12/93 to 1/94 FDA 483
DEPOSITION EXHIBIT 36            241
1/26/2005 EIR

Page 9

DEPOSITION DEFENSE EXHIBIT 1           303
Application for Paragard NDA
DEPOSITION DEFENSE EXHIBIT 2           306
New Drug Application
DEPOSITION DEFENSE EXHIBIT 3           309
Drug Master File
DEPOSITION DEFENSE EXHIBIT 5           317
Product Labeling
DEPOSITION DEFENSE EXHIBIT 6           318
Standard Response Letter
DEPOSITION DEFENSE EXHIBIT 7           320
Standard Response Letter
DEPOSITION EXHIBIT DEFENSE 9           332
Paragard Training For QAS Department
DEPOSITION EXHIBIT DEFENSE 10          334
Polymer Conversions' Facility Audit

Joseph DeVito
6/3/2025

Page 10

Albany, New York
Tuesday, June 3, 2025
8:57 a.m.

VIDEO TECHNICIAN:  We are now on the record.  This is the videotaped deposition of Joseph De Vito.  Today's date is June 3rd, 2025.  The time is now 8:57 a.m. Eastern.

This is the case of in re: Paragard IUD Products Liability Litigation, Case No. 1:20-MD-02974-LMM/2974.

This case is pending in the United States District Court for the Northern District of Georgia, Atlanta Division.

My name is Mike Lewis.  I'm a certified legal video specialist with the National Court Reporters Association and I am representing Paszkiewicz Litigation Services.  I swear and affirm to record the proceedings fairly and accurately.

The court reporter is Renee Ogden, also representing Paszkiewicz Litigation Services.

And the witness is testifying from the offices of Greenberg Traurig, 54 State Street, 6th

Page 11

Floor, in Albany, New York, ZIP code 12207.

There is also a videoconference connection.

Will all parties present please state their appearances for the stenographic record, starting with the taking attorney.

ATTORNEY WALLACE:  Ed Wallace on behalf of the plaintiffs.

ATTORNEY WELLS:  Molly Wells on behalf of the plaintiff.

ATTORNEY YOSHIKAWA:  Jin Yoshikawa on behalf of defendant.

ATTORNEY HUTCHINSON:  Chad Hutchinson, counsel for Teva.

THE VIDEOGRAPHER:  The court reporter will now swear in the witness.

JOSEPH DE VITO, was thereupon called as a witness herein, and after having first been duly sworn or affirmed to testify to the truth, the whole truth and nothing but the truth, was examined and testified as follows:

EXAMINATION
BY ATTORNEY WALLACE:
Q. Good morning.
A. **Good morning.**

Page 12

Q. Could you state and spell your name for the record, please?
A. **Joseph De Vito.  J-o-s-e-p-h, d-e, space, capital V-i-t-o.**

MARKED FOR IDENTIFICATION:
DEPOSITION EXHIBIT 1
Joseph De Vito Curriculum Vitae
9:00 a.m.
BY ATTORNEY WALLACE:
Q. And you have in front of you Exhibit 1, correct?
A. **Correct.**
Q. What is it?
A. **My resume.**
Q. Is it up to date?
A. **Yes.**
Q. Is it true and accurate?
A. **Yes.**
Q. Okay.  And did you actually prepare this resume?
A. **Yes.**
Q. Okay.  To -- and thank you for providing it to us before the deposition, by the way.  I'm going to try to walk through this as quickly as I can.

