IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


PAULINE RICKARD,            )
                           )
            PLAINTIFF,     )
                           )          DOCKET NUMBER
      VS.                  )          1:21-CV-3861-LMM
                           )
TEVA PHARMACEUTICALS USA,   )          ATLANTA, GEORGIA
INC., ET AL.,              )          JANUARY 30, 2026
                           )
            DEFENDANTS. )
_____)


VOLUME 8 OF 10
TRANSCRIPT OF JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE LEIGH MARTIN MAY,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:          ERIN COPELAND
                            FIBICH, LEEBRON, COPELAND & BRIGGS
                            HOUSTON, TEXAS  77005

                            ANDREW CHILDERS
                            CHILDERS, SCHLUETER & SMITH, LLC
                            ATLANTA, GEORGIA 30319



            (APPEARANCES CONTINUED ON THE NEXT PAGE.)



*MECHANICAL STENOGRAPHY OF PROCEEDINGS
AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY*

OFFICIAL COURT REPORTER:     MONTRELL VANN, RPR, RMR, RDR, CRR
                            2160 UNITED STATES COURTHOUSE
                            75 TED TURNER DRIVE, SOUTHWEST
                            ATLANTA, GEORGIA  30303
                            (404)215-1549

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

APPEARANCES CONTINUED

FOR THE PLAINTIFFS:          FIDELMA FITZPATRICK & ALEXIS LILLY
                             MOTLEY, RICE, LLC
                             PROVIDENCE, RHODE ISLAND  02903
                             MT. PLEASANT, SOUTH CAROLINA  29464

                             BUFFY MARTINES
                             LAMINACK, PIRTLE, MARTINES
                             HOUSTON, TEXAS  77006

                             NICOLE BERG
                             KELLER, POSTMAN, LLC
                             CHICAGO, ILLINOIS  60606

FOR THE DEFENDANTS:          PAMELA FERRELL, JORDAN WALKER &
                             KYLE CUMMINS
                             BUTLER, SNOW, LLP
                             ATLANTA, GEORGIA  30309

                             SHAYNA COOK & RAMI FAKHOURI
                             GOLDMAN, ISMAIL, ET AL.
                             CHICAGO, ILLINOIS  60606

I N D E X

PAGE

DEFENDANT'S WITNESS

JOSEPH DEVITO

  DIRECT EXAMINATION BY MR. FAKHOURI          1443

REPORTER'S CERTIFICATE                       1402

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

*(IN ATLANTA, FULTON COUNTY, GEORGIA, JANUARY 30, 2026, IN OPEN COURT.)*

THE COURT:  SOMEBODY CLOSE THE DOOR BACK THERE, PLEASE.

GOOD MORNING.

MS. COOK:  GOOD MORNING, YOUR HONOR.

THE COURT:  OKAY.  COUPLE OF ISSUES THIS MORNING. LET'S FIRST TALK ABOUT THE POLYMER CONVERSION DOCUMENTS.  I WILL SAY THAT JUST BECAUSE I HAVE RULED ONE WAY THAT A PARTY TRIES TO ADMIT A DOCUMENT DOESN'T MEAN THAT THEY CAN'T TRY TO ADMIT IT A DIFFERENT WAY WITH A DIFFERENT WITNESS.  SO JUST THE FACT THAT I'VE ALREADY RULED THAT THEY'RE NOT TEVA BUSINESS RECORDS BASED ON WHAT THEY WERE TRYING TO DO BEFORE DOES NOT NECESSARILY MEAN THAT THEY CAN'T TRY TO DO IT ANOTHER WAY.

TELL ME FROM DEFENDANTS' PERSPECTIVE HOW YOU EXPECT MR. DEVITO TO HAVE FOUNDATION TO ADMIT THESE AS BUSINESS RECORDS.

MR. FAKHOURI:  YES, YOUR HONOR.  AND THAT IS, YOU KNOW, THE PRINCIPAL REASON DR. DEVITO IS HERE TODAY, TO LAY FOUNDATION FOR THOSE DOCUMENTS.  HE'S GOING TO EXPLAIN HOW THOSE DOCUMENTS BECAME TEVA BUSINESS RECORDS WHEN TEVA TOOK RESPONSIBILITY FOR THE N.D.A.  HE WILL EXPLAIN HOW THOSE DOCUMENTS ARE MAINTAINED AT THE NORTH TONAWANDA SITE PURSUANT TO REGULATORY REQUIREMENTS THAT HAVE TO BE KEPT ON-SITE THERE.

HE'LL EXPLAIN HOW MAINTAINING THOSE DOCUMENTS IS PART OF

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

THE QUALITY SYSTEM THAT HE WAS RESPONSIBLE FOR OVERSEEING IN TEVA, INCLUDING FOR THE NORTH TONAWANDA MANUFACTURING SITE FOR A NUMBER OF YEARS.  HE'LL ALSO EXPLAIN HOW WHEN TEVA TRANSFERRED THE N.D.A. TO COOPER, RESPONSIBILITY FOR THE SITE AND FOR THOSE RECORDKEEPING PRACTICES AND THE RECORDS THEMSELVES ALSO PASSED TO COOPER BECAUSE THE DOCUMENTS, BY REGULATION, HAVE TO STAY AT THE SITE.  AND SO HE WILL SPEAK TO ALL OF THAT BASED ON HIS EXPERIENCE AND KNOWLEDGE AS THE PERSON WHO OVERSAW QUALITY FOR TEVA FOR A NUMBER OF YEARS UNTIL JUST A FEW MONTHS AGO.

THE COURT:  HAD HE SEEN THESE DOCUMENTS BEFORE THIS TRIAL?

MR. FAKHOURI:  SO HE HAD SEEN DOCUMENTS OF THIS TYPE. HE IS AWARE --

THE COURT:  HAS HE SEEN THESE DOCUMENTS BEFORE THIS TRIAL?

MR. FAKHOURI:  THESE SPECIFIC CERTIFICATES OF CONFORMANCE, I DON'T KNOW THAT HE CAN SAY HE SAW THESE PARTICULAR CERTIFICATES.  BUT THESE CERTIFICATES ARE PART OF THE QUALITY-KEEPING RECORDKEEPING SYSTEM, THEY'RE PART OF THE OVERALL MANUFACTURING DOCUMENTATION FOR THE SYSTEM, AND THEY'RE DOCUMENTS THAT HE WAS FAMILIAR WITH, THAT HE KNEW ABOUT, THAT THE PEOPLE HE OVERSAW WERE RESPONSIBLE FOR KEEPING IN THE REGULAR COURSE OF BUSINESS.  AND I DO BELIEVE, YOUR HONOR, BEFORE THIS TRIAL, HE HAS SEEN THOSE DOCUMENTS.

