IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: PARAGARD IUD | : | MDL DOCKET NO. 2974 |
| PRODUCTS LIABILITY | : | 1:20-md-02974-LMM |
| LITIGATION | : | |

**ORDER**

This product-liability action is presently before the Court on Plaintiffs'

Motion to Strike Teva's[1] FRCP 30(b)(6) Deposition (Material & Design –

Dr. Joseph DeVito) Second Errata Sheet. Dkt. No. [1226]. Upon due

consideration, the Court enters the following Order.

## I.    BACKGROUND

This case is a multi-district litigation ("MDL") involving the contraceptive

Paragard, an intrauterine device ("IUD"), which is regulated as a drug under the

Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., and the

federal Food and Drug Administration's ("FDA") implementing regulations in

Title 21 of the Code of Federal Regulations. The Paragard IUD is designed to be

implanted into a patient by a healthcare provider. It is a T-shaped device that is

made of polyethylene, milled with barium sulfate and wrapped in copper.

---

[1]    "Teva" or "Defendant" refers collectively to Defendants Teva Pharmaceuticals USA, Inc.; Teva Women's Health, LLC; and Teva Branded Pharmaceutical Products R&D, Inc.

Paragard is indicated for intrauterine contraception for up to 10 years. The Paragard "T" is designed to collapse for insertion and removal. It is supposed to be easy for a healthcare practitioner to remove the Paragard IUD by gently pulling on attached threads.

Paragard has been approved and regulated by the FDA since 1984 without significant design updates. Teva held the Paragard NDA from December 23, 2008, via its acquisition of Barr Pharmaceuticals, Inc., through November 1, 2017, when the NDA was acquired by CooperSurgical, Inc.

The claims in this MDL arise from alleged in vivo Paragard breakage and resulting injuries. See Dkt. No. [79]. The first bellwether case, Rickard v. Teva Pharmaceuticals USA, Inc., et al., No. 1:21-cv-03861-LMM, was tried and reached a jury verdict on February 3, 2026. Verdict, Rickard, id., ECF No. 248. A second bellwether trial, in Robere v. Teva Pharmaceuticals USA, Inc. et al., 1:22-cv-01583-LMM, is scheduled to begin on September 28, 2026. Not., Robere, id. (Feb. 25, 2026).[2]

While the bellwether cases were still in discovery, Dr. DeVito testified on June 3, 2025, as a corporate representative of Teva under Rule 30(b)(6) of the Federal Rules of Civil Procedure, on topics related to Paragard materials and design. Deposition of Joseph DeVito ("DeVito 30(b)(6) Dep."); see also Dkt.

---

[2]    A third bellwether case, Braxton v. Teva Pharmaceuticals USA, Inc., No. 1:22-cv-00490, is stayed for interlocutory appeal. See Dkt. No. [1229] at 13.

Nos. [1062, 1235]. Deposition subject matter included "[t]he specific materials used to manufacture the Paragard during the time period in which [Teva] held the NDA for Paragard"; "[t]he information Defendants know and/or have available to them concerning the sourcing and quality control of the raw materials used in the production of the Paragard during the time period in which [Teva] held the NDA for Paragard, including any changes to the sourcing and/or quality control"; information Defendants knew or had available to them concerning communications of concerns or problems pertaining to the production of Paragard, including any changes to the process; and the processes of any Paragard material provider used for creating the material used for the Paragard "T." Dkt. No. [1062] ¶¶ 1-3, 14.

During the 30(b)(6) deposition, Plaintiffs' counsel gave Dr. DeVito a document dated January 31, 2007, entitled "ParaGard, Alternative Vendor."[3] DeVito 30(b)(6) Dep. at 6, 173. Although the document was not Bates stamped, the attorney represented to Dr. DeVito that the document had been produced to Plaintiffs by Teva. Id. at 173. Dr. DeVito testified that he had never seen the document and did not recognize it. Id.

---

[3]    The document was designated as Exhibit 22 to the deposition, DeVito 30(b)(6) Dep. at 6, 173, and was introduced in the Rickard trial as Plaintiff's Exhibit 174.

After the attorney presented the document to Dr. DeVito, he and Dr. DeVito had the following exchange regarding a possible change in the polyethylene used in the Paragard's plastic "T":

> Q.    Are you aware that in 2007 that the polyethylene actually was different?
>
> A.    No, I'm not aware that it's different. When you say "different," different than what?
>
> Q.    Well, what happened is it went from the Alathon 2005 to the DuPont 20.[4] Are you aware of that?
>
> A.    No, I'm not aware of it other than what's in this document.
>
> Q.    Okay. Well, it was DuPont 20 that eventually was being used starting in 2007, right?
>
> A.    Yes. That's what it states.
>
> Q.    In fact, that's what was used during the time that Teva held the NDA?
>
> A.    Yes.