First of all, you received a bachelor of science in pharmacy in 1982 from the Albany College of Pharmacy here in Albany, New York; is that

Page 13

correct?
A. **Yes.**
Q. You then received a doctor of pharmacy in 1984; is that right?
A. **Yes.**
Q. And that was from the College of Pharmacy at the Medical University of South Carolina in Charleston, South Carolina?
A. **Yes.**
Q. Did that program take two years?
A. **Yes.**
Q. So you went straight from your bachelor's degree right into your doctorate?
A. **Yes.**
Q. And then the year after, it's my understanding, you also did a research fellowship from June of '84 to June of 1985; is that right?
A. **Yes.**
Q. Can you tell us what that was and where it was?
A. **Yes.  It was a fellowship in Buffalo, New York, with the Millard Fillmore, the clinical pharmacokinetics lab at the Millard Fillmore with Jerry Schentag, and that program specifically looks at different areas of pharmacokinetics, is kind of their specialty.**

Joseph DeVito
6/3/2025

Page 186

ATTORNEY HUTCHINSON:  Objection, scope.

A.  No, I'm not aware that it's different.  When you say "different," different than what?

BY ATTORNEY WALLACE:

Q.  Well, what happened is it went from the Alathon 2005 to the DuPont 20.

Are you aware of that?

A.  No, I'm not aware of it other than what's in this document.

Q.  Okay.  Well, it was Dupont 20 that eventually was being used starting in 2007, right?

A.  Yes.  That's what it states.

Q.  In fact, that's what was used during the time that Teva held the NDA?

A.  Yes.

Q.  Okay.  Transition just for a second, sir.  I keep wanting to call you Doctor, but I don't want to tick you off either way.

A.  That's fine.

Q.  Joe is a little bit too informal, but just bear with me.  I just have some basic questions.  Okay?

I want to transition topics.  So you can put that to the side for a minute.

What is a master production record as it relates to a Teva product?

Page 187

A.  Yeah.  A master production record is the record we use -- it would be the term used for the record we use to make the product, to manufacture the product.

Q.  What do you mean by that?

A.  When you make the product, you make sure you have all of the components needed to make it.  You receive those in.  You know their quantities.  And you are getting ready to manufacture the batch, so you know what quantities you need for that batch.

And then you get ready to manufacture using that production record.  And it gives you all the, you know, instructions on, you know, how to run the machine, what in-process tests to look at, and to assure you are making the product the way it's supposed to be made.

Q.  What is a batch production record?

A.  A batch production -- it's the record that we document when we make the product.

Q.  You just used the word "batch" in your answer.  So why don't you tell the jury what a batch is?

A.  Okay.  A batch is a representative amount of product that is uniform, and usually a batch has a theoretical amount of units you would be setting out to make.  So that's typically what a batch is.

Page 188

It's a uniform size and you are setting out to make that quantity of material.

Q.  Back to polymers.  Was Polymer Conversions ever told about the switch from the Alathon 2005 to the DuPont 20?

A.  Yeah.  I don't have direct documentation, but they would have to know of the difference, because when you receive in material, you have to confirm the receipt of the material and the vendor.  So on the receiving they would see a different name.

So I would -- I don't have the documentation in front of me, but you would have to, in our industry, know that the material is different because you receive it in, and that's one of the first things we do on receiving is verify the material and the name.  So you would see the different name and you would say -- you would go through a change in your system.

MARKED FOR IDENTIFICATION:
DEPOSITION EXHIBIT 23
MDL2974COOPERSURG-00374833-4835
2:13 p.m.

BY ATTORNEY WALLACE:

Q.  Exhibit 23 has been handed to you and your counsel.

Have you seen this email exchange

Page 189

before?

A.  No, I don't.

Q.  Okay.  I understand you have never seen it before and you are not on it, but given your role as 30(b)(6) witness in this case and the fact that it relates to the materials and the molds, which we have talked about quite a bit today, can you try to explain to us, if you can, what Mr. Dan Corbett is telling Ben Harp and others in November of 2009 about the molds?

ATTORNEY HUTCHINSON:  Objection, speculation, scope.

Do you understand what is happening there, sir?

A.  Yeah.  They're studying the -- looking at the molds, and they are looking at the results from the -- the flex and memory results from, you know, evaluating the different molds.