THE COURT:  BEFORE HIS DEPOSITIONS, HAD HE SEEN THE DOCUMENTS?

MR. FAKHOURI:  THAT, I DON'T KNOW, YOUR HONOR.

THE COURT:  OKAY.  BUT HE HAD NOT SEEN THEM DURING HIS WORK, BUT HE WAS FAMILIAR WITH THESE TYPES OF DOCUMENTS.

MR. FAKHOURI:  THESE -- THESE TYPES OF DOCUMENTS, YES, YOUR HONOR.  AND ONE THING HE -- I BELIEVE HE WILL SAY IS THAT HE DID NOT REVIEW THESE SPECIFIC DOCUMENTS BEFORE THE DEPOSITION THAT HE GAVE, AND NOW HE IS EXPLAINING HIS UNDERSTANDING OF WHAT THESE PARTICULAR DOCUMENTS SAY.  BUT HE HAS THE FOUNDATION AND EXPERIENCE TO EXPLAIN WHAT THE DOCUMENTS ARE, WHY THEY ARE BUSINESS RECORDS OF THE NORTH TONAWANDA MANUFACTURING SITE.

THE COURT:  OKAY.  LET ME HEAR FROM PLAINTIFFS.

MS. FITZPATRICK:  THANK YOU, YOUR HONOR.  I THINK WHAT'S IMPORTANT IS WHAT MR. FAKHOURI JUST SAID, WHICH IS THAT MR. DEVITO HAS NOT SEEN THESE PARTICULAR DOCUMENTS.  MERELY SEEING DOCUMENTS THAT MAY LOOK LIKE THIS DURING THE COURSE OF YOUR EMPLOYMENT IS NOT ENOUGH TO LAY THE FOUNDATION.  THEY HAVE CALLED MR. DEVITO SPECIFICALLY AS A FACT WITNESS HERE.  MR. DEVITO CAN ONLY TESTIFY AS TO WHAT HE PERSONALLY OBSERVED OR HE PERSONALLY SAW DURING HIS EMPLOYMENT WITH TEVA.  ALL OF THESE DOCUMENTS, EVERY SINGLE ONE OF THEM PREDATES HIS EMPLOYMENT WITH TEVA.  SO ALL OF THEM WERE GENERATED, RECEIVED BY THE COMPANY BEFORE HE EVER CAME TO THE SITE.

WHAT MR. FAKHOURI SAID AS TO WHAT WAS TRANSFERRED TO TEVA WHEN THEY PURCHASED THE N.D.A., MR. DEVITO HAS NO PERSONAL KNOWLEDGE OF THAT. HE WAS NOT AT TEVA WHEN THEY ACQUIRED PARAGARD. PARAGARD WAS ACQUIRED IN 2008. HE DID NOT COME TO THE COMPANY UNTIL JULY OF 2012. THE FACT THAT THERE ARE REGULATORY DOCUMENTS THAT HAD TO BE MAINTAINED DURING THE COURSE OF BUSINESS ESTABLISHES WHAT THE STANDARD IS, BUT IT DOESN'T ESTABLISH ANY PERSONAL KNOWLEDGE THAT THAT WAS ACTUALLY DONE BY TEVA WITH RESPECT TO THESE PARTICULAR DOCUMENTS BECAUSE HE DOES NOT KNOW.

FURTHERMORE, THEY ARE NO LONGER BUSINESS RECORDS OF TEVA, AND I THINK THAT THIS IS THE MOST IMPORTANT THING. THEY ARE COOPERSURGICAL'S BUSINESS RECORDS NOW. WE HAVE NO IDEA WHAT HAPPENED TO THESE RECORDS WHEN THEY WERE TRANSFERRED, IF THEY WERE TRANSFERRED FROM TEVA TO COOPER. WE DON'T KNOW HOW THEY WERE MAINTAINED. WE DON'T KNOW HOW THEY WERE STORED. WE DON'T KNOW HOW THEY WERE USED. AND MR. DEVITO HAS NO KNOWLEDGE OF THESE DOCUMENTS AT THE TIME THAT THEY WERE PRODUCED IN THIS LITIGATION, WHICH IS IN 2023 FROM COOPER, AND THAT WAS FIVE, SIX YEARS AFTER MR. DEVITO WAS NO LONGER WORKING ON THE PARAGARD PROJECT FOR TEVA. SO LONG AND SHORT OF IT IS, HE HAS NO PERSONAL KNOWLEDGE TO ESTABLISH WHAT THESE ARE. ALL HE CAN SAY IS, I KNOW DOCUMENTS LIKE THIS ARE RECEIVED.

SECOND, EVEN IF HE HAD ANY PERSONAL KNOWLEDGE AND COULD SAY, YES, I SAW THESE DOCUMENTS AT TEVA, TEVA RECEIVED THOSE

DOCUMENTS, THAT'S NOT ENOUGH TO ALLOW THEM TO BE ADMITTED.  ALL THAT DOES IS ESTABLISH THAT TEVA RECEIVED THESE DOCUMENTS. WHAT IT DOES NOT ESTABLISH IS THAT THE DOCUMENTS ARE TRUTHFUL ON THEIR FACE.  THEY CAME FROM AN ENTIRELY DIFFERENT COMPANY, POLYMER CONVERSIONS.  NO ONE FROM POLYMER CONVERSIONS HAS BEEN (VERBATIM) TESTIFIED IN THIS CASE.  NO DEPOSITIONS HAVE BEEN TAKEN.  NOTHING HAS BEEN DONE TO ASSURE THAT WHAT'S ACTUALLY IN THOSE DOCUMENTS AND IS REPRESENTED BY POLYMER CONVERSIONS IS TRUTHFUL.

SO IT IS THE CLASSIC OUT OF-COURT STATEMENT THAT IS MADE BY A THIRD PARTY THAT IS BEING OFFERED FOR THE TRUTH OF THE MATTER ASSERTED.  YOU CAN'T SIMPLY SAY, WELL, I RECEIVED A DOCUMENT THAT I LIKE, SO, THEREFORE, I'M GOING TO ADOPT THAT AS AN ADMISSION ON MY OWN.  THAT'S NOT HOW ADOPTIVE ADMISSIONS WORK.  SO WE HAVE A FOUNDATION ISSUE, WE HAVE AN AUTHENTICITY ISSUE, WE HAVE A BUSINESS RECORDS ISSUE, AND EVEN IF MR. DEVITO COULD GET US BEYOND THAT, WE STILL HAVE A HEARSAY ISSUE.