Id. at 185-86. Later in the 30(b)(6) deposition, when Dr. DeVito was asked about materials used in certain experiments, he confirmed that "the resin changed in '07" and that because the experiments took place in 2009, the design of the experiments would have used the DuPont 20 material. Id. at 190.

Dr. DeVito had reserved his right to read and sign the deposition transcript. Dkt. No. [1226-2]. Teva's counsel received the deposition transcript

---

4    "Alathon 2005" was manufactured by DuPont and was eventually rebranded "DuPont 2005." The names are used interchangeably throughout the case.

two days after the deposition, on June 5, 2025. Id. Dr. DeVito then timely submitted an 11-page errata sheet on June 14, 2025, in which he identified 58 corrections, primarily grammar and transcription edits. Dkt. No. [1235-2].

As the litigation progressed, the alleged switch from Alathon 2005 to DuPont 20 became a significant fact underpinning Plaintiffs' design-defect claims. See Dkt. No. [1171] at 20; Dkt. No. [1179] at 16. Approximately two months after the trial, on or about April 9, 2026, Teva submitted the second errata sheet on Dr. DeVito's 30(b)(6) deposition. Dkt. No. [1235-3]. In the errata sheet, Dr. DeVito stated that his testimony should be changed to read as follows:

Q.     Are you aware that in 2007 that the polyethylene actually was different?

A.     No, I'm not aware that it's different. When you say "different," different than what?

Q.     Well, what happened is it went from the Alathon 2005 to the DuPont 20. Are you aware of that?

A.     No, I'm not aware of it other than what's in this document.

Q.     Okay. Well, it was DuPont 20 that eventually was being used starting in 2007, right?

A.     *No. DuPont 20 was only tested in 2007.*

Q.     In fact, that's what was used during the time that Teva held the NDA?

A.     *No. DuPont 20 was not used commercially while Teva held the NDA. It was tested in 2007.*

Compare DeVito 30(b)(6) Dep. at 185-86 with Dkt. No. [1235-3] (testimony changes in italics). Dr. DeVito also sought to change the response he gave when

asked to confirm that the resin had changed in 2007 to "No. DuPont 20 was not used while Teva held the NDA. It was tested in 2007," compare DeVito 30(b)(6) Dep. at 190 with Dkt. No. [1235-3], and to add testimony in another portion of the deposition that there was no commercial switch from Alathon 2005 to DuPont 20 and thus no reason to notify the company that manufactured Paragard's plastic T-frame about a change in materials, compare DeVito 30(b)(6) Dep. at 188 with Dkt. No. [1235-3]. Dr. DeVito stated in the errata sheet that the changes should be made because, "I am not aware of Teva ever commercially switching to DuPont 20. My 'yes' was intended only to confirm what the document appears to suggest, that Teva started testing DuPont 20 in 2007, based on the line of questioning by Plaintiffs' counsel." Dkt. No. [1235-3].

## II.    DISCUSSION

Rule 30(e) of the Federal Rules of Civil Procedure provides that, on request, a deponent "must be allowed 30 days" after being notified that his or her deposition transcript is available "to review the transcript," and, "if there are changes in form or substance, . . . to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1). If the deponent makes changes within the 30-day period, the changes become part of the deposition transcript. Fed. R. Civ. P. 30(e)(2).

Plaintiffs now seek to strike the second errata sheet to Dr. DeVito's 30(b)(6) deposition because the errata sheet was submitted far out of time—

approximately 276 days after the Rule 30(e) deadline—and only after Teva learned Plaintiffs' trial strategy through the first bellwether litigation. Dkt. No. [1226] at 3-4, 10. Plaintiffs also argue that the reason Dr. DeVito gave for submitting the second errata sheet does not justify allowing him to use Rule 30(e) to make substantive changes to Teva's testimony. Id. at 4-10.

Teva, in turn, acknowledges that it served the second errata sheet after the Rule 30(e) window had closed. Dkt. No. [1231] at 5, 10. It nevertheless argues that the Court should permit the changes in the second errata sheet under its inherent power to manage the case because there is no brightline rule disallowing late-submitted errata sheets and because Dr. DeVito's testimony that the polyethylene changed in 2007 was so obviously mistaken that allowing Plaintiffs to stand behind it would impede justice. Id. at 1-13.