BY ATTORNEY WALLACE:

Q.  And they're different from the tests that were occurring in years past, correct?

A.  Well, they are saying there's -- yeah, there's variability when they look at the different design of -- I'll call it design of experiments, the different DOE parameters that they were looking at,

HIGHLY
CONFIDENTIAL

Joseph DeVito
6/3/2025

HIGHLY
CONFIDENTIAL

Page 190

such as melt temperature and mold temperature. They were doing a design of experiments using these parameters to look at how it affects the test results.

Q. And that was with this new resin, correct?

A. Yeah, I would assume -- I mean, it's in -- I mean, it doesn't list like what -- you know, I don't see the name of the resin on here.

Q. But you told me the resin changed in '07, correct?

A. By the year, yeah. By the year. Because it's 2009 that the design of experiment would be with the DuPont material.

Q. 20?

A. Yeah, DuPont 20.

MARKED FOR IDENTIFICATION:
DEPOSITION EXHIBIT 24
The TCu380A Intrauterine Contraceptive Devise (IUD) Specification, Prequalification and Guidelines for Procurement, 2010
2:18 p.m.

BY ATTORNEY WALLACE:

Q. 24. We're getting close.

I'm begging you, sir, to tell me you have seen that before.

Page 191

A. No. I have not seen this. I see the World Health Organization on this.

Q. Did you know that in 2010 that this device was studied in detail regarding its specifications and maintenance and all sorts of things?

ATTORNEY HUTCHINSON: Objection, form.

BY ATTORNEY WALLACE:

Q. Were you aware of that?

ATTORNEY HUTCHINSON: Objection, form, speculation, scope.

A. Yeah. I'm aware from reading the -- you know, by reading the NDA and by knowing that the Population Council developed a product, that they developed a product, you know, using -- or with the World Health Organization.

BY ATTORNEY WALLACE:

Q. Okay. The -- did the Nazar -- are you familiar with the Nazar study on the device?

A. I am not familiar with the Nazar study, no.

Q. Is it your opinion that this -- or is it your understanding, let me say.

Is it your understanding that this was an actual study on the Paragard device?

ATTORNEY HUTCHINSON: Objection, scope, form, foundation.

Page 192

A. I have never seen this document, but it looks like this is what the World Health Organization used for, you know, contraception, you know, as part of their programs, you know, in the world to help women with contraception. And this would be their document that they would use.

BY ATTORNEY WALLACE:

Q. And the TCu380A IUD is what?

A. That is a Paragard.

Q. Okay. And that's what they were studying?

A. Yes.

Q. Okay. One of the things, and I will represent to you, sir, I just have some general questions about it, was there was some concern that the device did not use antioxidants in the polyethylene.

Do you know whether or not Teva ever considered using antioxidants in the polyethylene to ward off degradation or complications over time?

ATTORNEY HUTCHINSON: Objection, scope.

A. No. I'm not aware that we ever contemplated using antioxidants.

BY ATTORNEY WALLACE:

Q. Would there be anything in Teva's perspective that would prohibit it from using antioxidants to help preserve the integrity of polyethylene T?

Page 193

ATTORNEY HUTCHINSON: Objection, scope.

A. Well, I'm not -- I don't think there is anything that would inhibit it, but you would have to have a reason to do it, you know, to study it. I'm not sure we're aware of a reason to -- you know, I'll say to study it or to use it.

BY ATTORNEY WALLACE:

Q. Why don't you look at 6133.

A. Okay.

Q. It's toward the back of the document.

A. Okay.

Q. The second full paragraph.

A. Okay.

Q. Beginning with the word "the specifications."

Do you see that?

A. Yes.

Q. It says that "the specifications for the materials of construction of the device needed to be updated."

Do you see that paragraph?

A. Yes.

Q. All right. Specifically in the middle of that paragraph, it talks about the fact that, in general, polyethylenes are prone to oxidation and it is common practice to add antioxidants to these