THE THIRD ISSUE THAT WE HAVE, YOUR HONOR, IS THE REASON THAT THESE ARE BEING OFFERED, AS YOUR HONOR ALREADY KNOWS, IS TO UNDERCUT THE SWORN TESTIMONY THAT HAS BEEN GIVEN BY TEVA IN THE DEPOSITION.  WE SERVED A DEPOSITION NOTICE ON THIS 30(B)(6) TOPIC, AND THAT DEPOSITION WAS TAKEN IN JUNE.  WE TOOK THAT DEPOSITION, ASKING THE QUESTIONS THAT WE ASKED TO GET THE INFORMATION THAT WE NEEDED IN ORDER TO FILE OUR EXPERT REPORTS A MONTH LATER.  THAT'S WHY WE DID THAT 30(B)(6), TO ASSURE THAT

WHAT WE BELIEVED HAD HAPPENED WAS INDEED WHAT HAD HAPPENED AT THE FACILITY.

MR. DEVITO CONFIRMED THAT FOR US IN HIS 30(B)(6), THAT THE SWITCH HAD BEEN MADE AND THAT TEVA WAS USING DUPONT THE ENTIRE TIME THAT THEY WERE THE N.D.A.-HOLDER FOR PARAGARD.  AS YOUR HONOR KNOWS, THAT IS THE FOUNDATION FOR THE EXPERT REPORT AND THE EXPERT OPINIONS OF DR. MAYS IN THIS CASE.  WE RELIED ON THAT.  IF, AS THE DEFENDANTS NOW ATTEMPT TO ARGUE THAT WAS WRONG, THEY HAD THE OPPORTUNITY WITHIN 30 DAYS TO CURE IT WITH AN INTERROGATORY --

THE COURT:  WELL, WE'RE JUST TALKING ABOUT THESE -- ADMISSION OF THESE DOCUMENTS RIGHT NOW.

MS. FITZPATRICK:  OKAY.  THAT -- THEN I WILL NOT DEAL WITH THE PREJUDICE ISSUE IF YOUR HONOR DOESN'T WANT TO HEAR THAT.  BUT WE STILL DON'T HAVE AUTHENTICITY, WE STILL DON'T HAVE FOUNDATION, WE DON'T HAVE ANYONE FROM COOPER WHO IS COMING HERE TO TESTIFY ABOUT THESE DOCUMENTS.  MR. FAKHOURI HAS CONFIRMED THAT THE WITNESS DOES NOT HAVE PERSONAL KNOWLEDGE OF THESE SPECIFIC DOCUMENTS DURING THE COURSE OF HIS EMPLOYMENT WITH TEVA, WHICH IS WHAT HE WOULD NEED AS A FACT WITNESS.  AND EVEN IF WE OVERCAME THOSE HURDLES, THEY ARE STILL BEING OFFERED OR ATTEMPTED TO BE OFFERED FOR THE TRUTH OF WHAT IS ON THE FACE OF THOSE DOCUMENTS, WHICH ARE STATEMENTS THAT ARE MADE, NOT BY TEVA, NOT BY DOCTOR -- MR. DEVITO, BUT BY SOMEONE ELSE ENTIRELY WHO HAS NOT BEEN DEPOSED AND HAS NOT APPEARED IN THIS CASE AT

ALL.  SO FOR ALL OF THOSE REASONS, THESE DOCUMENTS WOULD NOT BE ADMISSIBLE.

THE COURT:  OKAY.  MR. FAKHOURI, DID YOU WANT TO RESPOND?

MR. FAKHOURI:  I DO, YOUR HONOR.  SO ON THE POINT ABOUT 2008 WHEN MR. DEVITO WAS NOT AT THE COMPANY, HE STILL HAS PERSONAL KNOWLEDGE, YOUR HONOR, THAT THOSE DOCUMENTS CAME TO TEVA WITH THE QUALITY SYSTEM, WITH THE RECORDKEEPING WHEN TEVA ACQUIRED THE --

THE COURT:  WELL, THAT'S THE PART I WANT TO PARSE WITH YOU A LITTLE BIT.

MR. FAKHOURI:  YEAH.

THE COURT:  THOSE DOCUMENTS, I THINK YOU SAID EARLIER THAT DOCUMENTS LIKE THESE -- THAT HE -- HE HAS NO KNOWLEDGE OF THESE DOCUMENTS, HE HAS KNOWLEDGE OF TYPICAL DOCUMENTS AND THE TYPES OF DOCUMENTS.  BUT I WANT YOU TO BE VERY CAREFUL ON WHAT YOU SAY BECAUSE I DON'T THINK HE HAS KNOWLEDGE ABOUT THESE PARTICULAR DOCUMENTS.

MR. FAKHOURI:  HE HAS KNOWLEDGE OF THE MANUFACTURING SYSTEM FILES, AND THESE DOCUMENTS ARE AN ESSENTIAL COMPONENT OF THAT FILE THAT, BY REGULATION -- AND THIS IS WHAT HE WILL TESTIFY TO -- HAVE TO BE KEPT ON-SITE AT THE NORTH TONAWANDA FACILITY.  AND SO AS THE PERSON WHO OVERSAW THAT QUALITY SYSTEM, HE HAS KNOWLEDGE THAT THE MANUFACTURING DOCUMENTS THAT THE COMPANY RECEIVES THAT TRACED, YOU KNOW, THE LOTS OF THE

MATERIAL THAT ARE USED TO MAKE EVERY LOT OF PARAGARD, HE KNOWS HOW THOSE DOCUMENTS ARE MAINTAINED AND HE KNOWS THAT THE COMPANY WAS MAINTAINING THOSE DOCUMENTS EVEN FOR LOTS THAT WERE MADE BEFORE TEVA OWNED THE PRODUCT BECAUSE OF THE COMPANY'S QUALITY SYSTEM REQUIREMENTS AND BECAUSE OF THE F.D.A. REGULATIONS THAT REQUIRE THAT.  AND SIMILARLY, ON THE BACK END WITH THE COOPER TRANSFER, DR. DEVITO KNOWS THAT THAT MATERIAL WOULD BE TRANSFERRED TO COOPER WHEN IT TOOK OVER RESPONSIBILITY FOR THE N.D.A. BECAUSE THOSE DOCUMENTS, BY REGULATION, HAVE TO STAY WITH THE MANUFACTURING SITE.  AND THAT'S A SITE THAT HE OVERSAW FOR YEARS, SO HE HAS PERSONAL KNOWLEDGE OF WHAT THOSE REQUIREMENTS ARE, AND, AGAIN, HE'S GOING TO SPEAK TO LAYING FOUNDATION FOR THOSE POINTS.