After careful consideration of the arguments, the Court finds good cause for striking the second errata sheet. Teva raises points about the weaknesses in Dr. DeVito's 30(b)(6) testimony on the topic of the change in resins: Dr. DeVito's testimony was internally inconsistent (first, he said that he did not know of any change to the polyethylene in 2007, but after seeing the document Plaintiffs' counsel showed him, he then testified that the manufacturer changed to DuPont 20 in 2007); the document upon which Dr. DeVito appeared to base at least some of his testimony about the polyethylene change discusses testing the new resin, not using it in production; there is other evidence, including inventory records,

appearing to corroborate Teva's position that the polyethylene never changed; and, other than Dr. DeVito's 30(b)(6) testimony, only circumstantial evidence has been proffered to contradict Teva's position that the polyethylene never changed.

Be that as it may, submitting the second errata sheet was not a permissible way to rehabilitate the testimony. First, Teva has supplied no authority suggesting that an errata sheet may be submitted so far outside the period set out in Rule 30(e) of the Federal Rules of Civil Procedure. There also does not appear to be any good reason that might excuse the length of the delay in submitting the second errata sheet, as Teva concedes that it has known of Dr. DeVito's "misstatement" since at least July 24, 2025, Dkt. No. [1231] at 3, only a few weeks after the Rule 30(e) deadline and approximately 259 days before it finally submitted the second errata sheet.

Second, allowing Teva to change its sworn testimony at this point in the case would significantly prejudice Plaintiffs, as Plaintiffs have already developed a trial strategy based on the testimony, and their expert witness, Dr. Jimmy Mays, built his opinions around the testimony. Thus, to allow Teva to now change its testimony would not only create the need for an additional deposition of Dr. DeVito as a 30(b)(6) witness but also would require Plaintiffs to spend significant time and expense to reformulate their strategy and have their expert

alter his opinions, which would, in turn, trigger an additional cascade of discovery and motion practice.

Finally, the changes Teva seeks to make in the second errata sheet are the sort of substantive changes that exceed the limits of Rule 30(e). As Teva acknowledges, this Court has previously observed that " 'substantive changes to deposition testimony are particularly suspect when they are offered in response to a motion for summary judgment.' " Dkt. No. [1231] at 8 (quoting ChemFree Corp. v. J. Walter, Inc., Civ. Case No. 1:04-cv-3711, 2008 WL 5234247, at *1 (N.D. Ga. Sept. 30, 2008)). The Court finds no less reason to suspect substantive changes to deposition testimony that are offered in response to an expert witness report or a party's strategy exposed at an initial bellwether trial.

It is also not clear from the face of the deposition transcript that Dr. DeVito's testimony regarding the materials change from Alathon 2005 to DuPont 20 was grounded solely on a mistaken reading of the memo Plaintiffs' counsel showed Dr. DeVito and was not simply a truthful response to more pointed questioning. See DeVito 30(b)(6) Dep. at 186:13-15 ("Q: In fact, [DuPont 20 is] what was used during that time that Teva held the NDA? A: Yes."); 190:9-14 (testifying that because the question was directed to activities taking place in 2009, the material in use would have been DuPont 20). Identification of the specific materials used to manufacture the Paragard while Teva held the NDA was among Dr. DeVito's designated 30(b)(6) topics. Dkt.

No. [1062] ¶ 1. There are no objections to the form of the questions and no indication that Dr. DeVito was confused, fatigued, or did not understand them. See DeVito 30(b)(6) Dep. at 186:13-15; 190:9-14. The memo itself could have jogged Dr. DeVito's memory of the materials change because it showed that in January 2007 Teva was at least planning to test DuPont 20. Thus, even if the second errata sheet were timely, there is reason to suspect that the changes constitute a litigation tactic and thus cannot be introduced via Rule 30(e).

For these reasons, the Court concludes that the second errata sheet was impermissibly submitted and therefore will grant the motion to strike. To the extent that Teva has evidence that it never switched to DuPont 20 in manufacturing Paragard, and the evidence is admissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence, it may attempt to contravene Dr. DeVito's 30(b)(6) deposition testimony by presenting the evidence to the jury at trial.

## III.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Plaintiffs' Motion to Strike Teva's FRCP 30(b)(6) Deposition (Material & Design – Dr. Joseph DeVito) Second Errata Sheet. Dkt. No. [1226]. The Court **STRIKES** the second errata sheet submitted on Dr. DeVito's Rule 30(b)(6) deposition.

**IT IS SO ORDERED** this 9th day of June, 2026.

Leigh Martin May
**Leigh Martin May**
**Chief United States District Judge**