I DO WANT TO RESPOND TO THE HEARSAY POINT.  SO OBVIOUSLY, WE HAVE THE DOCUMENT-LEVEL HEARSAY, AND WE ARE OFFERING DR. DEVITO TO SATISFY THE BUSINESS RECORDS EXCEPTION.  AS TO THE MATERIAL INSIDE OF THE DOCUMENT, THERE ARE TWO REASONS THAT THAT IS NOT SUSCEPTIBLE TO A HEARSAY WITHIN HEARSAY OBJECTION. ONE OF THEM IS THAT THAT INFORMATION IS RELEVANT FOR ITS EFFECT ON THE LISTENER, FOR ITS EFFECT ON TEVA, FOR ITS EFFECT ON MR. DEVITO AND HOW HE UNDERSTANDS IT BECAUSE TEVA WAS RELYING ON THOSE DOCUMENTS AS IT MANUFACTURED PARAGARD AND ITS LOTS. AND SO TEVA'S UNDERSTANDING OF WHAT IT WAS GETTING FROM POLYMER CONVERSIONS IS RELEVANT AND ADMISSIBLE.

THE SECOND POINT WOULD BE THAT DR. DEVITO IS GOING TO

SPEAK TO ALL OF THE REQUIREMENTS THAT MAKE THESE DOCUMENTS TRUSTWORTHY, THAT THEY ARE PART OF A QUALITY SYSTEM THAT HE WAS RESPONSIBLE FOR THAT IS SUBJECT TO FEDERAL REGULATIONS AND OVERSIGHT.  AND SO HE IS GOING TO SPEAK TO WHERE THOSE DOCUMENTS FIT INTO AN OVERALL PROCESS THAT IS HEAVILY REGULATED, AND FOR THAT REASON, EVEN IF IT WERE NOT ADMISSIBLE UNDER AN EFFECT ON LISTENER FOR THE HEARSAY WITHIN HEARSAY EXCEPTION, IT HAS SUFFICIENT GUARANTEES OF TRUSTWORTHINESS UNDER RULE 807, YOUR HONOR, TO BE ADMITTED.

AND I WOULD JUST NOTE THE PLAINTIFFS HAVE HAD NOTICE SINCE BEFORE TRIAL OF THE FACT THAT THESE DOCUMENTS ARE CENTRAL TO THE COMPANY'S ARGUMENTS IN THE CASE.  DR. BENIGHT DISCLOSED IN HER OPINION THAT THE CERTIFICATES OF CONFORMANCE, THESE DOCUMENTS, REFLECT THE USE OF DUPONT 2005 THAT WAS IN AUGUST. AND EVEN BEFORE TRIAL BEGAN HERE, YOUR HONOR, WE BRIEFED THIS ISSUE TO YOU, AND WE IDENTIFIED THESE DOCUMENTS SPECIFICALLY IN OUR LETTER BRIEF THAT I BELIEVE WAS FILED ON THE 18TH.

THE COURT:  NOW, YOU SAID THAT THESE CAME FROM COOPER'S REGULATORY FILE.  I SEE NOTHING IN THE RECORD ANYWHERE THAT WE KNOW WHERE THEY CAME FROM AT COOPER.  WE JUST KNOW THAT THEY CAME FROM COOPER AND NOT TEVA.  WHAT IS THE BASIS FOR YOUR STATEMENT THAT THESE CAME FROM COOPER'S REGULATORY FILE?

MR. FAKHOURI:  I DON'T KNOW IF REGULATORY FILE IS QUITE THE RIGHT WORD.

THE COURT:  OKAY.

MR. FAKHOURI:  IT'S FROM THE QUALITY SYSTEM, AND THE PLAINTIFF'S LETTER, I BELIEVE, MENTIONS THAT THEY ARE PRODUCED FROM COOPER QUALITY, AND THAT IS A REFERENCE TO THE FACT THAT THEY COME FROM THE NORTH TONAWANDA MANUFACTURING FACILITY.

THE COURT:  RIGHT.  BUT I THOUGHT YOU WERE MAKING SOME ASSERTION THAT THEY WERE PART OF SOME SORT OF F.D.A. REGULATORY FILE FROM COOPER.  I DON'T THINK YOU KNOW ANYTHING ABOUT HOW COOPER KEPT THESE DOCUMENTS OTHER THAN THEY WERE IN THE QUALITY AREA; IS THAT ACCURATE?

MR. FAKHOURI:  WHAT -- AND WHAT DOC --

THE COURT:  BECAUSE I DON'T WANT YOU TO OVERSTATE.

MR. FAKHOURI:  OKAY.  SO I -- THIS IS NOT MY KNOWLEDGE, THIS IS WHAT DR. DEVITO WILL TESTIFY TO, IS THAT THERE ARE SPECIFIC --

THE COURT:  NO --

MR. FAKHOURI:  -- REGULATORY REQUIREMENTS.

THE COURT:  TO BACK UP --

MR. FAKHOURI:  YES.

THE COURT:  -- COOPER PRODUCED THESE DOCUMENTS IN THIS LITIGATION.

MR. FAKHOURI:  YES.

THE COURT:  NOT TEVA.

MR. FAKHOURI:  CORRECT.

THE COURT:  OKAY.  AND MR. DEVITO DOES NOT KNOW, I WOULDN'T EXPECT, HOW THESE GOT PRODUCED IN THIS LITIGATION FROM

COOPER; CORRECT?

MR. FAKHOURI:  HE DOESN'T HAVE KNOWLEDGE OF THE SPECIFICS OF, LIKE, HOW -- WHO WENT AND COLLECTED THE DOCUMENTS FROM COOPER, YOU KNOW, WHAT VENDOR PULLED THEM AND SENT THEM OVER.  WHAT HE DOES KNOW IS THAT THERE ARE QUALITY SYSTEM REGULATIONS THAT REQUIRE THEM TO BE MAINTAINED ON THE MANUFACTURING SITE THAT APPLY TO COOPER JUST AS THEY APPLIED TO TEVA WHEN TEVA WAS THE N.D.A. OWNER.

THE COURT:  OKAY.  I'M GOING TO SUSTAIN THE OBJECTION.  I FIND THAT THESE AREN'T SHOWN TO BE TEVA BUSINESS RECORDS.  THE INFORMATION THAT'S BEING ADVANCED IN SUPPORT OF THE FACT THAT THEY'RE BUSINESS RECORDS IS VERY GENERAL IN NATURE.  THERE'S NOT ANY SPECIFIC TESTIMONY ABOUT THESE PARTICULAR DOCUMENTS.  MR. DEVITO HAS NOT EVER SEEN THESE DOCUMENTS BEFORE THIS CASE.  THEY WERE NOT PRODUCED BY TEVA. NOW, THAT ALONE IS NOT A REASON NOT TO FIND THEM AS A BUSINESS RECORD, BUT CERTAINLY THEY CAME FROM COOPERSURGICAL.

SO WITHOUT ANYTHING OTHER THAN A GENERAL UNDERSTANDING OF HOW THE DOCUMENTS WERE MAINTAINED AT TEVA FOR REGULATORY PURPOSES AND HOW THEY WERE MAINTAINED FOR MANUFACTURING PURPOSES, WE DON'T KNOW THAT THESE DOCUMENTS WERE ANY THAT WERE MAINTAINED IN THAT WAY OR LITERALLY WHERE THEY CAME FROM.  WE JUST KNOW AT THIS POINT THAT THESE PARTICULAR DOCUMENTS WERE PRODUCED BY COOPERSURGICAL AND THAT WE DON'T KNOW THAT THEY WERE THE DOCUMENTS THAT WERE PRODUCED TO COOPERSURGICAL AS PART

OF THE TRANSFER BECAUSE MR. DEVITO DOESN'T KNOW THAT THEY WERE THE DOCUMENTS.  HE JUST KNOWS THEY WERE THE TYPE OF DOCUMENTS PRODUCED.  SO ALL THE INFORMATION THAT'S BEING PROVIDED IS VERY GENERAL ON A PROCESS, BUT NOT SPECIFIC TO THESE DOCUMENTS.  AND THEN FURTHER, UNDER 807, I AM NOT GOING TO FIND IT ADMISSIBLE UNDER THIS CATCH-ALL AREA BECAUSE I JUST DON'T KNOW ENOUGH ABOUT THESE DOCUMENTS.  EVERYTHING HAS BEEN VERY GENERAL.  THIS IS A VERY HOTLY DISPUTED ISSUE.  AND I JUST DON'T HAVE THIS GUARANTEE OF TRUSTWORTHINESS THAT'S BEEN PROVIDED TO ME AND -- AND SO -- NOW, SOME OF THIS HAS ALREADY COME IN THE CASE BECAUSE THERE WAS SOME CROSS-EXAMINATION OF, I BELIEVE, DR. MAYS ABOUT THE CONTEXT OF SOME OF THESE DOCUMENTS.

SO THIS INFORMATION IS ALREADY IN FRONT OF THE JURY, SO TO SOME EXTENT IT IS DUPLICATIVE OF WHAT THE JURY HAS ALREADY HEARD, BUT AT THE SAME -- SO I DON'T KNOW HOW MUCH PREJUDICE THIS IS TO THE DEFENDANTS FOR NOT GETTING THESE DOCUMENTS BECAUSE THEY'VE ALREADY TALKED ABOUT THEM WITH ONE OF THE EXPERTS.  BUT I HAVE NOT SHOWN THAT THE -- I HAVE NOT SEEN THAT THE PROPER FOUNDATION IS HERE FOR THEM TO BE A BUSINESS RECORD OR SHOULD BE ADMITTED UNDER 807.  SO THAT'S HOW I'M GOING TO HANDLE THAT ISSUE.

WAS THERE ANYTHING ELSE REGARDING MR. DEVITO, MR. FAKHOURI?

MR. FAKHOURI:  TWO QUESTIONS, YOUR HONOR.

THE COURT:  SURE.

MR. FAKHOURI:  THE FIRST WOULD BE, WE'D LIKE THE OPPORTUNITY TO MAKE AN OFFER OF PROOF AS TO WHAT DR. DEVITO'S TESTIMONY ABOUT THE DOCUMENTS WOULD SHOW FOR THE RECORD, IF WE CAN DO THAT OUTSIDE THE PRESENCE OF THE JURY, WHETHER BY QUESTIONING HIM OR IN ANOTHER MANNER, BUT THAT WOULD BE OUR PREFERENCE.

THE COURT:  OKAY.  WELL, IF THAT IS TO BE DONE, THEN I WOULD ALLOW -- WELL, I GUESS THE QUESTION IS, WOULD THERE WANT TO BE A CROSS-EXAMINATION WITH HIM ON THIS, TOO?  OR --

MS. FITZPATRICK:  LIKELY, YOUR HONOR.  I HAVEN'T REALLY THOUGHT ABOUT IT, BUT, YES, PROBABLY, DEPENDING --

THE COURT:  WELL --

MS. FITZPATRICK:  -- I -- LIKE, I JUST DON'T KNOW WHAT HE WOULD SAY, SO IF HE TESTIFIED CONSISTENT WITH WHAT MR. FAKHOURI SAID, WHICH IS, I HAVEN'T SEEN THESE DOCUMENTS PARTICULARLY, I ONLY KNOW THE GENERALIZED NATURE, PROBABLY NOT. BUT IF IT DEVIATES IN SOME WAY FROM WHAT WAS REPRESENTED, THEN POSSIBLY WE WOULD HAVE TO.

THE COURT:  OKAY.  WELL, MR. FAKHOURI, ARE YOU WANTING -- ARE YOU WANTING A LIVE QUESTIONING OF THE WITNESS? DO YOU WANT TO SET UP A PRIOR -- A PROFFER THAT YOU WOULD PUT INTO EVIDENCE, AND, IF SO, HOW LONG WOULD YOU WANT THIS TO TAKE?

MR. FAKHOURI:  OUR PREFERENCE WOULD BE TO DO A LIVE PROFFER WHERE WE WOULD ASK HIM, YOU KNOW, BASICALLY THE

BACKGROUND QUESTIONS AND THEN THE FOUNDATIONAL QUESTIONS THAT WE WOULD ASK UP TO THE POINT OF SEEKING TO ADMIT THE DOCUMENTS, AND THAT WOULD BE THE EXTENT OF THE PROFFER.

THE SECOND THING, YOUR HONOR, I WANT TO CLARIFY, IS THAT WE WOULD STILL LIKE THE OPPORTUNITY TO QUESTION DR. DEVITO BEFORE THE JURY ABOUT HIS KNOWLEDGE OF WHETHER TEVA, IN FACT, USED DUPONT 20 OR DUPONT 2005 AT SOME POINT AFTER 2007, BASED ON HIS OWN PERSONAL KNOWLEDGE AND UNDERSTANDING, INCLUDING FROM HIS REVIEW OF THIS DOCUMENTATION.  EVEN IF THE DOCUMENTATION IS NOT BEING SUBMITTED TO THE JURY, WE THINK THAT'S CONSISTENT WITH THE COURT'S RULINGS IN THE PAST, IT'S CONSISTENT WITH THE EXAMINATION OF DR. MAYS, FOR EXAMPLE, AND DR. DEVITO IS AN APPROPRIATE WITNESS TO ASK AT LEAST THOSE QUESTIONS, EVEN IF THE DOCUMENTS ARE NOT GOING TO BE SHOWN.

THE COURT:  WELL, IT'S MY UNDERSTANDING, AND MAYBE I'M WRONG, BUT FROM WHAT I READ HERE, I THOUGHT THAT AT HIS DEPOSITION, HE HADN'T EVEN SEEN THE DOCUMENTS YET.

MR. FAKHOURI:  HE HAD NOT SEEN THE DOCUMENTS AT HIS DEPOSITION.  WHAT HE WAS SHOWN AT HIS DEPOSITION WAS A SINGLE DOCUMENT THAT IS NOW IN EVIDENCE THAT HE HAD NEVER SEEN BEFORE, THAT HE SAID HE WAS NOT FAMILIAR WITH, AND THAT HE MISUNDERSTOOD IN THE MOMENT WHEN HE WAS BEING SHOWN JUST A PART OF THAT DOCUMENT.  AND PART OF WHAT WE WANT TO EXPLORE WITH HIM IS THAT HAVING HAD THE OPPORTUNITY TO REVIEW THAT DOCUMENT, HE NOW UNDERSTANDS IT DOES NOT SUPPORT THE NOTION THAT THE COMPANY

SWITCHED TO USING DUPONT 2000 -- OR DUPONT 20 AND THAT HE WAS MISTAKEN IN THAT REGARD.  AND HE WANTS TO SPEAK TO WHAT HE UNDERSTANDS NOW BASED ON AN ACTUAL REVIEW OF THE DOCUMENTS.

THE COURT:  WELL, YOU CAN'T MIX AND MATCH.  SO WHEN -- IN HIS 30(B)6 DEPOSITION, HE WAS TEVA, SO HE CAN'T SAY THAT NOW MR. DEVITO THINKS SOMETHING ELSE DIFFERENT THAN TEVA.  THAT'S MIXING AND MATCHING THINGS.  SO HE CAN'T CORRECT HIS TEVA STATEMENT AS A FACT WITNESS.  I DON'T THINK THAT WOULD BE APPROPRIATE AT ALL.

MR. FAKHOURI:  WELL, WE UNDERSTAND HE'S -- HE CANNOT CHANGE TEVA'S TESTIMONY, YOUR HONOR.  THEY'VE PLAYED TEVA'S TESTIMONY.  IT'S IN EVIDENCE.  BUT WE THINK HE'S ENTITLED TO SAY HIS OWN PERSONAL KNOWLEDGE OF WHAT THOSE DOCUMENTS REFLECT FROM HIS REVIEW TODAY.

THE COURT:  WELL, THIS IS GETTING VERY CONFUSING BECAUSE HE IS -- HE HAS -- TEVA HAS SAID IN ANSWER TO A QUESTION THAT IS IN THE RECORD, AND TEVA, AS THEY STATED, THERE WAS NO ERRATA SHEET, THERE WAS NOTHING, IT'S IN THE CASE AS WHAT IT WAS THAT HE SAID.

NOW, IT'S NOT APPROPRIATE TO PRODUCE FACT WITNESS TESTIMONY TO CONTRADICT A COMPANY'S POSITION IN A 30(B)6 DEPOSITION, SO I DON'T KNOW HOW YOU'RE GETTING AROUND THE FACT THAT TEVA HAS MADE AN ADMISSION ON A POINT, THEN YOU'RE GOING TO GET A FACT WITNESS TO UNWIND THAT, THAT POINT.  AND SO THAT SEEMS INCONSISTENT TO ME.

MR. FAKHOURI:  WELL, I THINK, YOUR HONOR, IT'S NOT A -- THEY'VE NOT CITED CASE LAW THAT THIS IS A JUDICIAL ADMISSION THAT IS BINDING FOR ALL TIME.  IT'S AN EVIDENTIARY ADMISSION AT BEST.  IT'S ONE THAT THEY ARE ENTITLED TO IMPEACH HIM ON, AND THE REASON WE WANT TO CALL HIM IS TO GIVE CONTEXT TO THAT.

THE COURT:  WELL, THEY -- WELL, SO IT'S MIXING AND MATCHING, THOUGH.  IT'S -- THERE IS AN ADMISSION FROM TEVA.  SO THERE IS AN ADMISSION IN THIS CASE FROM TEVA, AND SO, YOU KNOW, TYPICALLY, 30(B)6 ADMISSIONS ARE THE POSITION OF THE COMPANY. AND SO YOU'RE HAVING A FACT WITNESS, YOU KNOW, TESTIFY CONTRARY TO WHAT TEVA HAS SAID THE ANSWER TO THE QUESTION IS.

MR. FAKHOURI:  AND WHAT HIS ANSWER WAS IN THAT DEPOSITION, YOUR HONOR, WAS COMING FROM THE SINGLE DOCUMENT HE WAS SHOWN.  HE TESTIFIED THAT'S WHAT THIS DOCUMENT THAT I'M SHOWN SAYS.  AND HE GIVES THE ANSWER, YES, DUPONT 20 WAS USED AFTER 2007, BASED ON THE DOCUMENT HE HAD NEVER SEEN BEFORE. AND SO WE'RE -- WE WANT TO GIVE THE JURY THE CONTEXT OF WHAT THAT DOCUMENT SAYS AND WHAT HIS UNDERSTANDING OF IT IS.

THE COURT:  WELL, I WILL TELL YOU TO BEGIN WITH, THE QUESTION WAS VERY CLEAR.  THE QUESTION WAS NOT, WHAT DOES THIS DOCUMENT SAY?  THE QUESTION WAS, YOU KNOW, WHAT -- I GUESS Y'ALL HAVE THE QUESTION, BUT I REMEMBER THE QUESTION.  THE QUESTION WAS, YOU KNOW, WHICH ONE IS IT?  AND THEN THE WAY HE ANSWERED IT, HE RELIED ON THE DOCUMENT, AND THEN HE SAID, YES.

BUT HE SHOULD HAVE BEEN PREPARED TO ANSWER A FUNDAMENTAL QUESTION IN THE CASE FOR TEVA, WHICH IS, WHAT IS THIS THING MADE OUT OF?

SO, YOU KNOW, HIS ANSWER DID NOT HAVE TO BE BASED ON THAT DOCUMENT.  HE GAVE THE ANSWER TO THE QUESTION THAT WAS ASKED.  DO YOU HAVE THAT QUESTION?

MR. FAKHOURI:  WE --

THE COURT:  YEAH, WHAT IS THE QUESTION?

MR. FAKHOURI:  I COULD READ IT --

THE COURT:  YEAH.

MR. FAKHOURI:  -- INTO THE RECORD, YOUR HONOR.

THE COURT:  WHAT PAGE IS IT?

MR. FAKHOURI:  SO WE'RE LOOKING AT PAGE -- I BELIEVE IT'S 186 OF HIS DEPOSITION FROM JUNE 3RD OF 2025.  AND IT BEGINS AT LINE 10 AND IT STARTS, QUESTION, OKAY.  WELL, IT WAS DUPONT 20 THAT EVENTUALLY WAS BEING USED, STARTING IN 2007; RIGHT?  ANSWER, YES, THAT'S WHAT IT STATES, REFERRING TO THE DOCUMENT.  AND THE QUESTION BEFORE, I GUESS I COULD -- JUST TO BACK UP.

THE COURT:  WELL, I THINK I -- THAT'S MY MEMORY OF IT.  I MEAN, THE QUESTION HE WAS ASKED WAS, WAS WHAT PRODUCT WAS USED?  AND HE RELIES ON SOMETHING IN ANSWERING IT, BUT HE WAS SUPPOSED TO BE PREPARED TO ANSWER THE QUESTION OF, WHAT IS THE PARAGARD MADE OUT OF?  IT'S A PRETTY SIMPLE, CLEAR QUESTION THAT WAS ASKED.  AND SO I DON'T UNDERSTAND STILL HOW SOMEBODY

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

CAN COME AS A FACT WITNESS AND TAKE -- I MEAN, IF -- YOU KNOW, LIKE, HE CAN BE ASKED QUESTIONS, BUT HE CANNOT UNWIND A FUNDAMENTAL ADMISSION ON SOMETHING LIKE THAT BY HIS TESTIMONY. YOU CAN PRESENT DOCUMENTS AND THINGS LIKE THAT, AND IT'S BEEN SOMETHING THAT'S BEEN IN THE CASE, BUT I DON'T SEE HOW HE CAN DO THAT AS A FACT WITNESS ON THAT SAME SUBJECT AND SAY THAT HE MISUNDERSTOOD THE DOCUMENT BECAUSE THAT'S NOT WHAT THE QUESTION WAS.  HIS ANSWER RELIED ON THE DOCUMENT, BUT THE QUESTION WAS VERY CLEAR, AND THERE WAS NO REDIRECT OR ANYTHING TO CLEAR THAT UP IF THERE WAS SOME CONFUSION.

        MR. FAKHOURI:  AND I JUST WANT TO NOTE FOR THE RECORD THAT THE QUESTION -- THE IMMEDIATELY PRECEDING QUESTIONS, HE MADE CLEAR, I'M NOT AWARE THAT IT'S DIFFERENT.  AND SO HE'S MAKING CLEAR IN THIS COLLOQUY, HE'S JUST REFERRING TO THIS DOCUMENT THAT HAD BEEN PLACED IN FRONT OF HIM.  NOW, HE GOES ON AND HE SAYS, THAT'S WHAT IT STATES.  AND WHEN HE'S ASKED, WAS -- IS THAT WHAT WAS USED, HE SAYS YES.  BUT ALL OF THIS IS LINKED TO THIS COLLOQUY ABOUT THIS VERY SPECIFIC --

        THE COURT:  BUT Y'ALL NEVER CLEARED IT UP, YOU NEVER FILED AN ERRATA SHEET, YOU NEVER BROUGHT IT UP.  YOUR EXPERTS RELIED ON IT.  YOU DIDN'T SAY IT WAS WRONG, AND, I MEAN, THAT'S WHAT HE SAID.  HE SAID YES.

        MR. FAKHOURI:  WELL --

        THE COURT:  SO -- WELL -- BUT BACK TO THE OTHER QUESTION, I'M STILL VERY -- WHAT SPECIFICALLY ARE -- BECAUSE IF

YOU ASK HIM, YOU KNOW, IS YOUR UNDERSTANDING DIFFERENT NOW THAN IT WAS IN YOUR DEPOSITION, YOU CAN'T DO THAT.  HE -- HE WAS THE PERSON THAT TESTIFIED AS TO, YOU KNOW, WHAT IT WAS.  SO WHAT IS HE GOING TO BE DOING AS A FACT WITNESS OTHER THAN UNWINDING WHAT HE SAID IN HIS 30(B)(6) DEPOSITION?

MR. FAKHOURI:  SO THAT'S THE -- THAT IS THE DISTINCTION, YOUR HONOR, IS, LIKE, WE'RE NOT TRYING TO UNWIND OR SAY TEVA'S POSITION HAS CHANGED.  THEY HAVE AN ADMISSION FROM THE COMPANY, BUT WHAT DR. DEVITO IS GOING TO SAY IS WHAT HIS UNDERSTANDING IS TODAY BASED ON MATERIAL THAT HE HAS SEEN AND SPEAKING TO WHAT THOSE DOCUMENTS ARE AND HOW HE'S REVIEWED THEM AND HIS UNDERSTANDING OF WHETHER DUPONT 20 WAS USED IN COMMERCIAL MANUFACTURING OF PARAGARD TODAY.  WHETHER OR NOT HE SAYS THE REASON THAT HIS TESTIMONY WAS DIFFERENT BEFORE, WE THINK HE'S ENTITLED TO SAY WHAT HIS UNDERSTANDING IS TODAY AS A FACT WITNESS.

THE COURT:  WELL, HIS UNDERSTANDING TODAY IS WE HAVE DISCOVERY, AND IT'S YOUR UNDERSTANDING BASED ON POSITIONS THAT THE PARTY HAS TAKEN.  SO THE FACT THAT HIS UNDERSTANDING TODAY IS DIFFERENT THAN IT WAS WHEN HE WAS DEPOSED IS NOT NECESSARILY MATERIAL BECAUSE PARTIES ARE ENTITLED TO RELY ON ADMISSIONS.  LIKE, THERE WAS THE PLAINTIFF'S FACT SHEET THAT YOU GUYS BROUGHT UP THAT SHOWED THAT IT CHANGED OVER TIME.  AND SO, LIKE, THAT IS -- YOU KNOW, YOU CAN HOLD HER TO WHAT WAS INITIALLY SAID IN THAT AND GET -- YOU KNOW, SO I DON'T -- I

DON'T UNDERSTAND.

MR. FAKHOURI:  WELL, AND ON THAT POINT, YOUR HONOR, THE ANALOGY THERE WOULD BE, WE WOULD BE ENTITLED -- AND WE DID -- CROSS-EXAMINE THE PLAINTIFF ON HER PLAINTIFF FACT SHEET IF THERE WAS SOME INCONSISTENCY.  THEY WOULD HAVE THE SAME OPPORTUNITY TO ASK DR. DEVITO:  DIDN'T YOU TESTIFY DIFFERENTLY IN YOUR 30(B)(6) DEPOSITION?  AGAIN, HE'S TESTIFYING HERE AS A FACT WITNESS, NOT AS A 30(B)(6).  BUT THEY WOULD STILL BE ENTITLED TO ASK HIM ON CROSS-EXAMINATION, DIDN'T YOU SAY SOMETHING DIFFERENT?

THE COURT:  I THINK THIS IS GETTING VERY CONFUSING AND MISLEADING FOR THE JURY AS WELL BECAUSE I DON'T THINK THEY ARE GOING TO UNDERSTAND THE DIFFERENCE BETWEEN A 30(B)(6) AND MR. DEVITO BEING -- TRYING TO UNDERCUT AN ADMISSION FROM TEVA AS A FACT WITNESS.  BUT I'LL HEAR FROM PLAINTIFFS ON THIS.

MS. FITZPATRICK:  YOUR HONOR, WE AGREE WITH YOU.  I WOULD JUST MAKE ONE OTHER NOTE.  HIS FACT WITNESS DEPOSITION WAS TAKEN, AND THEN WE HAVE TWO 30(B)(6)'S.  SO WE HAVE THREE TIMES THAT MR. DEVITO TESTIFIED, TWICE ON BEHALF OF TEVA.  WHAT HE IS -- WHAT I'VE NOW HEARD IS HE IS TESTIFYING AS A FACT WITNESS SUBSEQUENT TO THE 30(B)(6) ABOUT HIS REVIEW OF MATERIALS IN CONNECTION WITH LITIGATION.  THAT'S NOT A FACT WITNESS.  A FACT WITNESS IS:  WHAT DID YOU DO AT TEVA BETWEEN 2012 AND 2017?  WHAT DID YOU SEE?  WHAT DID YOU PERSONALLY KNOW?

I THEN REVIEWED DOCUMENTS AFTER TO CLEAR UP MY UNDERSTANDING. THAT'S NOT FACT WITNESS TESTIMONY AT ALL. THAT IS ESSENTIALLY TRYING TO BRING IN A TEVA WITNESS TO CONTRADICT. HE'S BEEN PREPARED ON THIS, NOT IN THE COURSE OF HIS EMPLOYMENT, NOT IN THE COURSE OF WORKING WITH PARAGARD BECAUSE HE DOESN'T WORK WITH PARAGARD ANYMORE. TEVA DOESN'T EVEN HAVE PARAGARD ANYMORE. IT WAS SOLELY IN THE CONTEXT OF LITIGATION AND LITIGATION STRATEGY.

SO WE AGREE THAT IT WOULD BE -- A, IT'S NOT APPROPRIATE FOR A FACT WITNESS BECAUSE IT'S NOT FACT TESTIMONY. IT'S BACK-DOORING EXPERT TESTIMONY OR 30(B)(6) TESTIMONY. AND HE CAN'T ALSO IN HIS FACT WITNESS -- AS A FACT WITNESS RELY ON HEARSAY. HE'S NOT HERE AS AN EXPERT. SO A FACT WITNESS CANNOT SAY, I RELIED ON THESE HEARSAY DOCUMENTS FOR OPINIONS IN THIS CASE AS A FACT WITNESS. IT'S ALL -- IT'S ALL MUDDLED AND CONFUSED, AND I THINK IT WOULD BE VERY, VERY CONFUSING FOR THE JURY. AND TO GO BACK TO OUR M.I.L. 10, THIS IS EXACTLY WHAT WE WERE CONCERNED ABOUT, WAS TEVA BRINGING IN A WITNESS AT TRIAL TO TRY TO UNDO SOME OF THE ADMISSIONS THAT WE HAVE RELIED ON.

I HAVE ISSUES ABOUT DR. BENIGHT, BUT THAT'S NOT BEFORE YOU, SO I WILL -- I WILL SAVE THAT FOR LATER.

THE COURT: WELL, HERE'S WHAT I'M CONCERNED ABOUT HERE, IS THAT AS A FACT WITNESS, YOU TESTIFY ABOUT THE FACTS THAT YOU KNOW AND THE FACTS THAT YOU GAINED THROUGH THE WORK THAT YOU DID WITH TEVA. SO AT HIS DEPOSITION AS PART OF THIS

CASE, AS WE'VE TALKED ABOUT IN DETAIL, HE HAS NEVER SEEN THESE DOCUMENTS.  AND SO WHAT HAS BEEN DONE IS HE'S BEEN SHOWN AFTER THE FACT A SECTION OF DOCUMENTS AND THEN BEING ASKED TO BASICALLY CLARIFY AND CHANGE WHAT HE SAID IN A 30(B)(6) DEPOSITION AFTER BEING SHOWN DOCUMENTS THAT HE HAD NO KNOWLEDGE OF AT HIS DEPOSITION.  AND SO THAT IS NOT FACTUAL TESTIMONY, THAT'S -- AGAIN, THAT'S SOMETHING LIKE AN EXPERT WOULD DO IS REVIEW MATERIALS AND FORM AN OPINION ABOUT WHAT THE ANSWER IS. A FACT WITNESS IS ASKED ABOUT WHAT THEY KNOW IN THEIR PERSONAL KNOWLEDGE BASED UPON WHAT THEY'VE DONE.  AND WHAT YOU'RE TELLING ME IS NOT A FACT WITNESS TESTIMONY.  HE'S SAYING THAT -- HE'S GIVEN HIS FACT WITNESS TESTIMONY IN VARIOUS DEPOSITIONS, BUT WE CAN'T NOW JUST SHOW HIM NEW DOCUMENTS AND HAVE HIM BE A FACT WITNESS ABOUT EVENTS THAT HAPPENED IN 2012. HIS KNOWLEDGE IS LIMITED TO WHAT HE KNEW BACK IN 2012, SO WHAT I'VE HEARD SO FAR WOULD NOT BE APPROPRIATE FOR QUESTIONING HIM.

MR. FAKHOURI:  THANK YOU, YOUR HONOR.  GIVEN THE COURT'S RULING ON THIS ISSUE, WE WOULD STILL LIKE TO MAKE THE PROFFER AGAIN OUTSIDE THE PRESENCE OF THE JURY.  I DON'T THINK WE WOULD INTEND TO QUESTION HIM IN FRONT OF THE JURY GIVEN THE SCOPE OF THE RULING, SO WE COULD TAKE THAT IN WHATEVER SEQUENCE THE COURT PREFERS.  WE DO HAVE SOME VIDEO TO PLAY TODAY.

THE COURT:  OKAY.

MR. FAKHOURI:  OR WE COULD DO DR. DEVITO FIRST AND THEN GO TO THE VIDEO.